FILED
5th JUDICIAL DISTRICT COURT
Lea County
3/19/2024 1:38 PM
NELDA CUELLAR
CLERK OF THE COURT
Alexia Franco

**STATE OF NEW MEXICO**
**COUNTY OF LEA**
**FIFTH JUDICIAL DISTRICT**

**KARINA TELLO**

     **Plaintiff,**

**v.**

**LEA COUNTY SHERIFF'S OFFICE,**
**COREY HELTON, MICHAEL WALKER,**
**FERNANDO JIMENEZ,**
**SEAN ROACH, SONIA ESTRADA,**
**DIANE JURADO-GARCIA,**
**AILEEN VIZCARRA, ALYSSA PORRAS,**
**DOE DEFENDANTS 1-50**

     **Defendants.**

**No.** D-506-CV-2024-00256

Case assigned to Kirksey, Lee A.

## COMPLAINT

Karina Tello ("Plaintiff"), through undersigned counsel, complains as follows against the Lea County Sheriff's Office ("LCSO"), Corey Helton ("Helton"), Michael Walker ("Walker"), Fernando Jimenez ("Jimenez"), Sean Roach "(Roach")", Sonia Estrada ("Estrada"), Diane Jurado-Garcia ("Jurado-Garcia"), Aileen Vizcarra ("Vizcarra"), and Alyssa Porras ("Porras") (collectively, "Defendants").

## INTRODUCTION

1.    This case arises from a criminal and discriminatory conspiracy directed at Plaintiff by members of law enforcement. In June of 2023, three Lea County Sheriff's Office employees launched a revenge pornography plot against one of their colleagues, Plaintiff deputy Karina Tello. The conspirators, motivated by base resentment, had common goals: to humiliate Ms. Tello and cause her to lose her job.

2.    To effectuate their scheme, the conspirators surreptitiously acquired an intimate video Ms. Tello had made for her romantic partner months earlier and anonymously disseminated it to the department's top brass.



EXHIBIT

A

3.     In response, LCSO launched a "investigation" that was not aimed at finding or punishing the people who had committed the crime. Instead, the investigation targeted only the victim, as the leaders of the LSCO shared the conspirators' goal to drive Plaintiff from her employment.

4.     LCSO officials, including the elected sheriff, decided that because she had made a private video for her romantic partner, Ms. Tello was "[]sullied," and no longer worthy of employment. On July 18, 2023, Ms. Tello was fired.

5.     Society trusted the defendants to enforce the law. The defendants betrayed that trust when they denied Ms. Tello equal protection under the law. As will be shown below, the defendants consider themselves above the law. Through this lawsuit, the defendants will be held to account.

## PARTIES

6.     Plaintiff Karina Tello resides in Lea County, New Mexico.

7.     Defendant Lea County Sheriff's Office is a subsidary of Lea County, the local governing organization of Lea County, New Mexico. The Lea County Sheriff's Office has its headquarters in Lea County, New Mexico.

8.     Defendant Corey Helton is the sheriff of Lea County, New Mexico. He resides in Lea County, New Mexico.

9.     Defendant Michael Walker is LCSO's undersheriff. On information and belief, he resides in Lea County, New Mexico.

10.    Fernando Jimenez is a chief deputy at LCSO. On information and belief, he resides in Lea County, New Mexico.

11.    Sean Roach is a captain at LCSO. On information and belief, he resides in Lea County, New Mexico.

12.    Defendant Sonia Estrada is a sergeant at LCSO. On information and belief, she resides in Lea County, New Mexico.

13.     Defendant Dinae Jurado-Garcia is a deputy at LCSO. On information and belief, she resides in Lea County, New Mexico.

14.     Defendant Aileen Vizcarra is LCSO's public relations officer. On information and belief, she resides in Lea County, New Mexico.

15.     Defendant Alyssa Porras is a police officer at the Jal Police Department. On information and belief, she resides in Lea County, New Mexico.

16.     Doe Defendants 1-50 are fictitious names used to designate individuals whose true identities are currently unknown to Plaintiff. These individuals, and each of them, are believed to have participated in, approved of, or were otherwise connected to the actions alleged herein. Plaintiff will seek leave of the court to amend this complaint to state their true names and capacities when ascertained.

## JURISDICTION

17.     This Court has jurisdiction because the facts giving rise to Plaintiff's claims occurred in New Mexico and all parties reside in New Mexico.

18.     Jurisdiction is also proper because, through this action, Plaintiff seeks to vindicate rights afforded her by New Mexico law.

19.     Venue is proper pursuant to NMSA 1978 § 38-3-1 and NMSA 1978 § 10-16C-4(A).

## ALLEGATIONS

20.     Plaintiff is a former deputy at LCSO. She started work there in February of 2023. Her immediate supervisor was Estrada.

21.     Estrada, Vizcarra, and Jurado-Garcia (the "LCSO Conspirators"), disliked Plaintiff. A friend of theirs had recently lost his job after Plaintiff reported him for sexual harassment. The LCSO Conspirators blamed Plaintiff and wanted to get back at her.

22.     In May 2023, Estrada started spreading false rumors at LCSO about Plaintiff and another LCSO deputy, claiming they were having an affair.

23.     Plaintiff confronted Estrada about the rumors. Estrada responded by threatening to share the accusations of infidelity with Plaintiff's fiancée and the other deputy's wife.

24.     On May 31, 2023, Plaintiff filed a complaint with LCSO about Estrada's harassment and threats.

25.     Within hours of Plaintiff filing the complaint, the LCSO Conspirators devised a scheme to humiliate Plaintiff and ruin her career.

26.     The LCSO Conspirators purchased a Tracfone – a prepaid cellular phone – to send defamatory messages about Plaintiff to people including LCSO administrators. They thought messages sent with the Tracfone would be anonymous and untraceable.

27.     The Tracfone messages depicted Plaintiff as promiscuous, and falsely alleged that she was having an affair.

28.     At some point, Porras, a Lovington Police Department officer, acquired an intimate video of Plaintiff (the "Video").

29.     Plaintiff had recorded the Video in 2022, on her personal cellphone, in the privacy of her own home, solely for her romantic partner.

30.     Porras, who was hostile towards Plaintiff, told the LCSO Conspirators that she had the Video. The LCSO Conspirators told her they wished to disseminate it. Porras agreed. As explained in a text message from Garcia to Vizcarra: "I have the video. Alyssa is on board with us. I didn't even have to ask her for it. She offered it to me and said do it."

31.     Prior to distributing the Video, the LCSO Conspirators sought and obtained permission from their superiors. Walker and Jimenez authorized the LCSO Conspirators' actions, and even offered to help. Walker suggested posting the Video on Facebook, after which Jimenez would re-record the video with his phone, and then send the recording to Roach.

32.     However, the original plan was scrapped when the LCSO Conspirators grew concerned that the Facebook account could be traced back to them.

33.     Instead, the LCSO Conspirators decided to use the Tracfone to distribute the video.

4

34.     On or about June 13, 2023, LCSO officials and others began receiving the Video, over text message, from the Tracfone.

35.     Jimenez received the video and then forwarded it to Roach.

36.     The Tracfone was also used to send the video to Plaintiff's fiancée and Helton.

37.     When the Video was sent to LCSO officials using the Tracfone, it was accompanied by a message that asked, "Are these the kind of whores y'all hire at the Lea County Sheriff's Office?"

38.     Plaintiff was mortified by the unauthorized dissemination of the Video and considered killing herself.

39.     On or about June 16, 2023, Plaintiff was called in to a meeting with Roach, and told that because of the Video, *she* had violated LCSO's code of ethics. Roach did not allege that Plaintiff had committed any other purported infractions of LCSO policy.

40.     Plaintiff, dumbfounded, pointed out that she was the victim of revenge pornography, and that Roach's investigation should be focused on identifying the people behind the Tracfone messages.

41.     Plaintiff identified Estrada as the likely culprit, given that Plaintiff had submitted a complaint about her the night before the Tracfone messages started. Roach agreed that Estrada was likely responsible but took no action.

42.     On June 22, 2023, Plaintiff provided Roach with screenshots of Estrada's personal Facebook page. Plaintiff pointed out that the writing style matched the messages sent from the Tracfone. Again, Roach took no action.

43.     On June 23, 2023, Plaintiff asked Roach if efforts had been made to uncover the source of the Tracfone messages. Roach responded, dismissively, that he had not investigated it.

44.     On July 1, 2023, Plaintiff told Roach that she had discussed the events with an Assistant District Attorney, and that the prosecutor had confirmed that Plaintiff was a crime victim.

45.     Like many states, New Mexico has recently enacted what is colloquially known as a "revenge porn" statute. NMSA 1978 § 38-3-1 criminalizes the following conduct:

A. Unauthorized distribution of sensitive images consists of distributing, publishing or otherwise making available, by an electronic communications device or other means, sensitive images of a person, with or without information identifying that person, without that person's consent:
(1) with the intent to:
(a) harass, humiliate or intimidate that person;
(b) incite another to harass, humiliate or intimidate that person;
(c) cause that person to reasonably fear for that person's own or family members' safety;
(d) cause that person to suffer unwanted physical contact or injury; or
(e) cause that person to suffer substantial emotional distress; and

46.     The statute defines "sensitive images" as:

[I]mages, photographs, videos or other likenesses depicting or simulating an intimate act or depicting any portion of a person's genitals, or of a woman's breast below the top of the areola, that is either uncovered or visible through less-than-fully opaque clothing, which images may reasonably be considered to be private, intimate or inappropriate for distribution or publication without that person's consent

47.     Plaintiff suggested that Roach notify New Mexico State Police ("NMSP"), so that they could investigate. Roach ignored the request.

48.     On July 1, 2023 meeting, Plaintiff also asked Roach if she could report to a supervisor other than Estrada, as Estrada was likely the source of the Tracfone messages. Plaintiff's request was not granted.

49.     On July 3, 2023, Plaintiff filed a report with NMSP.

50.     On July 17, 2023, NMSP requested a meeting with Plaintiff at LCSO to get her statement. Plaintiff notified Roach.

51.     The next morning (July 18, 2023), Walker called Plaintiff into his office and fired her.

52.     Plaintiff asked why she had been fired. Walker responded that it was because the Video violated LCSO's code of ethics, and that she did not get along with her coworkers.

53.     Approximately ten days later, Plaintiff received a letter from Roach by mail. The letter was, apparently, backdated to July 19, 2023. The letter identified three reasons for Plaintiff's termination.

54.     Two of the reasons were trivial, inadvertent infractions that did not warrant any discipline and were plainly pretextual.

55.     The third reason was: "a video was sent to Staff members and their spouses from an unknown person. This video was of you nude and of a sexual nature." According to the letter, the Video violated department policy ADM 1-02-2(E), which provides that deputies must "keep [their] private li[ves] unsullied as an example to all[.]"

56.     In September of 2023, NMSP executed search warrants for Estrada, Vizcarra, and Jurado-Garcia's cellular phones. Text messages recovered from the seized phones laid out the details of the LCSO Conspirators' scheme.

57.     No disciplinary action was taken against any of the LCSO Conspirators.

58.     Helton did not notify the director of the New Mexico Law Enforcement Training Academy of the misconduct by his officers, even though he was required to by N.M. Admin. Code 10.29.1.11(E) to do so within 90 days of being made aware of their misconduct.

59.     In December 2023, LCSO received a complaint about a male LCSO deputy. The complaint alleged that the deputy had sent an unwanted sexually explicit video to a woman he had been talking with on a social media application.

60.     On January 19, 2024, LCSO closed its investigation into the incident involving the male deputy. A report issued by Walker found that "The explicit video did occur and was unwanted." However, the male deputy was "Exonerated" of an ADM 1-02-2(E) violation because "The incident occurred while off duty, was not repetitive, and there was no indication that Sheriff's Office paraphernalia was seen in the video."

61.     The intimate footage of Plaintiff was captured while she was off duty. Indeed, Plaintiff was not even working at LCSO in 2022, when the Video was made.

62.     The Video does not display any "Sheriff's Office paraphernalia."

63.     The recipient of the Video consented to receiving it.

64.     Lea County ordinances and the LCSO policy manual vest Helton with complete discretion to determine what conduct violates ADM 1-02-2(E).

65.     Helton made the ultimate decision to terminate Plaintiff.

66.     On February 29, 2024, NMSP charged Estrada, Vizcarra, Jurado-Garcia, and Porras with misdemeanor violations of NMSA 1978 § 38-3-1. The cases are pending trial, with Estrada, Vizcarra, and Jurado-Garcia on paid administrative leave.

**FIRST CAUSE OF ACTION**
**Violation of Title VII of the Civil Rights Act of 1964, as amended**
**42 U.S.C. §§ 2000e, et seq.**
**Against LCSO**

67.     Plaintiff incorporates all allegations in this complaint as if fully set forth in this paragraph.

68.     Plaintiff is a member of a protected class, based on gender.

69.     Plaintiff was performing her job in a way that was consistent with LCSO's legitimate expectations.

70.     LCSO discriminated against Plaintiff by, among other things, harassing her, subjecting her to a hostile work environment, and firing her.

71.     LCSO also retaliated against Plaintiff.

72.     LCSO acted with a willful and wanton disregard for Plaintiff's rights.

73.     Plaintiff's gender was a motivating factor in LCSO's mistreatment of Plaintiff.

74.     As a direct and proximate result of LCSO's actions, Plaintiff suffered damages including emotional distress and loss of income.

75.     On December 26, 2023, Plaintiff dual-filed a charge of discrimination with the New Mexico Human Rights Bureau and the Equal Employment Opportunity Commission.

76.     On March 11, 2024, Plaintiff received a right-to-sue letter on her discrimination charges.

77.     LCSO acted with evil intent or were reckless or callously indifferent to Plaintiff's federally protected rights, such that punitive damages are warranted.

## SECOND CAUSE OF ACTION
### Violation of the New Mexico Human Rights Act
### NMSA 1978, § 28–1–7
### Against LCSO

78.    Plaintiff incorporates all allegations in this complaint as if fully set forth in this paragraph.

79.    Plaintiff is a member of a protected class, based on gender.

80.    Plaintiff was performing her job in a way that was consistent with LCSO's legitimate expectations.

81.    LCSO discriminated against Plaintiff by, among other things, harassing her, subjecting her to a hostile work environment, and firing her.

82.    LCSO also retaliated against Plaintiff.

83.    LCSO acted with a willful and wanton disregard for Plaintiff's rights.

84.    Plaintiff's gender was a motivating factor in LCSO's mistreatment of Plaintiff.

85.    As a direct and proximate result of LCSO's actions, Plaintiff suffered damages including emotional distress and loss of income.

86.    On December 26, 2023, Plaintiff dual-filed a charge of discrimination with the New Mexico Human Rights Bureau and the Equal Employment Opportunity Commission.

87.    On March 11, 2024, Plaintiff received a right-to-sue letter on her discrimination charges.

88.    LCSO acted with evil intent or were reckless or callously indifferent to Plaintiff's rights, such that punitive damages are warranted.

## THIRD CAUSE OF ACTION
### Violation of the New Mexico Civil Rights Act
### NMSA 1978, § 41-4A-3
### Against LCSO

89.    Plaintiff incorporates all allegations in this complaint as if fully set forth in this paragraph.

90.    The New Mexico Constitution protects individual privacy from government intrusion.

91.     Estrada, Vizcarra, and Jurado-Garcia, along with Walker and Jimenez, deprived Plaintiff of rights, privileges or immunities secured by the constitution of New Mexico by acquiring and disseminating the Video.

92.     Estrada, Vizcarra, and Jurado-Garcia, along with Walker and Jimenez, acted on behalf of, under color of, or within the course and scope of, the authority of LCSO.

93.     The deprivation of Plaintiff's rights proximately caused her to suffer damages, including emotional distress and loss of income.

**FOURTH CAUSE OF ACTION**
**Violation of the Fourteenth Amendment's Equal Protection Clause**
**42 U.S.C. § 1983**
**Against Helton, Walker, Jimenez, Roach, and Estrada, in their individual capacities**

94.     Plaintiff incorporates all allegations in this complaint as if fully set forth in this paragraph.

95.     The Equal Protection Clause of the Fourteenth Amendment is violated when public officials subject a person to adverse employment action because of their gender.

96.     Plaintiff was sexually harassed, humiliated, subjected to a hostile work environment, and ultimately terminated because of her gender.

97.     Helton, Walker, Jimenez, Roach, and Estrada, acting under color of law, punished Plaintiff for sending an intimate video of herself to a romantic partner.

98.     Male deputies at LCSO who engage in identical conduct are not subjected to adverse employment action.

99.     The disparate treatment of Plaintiff was motivated by a desire to enforce impermissible gender stereotypes.

100.    As a proximate result of Defendants' actions, Plaintiff suffered damages including emotional distress and loss of income.

101.    Defendants acted with evil intent or were reckless or callously indifferent to Plaintiff's federally protected rights, such that punitive damages are warranted.

**FIFTH CAUSE OF ACTION**
**Violation of the Fourteenth Amendment's Equal Protection Clause**
**42 U.S.C. § 1983**
**Against LCSO**

102.    Plaintiff incorporates all allegations in this complaint as if fully set forth in this paragraph.

103.    Municipal liability can attach under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), for decisions made by final policymakers.

104.    Lea County ordinances and LCSO procedures made Helton the final policymaker in determining what conduct was prohibited by LCSO's code of ethics.

105.    The policy adopted by Helton deprived Plaintiff of the equal protection of the law, in that it discriminated against her based on her gender.

106.    Helton also ratified the egregious conduct carried out by his subordinates.

107.    As a proximate result of Helton's actions as final policymaker, Plaintiff suffered damages including emotional distress and loss of income.

108.    LCSO acted with evil intent or were reckless or callously indifferent to Plaintiff's federally protected rights, such that punitive damages are warranted.

**SIXTH CAUSE OF ACTION**
**Violation of the Fourteenth Amendment's Due Process Clause**
**42 U.S.C. § 1983**
**Against Walker, Jimenez, Roach, and Estrada, in their individual capacities**

109.    Plaintiff incorporates all allegations in this complaint as if fully set forth in this paragraph.

110.    The Due Process Clause of the Fourteenth Amendment places limitations on state action that deprives individuals of life, liberty, or property.

111.    Substantive protections of the Due Process Clause include the right to avoid disclosure of sensitive, personal information.

112.    Estrada, Plaintiff's supervisor, violated Plaintiff's substantive due process rights by acquiring and then disseminating the Video.

113.    Walker and Jimenez likewise violated Plaintiff's substantive due process rights by authorizing their subordinates, Estrada, Vizcarra, and Jurado-Garcia, to disseminate the Video.

114.    Estrada, Vizcarra, and Jurado-Garcia, along with Walker and Jimenez, acted on behalf of, under color of, or within the course and scope of, the authority of LCSO.

115.    The deprivation of Plaintiff's rights proximately caused her to suffer damages, including emotional distress and loss of income.

116.    Defendants acted with evil intent or were reckless or callously indifferent to Plaintiff's federally protected rights, such that punitive damages are warranted.

### SEVENTH CAUSE OF ACTION
### Conspiracy to Interfere with Civil Rights
### 42 U.S.C. § 1985
### Against Walker, Jimenez, Estrada, Vizcarra, Jurado-Garcia, and Porras, in their individual capacities

117.    Plaintiff incorporates all allegations in this complaint as if fully set forth in this paragraph.

118.    Walker, Jimenez, Estrada, Vizcarra, Jurado-Garcia, and Porras conspired to deprive Plaintiff of the equal protection of the laws, or of equal privileges and immunities under the laws.

119.    Walker, Jimenez, Estrada, Vizcarra, Jurado-Garcia, and Porras did, or caused to be done, acts in furtherance of the conspiracy.

120.    As a proximate result of the conspiracy, Plaintiff suffered damages including emotional distress and loss of income.

121.    Defendants acted with evil intent or were reckless or callously indifferent to Plaintiff's federally protected rights, such that punitive damages are warranted.

### EIGHTH CAUSE OF ACTION
### Intentional Infliction of Emotional Distress
### Against Estrada, Vizcarra, Jurado-Garcia, and Porras

122.    Plaintiff incorporates all allegations in this complaint as if fully set forth in this paragraph.

123.    Estrada, Vizcarra, Jurado-Garcia, and Porras engaged in extreme and outrageous conduct directed at Plaintiff.

124.    The conduct was intentional or in reckless disregard of Plaintiff's rights.

125.    As a proximate result, Plaintiff suffered extreme and severe emotional distress.

126.    Defendants acted with evil intent or were reckless or callously indifferent to Plaintiff's rights, such that punitive damages are warranted.


## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment against Defendants as follows:

1.  Require Defendants to pay actual damages;

2.  Require Defendants to pay punitive damages;

3.  Require Defendants interest, reasonable attorney's fees, expenses, and costs of suit;

4.  Such other and further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial on all issues so triable.


**WALDO GUBERNICK**

**LAW ADVOCATES LLP**


Date:   3-19-24                                      By:_____
                                                    Benjamin Gubernick
                                                    WALDO GUBERNICK
                                                    LAW ADVOCATES LLP
                                                    Benjamin Gubernick (SBN 145006)
                                                    E-mail: ben@wglawllp.com
                                                    Telephone (623) 252-85037
                                                    717 Texas St. Suite 1200
                                                    Houston, TX 77002

FILED
5th JUDICIAL DISTRICT COURT
Lea County
3/22/2024 10:18 AM
NELDA CUELLAR
CLERK OF THE COURT
Jazmin Yanez

**STATE OF NEW MEXICO**
**COUNTY OF LEA**
**FIFTH JUDICIAL DISTRICT**

**KARINA TELLO**

      **Plaintiff,**

**v.**                                        **No. D-506-CV-2024-00256**

**LEA COUNTY SHERIFF'S OFFICE,**
**COREY HELTON, MICHAEL WALKER,**
**FERNANDO JIMENEZ,**
**SEAN ROACH, SONIA ESTRADA,**
**DIANE JURADO-GARCIA,**
**AILEEN VIZCARRA, ALYSSA PORRAS,**
**DOE DEFENDANTS 1-50**

      **Defendants.**

## JURY DEMAND

    Plaintiff Karina Tello, through undersigned counsel, demands that all issues so triable be

tried before a jury of twelve persons.

                            **WALDO GUBERNICK**
                            **LAW ADVOCATES LLP**

Date:   3-22-24                          By:_____
                            Benjamin Gubernick
                            WALDO GUBERNICK
                            LAW ADVOCATES LLP
                            Benjamin Gubernick (SBN 321883)
                            E-mail: ben@wglawllp.com
                            Telephone (623) 252-85037
                            717 Texas St. Suite 1200
                            Houston, TX 77002

1

FILED
5th JUDICIAL DISTRICT COURT
Lea County
3/28/2024 9:19 AM
NELDA CUELLAR
CLERK OF THE COURT
Cory Hagedoorn

STATE OF NEW MEXICO
LEA COUNTY
FIFTH JUDICIAL DISTRICT COURT

KARINA TELLO
V.
LEA COUNTY SHERIFF'S OFFICE, ET. AL.                    No. D-506-CV-2024-00256

## ORDER OF RECUSAL

I, Lee A. Kirksey, District Judge of the Fifth Judicial District Court of the State of New Mexico, for good cause, hereby recuse myself from presiding in the above-entitled and numbered case.

THE HONORABLE LEE A. KIRKSEY
DISTRICT JUDGE

## CERTIFICATE OF SERVICE

I, the undersigned Employee of the District Court of Lea County, New Mexico, do hereby certify that I served a copy of this document to all parties listed below on 3/28/2024.

Benjamin Gubernick                    14646 N Kierland Blvd #145
                                      Scottsdale AZ 85254

                                By:

FILED
5th JUDICIAL DISTRICT COURT
Lea County
3/28/2024 10:28 AM
NELDA CUELLAR
CLERK OF THE COURT
Cory Hagedoorn

STATE OF NEW MEXICO
LEA COUNTY
FIFTH JUDICIAL DISTRICT COURT

KARINA TELLO
V.
LEA COUNTY SHERIFF'S OFFICE, ET. AL.                    No. D-506-CV-2024-00256

NOTICE OF JUDGE REASSIGNMENT

The above referenced case has been reassigned to the Honorable Mark Sanchez, District Judge, Fifth Judicial

District.  This reassignment is effective 3/28/2024.

NELDA CUELLAR
CLERK OF THE DISTRICT COURT

By: _____
C. CHAY HAGEDOORN
CLERK

CERTIFICATE OF SERVICE

I, the undersigned Employee of the District Court of Lea County, New Mexico, do hereby certify that I

served a copy of this document to all parties listed below on 3/28/2024.

Benjamin Gubernick                      14646 N Kierland Blvd #145
                                        Scottsdale Az 85254

Lea County Sheriff's Office
Corey Helton
Michael Walker
Fernando Jimenez
Sean Roach
Sonia Estrada
Diane Jurado-garcia
Aileen Vizcarra
Alyssa Porras

By: _____

FILED
5th JUDICIAL DISTRICT COURT
Lea County
4/5/2024 4:08 PM
NELDA CUELLAR
CLERK OF THE COURT
Cory Hagedoorn

**STATE OF NEW MEXICO**
**COUNTY OF LEA**
**FIFTH JUDICIAL DISTRICT**

**KARINA TELLO**

      **Plaintiff,**

**v.**                             **No. D-506-CV-2024-00256**

**LEA COUNTY BOARD OF COUNTY**
**COMMISSIONERS, COREY HELTON,**
**MICHAEL WALKER, FERNANDO JIMENEZ,**
**SEAN ROACH, SONIA ESTRADA,**
**DIANE JURADO-GARCIA, AILEEN VIZCARRA,**
**ALYSSA PORRAS, DOE DEFENDANTS 1-50**

      **Defendants.**

## FIRST AMENDED COMPLAINT

Karina Tello ("Plaintiff"), through undersigned counsel, complains as follows against the Lea County Board of County Commissioners (the "Board"), Corey Helton ("Helton"), Michael Walker ("Walker"), Fernando Jimenez ("Jimenez"), Sean Roach "(Roach")", Sonia Estrada ("Estrada"), Diane Jurado-Garcia ("Jurado-Garcia"), Aileen Vizcarra ("Vizcarra"), and Alyssa Porras ("Porras") (collectively, "Defendants").

### INTRODUCTION

1. This case arises from criminal, discriminatory conduct, directed at Plaintiff by members of law enforcement. In June of 2013, three Lea County Sheriff's Department ("LCSO") employees launched a revenge pornography plot against one of their colleagues, deputy Karina Tello. The conspirators, motivated by base resentment, had common goals: to humiliate Ms. Tello and cause her to lose her job.

2. The conspirators surreptitiously acquired an intimate video Ms. Tello had made for her romantic partner and anonymously disseminated it to the department's top brass.

1

3.     In response, LCSO launched an investigation. However, the investigation was not aimed at finding or punishing the people who had committed the crime. Instead, the investigation targeted only the victim.

4.     LCSO officials, including the elected sheriff, decided that because she had made a private video for her romantic partner, Ms. Tello was "[]sullied," and no longer worthy of employment. On July 18, 2024, Ms. Tello was fired.

5.     Society trusted the defendants to enforce the law. The defendants betrayed that trust when they denied Ms. Tello equal protection under the law. And as will be shown below, the defendants consider themselves above the law. Through this lawsuit, the defendants will be held to account.

## PARTIES

6.     Plaintiff Karina Tello resides in Lea County, New Mexico.

7.     Defendant Lea County Board of County Commissioners is the executive body charged responsible for administering governmental authority in Lea County, New Mexico. LCSO is one of the Board's subsidiaries. The Board has its headquarters in Lea County, New Mexico.

8.     Defendant Corey Helton is the sheriff of Lea County, New Mexico. He resides in Lea County, New Mexico.

9.     Defendant Michael Walker is LCSO's undersheriff. On information and belief, he resides in Lea County, New Mexico.

10.    Fernando Jimenez is a chief deputy at LCSO. On information and belief, he resides in Lea County, New Mexico.

11.    Sean Roach is a captain at LCSO. On information and belief, he resides in Lea County, New Mexico.

12.    Defendant Sonia Estrada is a sergeant at LCSO. On information and belief, she resides in Lea County, New Mexico.

2

13.     Defendant Dinae Jurado-Garcia is a deputy at LCSO. On information and belief, she resides in Lea County, New Mexico.

14.     Defendant Aileen Vizcarra is LCSO's public relations officer. On information and belief, she resides in Lea County, New Mexico.

15.     Defendant Alyssa Porras is a police officer at the Jal Police Department. On information and belief, she resides in Lea County, New Mexico.

16.     Doe Defendants 1-50 are fictitious names used to designate individuals whose true identities are currently unknown to Plaintiff. These individuals, and each of them, are believed to have participated in, approved of, or were otherwise connected to the actions alleged herein. Plaintiff will seek leave of the court to amend this complaint to state their true names and capacities when ascertained.

## JURISDICTION

17.     This Court has jurisdiction because the facts giving rise to Plaintiff's claims occurred in New Mexico and all parties reside in New Mexico.

18.     Jurisdiction is also proper because, through this action, Plaintiff seeks to vindicate rights afforded her by New Mexico law.

19.     Venue is proper pursuant to NMSA 1978 § 38-3-1 and NMSA 1978 § 10-16C-4(A).

## ALLEGATIONS

20.     Plaintiff is a former deputy at LCSO. She started work there in February of 2023. Her immediate supervisor was Estrada.

21.     Estrada, Vizcarra, and Jurado-Garcia (the "LCSO Conspirators), disliked Plaintiff. A friend of theirs had recently lost his job after Plaintiff reported him for sexual harassment. The LCSO Conspirators blamed Plaintiff and wanted to get back at her.

22.     In May 2023, Estrada started spreading false rumors at LCSO about Plaintiff and another LCSO deputy, claiming they were having an affair.

23.     Plaintiff confronted Estrada about the rumors. Estrada responded by threatening to share the accusations of infidelity with Plaintiff's fiancée and the other deputy's wife.

24.     On May 31, 2023, Plaintiff filed a complaint with LCSO about Estrada's harassment and threats.

25.     Hours after Plaintiff filed the complaint, the LCSO Conspirators devised a scheme to humiliate Plaintiff and ruin her career.

26.     The LCSO Conspirators purchased a Tracfone – a prepaid cellular phone – to send defamatory messages about Plaintiff to people including LCSO administrators. They thought messages sent with the Tracfone would be anonymous and untraceable.

27.     The Tracfone messages depicted Plaintiff as promiscuous, and falsely alleged that she was having an affair.

28.     At some point, Porras, a Lovington Police Department officer, acquired an intimate video of Plaintiff (the "Video").

29.     Plaintiff had recorded the Video in October of 2022, on her personal cellphone, in the privacy of her own home, solely for her romantic partner.

30.     Porras, who was hostile towards Plaintiff, told the LCSO Conspirators that she had the Video. The LCSO Conspirators told her they wished to disseminate it. Porras agreed. As explained in a text message from Garcia to Vizcarra: "I have the video. Alyssa is on board with us. I didn't even have to ask her for it. She offered it to me and said do it."

31.     Prior to distributing the Video, the LCSO Conspirators sought and obtained permission from their superiors. Walker and Jimenez authorized the LCSO Conspirators' actions, and even offered to help. Walker suggested posting the Video on Facebook, after which Jimenez would re-record the video with his phone, and then send the recording to Roach.

32.     However, the original plan was scrapped when the LCSO Conspirators grew concerned that the Facebook account could be traced back to them.

33.     Instead, the LCSO Conspirators decided to use the Tracfone to distribute the video.

34.     On or about June 13, 2023, LCSO officials and others began receiving the Video, over text message, from the Tracfone.

35.     Jimenez received the video and then forwarded it to Roach.

36.     The Tracfone was also used to send the video to Plaintiff's fiancée and Helton.

37.     When the Video was sent to LCSO officials using the Tracfone, it was accompanied by a message that asked, "Are these the kind of whores y'all hire at the Lea County Sheriff's Office?"

38.     Plaintiff was mortified by the unauthorized dissemination of the Video and considered killing herself.

39.     On or about June 16, 2023, Plaintiff was called in to a meeting with Roach, and told that because of the Video, *she* had violated LCSO's code of ethics.

40.     Plaintiff, dumbfounded, pointed out that she was the victim of revenge pornography, and that Roach's investigation should be focused on identifying the people behind the Tracfone messages.

41.     Plaintiff identified Estrada as the likely culprit, given that Plaintiff had submitted a complaint about her the night before the Tracfone messages started. Roach agreed that Estrada was likely responsible but took no action.

42.     On June 22, 2023, Plaintiff provided Roach with screenshots of Estrada's personal Facebook page. Plaintiff pointed out that the writing style matched the messages sent from the Tracfone. Again, Roach took no action.

43.     On June 23, 2023, Plaintiff asked Roach if efforts had been made to uncover the source of the Tracfone messages. Roach responded, dismissively, that he had not investigated it.

44.     On July 1, 2023, Plaintiff told Roach that she had discussed the events with an Assistant District Attorney, and that the prosecutor had confirmed that Plaintiff was a crime victim.

45.     Like many states, New Mexico has recently enacted what is colloquially known as a "revenge porn" statute. NMSA 1978 § 38-3-1 criminalizes the following conduct:

A. Unauthorized distribution of sensitive images consists of distributing, publishing or otherwise making available, by an electronic communications device or other means, sensitive images of a person, with or without information identifying that person, without that person's consent:

(1) with the intent to:

(a) harass, humiliate or intimidate that person;

(b) incite another to harass, humiliate or intimidate that person;

(c) cause that person to reasonably fear for that person's own or family members' safety;

(d) cause that person to suffer unwanted physical contact or injury; or

(e) cause that person to suffer substantial emotional distress; and

46. The statute defines "sensitive images" as:

[I]mages, photographs, videos or other likenesses depicting or simulating an intimate act or depicting any portion of a person's genitals, or of a woman's breast below the top of the areola, that is either uncovered or visible through less-than-fully opaque clothing, which images may reasonably be considered to be private, intimate or inappropriate for distribution or publication without that person's consent

47. Plaintiff suggested that Roach notify New Mexico State Police ("NMSP"), so that they could investigate. Roach ignored the request.

48. During the July 1, 2023 meeting, Plaintiff also asked Roach if she could report to a supervisor other than Estrada, as Estrada was likely the source of the Tracfone messages. Roach denied Plaintiff's request.

49. On July 3, 2023, Plaintiff filed a report with NMSP.

50. On July 17, 2023, NMSP requested a meeting with Plaintiff at LCSO to get her statement. Plaintiff notified Roach.

51. The next morning (July 18, 2023), Walker called Plaintiff into his office and fired her.

52. Plaintiff asked why she had been fired. Walker responded that it was because the Video violated LCSO's code of ethics, and that she did not get along with her coworkers.

53. Approximately two weeks later, Plaintiff received a letter from Roach by mail. The letter was, apparently, backdated to July 19, 2023. The letter identified three reasons for Plaintiff's termination.

54.     Two of the reasons were trivial, inadvertent infractions that did not warrant any discipline and were plainly pretextual.

55.     The third reason was: "a video was sent to Staff members and their spouses from an unknown person. This video was of you nude and of a sexual nature." According to the letter, the Video violated department policy ADM 1-02-2(E), which provides that deputies must "keep [their] private li[ves] unsullied as an example to all[.]"

56.     In September of 2023, NMSP executed search warrants for Estrada, Vizcarra, and Jurado-Garcia's cellular phones. Text messages recovered from the seized phones laid out the details of the LCSO Conspirators' scheme.

57.     No disciplinary action was taken against any of the LCSO Conspirators.

58.     Helton did not notify the director of the New Mexico Law Enforcement Training Academy of the misconduct by his officers, even though he was required to by N.M. Admin. Code 10.29.1.11(E) to do so within 90 days of being made aware of their misconduct.

59.     In December 2023, LCSO received a complaint about a male LCSO deputy. The complaint alleged that the deputy had sent an unwanted sexually explicit video to a woman he had been talking with on a social media application.

60.     On January 19, 2024, LCSO closed its investigation into the incident involving the male deputy. A report issued by Walker found that "The explicit video did occur and was unwanted." However, the male deputy was "Exonerated" of an ADM 1-02-2(E) violation because "The incident occurred while off duty, was not repetitive, and there was no indication that Sheriff's Office paraphernalia was seen in the video."

61.     The intimate footage of Plaintiff was captured while she was off duty. Indeed, Plaintiff was not even working at LCSO in October of 2022, when the Video was made.

62.     The Video does not display any "Sheriff's Office paraphernalia."

63.     The recipient of the Video consented to receiving it.

64.     Lea County ordinances and the LCSO policy manual vest Helton with complete discretion to determine what conduct violates ADM 1-02-2(E).

7

65.     Helton made the ultimate decision to terminate Plaintiff.

66.     On February 29, 2024, NMSP charged Estrada, Vizcarra, Jurado-Garcia, and Porras with misdemeanor violations of NMSA 1978 § 38-3-1. The cases are pending trial, with Estrada, Vizcarra, and Jurado-Garcia on paid administrative leave.

**FIRST CAUSE OF ACTION**
**Violation of Title VII of the Civil Rights Act of 1964, as amended**
**42 U.S.C. §§ 2000e, et seq.**
**Against the Board**

67.     Plaintiff incorporates all allegations in this complaint as if fully set forth in this paragraph.

68.     Plaintiff is a member of a protected class, based on gender.

69.     Plaintiff was performing her job in a way that was consistent with the Board's legitimate expectations.

70.     The Board discriminated against Plaintiff by, among other things, harassing her, subjecting her to a hostile work environment, and firing her.

71.     The Board also retaliated against Plaintiff.

72.     The Board acted with a willful and wanton disregard for Plaintiff's rights.

73.     Plaintiff's gender was a motivating factor in the Board's mistreatment of Plaintiff.

74.     As a direct and proximate result of the Board's actions, Plaintiff suffered damages including emotional distress and loss of income.

75.     On December 26, 2023, Plaintiff dual-filed a charge of discrimination with the New Mexico Human Rights Bureau and the Equal Employment Opportunity Commission.

76.     On March 11, 2024, Plaintiff received a right-to-sue letter on her discrimination charges.

77.     The Board acted with evil intent or was reckless or callously indifferent to Plaintiff's federally protected rights, such that punitive damages are warranted.

## SECOND CAUSE OF ACTION
### Violation of the New Mexico Human Rights Act
### NMSA 1978, § 28–1–7
### Against the Board

78.     Plaintiff incorporates all allegations in this complaint as if fully set forth in this paragraph.

79.     Plaintiff is a member of a protected class, based on gender.

80.     Plaintiff was performing her job in a way that was consistent with the Board's legitimate expectations.

81.     The Board discriminated against Plaintiff by, among other things, harassing her, subjecting her to a hostile work environment, and firing her.

82.     The Board also retaliated against Plaintiff.

83.     The Board acted with a willful and wanton disregard for Plaintiff's rights.

84.     Plaintiff's gender was a motivating factor in the Board's mistreatment of Plaintiff.

85.     As a direct and proximate result of the Board's actions, Plaintiff suffered damages including emotional distress and loss of income.

86.     On December 26, 2023, Plaintiff dual-filed a charge of discrimination with the New Mexico Human Rights Bureau and the Equal Employment Opportunity Commission.

87.     On March 11, 2024, Plaintiff received a right-to-sue letter on her discrimination charges.

88.     The Board acted with evil intent or was reckless or callously indifferent to Plaintiff's rights, such that punitive damages are warranted.

## THIRD CAUSE OF ACTION
### Violation of the New Mexico Civil Rights Act
### NMSA 1978, § 41-4A-3
### Against the Board

89.     Plaintiff incorporates all allegations in this complaint as if fully set forth in this paragraph.

90.     The New Mexico Constitution protects individual privacy from government intrusion, and guarantees other rights including due process, equal protection, and happiness.

9

91.     Estrada, Vizcarra, and Jurado-Garcia, along with Walker and Jimenez, deprived Plaintiff of rights, privileges, or immunities secured by the constitution of New Mexico by acquiring and disseminating the Video.

92.     Estrada, Vizcarra, and Jurado-Garcia, along with Walker and Jimenez, acted on behalf of, under color of, or within the course and scope of, the authority of the Board.

93.     The deprivation of Plaintiff's rights proximately caused her to suffer damages, including emotional distress and loss of income.

**FOURTH CAUSE OF ACTION**
**Violation of the Fourteenth Amendment's Equal Protection Clause**
**42 U.S.C. § 1983**
**Against Helton, Walker, Jimenez, Roach, and Estrada, in their individual capacities**

94.     Plaintiff incorporates all allegations in this complaint as if fully set forth in this paragraph.

95.     The Equal Protection Clause of the Fourteenth Amendment is violated when public officials subject a person to adverse employment action because of their gender.

96.     Plaintiff was sexually harassed, humiliated, subjected to a hostile work environment, and ultimately terminated because of her gender.

97.     Helton, Walker, Jimenez, Roach, and Estrada, acting under color of law, punished Plaintiff for sending an intimate video of herself to a romantic partner.

98.     Male deputies at LCSO who engage in identical conduct are not subjected to adverse employment action.

99.     The disparate treatment of Plaintiff was motivated by a desire to enforce impermissible gender stereotypes.

100.    As a proximate result of Defendants' actions, Plaintiff suffered damages including emotional distress and loss of income.

101.    Defendants acted with evil intent or were reckless or callously indifferent to Plaintiff's federally protected rights, such that punitive damages are warranted.

102.

**FIFTH CAUSE OF ACTION**
**Violation of the Fourteenth Amendment's Equal Protection Clause**
**42 U.S.C. § 1983**
**Against the Board**

103.    Plaintiff incorporates all allegations in this complaint as if fully set forth in this paragraph.

104.    Municipal liability can attach under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), for decisions made by final policymakers.

105.    Lea County ordinances and LCSO procedures made Helton the final policymaker in determining what conduct was prohibited by LCSO's code of ethics.

106.    The policy adopted by Helton deprived Plaintiff of the equal protection of the law, in that it discriminated against her based on her gender.

107.    The Board's policies or customs deprived Plaintiff of the equal protection of the law, in that they discriminated against her based on her gender.

108.    The Board failed to adequately train and supervise county employees in matters related to workplace harassment and gender-based discrimination and was deliberately indifferent to the rights of people those employees would come into contact with.

109.    Helton, Walker, and Jimenez ratified or approved the egregious conduct carried out by their subordinates.

110.    As a proximate result of the defendants' actions as final policymaker, Plaintiff suffered damages including emotional distress and loss of income.

111.    The defendants acted with evil intent or were reckless or callously indifferent to Plaintiff's federally protected rights, such that punitive damages are warranted.

**SIXTH CAUSE OF ACTION**
**Violation of the Fourteenth Amendment's Due Process Clause**
**42 U.S.C. § 1983**
**Against Walker, Jimenez, Roach, and Estrada, in their individual capacities**

112.    Plaintiff incorporates all allegations in this complaint as if fully set forth in this paragraph.

113.    The Due Process Clause of the Fourteenth Amendment places limitations on state action that deprives individuals of life, liberty, or property.

114.    Substantive protections of the Due Process Clause include the right to avoid disclosure of sensitive, personal information.

115.    Estrada, Plaintiff's supervisor, violated Plaintiff's substantive due process rights by acquiring and then disseminating the Video.

116.    Walker and Jimenez likewise violated Plaintiff's substantive due process rights by authorizing their subordinates, Estrada, Vizcarra, and Jurado-Garcia, to disseminate the Video.

117.    Estrada, Vizcarra, and Jurado-Garcia, along with Walker and Jimenez, acted on behalf of, under color of, or within the course and scope of, the authority of LCSO.

118.    The deprivation of Plaintiff's rights proximately caused her to suffer damages, including emotional distress and loss of income.

119.    Defendants acted with evil intent or were reckless or callously indifferent to Plaintiff's federally protected rights, such that punitive damages are warranted.

**SEVENTH CAUSE OF ACTION**
**Conspiracy to Interfere with Civil Rights**
**42 U.S.C. § 1985**
**Against Walker, Jimenez, Estrada, Vizcarra, Jurado-Garcia, and Porras, in their individual capacities**

120.    Plaintiff incorporates all allegations in this complaint as if fully set forth in this paragraph.

121.    Walker, Jimenez, Estrada, Vizcarra, Jurado-Garcia, and Porras conspired to deprive Plaintiff of the equal protection of the laws, or of equal privileges and immunities under the laws.

122.    Walker, Jimenez, Estrada, Vizcarra, Jurado-Garcia, and Porras did, or caused to be done, acts in furtherance of the conspiracy.

123.    As a proximate result of the conspiracy, Plaintiff suffered damages including emotional distress and loss of income.

124.    Defendants acted with evil intent or were reckless or callously indifferent to Plaintiff's federally protected rights, such that punitive damages are warranted.

## EIGHTH CAUSE OF ACTION
### Intentional Infliction of Emotional Distress
### Against Estrada, Vizcarra, Jurado-Garcia, and Porras

125.    Plaintiff incorporates all allegations in this complaint as if fully set forth in this paragraph.

126.    Estrada, Vizcarra, Jurado-Garcia, and Porras engaged in extreme and outrageous conduct directed at Plaintiff.

127.    The conduct was intentional or in reckless disregard of Plaintiff's rights.

128.    As a proximate result, Plaintiff suffered extreme and severe emotional distress.

129.    Defendants acted with evil intent or were reckless or callously indifferent to Plaintiff's rights, such that punitive damages are warranted.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment against Defendant as follows:

1. Require Defendants to pay actual damages;

2. Require Defendants to pay punitive damages;

3. Require Defendants interest, reasonable attorney's fees, expenses, and costs of suit;

4. Such other and further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial on all issues so triable.


**WALDO GUBERNICK**
**LAW ADVOCATES LLP**


Date:   4-5-24                          By:_____
                                        Benjamin Gubernick
                                        WALDO GUBERNICK
                                        LAW ADVOCATES LLP

13

Benjamin Gubernick (SBN 321883)
E-mail: ben@wglawllp.com
Telephone (623) 252-85037
717 Texas St. Suite 1200
Houston, TX 77007

FILED
5th JUDICIAL DISTRICT COURT
Lea County
4/12/2024 2:07 PM
NELDA CUELLAR
CLERK OF THE COURT
Alexia Franco



UNITED STATES POSTAGE
PITNEY BOWES
$ 000.640
02 1P
0000093810   MAR 28 2024
MAILED FROM ZIP CODE 88260

RECEIVED APR 0 8 2024

NIXIE        850   DE 1        0004/05/24

RETURN TO SENDER
VACANT
UNABLE TO FORWARD

BC: 88260403699        *1779-03273-03-26

D-506-CV-2024-256

Benjamin Gubernick
14646 N. Kierland Blvd #145
Scottsdale, AZ 85254

- 9330010703800352
85254$2762 C0

Lee A. Kirksey
District Court Judge
100 N. Love Street, Box 1-A
Lovington, NM 88260

ENDORSED COPY

ORIGIN/   FILED IN DISTRICT COURT

MAR 2 8 2024

NELDA CUELLAR, CLERK

STATE OF NEW MEXICO
LEA COUNTY
FIFTH JUDICIAL DISTRICT COURT

KARINA TELLO
 V.
LEA COUNTY SHERIFF'S OFFICE, ET. AL.                    No. D-506-CV-2024-00256

## ORDER OF RECUSAL

I, Lee A. Kirksey, District Judge of the Fifth Judicial District Court of the State of New Mexico, for good cause, hereby recuse myself from presiding in the above-entitled and numbered case.

THE HONORABLE LEE A. KIRKSEY
DISTRICT JUDGE

## CERTIFICATE OF SERVICE

I, the undersigned Employee of the District Court of Lea County, New Mexico, do hereby certify that I served a copy of this document to all parties listed below on 3/28/2024.

Benjamin Gubernick                    14646 N Kierland Blvd #145
                                      Scottsdale AZ  85254

By: