IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

KARINA TELLO,

**Plaintiff,**

v.                                                                                            2:24-cv-00390-JHR-KRS

LEA COUNTY BOARD OF COUNTY
COMMISSIONERS, COREY HELTON,
MICHAEL WALKER, FERNANDO JIMENEZ,
SEAN ROACH, SONIA ESTRADA,
DIANE JURADO-GARCIA,
AILEEN VIZCARRA, ALYSSA PORRAS,
DOE DEFENDANTS 1-50,

**Defendants**

### PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS
### COUNT III OF PLAINTIFF'S AMENDED COMPLAINT

Plaintiff Karina Tello ("Plaintiff") respectfully submits this Opposition to the Motion to Dismiss Count III of Plaintiff's Amended Complaint ("Mot."), filed by Defendants Lea County Board of County Commissioners, Corey Helton, Michael Walker, Fernando Jimenez, and Sean Roach ("County Defendants").[1] In support of this Opposition, Plaintiff states as follows:

### I. Summary of Response

Plaintiff recorded an intimate video of herself on her personal phone, at her personal residence, solely for her romantic partner, prior to working at the Lea County Sheriff's Office. Certain defendants and colleagues of Plaintiff, motivated by personal animus, conspired to steal the video and circulate it within the community to embarrass Plaintiff. Rather than investigate the

---

[1] Defendants Estrada, Jurado-Garcia, Vizcarra, and Porras are not movants. County Defendants state that "any claims under the NMCRA that are levied against individual defendants cannot move forward" (Mot. at 3), but Plaintiff's NMCRA claim is against the Lea County Board of County Commissioners ("Board"), only; it is not against the individual defendants. First Amended Complaint (Dkt. #1-1) ("FAC"), at p.9 (Count III "Against the Board").

1

incident and discipline those responsible, Plaintiff's employer blamed Plaintiff and terminated her because her "private life" had been "sullied." Plaintiff suffered great humiliation from this incident and has brought several claims, including a claim under the New Mexico Civil Rights Act ("NMCRA") for deprivation of her constitutional rights by her (government) employer, the Lea County Sheriff Office ("LCSO"). The County Defendants move to dismiss this claim, arguing it is precluded by a carveout for employment claims in the NMCRA.

The question posed by the County Defendants' Motion is this: Does Plaintiff's NMCRA claim "arise from" her employment at the LCSO? The answer, of course, is "no." Plaintiff's NMCRA claim arises from the deprivation of her constitutional rights by the County Defendants. It does not arise from her employment. Indeed, it is surely possible for a government body to deprive its employees of their constitutional rights in a manner that does not "arise from" the employment relationship. That is precisely the case here. The County Defendants would have this Court read the carveout to preclude all claims by a government employee against his/her employer. That is not what the statute says.

The bottom line is the NMCRA creates a cause of action for deprivation of civil rights by a government body—here, the egregious invasion of privacy suffered by Plaintiff. This injury is separate and apart from Plaintiff's employment-related injuries, such as the loss of her job. For these reasons and those stated below, Plaintiff respectfully requests the Court deny the County Defendants' Motion.

## II. Plaintiff's Allegations

Plaintiff's allegations are set forth in the FAC. In sum, Plaintiff recorded a personal video of herself of an intimate nature on her personal smartphone at her personal residence. FAC at ¶29. Plaintiff was not wearing her uniform or any LCSO insignia on the video. *Id.* at ¶62. Plaintiff

certainly did not send the video to anyone at the LCSO, nor did Plaintiff upload the video to her work computer or any work device. *Id.* at ¶¶ 29, 61-62. The video did not relate to her work in any way, nor was she on duty while the video was being recorded in October of 2022. *Id.* at ¶¶ 61-62. Indeed, Plaintiff was not even working at the LCSO at that time. *Id.* at ¶61.[2] Plaintiff intended the video to be viewed solely by her romantic partner, and Plaintiff did not send the video to anyone else. *Id.* at ¶29.

Unbeknownst to Plaintiff, one of the Defendants—non-movant and non-LCSO employee, Alyssa Porras, who is a law enforcement officer with the Jal city police—acquired the video through surreptitious means and disseminated it to others, including certain of the County Defendants who are officers with the LCSO. *Id.* at ¶¶28-30. A certain officer then circulated the video further. *Id.* at ¶35. No discipline was forthcoming against the offending officers. Rather, the LCSO terminated **Plaintiff**, saying that her "private life" had been "[]sullied" on account of the video. *Id.* at ¶¶51, 55. Plaintiff has alleged eight causes of action, including Title VII discrimination on the basis of sex, and a Section 1983 claim that the County Defendants violated the Equal Protection Clause of the US Constitution.

Plaintiff also brings a claim under Section 41-4A-3 of the New Mexico Human Rights Act, also referred to as the New Mexico Civil Rights Act, or NMCRA. *See* FAC at Count III, ¶¶ 89-93. The New Mexico legislature enacted the NMCRA in 2021 at N.M. Stat., Sections 41-4A-1 through 13. The NMCRA created a cause of action for any "person who claims to have suffered a deprivation of any rights, privileges or immunities pursuant to the bill of rights of the constitution of New Mexico due to acts or omissions of a public body or person acting on behalf [there]of…."

---

[2] Plaintiff started working at the LCSO in February 2023, about five months after the video was taken. FAC at ¶20.

*Id.* at § 41-4A-3(B). Under the NMCRA, "[c]laims brought [thereunder] shall be brought exclusively against a public body." *Id.* at § 41-4A-3(C). The NMCRA specifically waived the defense of qualified immunity.[3] As the County Defendants state in their Motion, Section 41-4A-3(D) contains a carveout for claims arising from employment. The carveout reads: "Individuals employed by a public body shall be prohibited from using the New Mexico Civil Rights Act to pursue a claim arising from the individual's employment by the public body."

In this case, Plaintiff's NMCRA claim is based on certain Defendants' invasion of Plaintiff's privacy, which they perpetrated while acting under authority of the Board. *See* FAC at ¶¶ 89-93. Defendants violated this right when they stole Plaintiff's intimate video and circulated it without her permission. *Id.* To be clear, the injury alleged by Plaintiff under the NMCRA is the horror and humiliation she suffered due to the government's invasion of her privacy. *Id.* at ¶91. This injury is separate and distinct from the injury Plaintiff suffered in the form of her termination. Count III (NMCRA) does not list termination as an injury. FAC at ¶¶ 89-93.

On May 7, 2024, the County Defendants filed the present Motion to Dismiss Plaintiff's NMCRA claim, arguing it arises from her employment with the LCSO and is therefore barred under the carveout in Section 41-4A-3D of the NMCRA. Plaintiff files this Opposition thereto.

---

[3] N.M. Stat. § 41-4A-4 (titled "Prohibiting use of the defense of qualified immunity") ("In any claim for damages or relief under the New Mexico Civil Rights Act, no public body or person acting on behalf of, under color of or within the course and scope of the authority of a public body shall enjoy the defense of qualified immunity for causing the deprivation of any rights, privileges or immunities secured by the bill of rights of the constitution of New Mexico.").

## III. Argument

### A. Applicable Legal Standard

In deciding a Rule 12(b)(6) motion, a Court must accept all well-pleaded allegations as true and must view them in a light most favorable to the plaintiff. *Zinermon v. Burch*, 494 U.S. 113, 118 (1990). Rule 12(b)(6) requires that a complaint set forth the grounds of a plaintiff's entitlement to relief through more than labels, conclusions and formulaic recitation of the elements of a cause of action. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To survive a 12(b)(6) motion to dismiss, a complaint does not need to include detailed factual allegations, but "factual allegations must be enough to raise a right to relief above the speculative level." *Id.* In other words, dismissal of a complaint under Rule 12(b)(6) is proper only where it is obvious that the plaintiff failed to set forth "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

### B. Plaintiff does not allege termination as an injury under the NMCRA.

County Defendants' Motion is based on the incorrect premise that Plaintiff's NMCRA claim is based on her termination. Mot. at 3 (Defendants: "[Plaintiff's] claims against her employer and supervisors are directly related to her employment as the harm she alleges she experienced was the termination of her employment…."). Plaintiff does not seek damages for her termination under the NMCRA. Plaintiff's injury under the NMCRA is the deprivation of her constitutional rights. FAC ¶¶ 90-91 ("The New Mexico Constitution protects individual privacy from government intrusion…[Defendants] deprived Plaintiff of rights, privileges, or immunities secured by the constitution of New Mexico by acquiring and disseminating the Video.").

The text of the NMCRA makes clear that a plaintiff may seek damages for deprivation of rights, not termination of employment. New Mexico Statute 41-4A-3(B) states that "[a] person

5

who claims to have suffered a deprivation of any rights, privileges or immunities pursuant to the bill of rights of the constitution of New Mexico due to acts or omissions of a public body or person acting on behalf of" may bring a claim under the NMCRA. Termination of employment is not listed as an injury in the NMCRA. The relevant injury for which recourse may be sought is the deprivation of a plaintiff's constitutional rights.

Plaintiff brings a separate Title VII employment discrimination claim based on her termination, and for which she is owed additional damages. But her termination and resulting unemployment are separate injuries. This makes perfect sense. Having an intimate video of oneself disseminated to members of the community without permission is a separate injury from being terminated. It is a gross invasion of privacy, and when done by a public body, arises to a deprivation of constitutional rights.

**C.     Plaintiff's NMCRA claim does not "arise from" her employment.**

Defendants argue Plaintiff's NMCRA claim "arises from Plaintiff's employment as a deputy with the [LCSO]," (Mot. at 1), but that is not right. Plaintiff's claim "arises" from certain Defendants stealing an intimate video from her personal phone and circulating it without Plaintiff's permission. Plaintiff's status as a deputy with the LCSO is part of the story, but her NMCRA claim does not "arise from" that status.

Courts generally interpret terms such as "arising from" to mean "origin or cause of the injury." *E.g.*, *Keovorabouth v. Indus. Com'm*, 222 Ariz. 378, 381 (Ct. App. 2009); *see also* Merriam-Webster Online Dictionary (defining "arise" as "to begin to occur or to exist," or "to originate from a source"). Here, the origin of Plaintiff's NMCRA claim is certain Defendants' invasion of Plaintiff's privacy. Plaintiff's allegations make this clear. The subject video was taken on Plaintiff's personal phone. The taking and dissemination of the video happened on various

6

personal devices owned or purchased by certain Defendants. The video was not taken on work premises. Plaintiff was not wearing her work uniform or any insignia in the video. Indeed, Plaintiff did not even work at the LCSO when the video was filmed. Defendants' motive for sending the video involved personal animus toward Plaintiff, unrelated to Plaintiff's work at the LCSO. *See* FAC ¶ 21 (certain defendants were motivated by anger toward Plaintiff that Plaintiff had purportedly caused their friend to lose his job at Plaintiff's ***prior*** place of employment, not LCSO).

As the County Defendants point out, the NMCRA is a new statute, and there is limited caselaw interpreting the employment carveout. That said, New Mexico courts have long interpreted the phrase "arising out of employment" in the context of workers' compensation claims, and there is extensive caselaw addressing same. To wit:

> "The term 'arising out of' the employment denotes a risk reasonably incident to claimant's work….It requires that the employment be a contributing proximate cause of the injury. The causative danger must be peculiar to the work itself and not independent of the employment relationship….The accidental injury must have its origin in a risk connected with the employment and have flowed from the risk as a rational consequence."

*Flores v. McKay Oil Corp.*, 2008-NMCA-123, ¶ 10. Applied here, it is plain that Plaintiff's NMCRA claim does not arise from her employment. It is hardly a "risk reasonably incident to [Plaintiff's] work" that a coworker will steal an intimate video of Plaintiff and send it to her friends and family. Plaintiff's employment was not a "proximate cause of [her] injury." There is certainly nothing inherent about being an LCSO officer that exposes one to the risk of the horrors Plaintiff suffered.

D.  **The County Defendants' proposed interpretation of the employment carveout in the NMCRA is too broad.**

The County Defendants argue Plaintiff's NMCRA claim is barred because she brings the claim "against her former employer." Mot. at 2. But the NMCRA employment carveout is not this broad. The NMCRA bars claims "arising from [an] individual's employment." N.M. Stat. § 41-4A-3(D). It does not bar all claims by public employees against their employers. If the legislature had wished the carveout to apply so broadly, it would have said so. That the legislature declined to make the carveout so broad means there must be some NMCRA claims brought by a public employee against an employer that do ***not*** arise from the plaintiff's employment. Otherwise the "arising from" language would be superfluous, and the legislature would have simply barred all public employee claims against their employers. *Baker v. Hedstrom*, 2013-NMSC-043, ¶ 24 ("the Legislature is presumed not to have used any surplus words in a statute; each word is to be given meaning.") (internal quotations and citations omitted).

The cases cited by the County Defendants do not support their broad interpretation of the employment carveout, and in fact do not pertain to the carveout, at all. *Bolen v. New Mexico Racing Comm'n*, 2024 WL 1714975 (N.M. Ct. App. Apr. 16, 2024), merely reaffirms what the NMCRA already says—that the NMCRA does not abrogate judicial immunity. *Id.* at *4 (citing Section 41-4A-10 of CRA).[4] In *Tucker v. Univ. of N.M. Bd. Of Regents*, 618 F. Supp. 3d 1201 (D.N.M. 2022), plaintiff sued under the NMCRA for conduct that occurred from 2017 to 2019, despite the NMCRA's explicit prohibition against retrospective application. *Id.* at 1211 (dismissing NMCRA claim and citing N.M. Stat. § 41-4A-12, which reads, "Claims arising solely

---

[4] Defendants also cite *State v. Farish*, 2021-NMSC-030 (Mot. at 2), but this is not a NMCRA case and merely stands for the proposition that courts look to the plain language of the statute. As stated above, the plain language supports Plaintiff's reading of the NMCRA. A claim does not "arise from employment" merely because it is brought by a public employee against his/her employer.

8

from acts or omissions that occurred prior to July 1, 2021 may not be brought pursuant to the New Mexico Civil Rights Act.").

E.  **Plaintiff's interpretation of the employment carveout furthers the purpose of the NMCRA.**

Plaintiff proposes an interpretation of the employment carveout to the effect that a NMCRA claim does not "arise from" Plaintiff's employment where the originating harmful action(s) and the pertinent damages therefrom are not dependent on Plaintiff's employment. By way of example, if a public employee's boss at the DMV randomly shoots her in the head, that could give rise to a NMCRA claim. The claim does not arise from her employment. (The plaintiff would of course still have to show the boss was acting on behalf of the authority of a public body.) However, if the same employee receives a negative review or is terminated due to her boss's racial animus, that does not give rise to a NMCRA claim because the claim arose from her employment.

This is a bright line rule that is practical and fits with how courts have interpreted the phrase "arising from" in other contexts. *See supra* Part III.C. It also fits with the purpose of the NMCRA. As Governor Grisham commented upon signing the NMCRA, "New Mexicans are guaranteed certain rights by our state constitution…Those rights are sacred, and the constitutional document providing for them is the basis of all we are privileged to do as public servants of the people of this great state."[5] To that end, the NMCRA "strengthen[ed] the protection of New Mexicans' rights, privileges and immunities…by allow[ing] a person to litigate any deprivation of those rights, privileges or immunities and [by] prohibit[ing] the use of qualified immunity as a defense for depriving a person of those constitutional civil rights."[6] The governmental abuse alleged by

---

[5] Press Release, "Gov. Lujan Grisham ratifies Civil Rights Act," April 7, 2021, *available at* https://www.governor.state.nm.us/2021/04/07/gov-lujan-grisham-ratifies-civil-rights-act/ (last visited May 14, 2024).
[6] *Id.*

Plaintiff here is exactly the kind of invasion of civil rights that the NMCRA was intended to prevent.

Plaintiff acknowledges the NMCRA is not a stand-in for federal and state employment actions. Plaintiff's proposed interpretation would preserve this distinction while permitting NMCRA claims where, as the legislature intended, a governmental body infringes on New Mexicans' constitutional rights.

## IV. Conclusion

For the reasons stated herein, Plaintiff respectfully requests the Court deny the County Defendants' Motion to Dismiss Count III, and for all other relief to which Plaintiff may be entitled at law or equity.

Date: May 21, 2024

Respectfully submitted,

**WALDO GUBERNICK
LAW ADVOCATES LLP**

By:_____
Benjamin Gubernick
WALDO GUBERNICK
LAW ADVOCATES LLP
Benjamin Gubernick (SBN 321883)
E-mail: ben@wglawllp.com
Telephone (623) 252-85037
717 Texas St. Suite 1200
Houston, TX 77007

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document was electronically filed on May 21, 2024, and served on all counsel of record, in compliance with the Federal Rules of Civil Procedure.

_/s/ Ben Gubernick_
Ben Gubernick