IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

KARINA TELLO,

    Plaintiff,

v.                                                                                         No. 2:24-CV-00390-KG-GJF

LEA COUNTY BOARD OF COUNTY
COMMISSIONERS, COREY HELTON,
MICHAEL WALKER, FERNANDO
JIMENEZ, SEAN ROACH, SONIA
ESTRADA, DIANE JURADO-GARCIA,
ALIEEN VIZCARRA, ALYSSA PORRAS,
DOE DEFENDANTS 1-50,

    Defendants.

**PLAINTIFF'S RESPONSE TO DEFENDANTS ESTRADA, JURADO-GARCIA, AND VIZCARRA'S MOTION TO DISMISS COUNTS IV, VII, AND X OF PLAINTIFF'S THIRD AMENDED COMPLAINT**

    Karina Tello ("Plaintiff") responds as follows to the motion to dismiss (Dkt. No. 50, the "Motion") filed by Sonia Estrada ("Estrada"), Diana Jurado-Garcia ("Jurado-Garcia"), and Aileen Vizcarra ("Vizcarra") (collectively, the "Moving Defendants"). The Motion is wholly without merit and warrants denial.

**A. INTRODUCTION**

    In June of 2023, the Moving Defendants joined together in a cruel, lizard-brained conspiracy to humiliate Plaintiff and get her fired. The conspirators used an anonymous phone number and distributed a private video Plaintiff made for her romantic partner to various people at the Lea County Sheriff's Office ("LCSO"). The Moving Defendants believed that LCSO officials would punish Plaintiff for her nonconformance with outdated gender stereotypes. And they were correct: LCSO launched an investigation into Plaintiff (as opposed to her harassers) and eventually fired her. The Moving Defendants' actions are documented in thousands of text messages they sent each other. Those text messages are littered with insults about Plaintiff's

1

supposed promiscuity, and state unequivocally that the Moving Defendants wanted Plaintiff to lose her job. In short, what the Moving Defendants did is not subject to serious dispute.

Nonetheless, the Moving Defendants say they are entitled to dismissal of Counts VI, VII and X, for three reasons:

1. Estrada had nothing to do with Plaintiff losing her job (even though that was the whole point of the revenge pornography scheme, and Estrada was instrumental in creating a "work environment … permeated with harassment." *Nieto v. Kapoor*, 182 F. Supp. 2d 1114, 1140 (D.N.M. 2000));

2. The Moving Defendants lacked "class-based animus" (even though "[h]arassment based on noncompliance with sex stereotypes is harassment based on sex[.]" *Wassel v. Pennsylvania State Univ.*, No. 4:23-CV-02071, 2024 WL 2057514, at *7 (M.D. Pa. May 7, 2024)); and

3. The assertion that the Moving Defendants were "acting as police officers" (even though Vizcarra is not a police officer and theories of liability may be asserted in the alternative).

As discussed below, Defendants' arguments are contradicted by the Third Amended Complaint (Dkt. Not. 42, "TAC") and crossways with the law. Accordingly, the Court should deny the Motion.

**B. THE TAC'S ALLEGATIONS**

Plaintiff started work at the LCSO in February of 2023 as a deputy. TAC at ¶ 20. Her immediate supervisor was Estrada. *Id*. The Moving Defendants were co-workers who harbored animus towards Plaintiff. *Id*. at ¶ 21. In May 2023, Estrada started spreading rumors involving promiscuity by Plaintiff. *Id*. at ¶ 22. The Moving Defendants then worked in concert to purchase a prepaid cellphone they could use to send text messages to LCSO administrators that "depicted Plaintiff as promiscuous[.]" The Moving Defendants had a common goal: "humiliate Ms. Tello and cause her to lose her job." *Id*. at ¶ 1.

In early June, a police officer from another agency, Alyssa Porras ("Porras"), joined the conspiracy. *Id*. at ¶ 30. She provided the Moving Defendants with an intimate video of Plaintiff

for distribution throughout LCSO. *Id*. Months before joining the sheriff's office, Plaintiff recorded an intimate video for her romantic partner. *Id*. at ¶ 28. Prior to disseminating the video, the Moving Defendants received permission from undersheriff Michael Walker and chief deputy Fernando Jimenez. *Id*. at ¶ 31. The conspirators used the prepaid cellphone to distribute the video. *Id*. at ¶ 34.

The Moving Defendants' plan worked. In response to the video's release, LCSO opened an investigation into Plaintiff. *Id*. at ¶ 39. LCSO did not investigate the Moving Defendants at all, even though it was widely suspected that Estrada was responsible. *Id*. at ¶¶ 41-43. On July 18, 2023, LCSO terminated Plaintiff because the video violated LCSO's code of ethics. *Id*. at ¶¶ 51-52. Plaintiff later received a letter from LCSO explaining that "a video was sent to Staff members and their spouses from an unknown person. This video was of you nude and of a sexual nature." *Id*. at ¶ 55. Thus, according to the letter, Plaintiff had violated LCSO policy ADM 1-02-2(E), which required Plaintiff to "keep [her] private life unsullied as an example to all[.]" *Id*. LCSO does not consider identical conduct by male deputies to be violative of ADM 1-02-2(E). *Id*. at ¶¶ 61-66.

C. **LEGAL STANDARD**

"The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009).

D. **ARGUMENT**

1. **The TAC Plausibly Alleges A Section 1983 Claim Against Estrada**.

The Motion first argues that Plaintiff cannot maintain a 42 U.S.C. § 1983 claim against Estrada. The Moving Defendants' logic goes like this:

- As Plaintiff's supervisor, Estrada "cannot be held liable individually unless [she] affirmatively participated or acquiesced in the constitutional violations." Def. Mot. at 3.

3

- "There are no facts asserted to suggest how, or whether, Defendant Estrada allegedly participated in the decision to terminate Plaintiff's employment." *Id*.
- Therefore, Plaintiff's "claim against Defendant Estrada is legally insufficient on the facts alleged." *Id*.

But that argument assumes the *only* constitutional violation was "the decision to terminate Plaintiff's employment." That is not what the TAC alleges.

Count IV alleges that Estrada and a bunch of other LCSO officials "punished Plaintiff for sending an intimate video of herself to her romantic partner." TAC at ¶ 99. Count IV further alleges that "Plaintiff was sexually harassed, humiliated, subjected to a hostile work environment, and ultimately terminated because of her gender." *Id*. at ¶ 98. Those legal conclusions are supported by the TAC's Allegations section, which Count IV incorporates by reference. TAC at ¶ 96. Thus, the TAC alleges that Estrada violated the Equal Protection Clause, which bars state officials from "subject[ing] a person to adverse employment action because of their gender." *Id*. at ¶ 97.

For sure, Lea County's sheriff, Corey Helton, made the ultimate decision to terminate Plaintiff. *Id*. at ¶ 67. But Estrada participated in *all the other* adverse employment actions directed at Plaintiff. It is well-established that "[p]laintiffs may seek redress for hostile work environment harassment that violates the Equal Protection Clause under § 1983." *Nieto*, 182 F. Supp. 2d at 1140 (D.N.M. 2000) ("The elements for a hostile work environment under the Equal Protection Clause are the same as those under Title VII."). *See also Young v. Colorado Dep't of Corr*., 94 F.4th 1242, 1245 (10th Cir. 2024) (noting that the Equal Protection Clause "prohibit[s] employers from allowing work conditions to be permeated with hostile racial or sexual animus.").

Moreover, "people who aid and abet a tort can be held liable for other torts that were 'a foreseeable risk' of the intended tort," *Twitter, Inc. v. Taamneh*, 598 U.S. 471, 496, and the law generally holds "co-conspirators liable for all reasonably foreseeable acts taken to further the conspiracy." *Id*. Here, Plaintiff's unlawful termination was not just a foreseeable result of Estrada's scheme, it was her end goal.

**2. The TAC Plausibly Alleges A Conspiracy To Violate Plaintiff's Civil Rights.**

Next, the Moving Defendants take issue with Count VII. However, their arguments fail to persuade.

As a preliminary matter, Moving Defendants stretch the law with their claim that "[a] plaintiff seeking recovery for a private conspiracy in violation of §1985(3) must show … a conspiracy, *motivated by racially-discriminatory animus*[.]" Def. Mot. at 4 (emphasis original, quotation marks omitted). Rather, a Section 1985(3) claim merely "requires that some racial, or perhaps otherwise class-based, invidiously discriminatory animus lay behind the conspirators' action[.]" *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 268 (1993) (quotation marks omitted). Most courts have interpreted that to mean "women constitute a cognizable class under § 1985(3)." *Valanzuela v. Snider*, 889 F. Supp. 1409, 1420 (D. Colo. 1995) (collecting cases). And that makes sense, as "[s]ex is an immutable characteristic resulting from a fortuity of birth and women historically have been victims of discrimination." *Bedford v. Se. Pennsylvania Transp. Auth.*, 867 F. Supp. 288, 294 (E.D. Pa. 1994).

The thrust of the Moving Defendants' arguments, however, does not involve Section 1985(3)'s applicability to gender discrimination claims. Rather, the Motion argues that the "conspiracy was not the result of class-based discriminatory animus." Def. Mot. at 6. But that ignores allegations in the TAC and misunderstands the Equal Protection Clause's reach.

"Courts have held that gender stereotyping is another method for proving that same-sex harassment is based on sex." *S.E.S. v. Galena Unified Sch. Dist*. No. 499, No. 18-2042-DDC-GEB, 2018 WL 3389880, at *3 (D. Kan. July 12, 2018). And at bottom, the Moving Defendants sought to blow the whistle on Plaintiff's nonconformity with gender stereotypes related to female chastity. The TAC alleges that "[w]hen the Video was sent to LCSO officials using the Tracfone, it was accompanied by a message that asked, 'Are these the kind of whores y'all hire at the Lea County Sheriff's Office?'" TAC at ¶ 37 (likely written by Estrada). As one court explained when confronted with similar facts:

> The terms "slut" and "whore" usually refer to women. Though these derogatory terms themselves "do[ ] not mention gender, language which is facially neutral in semantic content can become suggestive of animus based on [its] historical connotation." It is obvious that such terms' usage is misogynistic, based on sex stereotypes which are more critical of female promiscuity than male promiscuity.

*Wassel v. Pennsylvania State Univ.*, No. 4:23-CV-02071, 2024 WL 2057514, at *9 (M.D. Pa. May 7, 2024).

The Motion insists that Plaintiff "admits" the Moving Defendants "were motivated purely by personal animus toward Plaintiff." Def. Mot at 6. But the TAC contains no such admission—to the contrary, the complaint alleges that the Moving Defendants were retaliating against Plaintiff for *complaining about an earlier instance of gender-based discrimination*. TAC at ¶ 21. Regardless, the Moving Defendants miss the point. "Harassment based on noncompliance with sex stereotypes is harassment based on sex, and no additional showing is required that the harasser harbored animus against women because they are women." *Wassel*, 2024 WL 2057514, at *7.

### 3. The Motion's Immunity Argument Fails.

Finally, Moving Defendants insist that they were "acting within the scope of their duties" when they used an anonymous cellphone to disseminate the intimate video of Plaintiff. Def. Mot. at 6. Thus, they claim immunity from suit for intentional infliction of emotional distress. *Id*. The crux of the Motion's argument is that "the TAC clearly demonstrate that her claims are brought against Defendants while they were acting as police officers." Def. Mot. at 6.

To be clear, Plaintiff does believe the evidence will establish that the Moving Defendants were acting within the scope of their employment.[1] However, that is not a foregone conclusion. The Lea County Board of County Commissioners, Helton, Walker, Jimenez, and Sean Roach have denied that the Moving Defendants were acting in their capacities as state employees. *See, e.g.,* Dkt. No. 49 at ¶ 45.

Until that issue is resolved, Federal Rule of Civil Procedure 8(d)(2) expressly permits Plaintiff to plead her claims in the alternative, "even if the claims appear to be facially contradictory." *Gulf Coast Shippers Ltd. P'ship v. DHL Express (USA), Inc*., No. 9-CV-221, 2015

---

[1] Vizcarra is LCSO's spokesperson. That TAC does not allege that she is a police officer.

WL 4557573, at *19 (D. Utah July 28, 2015). That is true regardless of whether a claim is "specifically labeled as an alternative theory of recovery." *Johnson v. Blendtec, Inc*., 500 F. Supp. 3d 1271, 1293 (D. Utah 2020). At this stage in the litigation, the Moving Defendants' argument fails.

### E. CONCLUSION

For the foregoing reasons, the Motion should be denied.

Date:  April 29, 2025

                                                **WGLA, LLP**

By:_____
Benjamin Gubernick (SBN 145006)
WGLA, LLP
E-mail: ben@wglawllp.com
Telephone (346) 277-0287
Fax: 346-341-0169
717 Texas St. Suite 1200
Houston, TX 77002

*Attorneys for Plaintiff*

### Certificate of Service

I certify that a copy of the foregoing was served on Defendants' counsel of record via the Court's efiling system.

                                                /s/Benjamin Gubernick
                                                Benjamin Gubernick