IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**KARINA TELLO,**

**Plaintiff,**

v.                                                             2:24-cv-00390-KG-GJF

**LEA COUNTY BOARD OF COUNTY
COMMISSIONERS, COREY HELTON,
MICHAEL WALKER, FERNANDO JIMENEZ,
SEAN ROACH, SONIA ESTRADA,
DIANE JURADO-GARCIA,
AILEEN VIZCARRA, ALYSSA PORRAS,
DOE DEFENDANTS 1-50,**

**Defendants.**

### PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO QUASH

Plaintiff Karina Tello ("Tello"), through undersigned counsel, responds to Defendants Sonia Estrada ("Estrada"), Diana Jurado-Garcia ("Garcia"), and Aileen Vizcarra's ("Vizcarra") (collectively, the "Officer Defendants") "Motion to Quash and Objections to Plaintiff's Subpoena to the New Mexico State Police" (Dkt. 70, the "Motion" or "Def. Mot."). For the reasons discussed below, the Motion lacks merit and should be denied, and all objections should be overruled.

**I.     Introduction**

In September of 2023, the New Mexico State Police ("NMSP") executed search warrants on the Officer Defendants' phones. NMSP sent the phones to Cellebrite, which used its proprietary Universal Forensic Extraction Device to create an exact copy of all data on the phones (the "Extractions").

NMSP Detectives did not go through every communication contained in the Extractions. Rather, they queried the Extractions based on parameters they thought would yield information related to their investigation. These queries were entered into Cellebrite software to generate

1

"extraction reports," PDF files reflecting communications on the phones that met the selected parameters.

NMSP was unable to collect extraction reports from Estrada or Vizcarra's phones. According to NMSP, that is because Estrada's phone had been wiped and the Vizcarra Extraction was too large for NMSP's computers to search. However, NMSP was able to run queries on the Extraction of Garcia's phone. The extraction reports from those queries included communications Garcia had with Vizcarra and Estrada during the spring and summer of 2023—the timeframe during which the Officer Defendants devised, executed, and then tried to cover up their scheme. NMSP's extraction reports also included a group text with Defendant Alyssa Porras and non-party Daniel Soto, and another group text with a woman named Claudia. In total, NMSP collected approximately 1400 text messages via these extraction reports from Garcia's phone. Based on that evidence, they charged the Officer Defendants with violating New Mexico's revenge pornography law.

The 1400 text messages uncovered by NMSP have already been produced in this case—the Lea County Board of County Commissioners (the "Board") obtained the text messages from the 9th Judicial District Attorney (the agency that prosecuted the Officer Defendants) and then disclosed them to Plaintiff. However, the parties have not performed any additional queries on the Extractions, even though the Extractions are still in NMSP's possession, and almost certainly contain highly relevant information. For example, the NMSP did not generate extraction reports for communications between Garcia and Defendants Corey Helton, Michael Walker, Fernando Jimenez, or Sean Roach. Moreover, NMSP only queried text messages, even though the Officer Defendants including Garcia switched to WhatsApp after NMSP opened its investigation. And as mentioned, NMSP's computers apparently did not have enough memory to query the Vizcarra Extraction at all.

Plaintiff's counsel subpoenaed the Extractions to fill those gaps in the documentary record. With the raw data from NMSP, the parties could run additional queries—they would no longer be limited to the subset of communications in NMSP's extraction reports. Initially, Plaintiff's

counsel's plan to subpoena the Extractions met with support. Counsel for the County Defendants (the Board, Helton, Walker, Roach, and Jimenez) even suggested submitting a joint subpoena to NMSP. While the Officer Defendants' counsel initially expressed concern that the Extractions could contain attorney-client privileged information, Plaintiff's counsel put that concern to rest—the Extractions were created in September 2023, long before the Officer Defendants hired attorneys.

The subpoena was sent to NMSP on July 7, 2025. But then, on July 18, counsel for the Officer Defendants emailed an objection to the subpoena and directed NMSP to not comply with it. Counsel for the Officer Defendants did not dispute that the Extractions would contain relevant information; rather, counsel to review the information first before producing it to avoid production of private or irrelevant material. Plaintiff immediately suggested multiple ways to ameliorate the Officer Defendants' concerns. Plaintiff's suggestions included:

- Entry of a protective order;
- The appointment of a third party to identify pertinent information;
- Limiting production to communications between the defendants and witnesses in this case from January to September 2023.

The Officer Defendants rejected each of these proposals and instead made clear there was only approach they would agree to: the Officer Defendants' attorney would go through the Extractions and select communications she considered "relevant" or "responsive" for disclosure. Plaintiff responded that the Officer Defendants' approach would not work because it had been tried already with inadequate results. A few days later, the Officer Defendants filed the instant motion to quash.

As the Court noted during an informal discovery conference last month, contemporaneous text message communications between the defendants are the most important evidence in this case. From the approximately 1400 text messages uncovered to date, it is apparent that the Officer Defendants used text messages to formulate and execute their scheme to humiliate Plaintiff and

get her fired. And given the limited scope of NMSP's extraction reports, there is good reason to believe that the 1400 text messages produced so far are merely the tip of the iceberg.

Throughout discovery, the Officer Defendants have taken the position that they were not involved with the dissemination of Plaintiff's intimate video. When confronted in deposition with text messages where they appeared to admit guilt, they have claimed not to remember what the text messages refer to. Indeed, in their depositions Vizcarra and Garcia answered hundreds of questions the same ways: "I don't know" and "I don't remember." Estrada is being deposed on August 11, and based on her interrogatory answers, Plaintiff expects more of the same. That is why the Officer Defendants cannot be trusted to decide for themselves what is "relevant" and "responsive" from the NMSP Extractions. According to the Officer Defendants, nothing is relevant to Plaintiff's allegations because Plaintiff's allegations are not true. If the Officer Defendants had their way, the 1400 text messages would not have been produced, either.

It is up to the Officer Defendants whether they wish to perjure themselves at deposition. But they cannot plead ignorance and then deny Plaintiff access to their contemporaneous communications. Nor can the Officer Defendants be permitted to be the arbiters of what is "responsive" or "relevant." Accordingly, the Court should deny the Motion outright, or at a minimum select one of the reasonable compromises proposed by Plaintiff.

## II.     Legal Standard

Rule 26 permits discovery "regarding any matter, not privileged, that is relevant to the claim or defense of any party" and discovery of any information that "appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1).

Rule 45 requires the Court to modify or quash a subpoena that "(i) fails to allow a reasonable time to comply; (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c); (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or (iv) subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A).

"The party moving to quash a subpoena under Rule 45(c)(3)(B)(i) has the burden to establish that the information sought is confidential and that its disclosure will result in a clearly

4

defined and serious injury to the moving party." *Transcor, Inc. v. Furney Charters, Inc.*, 212 F.R.D. 588, 592 (D. Kan. 2003).

### III. Argument

#### A. The Discovery is Relevant and Overbreadth Concerns are Easily Addressed

The subpoena was not directed to the Officer Defendants. Rather, it was sent to NMSP, a third party that did not object to producing the Extractions. Indeed, NMSP was about to comply fully with the subpoena when the Officer Defendants ordered NMSP to stop. So, only Rule 45(d)(3)(A)(iii)—which deals with privileged or otherwise protected matter—is at issue; the Officer Defendants lack standing to complain about undue burden, geographic scope, and time for compliance. Indeed, the Officer Defendants apparently have no problem with NMSP producing the Extractions, so long as only the Officer Defendants get to see them.

So what are the Officer Defendants actually objecting to? According to the Motion, the problem is "the subpoena is absolutely limitless." Def. Mot. at 4. But that is plainly false. The subpoena asks only for what NMSP has in its possession—the Extractions. NMSP does not have any extraction reports besides those generated by its investigators in 2023. How is NMSP even supposed to comply with a request that places limits on "time, subject matter or scope," Def. Mot. at 3, when NMSP does not even have a computer that can access the Vizcarra Extraction?

For sure, by their nature the Extractions contain lots of information that Plaintiff neither wants nor cares about, e.g. "private login and password information for various applications and online accounts." Def. Mot. at 5. That is why Plaintiff's counsel suggested having a third party create extraction reports for 2023 communications between the Officer Defendants and other defendants/witnesses.[1]

But the Officer Defendants will not agree to having a third party create extraction reports. According to them, that solution is "still vastly overbroad," Def. Mot. at 4, because it would "implicate[] the privacy rights of those involved in the conversations, and potentially confidential

---

[1] Defendants complain that the witnesses are "unnamed[.]" Def. Mot. at 4. But the parties have named the witnesses in this case. *See, e.g.*, Rule 26(f) report.

information regarding a variety of topics." *Id*. While the Officer Defendants' newfound concern for people's privacy is admirable, it is misplaced. The County Defendnats—the people "involved in those conversations"—agreed that it made sense to subpoena the Extractions. A third party, using an agreed to process for making extraction queries, would also overcome the technical problems that NMSP and the Officer Defendants have encountered.

And to the extent the Officer Defendants are talking about maintaining the confidentiality of *their own* conversations, that objection fails for multiple reasons. To start with, Plaintiff has already offered to have a third party exclude all communications prior to 2023, as Plaintiff had not yet started work as a deputy. Contrary to the Motion's claim that Plaintiff and the Officer Defendants "were coworkers for a significant period of time," Def. Mot. at 4, Plaintiff was only at the Lea County Sheriff's Office for about six months. And as reflected in NMSP extraction reports, the Officer Defendants started scheming up ways to get Plaintiff fired within weeks of her arrival. Moreover, going by the NMSP extraction reports, Plaintiff was pretty much the *only thing* the Officer Defendants talked about for much of the spring and summer of 2023. It stands to reason that the Officer Defendants' obsession with Plaintiff also spilled over to their conversations with, for example, Walker and Jimenez, both of whom were aware of and sanctioned the intimate video's dissemination. The Motion's contention that additional extraction reports would hoover up "thousands of pieces of information that would be irrelevant to Plaintiff's claims," *id*., is pure ipse dixit.

While the Officer Defendants' interest in privacy should be taken into account, that interest carries less weight than the Motion suggests. As the Supreme Court has explained:

> The Rules do not differentiate between information that is private or intimate and that to which no privacy interests attach. Under the Rules, the only express limitations are that the information sought is not privileged, and is relevant to the subject matter of the pending action. Thus, the Rules often allow extensive intrusion into the affairs of both litigants and third parties

*Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 30 (1984). *See also*, *Strand v. USANA Health Scis., Inc.*, No. 217CV00925HCNPMW, 2020 WL 30333, at *2 (D. Utah Jan. 2, 2020) ("privacy interests must yield to the Federal Rules of Civil Procedure"). The Officer Defendants planned and

executed a criminal conspiracy over text messages. They also used text and WhatsApp to discuss how to cover up their crimes. Put simply, if you decide to use your cellphone for things like that, your expectation of privacy is diminished; there is good chance that the police will seize it (which happened in 2023), and that you will have to produce some of its contents in civil discovery (which is happening now).

Finally, the Officer Defendants cite no case law at all to support their fox-in-a-henhouse request to "review" the Extractions "for information that is either responsive to Plaintiff's outstanding discovery requests or required to be produced as part of initial disclosures." Def. Mot. at page 3, footnote 3. But regardless of precedent, it is a bad idea. Consider the possibilities: if the Officer Defendants told the truth when they claimed not to remember what their hundreds of text messages referred to, how can they possibly identify "responsive" communications going forwards? And alternatively, if the Officer Defendants committed perjury in their depositions (as NMSP extraction reports show), what reason do they have to start telling the truth now? The Officer Defendants are in for a penny, in for a pound on their denials of responsibility and selective amnesia. They cannot be trusted to unilaterally decide what documents Plaintiff sees, and which documents never see the light of day. *Strand*, 2020 WL 30333 at *2 ("it is not for [a party] to unilaterally decide which materials are sufficient").

Plaintiff is not saying that parties' phones should be wholesale turned over to the other side in civil litigation. Normal procedures permit collection of relevant data, use of search terms, review by attorneys, and the like. But that is not what is going on here. The Extractions already exist. They are in possession of a third party. Plaintiff is entitled to use Rule 45 to acquire this data.

### B. The Specter of Jason Sanchez

The Officer Defendants spend the balance of the Motion complaining about Jason Sanchez ("Sanchez"), a non-party who posts on Facebook about cases involving southeastern New Mexico law enforcement. According to the Officer Defendants, "[s]hould the NMSP comply with Plaintiff's unjustified subpoena, there exists a significant and imminent risk that the information produced will be publicly disseminated on Facebook, thereby exposing Defendants' private and

sensitive information to thousands, if not millions, of individuals." Def. Mot. at 7. That concern is unwarranted.

First, Plaintiff's counsel has repeatedly proposed entering a stipulated protective order. Once the order is entered, the Officer Defendants could just designate the entire Extractions as confidential. Sanchez would not be permitted to see anything from them. Notably, the Motion fails to explain why this commonsense solution (which works just fine in all sorts of cases involving confidential information) would not work here.

Second, the Motion offers essentially nothing to support its assertion that "any information that Plaintiff receives will find its way to the Eddy and Lea County Exposed Facebook page." Def. Mot. at 15. Indeed, the Motion's only evidence (if it can be called that) is Sanchez's proclivity for posting screenshots of *public court filings* of Facebook. As the Motion explains, "The PACER post is not an isolated event. In addition to multiple harassing posts targeting Defendants, *another* PACER document has also been posted on Facebook by 'Eddy and Lea County Exposed.'" Def. Mot. at 9 (emphasis original).

Whatever animosity Sanchez and the Officer Defendants may have towards each other, Sanchez is a United States citizen, PACER is a publicly accessible database, and the "PACER document[s]" in question were not filed under seal. Sanchez can post about whatever he wants. That a third party might exercise his First Amendment rights if Plaintiff is allowed to obtain discovery is not a legitimate consideration.

### C. The NMSP Extractions are particularly relevant given the passage of time since the 2023 communication at issue.

The Officer Defendants have made several statements at depositions to the effect that their phones are set to delete text messages every 30 days, or that they have changed phones since 2023, and their counsel has used this as an excuse for their meager document productions. Whatever the veracity of these claims (and Plaintiff is skeptical), these excuses are only more reason why the NMSP Extractions must be produced. If the Officer Defendants were sincere in their desire to uncover their communications from mid-2023, they would welcome the NMSP subpoena, as the

County Defendants did. Yet they have filed this Motion to Quash. This suggests, of course, that Officer Defendants are petrified of what the Extractions will show. "It is very harmful to my case" is not a valid objection to a subpoena.

### IV. Conclusion

For the foregoing reasons, the Motion should either be denied in its entirety, or modified by the Court in the manner suggested by Plaintiff (or some other manner that does not undermine the discovery process). Officer Defendants' objections to the subpoena should be overruled. Plaintiff additionally requests all other relief to which she may be entitled at law or in equity.

        WGLA, LLP

By: _____
Benjamin Gubernick (SBN 145006)
E-mail: ben@wglawllp.com
Telephone (346) 277-0287
Fax: 346-341-0169
717 Texas St. Suite 1200
Houston, TX 77002

### Certificate of Service

I certify that a copy of the foregoing was served on Defendants' counsel of record via the Court's efiling system.

        /s/Benjamin Gubernick
        Benjamin Gubernick