IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**KARINA TELLO,**
**Plaintiff,**

v.                                                          2:24-cv-00390-KG-GJF

**LEA COUNTY BOARD OF COUNTY**
**COMMISSIONERS, COREY HELTON,**
**MICHAEL WALKER, FERNANDO JIMENEZ,**
**SEAN ROACH, SONIA ESTRADA,**
**DIANA JURADO-GARCIA,**
**AILEEN VIZCARRA, ALYSSA PORRAS,**
**DOE DEFENDANTS 1-50,**

**Defendants**

### PLAINTIFF'S RESPONSE TO DEFENDANTS' JOINT MOTION FOR PROTECTIVE ORDER AND REQUEST TO SEAL COURT RECORDS

Plaintiff files this Response to Defendants' Joint[1] Motion for Protective Order and Request to Seal Court Records. Plaintiff is not, and never has been, opposed to a reasonable confidentiality order, and Plaintiff has expressed this openness to Defendants at multiple points through this litigation, offers that Defendants never followed up on. Defendants' present request, to seal all Court records including PACER filings, is highly unusual and goes much further than a confidentiality order. It is also offensive to our country's tradition of open court records, free speech, and government accountability. Plaintiff files this Response to register her strong opposition.

---

[1] Porras has since retracted her assent to the Motion.

1

I.     **<u>Background</u>**

"Let her and Falsehood grapple; who ever knew Truth put to the worst, in a free and open encounter." – John Milton, *Areopagitica* (1644).

"If there be time to expose through discussion the falsehood and fallacies, to avert the evil by the processes of education, the remedy to be applied is more speech, not enforced silence." – *Whitney v. California*, 274 U.S. 357, 377 (1927) (Brandeis, J.).

Plaintiff filed this lawsuit on March 19, 2024. On March 26, 2024, Defendant Sheriff Corey Helton posted the following press release on the LCSO Facebook page:




**LEA COUNTY SHERIFF'S OFFICE**
**SHERIFF COREY HELTON**
1417 South Commercial
Lovington, NM 88260
(575) 396-3611
**FOR IMMEDIATE RELEASE**

CONTACT: Corey Helton, Sheriff          (575) 396-8200          chelton@leacounty.net

March 26, 2024 – In light of the recent publicity regarding the Lea County Sheriff's Office and Lea County, we strongly deny the allegations. We feel confident that we will prevail when all the facts are presented.

###

Then, in the Joint Status Report, filed (publicly) on PACER on April 3, 2025, Defendants stated as follows: "Defendants Estrada, Vizcarra and Jurado deny the allegations contained in plaintiff's pleadings and ***state that the evidence will demonstrate their non-involvement in this and other schemes orchestrated by plaintiff for financial and other gain***." Dkt. #46.

In this way, Defendants denied Plaintiff's allegations and asserted the Truth would help *them*. But that is the opposite of what has happened. Discovery is well underway, and it is clear that Defendants' bravado statements were wrong. All the evidence has shown exactly the opposite of what Defendants claimed. Defendants Vizcarra, Jurado, and Estrada bitterly despised Plaintiff and wanted to get her fired. To do this, they acquired (from Porras) a sexually explicit video of Plaintiff and sent it to at least four of Plaintiff's family members, friends, and coworkers using an

2

anonymous TracFone accompanied by derogatory messages. The evidence that Defendants did this, taken from Jurado's own cell phone, is overwhelming:

- Vizcarra to Jurado, on 6/1/23 at 5:58:41 PM: "If we can get that video from Alyssa would be fucken amazing bro…"

- Jurado to Estrada, on 6/6/23 at 12:27:01 PM: "Call you back. Alyssa is here. I have the video."

- Jurado to Vizcarra, on 6/6/23 at 12:27:06 PM: "I have the video…Alyssa is on board with us. I didn't even have to ask her for it. She offered it to me and said do it."

- Jurado to Vizcarra, on 6/8/23 at 1:36:18 PM: "I'm about to 87 with Wimbo I wanna air drop him the video…like SURPRISE!!!"

- Estrada to Jurado, on 6/13/23 at 6:52:31 PM: "Gonna send you a text from the burner phone…We're gonna text her [referring to Megan Murillo, the wife of one of Plaintiff's coworkers]"

- Jurado to Vizcarra, on 6/13/23 at 7:02:44 PM: "Tell Sonia what to text Megan…To Andy [referring to Andy Dominguez, Plaintiff's fiancé] and the 2nd one to Megan"

- Jurado to Vizcarra, on 6/13/23 at 8:36:45 PM: "Alyssa won't betray us."

- Jurado to Vizcarra, on 6/13/23 at 8:52:50 PM: "A___ said he thinks we are wrong. He said mom I honestly can't believe y'all did that to Andy. He said you're not like that mom. I said A___ someone had to do it."

- Estrada to Jurado, on 6/15/23 at 1:45:03 PM: "Fernando [Jimenez, at the time an LCSO chief deputy) and Chan [Kim, another LCSO chief deputy] should have it now"

- Jurado to Estrada, on 6/15/23 at 5:09:59 PM: "We need to get rid of that phone…I don't wanna but I think we might need to"

- Estrada to Jurado, on 6/17/23 at 9:30:17 PM: "I'm gonna turn on the track phone and tell him !!" [referring to Andy Dominguez]

- Jurado to Vizcarra, on 7/31/23 at 9:42:08 AM: "It's called a track phone for a reason it cannot be tracked"

- Estrada to Jurado, on 7/31/23 at 9:42:43 AM: "I'm kinda screwed if they pull my bank statements…it'll show I bought minutes"

3

But Jurado, Vizcarra, Estrada, and Porras did not execute their scheme alone; they depended on the cover of the LCSO upper brass, including present Undersheriff Michael Walker and then-Chief Deputy Fernando Jimenez:

- Jurado to Vizcarra, on 6/7/23 at 12:53:55 PM: "I'm about to go talk to walker and show him this video of this whore!...I'm so mad"

- Jurado to Estrada, on 6/7/23 at 2:46:07 PM: "Karina is done for…Still talking to Fernando [Jimenez]. Just wait till I tell you everything….I have a full blown plan"

- Jurado to Vizcarra, on 6/7/23 at 4:02:45 PM: "Fernando and Walker gave us the go to post the video of karina…on FB…Fernando will record it on his phone from FB 411 and the other pages and send it up the chain"

- Estrada to Jurado, on 6/14/23 at 12:20:53 PM: "I'm sure they're kinda fishing but don't care who sent it" [referring to the non-investigation into the video's dissemination conducted by Walker and Defendant Sean Roach]

- Jurado to Estrada, on 6/15/23 at 5:11:50 PM: "He wants whoever sent it to send it to Chan and then get rid of the phone"

- Jurado to Estrada, on 7/22/23 at 9:12:17 PM: "Everyone upstairs has your back to the T and they proved that by firing her ass"

The text messages also show Defendants' plan to avoid detection, "deny deny deny":

- Estrada to Jurado, on 6/14/23 at 12:23:21 PM: "Give false leads….We're 10 steps ahead of them…They ain't catching us"

- Estrada to Jurado, on 6/14/23 at 12:26:13 PM: "Deny deny deny".

- Jurado to Estrada, on 6/15/23 at 6:01:06 PM: "Girl no one will get anything out of us. To the virtual death."

Flash forward to August 2025. Defendants' plan to sweep all this under the rug has failed. Depositions are proceeding terribly for Defendants as they cannot keep their lies straight. Plaintiff has subpoenaed even more text messages from the State Police, sure to uncover more damning evidence. Long-time LCSO insider Chan Kim has testified at deposition that Helton treats the sheriff's office as his own personal power brokering operation and sweeps under the rug the wrongdoing of his insider friends. To compound Defendants' problems, their schemes are front

4

page news in the Hobbs News-Sun.[2]  LCSO's critics are vocal on Facebook.[3]  The public outrage that should have followed Defendants' gratuitous conduct in 2023 is finally catching up to them. But rather than express any remorse or take any responsibility, Defendants are now making a panicked effort to hide their misdeeds from the public eye.  Indeed, "panic" is a fair reading of their Motion, as is their decision to end the Chan Kim deposition halfway through lest more harmful testimony come to light:  Panic that voters will realize the level of corruption and sexism at the LCSO; panic that Defendants' grip on power is coming to an end.

## II.    Legal Argument

### A. Defendants do not accurately state the appropriate legal standard.

Defendants recite the "good cause" standard from Rule 26, and Defendants are surely right that under *Seattle Times*, this Court has wide discretion to enter an appropriate protective order for discovery items.  *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 32-33 (1984) ("pretrial depositions and interrogatories are not public components of a civil trial.").  But that is not all that Defendants' Motion seeks.  Defendants seek the sealing of "court records in this matter," which includes every motion, every complaint/answer, and every order.  Presumably Defendants would favor a sealed trial, too, for fear that a reporter might write about what takes place, and people might comment about it on Facebook.

Yet, despite the remarkable relief they seek, Defendants do not cite the applicable legal standard.[4]  "It is clear that the courts of this country recognize a general right to inspect and copy public records and documents, including judicial records and documents."  *Nixon v. Warner*

---

[2] Mot. at 10.
[3] *Id.* at 8-9.
[4] Plaintiff will assume Defendants did not know about this higher standard for the relief they are requesting and were not intending to mislead the Court.  Either way, they fail to even acknowledge the high burden they need to meet.

5

*Commc'ns, Inc.*, 435 U.S. 589, 597 (1978).  Since the 1980s, U.S. courts have applied a "presumption of openness" to court records that "***may be overcome only by an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest.  The interest is to be articulated along with findings specific enough that a reviewing court can determine whether the closure order was properly entered***."  *Press-Enter. Co. v. Superior Ct. of California, Riverside Cnty.*, 464 U.S. 501, 510 (1984) (emphasis added).

That is the standard:  (1) overriding interest, (2) essential to preserve higher values; and (3) narrowly tailored to serve that interest, all of which must be articulated by specific factual findings.

Ample Tenth Circuit authority discusses this standard and the presumption of openness for court records:

- *U.S. v. Bacon*, 950 F.3d 1286, 1294 (10th Cir. 2020) ("We have held that a district court, in deciding whether specific documents should be sealed, must consider the relevant facts and circumstances of the particular case and weigh the relative interests of the parties….Here…[t]he district court's generalized sealing analysis does not satisfy the common law standard or provide us with an adequate foundation for appellate review.");

- *U.S. v. Pickard*, 733 F.3d 1297, 1302 (10th Cir. 2013) ("strong presumption in favor of public access…where the district court used the sealed documents to determine litigants' substantive legal rights");

- *Colony Ins. Co. v. Burke*, 698 F.3d 1222, 1241 (10th Cir. 2012) ("burden is on the party seeking to restrict access to show some significant interest that outweighs the presumption.") (internal citation omitted);

- *Mann v. Boatright*, 477 F.3d 1140, 1149 (10th Cir. 2007) ("presumption of access...can be rebutted if countervailing interests heavily outweigh the public interests in access") (internal citation omitted); and

- *U.S. v. McVeigh*, 119 F.3d 806, 811 (10th Cir. 1997) ("It is clearly established that court documents are covered by a common law right of access.").

**B. Defendants fail to meet their burden to justify sealing court records.**

Defendants fail to meet the elements described above. Embarrassment and shame are not enough. *See Mann*, 477 F.3d at 1149 (disclosure of family feuds and family medical history in court records not sufficient to seal records); *Colony Ins.*, 698 F.3d 1297 (settlement agreements not sealed when part of court record despite confidentiality provisions). In Defendants' case, their embarrassment and shame are particularly unworthy of weight given (1) Defendants were the ones who perpetrated the scheme against Plaintiff to begin with; and (2) Defendants are public officials, accountable to the people they purport to serve.

Courts have also held that where the parties themselves "placed the[] [subject matter] at the center of th[e] controversy," there is less interest in sealing the records. *Id.* Here, contrary to all available evidence, Defendants continue to deny they sent the intimate video of Plaintiff, forcing Plaintiff to seek other text messages and records of Defendants' misconduct, which was the subject of Plaintiff's July 28 letter to the Court. If Defendants had produced the relevant discovery, or better yet if they admitted what they did, Defendants could have avoided much of the "harassment" about which they complain. Indeed, what is the interest Defendants assert overrides the presumption of open court records? Their interest in the public not knowing what they did? If this were the standard, surely every criminal and tortfeasor would want his/her court case sealed.

Defendants' supposed privacy interests are also undermined by the amount of material that is already in the public record considering this incident, and their public denials of wrongdoing (such as LCSO's Facebook claiming it will "prevail" when "all the facts are presented."). Numerous articles and TV stories have been published about Defendants' misdeeds.[5] Defendants' grievance is not that this information is available, but *that people are talking about it*. Yes, that discussion may be because of this lawsuit, but that is not a *privacy* interest. Defendants' misdeeds have long been part of the public record, which is not going away. In a free society, public officials (and especially elected officials like Helton) have no judicially enforceable interest in people thinking highly of them.

Cases in the Tenth Circuit cite examples of the type of information that may be sealed to protect privacy interests. For example, *Mann* cites *James v. Jacobson*, 6 F.3d 233, 239 (4th Cir.1993), which held that plaintiffs should have been permitted to use pseudonyms to prevent their children from learning the true identity of their biological father. Again, this was not a blanket sealing of all PACER filings; it was directed toward the identity of one individual. In general, courts will prefer selective redactions rather than blanket sealing of all court records. *See Pickard*, 733 F.3d at 1304 ("the district court did not consider whether selectively redacting just the still sensitive, and previously undisclosed, information from the sealed DEA documents and then unsealing the rest of the DEA file would adequately serve the government's interest."). Defendants skip over the possibility of selective redactions, presumably because Jason Sanchez may still post a redacted document on Facebook, and there is no redaction that could mask Defendants' wrongdoing. But Defendants' grievance is with our country's long-held belief in

---

[5] *E.g.*, "One deputy takes plea agreement while charges dismissed for other deputies," (Aug. 2, 2024) available at https://www.hobbsnews.com/one-deputy-takes-plea-agreement-while-charges-dismissed-for-other-deputies/ (last visited Aug. 19, 2025).

open courts. Defendants may try to seek relief from Jason Sanchez, but their misgivings against Mr. Sanchez are not grounds for sealing these proceedings.

In any event, Defendants' interests should be weighed against the public's interest in knowing what is happening in this case. The Lea County Sheriff is an elected office. There is an election for Lea County Sheriff in 2026. Corey Helton is term limited from running for reelection, but is running as undersheriff on a ticket with someone named Mark Rhoads. The Rhoads-Helton ticket has two competitors. How has Sheriff Helton run the LCSO for the last seven years? Would this not be relevant for the public to know ahead of next year's election? At least Estrada and Jimenez are now private citizens. Other Defendants continue to be public servants, entrusted with protecting the citizens of Lea County. Should the public not be entitled to know what they are doing on the taxpayer's dime?

This is also reason why a gag order for counsel or Plaintiff is not appropriate. Helton kicked this off by denying all allegations in a press release on Facebook. He said once the truth emerged, LCSO would prevail. Yet now Helton and others want to hide the truth lest people think less of them. They cannot have it both ways. If one peruses the LCSO Facebook page the last several months, it shows Jurado and Vizcarra handing out beverages at Starbucks and helping disabled children, respectively. Defendants certainly have a *personal* interest in perpetuating this sunny image, but this personal interest pales in comparison to the public's right to know what its leaders and civil servants are doing.

**C. The harms claimed by Defendants are their own fault.**

Confidentiality orders are common devices used in litigation all over the country, every day, in federal and state courts, such that deposition transcripts and discovery documents like text messages and emails may be exchanged between parties and not disclosed to third parties. In this

case, Plaintiff has told Defendants multiple times that if Defendants have concerns about confidentiality, Plaintiff will agree to entry of a reasonable confidentiality order. Yet Defendants never took Plaintiff up on this offer. Plaintiff has also been amenable to other requests for confidentiality. For instance, during the Jurado deposition, Jurado's attorney requested that the section of the deposition where Jurado said her address be treated as confidential. Plaintiff's counsel readily agreed. Jurado's attorney did not request that any other portion of the deposition be treated as confidential. And in their discovery responses, Defendants said they may be willing to disclose certain additional information upon entry of a stipulated confidentiality order.[6] The implication was clear: ***The information that was disclosed did not warrant a confidentiality order.*** Defendants have apparently changed their mind (although to this day they have still not sent any proposed confidentiality order), but the harms they are claiming could have been addressed a long time ago and do not require the draconian relief they now request.

This is also a classic example of the Streisand effect.[7] If Defendants had not filed their motion for protective order, Jason Sanchez would have forgotten about their text messages and moved on to something else. Yet Defendants' motion has yielded a whole new set of posts from Mr. Sanchez. The Hobbs News-Sun ran an above-the-fold, Sunday edition front-page story on August 17 about Defendants' Motion for Protective Order. If Defendants' goal is that people not criticize them, their motion is possibly the worst way to go about it.

---

[6] For example, Defendant Estrada said this about her bank account information for the days when she purchased the TracFone.

[7] https://en.wikipedia.org/wiki/Streisand_effect.

**D. Jason Sanchez is not relevant.**

Jason Sanchez is an individual who was wrongly imprisoned due to the actions of law enforcement in Southeast New Mexico.[8] He now runs a Facebook page that is critical of law enforcement officials he believes to be corrupt, focusing on New Mexico. The LCSO and other government bodies in southeast New Mexico have targeted Mr. Sanchez's page, blocking him and deleting his comments in violation of the U.S. Constitution.[9] Undersigned counsel has represented Mr. Sanchez in those lawsuits. Because the present lawsuit involves local corruption, Mr. Sanchez has taken an interest in it and will often make posts about case filings, which are publicly available on PACER.

This is not the first time County Defendants' law firm, Mynatt Springer, has accused Jason Sanchez of posting PACER filings on Facebook at the behest of undersigned counsel. In *Gerhardt v. Hobbs, et al.*, 2:25-cv-00110 DLM/GBW, on July 18, 2025, Mynatt Springer filed a brief accusing undersigned counsel of asking Mr. Sanchez to file an IPRA request to undermine Mynatt Springer's argument resisting a motion to compel. In response, undersigned counsel submitted two respective declarations to refute these charges, stating that they did not have anything to do with Mr. Sanchez's IPRA request.[10] Now here we go again, with Mynatt Springer accusing undersigned counsel of using Mr. Sanchez as some sort of agent, in hopes that by associating undersigned counsel with Mr. Sanchez, the Court will think less of undersigned counsel. Mynatt Springer really needs to retire this strategy. If lawyers were judged by the questionable conduct of their clients, there is not an attorney in the New Mexico Bar who would be immune.

---

[8] https://exonerationregistry.org/cases/13808.
[9] *E.g.*, *Sanchez v. Helton, et al.*, Civ. No. 25-60 DHU/GJF (D.N.M.).
[10] Mynatt Springer also sent a subpoena to PACER for Mr. Sanchez's PACER records in that case. This potentially infringes on Mr. Sanchez's free speech rights, and PACER rightly blew them off.

11

Undersigned counsel does not accuse Mynatt Springer or Serpe Andrews of being in cahoots with Helton and "the girls." They are attorneys representing their clients. Nonetheless, undersigned counsel submits three (more) Declarations from Mr. Waldo, Mr. Gubernick, and Mr. Sanchez, respectively. Undersigned counsel hopes these Declarations satisfy Defendants' interest about the relationship between Mr. Sanchez, his Facebook posts, and undersigned counsel.

With further respect to Mr. Sanchez, Plaintiff also alerts the Court to the following sentence in Defendants' brief: "***The fact that Sanchez is not a journalist undermines any allegation that his conduct is entitled to any protections under the First Amendment.***"[11] Thankfully that is not the law. One does not need to be a "journalist" to have the right to free speech. In this country, freedom of the press is a "fundamental personal right" which "is not confined to newspapers and periodicals." *Branzburg v. Hayes*, 408 U.S. 665, 704 (1972). In this country, "[t]he inherent worth of…speech in terms of its capacity for informing the public does not depend upon the identity of its source, whether corporation, association, union, or individual." *First Nat. Bank of Bos. v. Bellotti*, 435 U.S. 765, 777 (1978). As the Court said in *Mills v. Alabama*, 384 U.S. 214, 218 (1966), "there is practically universal agreement that a major purpose of [the First] Amendment was to protect the free discussion of governmental affairs."

Plaintiff does not think Mr. Sanchez is a troll, but so what if he is? As Voltaire may or may not have said, "I disapprove of what you say, but I will defend to the death your right to say it." Perhaps Mr. Sanchez's statements on social media are crude or wrong, but undersigned counsel will defend Mr. Sanchez's right to make them. If Defendants wish to try suing Mr. Sanchez for defamation, they are free to do so. Most of the posts Defendants complain about are merely Mr. Sanchez posting PDFs or screenshots of the PACER filings themselves on Facebook

---

[11] Mot. at 1, n.1.

and commenting on them.  Defendants may not agree with Mr. Sanchez's comments, but they are free to respond and correct him.  After all, Corey Helton told us on Facebook that the truth would prevail.  Defendants are also free to make their own filings on PACER with all the exonerating evidence we were told would come.  Plaintiff has seen no such filings.  Finally, if Defendants wish to try suing Mr. Sanchez for defamation, they are free to do so.  What Defendants may not do, however, is use this Court to help them perform an end-run around the First Amendment.

As Justice Brandeis wrote,[12] more speech is the remedy for falsehood, not secrecy.  We do not live in North Korea where citizens are expected to maintain portraits of the Dear Leader in their apartments lest government inspectors dock them their monthly rations.  Corey Helton may not like it, but we live in the United States.

---

[12] *Supra* page 2.

August 21, 2025

                              **WALDO GUBERNICK**
                              **LAW ADVOCATES LLP**

By: */s/ Curtis Waldo*
Benjamin Gubernick
WALDO GUBERNICK
LAW ADVOCATES LLP
Benjamin Gubernick (SBN 145006)
ben@wglawllp.com
Curtis Waldo (SBN 163604)
curtis@wglawllp.com
Telephone (346) 394-8056
717 Texas St. Suite 1200
Houston, TX 77002

## CERTIFICATE OF SERVICE

    I hereby certify that on August 21, 2025, I served the foregoing document on counsel of record in compliance with the Federal Rules of Civil Procedure.

                                                      */s/ Curtis Waldo*
                                                             Curtis Waldo