**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

**KARINA TELLO,**

**Plaintiff,**

**v.**                                        **2:24-cv-00390-KG-GJF**

**LEA COUNTY BOARD OF COUNTY**
**COMMISSIONERS, COREY HELTON,**
**MICHAEL WALKER, FERNANDO JIMENEZ,**
**SEAN ROACH, SONIA ESTRADA,**
**DIANE JURADO-GARCIA,**
**AILEEN VIZCARRA, ALYSSA PORRAS,**
**DOE DEFENDANTS 1-50,**

**Defendants.**

## PLAINTIFF'S MOTION FOR SANCTIONS AGAINST DEFENDANT LEA COUNTY BOARD OF COUNTY COMMISSIONERS AND MYNATT SPRINGER P.C.

Plaintiff Karina Tello ("Plaintiff"), through undersigned counsel, moves for an order imposing sanctions on Defendant Lea County Board of County Commissioners (the "Board") and its counsel, Mynatt Springer P.C. ("Mynatt Springer"), for willful misconduct.

Prior to filing this motion Plaintiff requested all parties' positions. This motion is opposed by the Board, Corey Helton, Michael Walker ("Walker"), Sean Roach ("Roach"), and Fernando Jimenez ("Jimenez") (collectively, the "County Defendants").

Defendants Sonia Estrada ("Estrada"), Diane Jurado-Garcia ("Jurado"), and Aileen Vizcarra's ("Vizcarra") (collectively, the "Officer Defendants") oppose this motion.

Defendant Alyssa Porras ("Porras") takes no position on this motion.

### A. INTRODUCTION

"[T]here is such thing as discovery karma. Discovery misconduct often may be seen as tactically advantageous at first. But just as our good and bad deeds eventually tend to catch up with us, so do discovery machinations*." Lee v. Max Intern., LLC*, 638 F.3d 1318, 1321 (10th Cir. 2011) (Gorsuch, J.).

The Board and its attorneys have engaged in staggering discovery abuse throughout these proceedings. And most disturbing, their behavior has worsened as the case has progressed. Failing to institute preservation measures or search for discoverable materials—as the Board did— is bad enough, but what happened in the days leading up to Lea County Sheriff's Office ("LCSO") captain Sean Roach's ("Roach") August 12, 2025 deposition is much worse. Roach testified that on August 10, 2025, Mynatt Springer lawyer Benjamin Young ("Young") met with him and asked Roach to check his phone for discoverable text messages. That search immediately yielded 41 pages of texts, one of which conclusively proved the Officer Defendants' guilt. Yet despite having this evidence in hand by the morning of August 11, and even though Estrada was being deposed on August 11, Young ***waited until the morning of August 12 to disclose the 41 pages.***

For all seven hours of Estrada's deposition, Young sat on evidence that undermined Estrada's testimony and corroborated Plaintiff's allegations. And unbelievably, the next day Young doubled down on his misconduct, insisting that it was "absolutely appropriate" to withhold the evidence because public information had been "disseminated from the case on social media[.]" In other words, after this Court denied the County Defendants' request for a discovery stay, the Board decided to take matters into its own hands by withholding inculpatory evidence.

The above is only the latest in a long list of failures by the Board and its lawyers to litigate in good faith. Enough is enough. For the reasons discussed below, the Court should sanction the Board and Mynatt Springer.

**B. FACTS UNDERLYING THE MOTION**

**1. Background on disputed issues and Plaintiff's discovery requests.**

A central dispute in this case is whether the Officer Defendants used an anonymous TracFone to publicly disseminate an intimate video that Plaintiff recorded for her romantic partner. The Officer Defendants have denied responsibility. In fact, they promised in the Rule 26(f) report that "the evidence [would] demonstrate their non-involvement," and that this was all just a "scheme[] orchestrated by plaintiff for financial and other gain." Dkt. No. 46 at 5.

The Board has stood in solidarity with the Officer Defendants. For example, a week after Plaintiff filed suit, LCSO issued this press release:

 

**LEA COUNTY SHERIFF'S OFFICE**
**SHERIFF COREY HELTON**
1417 South Commercial
Lovington, NM 88260
(575) 396-3611
**FOR IMMEDIATE RELEASE**

| CONTACT: Corey Helton, Sheriff | (575) 396-8200 | chelton@leacounty.net |

**March 26, 2024 –** In light of the recent publicity regarding the Lea County Sheriff's Office and Lea County, we strongly deny the allegations. We feel confident that we will prevail when all the facts are presented.

*See* Exhibit A.[1] And in late 2024, Estrada was allowed to retire with a lucrative pension. As for Vizcarra and Jurado, they are still Board employees and have received no discipline for their role in the video's dissemination.

A significant source of evidence supporting Plaintiff's claims is a Cellebrite extraction report compiled by the New Mexico State Police ("NMSP"). The report contains hundreds of text messages that Jurado's phone sent and received during mid-2023. The Court has seen some of those messages, and they are damning. However, to lay to rest any doubt created by the Officer Defendants' denials, Plaintiff has sought corroborating evidence in discovery. On April 10, 2025, Plaintiff sent written discovery requests to the Board and all other Defendants. *See* Exhibit B. These included a request that the Board produce "All communications, including emails, text messages, and instant messages regarding Plaintiff, from February 1, 2023, to the present." *Id*. at 7. Also included were requests for production to Roach and former LCSO chief deputy Fernando Jimenez for "Communications between [either of them] and any other Defendant relating to Plaintiff." *Id*. at 8.

### 2. The Board, Roach, and Jimenez claim to not have any responsive documents.

On June 16, 2025—after receiving multiple extensions from Plaintiff—Jimenez and Roach submitted responses to Plaintiff's discovery requests. Their responses included the following:

---

[1] All exhibits are attached to the Declaration of Benjamin Gubernick ("Gubernick Decl.") filed concurrently with this motion.

> **REQUEST FOR PRODUCTION NO. 1:** Communications between you and any other Defendant relating to Plaintiff.
>
> **RESPONSE: Defendant Jimenez has no records responsive to this request.**

Exhibit C at 2. Jimenez's responses were signed by Young. *Id*. at 5.

> **REQUEST FOR PRODUCTION NO. 1:** Communications between you and any other Defendant relating to Plaintiff.
>
> **RESPONSE: Defendant Sean Roach has no records responsive to this request.**

Exhibit D at 2. Roach's responses were signed by Young. *Id*. at 5.

On June 27, 2025—following another extension—the Board submitted its discovery responses, which included inter alia:

> **REQUEST FOR PRODUCTION NO. 4:** All communications, including emails, text messages, and instant messages regarding Plaintiff, from February 1, 2023, to the present.

> **RESPONSE: The Defendant Board has no communication records responsive to this request.**

Exhibit E at 2-3. Young signed the Board's responses as well. *Id*. at 8.

### 3. Jimenez's testimony raises questions about his counsel's diligence.

Concurrent with written discovery, Plaintiff took depositions of most named defendants, including a deposition of Jimenez which was conducted on July 1, 2025. The following exchange occurred early in Jimenez's deposition:

[Image on next page]

```
8      Q   Okay.  If I asked you to take out your
9   cell phone right now and scroll up to text
10  messages that you sent in this May and June 2023
11  time period, could you do that?
12     A   Probably not.
13     Q   Why not?
14     A   I don't keep old messages.
15     Q   Well, what happens to them?
16     A   Shit if I know.  They get deleted, I
17  guess.
18     Q   Did you delete them?
19     A   You set your phone to delete messages so
20  you don't carry up storage.
21     Q   Okay.  Have you -- when did you set your
22  phone -- wait.  How do you actually set your phone
23  to do that?
24     A   Go to settings.
25     Q   No, but have you set your phone to do
                                              168
1   that?
2      A   Yeah.
3      Q   Are you sure?
4      A   I'm sure.
```

Exhibit F at 167:8 – 168:4.

Plaintiff's counsel requested that Jimenez take out his personal phone and see how far back

his text messages went. Jimenez complied and found that his text messages went back to June 4,

2023. *Id*. at 168:7 – 168:19. This led to follow-up questions about the thoroughness of his search

for responsive documents:

```
11     Q   Okay.  You were asked here, request for
12  production number one, communications between you
13  and any other defendant relating to plaintiff.
14  What did you -- you said, again, answer, Defendant
15  Jimenez has no records responsive to this request.
16  If I search your phone for the word Tello, am I
17  not going to find anything?  If I search your
18  messages for the word Tello, there will be zero?
19  Or Karina?  None of that is going to yield any
20  results?
21     A   Sure.
22     Q   Did you check?
23     A   Yeah.
```

*Id*. at 172:11-23.

Plaintiff's counsel then asked Jimenez to enter the word "Tello" in his phone's search bar. *Id*. 173:8 – 174:21. When multiple results came up, the parties agreed to adjourn the deposition so that Jimenez could supplement his document production. *Id*. 176:3 – 176:24. Jimenez had evidently either lied about searching his phone, or he had searched his phone and found relevant messages but ignored them.

Jimenez's lackadaisical approach to discovery obligations was perhaps unsurprising. Earlier in the deposition, he testified that the case was "[a] bunch of bullshit." *Id*. 147:18-21. Moreover, when asked how much time he had spent talking with his attorneys during the case's pendency, Jimenez answered "Shit, I don't know, give or take five minutes, ten minutes. I don't know." *Id*. 143:3 – 4.

### 4. Plaintiff sends Rule 37 deficiency letters, and (some) County Defendants purport to supplement their productions.

On July 7, 2025—six days after the Jimenez deposition debacle—the Young sent an email to Plaintiff's counsel that stated, in part: "We'll be supplementing several discovery responses later this week/beginning of the following so you all have your requested information with a decent amount of lag time before the August depositions." Exhibit G.

Also on July 7, 2025, Plaintiff emailed two letters to the County Defendants' attorneys. The first letter requested that Jimenez produce all responsive communications on his phone by July 18, 2025. *See* Exhibit H. The letter also stated:

> It is apparent that Mr. Jimenez failed to conduct a good faith search for responsive communications, and that his testimony to the contrary was false and misleading. That is why we have to resume his deposition at a later date (for which we will seek fees and costs). Mr. Jimenez's failure also raises significant concerns about the document collection efforts of your other clients in this case—Sean Roach, Michael Walker, Corey Helton, and Lea County. All four represented in their discovery responses that they possessed no communications with other Defendants relating to Ms. Tello, or relating to the Intimate Video or Ms. Tello's termination. Yet if their document collection efforts were as feeble/non-existent as those of Mr. Jimenez, it is highly likely that responsive documents do exist and can be located. Additionally, the July 1 deposition calls into question whether your clients have enacted even rudimentary document preservation measures.

*Id*.

6

Plaintiff's second letter specifically addressed deficiencies in the Board's June 27, 2025 discovery responses. *See* Exhibit I. The issues raised in the second letter included:

> 5. Equivocal RFP response – The Board's response to RFP No. 1, which seeks personnel files and disciplinary history for each Defendant, reads in full: "This request will be supplemented." However, the Board does not say when the promised supplementation will occur, or explain what it will include. Likewise, the Board answers other RFP's by claiming it has "no records responsive to this request," but fails to state whether any search was performed, much less the scope of the search, whether it was performed with reasonable diligence, and whether it included the Board's subsidiaries (e.g. LCSO). Please supplement the Responses to provide this information.

*Id*. In response, the County Defendants promised to supplement their earlier productions by July 18, 2025. The deadline for the Board's supplementation was extended, at Young's request, to July 25, 2025. *See* Exhibit J ("I anticipate being able to have the supplements completed by Friday the 25.").

On July 22, 2025, Jimenez supplemented his discovery responses with four pages of text messages. On July 25, 2025 Plaintiff received supplemental responses from the Board, including personnel files for Helton and Walker. *See* Exhibit K. The Board did not supplement its response to Request for Production No. 4, which had called for production of all communications related to Plaintiff. Compare *Id*. to Exhibit E at 2-3. The Board's supplemental responses were signed by Young. Exhibit K at 6.

**5. The Board attempts to extort Plaintiff and the Court into agreeing to a discovery stay, but the Court orders the depositions of Estrada and Roach to proceed.**

On August 7, 2025, the County Defendants and Officer Defendants motioned the Court to for a protective order that would seal the entire case.[2] *See* Dkt. No. 79. The motion also asked the Court to stay all discovery until the motion was resolved. Additionally, the motion chastised Plaintiff for making the "completely unsupported allegation that Defendants are 'withholding'

---

[2] The motion was initially joined by Alyssa Porras, but her support was later withdrawn.

relevant information." *Id*. at 2. Concurrent with the motion's filing, Estrada and Roach filed notices of non-appearance for depositions scheduled for August 11 and 12, respectively.

On August 8, 2025, at Plaintiff counsel's request, the Court held a telephonic status conference to discuss the motion and the upcoming depositions. During the call, Young announced that the Board would not bring any funds to the upcoming September 8 settlement conference if the motion was still pending. Dkt. No. 84 at 2. The Court expressed its concern that the Board's ultimatum amounted to a refusal to attend the settlement conference in good faith unless the motion was resolved in the Board's favor. *Id*.

Plaintiffs' counsel offered to stipulate on an interim basis to all relief the Board was requesting, so that Estrada and Roach's depositions could go forwards. *Id*. Yet Young continued to press for a discovery stay. *Id*. Ultimately, the Court ordered Estrada and Roach to appear for deposition as scheduled. *Id*. at 3 ("The Court ORDERED that the depositions of Defendants Estrada and Roach go forward as scheduled subject to the [an] interim confidentiality order.").

**6.  Estrada denies, denies, denies.**

On August 11, 2025, Estrada was deposed and denied all involvement in the intimate video's dissemination. Her deposition strategy was previewed in a text message exchange recovered by NMSP:

| Native Messages | +15759421579 L-24 S. Estrada* | +15756022370 Diana Garcia* (owner) doporto243@yahoo.com Diana Garcia* (owner) | **Timestamp:** 6/14/2023 12:24:25 PM(UTC-6) | **Direction:** Incoming **Body:** They ain't catching us |
|---|---|---|---|---|
| Native Messages | +15756022370 Diana Garcia* (owner) | +15759421579 L-24 S. Estrada* doporto243@yahoo.com Diana Garcia* (owner) | **Timestamp:** 6/14/2023 12:24:36 PM(UTC-6) | **Direction:** Outgoing **Body:** Hell no they ain't. 😊 |
| Native Messages | +15759421579 L-24 S. Estrada* | +15756022370 Diana Garcia* (owner) doporto243@yahoo.com Diana Garcia* (owner) | **Timestamp:** 6/14/2023 12:26:13 PM(UTC-6) | **Direction:** Incoming **Body:** Deny deny deny |

Exhibit L at Bates 000596.

Estrada was shown over 100 text messages during her deposition, and almost every time responded with variations of the same non-answer: "I don't remember." Ironically, that was how she responded when asked about the above exchange:

> 11    Q   Diana responds to you on 596. Diana says,
> 12  Hell no, they ain't. Some sort of emoji there, and
> 13  then you respond, Deny, deny, deny. Do you see that?
> 14    **A   I do, sir.**
> 15    Q   What did you mean by that? Deny, deny,
> 16  deny?
> 17    **A   I do not recall what we were discussing.**

Ex. M at 173:11-17.

Young was present for the entirety of Estrada's deposition. At no point during the deposition did he notify Plaintiff's counsel that he possessed undisclosed, discoverable documents that could be used to impeach Estrada.

### 7.  **Mynatt Springer supplements Roach's disclosures minutes before Roach's deposition.**

At 8:40 AM MT on August 12, 2025—50 minutes before Roach's deposition started—Mynatt Springer emailed Plaintiff's counsel supplemental discovery responses for Roach. Exhibit N. These supplemental responses included 41 pages of text message conversations Roach had in mid-2023 with Walker, Estrada, Plaintiff, and LCSO deputy Victor Murillo ("Victor").

Many of these messages were damaging to the County Defendants. For example, in one series of messages Walker and Roach call Plaintiff "a child" for complaining about Estrada's harassment. Exhibit O at Bates 001379. And in another, Roach reacts "Lol" to Plaintiff's suggestion that NMSP investigate the intimate video's dissemination. *Id*. at 001380.

The most important part of the production, however, was embedded in an exchange between Roach and Walker that took place on June 13, 2023, at 7:48 PM:



*Id*. at Bates 001375 (left original, right enlarged).

The screenshot Roach forwarded to Walker was from the phone of Megan Murillo ("Megan"). The number 575-266-3539 is the TracFone used to distribute Plaintiff's intimate video. This document is extremely relevant when read in parallel with a series of text messages from the NMSP extraction:

| 211 | Native Messages | +15756022370 Diana Garcia* (owner) | +15759421579 L-24 S. Estrada* doporto243@yahoo.com Diana Garcia* (owner) | **Timestamp:** 6/13/2023 6:50:51 PM(UTC-6) | **Direction:** Outgoing **Body:** Murillos truck is at Budrows |
| 212 | Native Messages | +15756022370 Diana Garcia* (owner) | +15759421579 L-24 S. Estrada* doporto243@yahoo.com Diana Garcia* (owner) | **Timestamp:** 6/13/2023 6:51:07 PM(UTC-6) | **Direction:** Outgoing **Body:** He left with Karina |
| 213 | Native Messages | +15756022370 Diana Garcia* (owner) | +15759421579 L-24 S. Estrada* doporto243@yahoo.com Diana Garcia* (owner) | **Timestamp:** 6/13/2023 6:51:21 PM(UTC-6) | **Direction:** Outgoing **Body:** Te digo 🙄 |
| 214 | Native Messages | +15759421579 L-24 S. Estrada* | +15756022370 Diana Garcia* (owner) doporto243@yahoo.com | **Timestamp:** 6/13/2023 | **Body:** Wtf |
| 215 | Native Messages | +15759421579 L-24 S. Estrada* | +15756022370 Diana Garcia* (owner) doporto243@yahoo.com Diana Garcia* (owner) | **Timestamp:** 6/13/2023 6:52:13 PM(UTC-6) | **Direction:** Incoming **Body:** For sure ?? |
| 216 | Native Messages | +15759421579 L-24 S. Estrada* | +15756022370 Diana Garcia* (owner) doporto243@yahoo.com Diana Garcia* (owner) | **Timestamp:** 6/13/2023 6:52:17 PM(UTC-6) | **Direction:** Incoming **Body:** He's with her ? |
| 217 | Native Messages | +15759421579 L-24 S. Estrada* | +15756022370 Diana Garcia* (owner) doporto243@yahoo.com Diana Garcia* (owner) | **Timestamp:** 6/13/2023 6:52:31 PM(UTC-6) | **Direction:** Incoming **Body:** Gonna send you a text from the burner phone |
| 218 | Native Messages | +15756022370 Diana Garcia* (owner) | +15759421579 L-24 S. Estrada* doporto243@yahoo.com Diana Garcia* (owner) | **Timestamp:** 6/13/2023 6:52:38 PM(UTC-6) | **Direction:** Outgoing **Body:** I bet you anything he told Megan that he was going on a work trip. |
| 219 | Native Messages | +15759421579 L-24 S. Estrada* | +15756022370 Diana Garcia* (owner) doporto243@yahoo.com Diana Garcia* (owner) | **Timestamp:** 6/13/2023 6:52:55 PM(UTC-6) | **Direction:** Incoming **Body:** We're gonna text her |

Exhibit L at Bates 000565-000568.  In this way, we have the TracFone texting Megan "He parked it at Budrows [sic]" at 7:07 PM on June 13, and we have Jurado texting Estrada, "Murillos truck is at Budrows [sic]" 17 minutes earlier, at 6:50 PM.  We also have Estrada texting Jurado "We're gonna text her" (referring to Megan) at 6:52 PM, 15 minutes before the texts to Megan at 7:07 PM.

Like puzzle pieces clicking together, the correlations between the Officer Defendants' texts and those from the Tracfone remove any doubt about the Officer Defendants' culpability. There is no other explanation.

**8. The Board's counsel admits to intentionally withholding the texts from Roach's phone.**

Early in his deposition, Roach was asked when he had found the 41 pages of text messages. Roach responded that the messages were from his work phone, and that he had found them during a meeting with his attorney on Sunday, August 10, 2025. Exhibit P at 51:15-52:7. Roach further testified that, prior to the August 10 meeting, his communications with Mynatt Springer had been limited to a couple brief phone calls. *Id*. at 53:1-16. When confronted with his June 16 discovery responses—where he claimed not to have any responsive documents—Roach admitted that he had done nothing prior to August 10, 2025 to locate communications from mid-2023. *Id*. at 31:11-24 ("Q. Okay. So you did not look back to text messages from mid-2023, to see if you had anything responsive to this request? A. Nope."). Finally, Roach stated that he emailed the 41 pages of text messages to Young on the morning of August 11, 2025. *Id*. at 52:8-13.

Then, one hour and forty-six minutes into the deposition, Young interrupted Plaintiff's counsel's questioning to put the following statement on the record: "***Judge [Fouratt] entered the confidentiality order yesterday relating to how things have been disseminated from this case on social media. So it's absolutely appropriate that these things were produced when they were produced***." *Id*. at 111:5-19. Plaintiff's counsel then demanded to know why the documents had not been produced the previous day. *Id*. at 112:1-20. Young answered that the documents were produced "***in conjunction with the Court's order yesterday***," and reiterated that it was "***appropriate that they did show up when they showed up***." *Id*.

**9. Other depositions confirm that the Board and its lawyers have willfully refused to search for and preserve discoverable documents.**

The above incidents fit a larger pattern:

- On May 14, 2025, Walker testified that he deletes all text messages from his work phone every week. Exhibit Q at 86:-5 – 88:8. When pressed to explain why he had this practice, Walker stated "[t]here's no law that talks about messaging on a phone" and "No one has ever told me anything differently." *Id*. at 90:11-22. Walker also

admitted that he had, probably, intentionally deleted text messages with Jurado related to Plaintiff. *Id*. at 211:12 – 212:5.

- On August 7, LCSO Chief Deputy Chan Kim ("Kim") testified that no preservation letters had been issued for any of the ongoing cases related to LCSO. Exhibit R at 135:2 – 136:13. Kim also testified that he had no knowledge of anyone at LCSO being asked to preserve documents, even though he believed it should be common practice. *Id*. Moreover, Kim testified that, during the Helton administration, LCSO had never enforced document retention policies, and that there are essentially *no standards* for retention of work-related communications. *Id*. at 137:10 – 139:10.

- Kim further testified that throughout Helton's term as sheriff, most LCSO employees with a rank of captain and above have been issued Slack accounts to communicate with other high-ranking officials. *Id*. at 122:23 – 129:25. Slack is an encrypted messaging service,[3] and according to Kim LCSO's subscription includes automatic message deletion after 90 days. *Id*. at 130:1-14.

- On August 11, 2025, Lea County Human Resources Director Craig Bova ("Bova"), testified that he has *never* been asked to search for discoverable documents related to *any* of the lawsuits pending against the Board. Exhibit S at 51:6 – 53:7. He also testified that although the Board had issued preservation letters in the past, he had no recollection of the Board issuing a preservation letter in *Tello* or any other case involving Plaintiff's counsel. *Id*, at 71:1-12. That testimony was corroborated by Roach on August 12, 2025, when he testified at his deposition that no preservation letter had been circulated for Plaintiff's case, and no one had ever asked him to retain documents. Exhibit P at 47:15 – 48:22.

- Finally, on August 18, 2025, Jimenez was deposed again and testified that prior to his retirement in January 2025, LCSO did nothing to extract or retain relevant

---

[3] *See* Slack, *Security, Encryption, and Compliance at Slack*, *Enterprise-grade Security Solutions | Slack*, https://slack.com/trust/security (last visited Aug. 28, 2025).

communications from his work phone.[4] To the contrary, LCSO **permitted Jimenez to keep his work phone when he retired.** And to make matters worse, **Jimenez misplaced the phone in April 2025 and has no idea where it is now.**

## C. LEGAL STANDARDS

Rule 26(g) requires that "every discovery … response … be signed by at least one attorney of record[.]" Fed. R. Civ. P. 26(g)(1). "By signing, an attorney or party certifies that to the best of the person's knowledge, information, and belief formed after a reasonable inquiry," (*id*.), and that a disclosure "is complete and correct as of the time it is made[.]" Fed. R. Civ. P. 26(g)(1)(A). "If a certification violates this rule without substantial justification, the court, on motion or on its own, must impose an appropriate sanction on the signer, the party on whose behalf the signer was acting, or both." Fed. R. Civ. P. 26(g)(3).

Rule 37(c) imposes mandatory sanctions "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e)[.]" Fed. R. Civ. P. 37(c)(1). Penalties range from exclusion of the late-disclosed evidence to terminating sanctions. *Id*.

Federal Rule of Civil Procedure 37(d) authorizes sanctions where "a party, after being properly served with interrogatories under Rule 33 or a request for inspection under Rule 34, fails to serve its answers, objections, or written response." Fed. R. Civ. P. 37(d)(1)(A)(ii). Providing incomplete responses or failing to conduct a reasonable search amounts to a failure to respond. *Case v. Unified Sch. Dist. No. 233*, 162 F.R.D. 147, 148 (D. Kan. 1995).

The Court also possesses inherent equitable authority to impose sanctions against a party or attorney that has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Chambers v. NASCO, Inc*., 501 U.S. 32, 45 (1991).

Spoliation of electronically stored information ("ESI") is governed exclusively by Fed. R. Civ. P. 37(e). *Alsadi v. Intel Corp*., No. CV-16-03738-PHX-DGC, 2020 WL 4035169, at *3 (D. Ariz. July 17, 2020) (collecting cases). "That Rule provides for sanctions when a party fails to take

---

[4] The transcript for Jimenez's second deposition is not yet available.

reasonable steps to preserve ESI that should have been preserved in the anticipation or conduct of litigation, and the ESI is lost and cannot be restored or replaced through additional discovery." *Sky Jet M.G. Inc. v. VSE Aviation Servs., LLC*, No. 23-2210-HLT-ADM, 2025 WL 1664002, at *5 (D. Kan. June 12, 2025), *objections overruled,* No. 2:23-CV-02210-HLT, 2025 WL 2172445 (D. Kan. July 31, 2025). If those prerequisites are satisfied, "the court then proceeds to assess the appropriate sanction under Rule 37(e)(1) and/or (e)(2)." *Id*.

## D. ARGUMENT

The Board's misconduct goes beyond mere sloppiness or neglect. It is systemic, severe, and willful. It amounts to a complete abdication of the Board's duty to litigate this case in good faith, enabled at every turn by Mynatt Springer.

### 1. The Board and Mynatt Springer violated Rules 26(g), 37(c), 37(d), and 16(f).

#### a. False "no records" responses.

In June 2025, the Board, Roach, and Jimenez served substantively identical "no responsive documents" responses to requests for production seeking communications about Plaintiff. Those responses were not the product of a reasonably diligent search. They were not the product of *any* search. Despite requesting—and receiving—multiple extensions, the Board did not even bother to look for responsive documents. That is not good enough:

> To adequately respond to a request for production, the respondent must conduct a reasonable search for responsive documents. Parties, along with their employees and attorneys, have a duty to act competently, diligently, and ethically with respect to discharging discovery obligations. This requires a joint effort to identify all employees likely to have been authors, recipients or custodians of documents responsive to the requests for production. Parties jeopardize the integrity of the discovery process by engaging in halfhearted and ineffective efforts to identify and produce relevant documents. A party does not meet its discovery obligations by sticking its head in the sand and refusing to look for [documents].

*Robinson v. City of Arkansas City, Kan*., No. 10-1431-JAR-GLR, 2012 WL 603576, at *4 (D. Kan. Feb. 24, 2012) (quotation marks omitted, modification original). *See also, In re Indep. Serv. Organizations Antitrust Litig*., 168 F.R.D. 651, 653 (D. Kan. 1996) ("[a party] cannot meet its discovery obligations by sticking its head in the sand and refusing to look for the answers and then saying it does not know the answer.").

15

As this Court has said, contemporaneous text message communications are the most important evidence in this case. But the first time Jimenez performed a meaningful search for text messages on his personal phone was ***during his deposition***, when he was asked to enter the name "Tello" in his messaging app's search bar. "It is inexcusable … to respond to a request for production without reviewing the computer of a primary actor in the sequence of events leading to litigation." *Id*. And as for Jimenez's LCSO-issued work phone, that has never been searched and likely never will be—Jimenez was allowed to take it with him when he retired in January 2025, ten months after this case was filed, and then lost it in April 2025. The story repeats itself with Roach, who did not do anything close to a good-faith search for documents until August 10, 2025. And that is just two custodians; there is no indication that the Board has done anything to determine if its hundreds of other employees possess responsive text messages. *Cache La Poudre Feeds, LLC v. Land O'Lakes, Inc*., 244 F.R.D. 614, 627 (D. Colo. 2007) ("For purposes of [Rule] 34, documents are deemed to be in a party's possession, custody or control if that party has actual possession, custody or control of the materials "or has the legal right to obtain the documents on demand.").

*Wachtel v. Health Net Inc*., 239 F.R.D. 81 (D.N.J. 2006), is instructive. There, the court found a defendant's "process for responding to discovery utterly inadequate" where the defendant: (1) "did not disseminate a comprehensive notice to employees who could reasonably be anticipated to possess responsive documents"; (2) "did [not] attempt to identify … employees with responsive documents"; and (3) relied on "employee-conducted searches [that] managed to exclude inculpatory documents that were highly germane to Plaintiffs requests." *Id*. at 92. That describes the Board to a T. And just like the *Wachtell* defendant, the Board "did not notify the Court or Plaintiff[] of [its] systematic failure to search[.]" *Id.* at 95. On the contrary, the Board repeatedly said, without qualification, that it had no responsive documents.[5]

---

[5] Although all sets of discovery responses from the County Defendants are preceded by a list of "general objections," those are meaningless as a matter of law. *See e.g. Smash Tech., LLC v. Smash Sols., LLC*, 335 F.R.D. 438, 447 (D. Utah 2020) ("General objections neither explain nor

**b. False and misleading certifications.**

Blame does not end with the Board. It is well-established that "the attorney overseeing document production must inform himself or herself as to what documents are responsive to the discovery requests[.] … Failure to shoulder this affirmative duty is breach of one's obligations under the Federal Rules." *Howard v. Segway, Inc*., No. 11-CV-688-GKF-PJC, 2013 WL 869955, at *4 (N.D. Okla. Mar. 7, 2013). Not only did  the Mynatt Springer attorneys shirk that duty by barely even communicating with their clients, but they also signed multiple Rule 26(g) certifications attesting to the thoroughness and completeness of the Board's search for responsive documents.

"[T]he central issue [under rule 26(g)] is whether the person who signed the pleading conducted a reasonable inquiry into the facts and law supporting the pleading." *S2 Automation LLC v. Micron Tech., Inc*., No. CIV 11-0884 JB/WDS, 2012 WL 3656454, at *31 (D.N.M. Aug. 9, 2012) (quotation marks omitted, modifications original). For sure, "Rule 26(g) does not require the signing attorney to certify the truthfulness of the client's factual responses. *Beachley v. Trans Union, LLC*, No. 23-CV-03098-NYW-KAS, 2025 WL 661693, at *6 (D. Colo. Feb. 28, 2025), *report and recommendation adopted*, No. 23-CV-03098-NYW-KAS, 2025 WL 2093212 (D. Colo. Mar. 17, 2025) (citing Fed. R. Civ. P. 26 Advisory Committee Note to 1983 Amendment). However, the attorney's "signature [does] certify[y] that the lawyer has made a reasonable effort to assure that the client has provided all the information and documents available to him that are responsive to the discovery demand." *Id*.

Here, "[u]nder the circumstances and without some showing of a reasonable inquiry, it is difficult to understand how [the Board's] retained counsel could legitimately claim … [to have] 'made every effort to produce all documentation and provide all relevant information.' *Cache La*

---

preserve anything. They are empty, useless traditions that do nothing but make discovery unnecessarily cumbersome.").

*Poudre Feeds, LLC v. Land O'Lakes, Inc.*, 244 F.R.D. 614, 630 (D. Colo. 2007) (citing *Wachtel*, 239 F.R.D. at 95). In fact, the evidence shows that Mynatt Springer made *no effort* and instead acted as a rubber stamp for the Board's nonexistent searches and inadequate responses.

      **c. Intentional evidence withholding.**

When Young made the decision to put off disclosing the 41 pages of Roach text messages until August 12, he deliberately concealed critical evidence. The withheld documents include four pages of text messages between Roach and Estrada, and a conversation with Walker that effectively blows up Estrada's denials. Because of Young's actions, Plaintiff was deprived of the ability to confront Estrada with those documents.

The timeline is appalling. On August 7 Young filed a motion criticizing Plaintiff's purported "inability to support any of her allegations about alleged 'withholding' of evidence[.]'" Dkt. No 79 at 2. Then, on August 10, Young learned about the 41 pages of messages on Roach's phone. And then, during the morning of August 11, Roach emailed the 41 pages to Young. But instead of saying anything about this new evidence to Plaintiff's counsel, Young sat silently for the entirety of Estrada's August 11 deposition. "[O]nce [Young] obtained physical possession of the records, he had a continuing obligation under Rule 26(e) to disclose them to [Plaintiff] and in not doing so failed to meet his obligations under the federal rules." *In re Ray*, 951 F.3d 650, 654 (5th Cir. 2020) (affirming an attorney's disbarment from federal court) (quotation marks omitted).

And as if that was not enough, Young claimed on the record during Roach's deposition that it was "appropriate" to disclose the messages on August 12 because information had been disseminated on social media, and the minutes from the previous week's status conference were not entered until August 11. But both those excuses are non-starters. At the August 8 telephonic conference, the parties agreed to a protective order and the Court ordered the depositions to go forwards. Nothing in the Court's order deputized Young to impose whatever *ad hoc* evidentiary sanctions he deemed "appropriate." Once again, *Wachtel* is helpful:

> Health Net, while represented by McCarter & English, unilaterally decided that if the Magistrate Judge did not expressly state that she was ruling on their "burdensome" objections, they could continue to withhold documents. Health Net

*never* told the Magistrate Judge that it was not complying with her discovery orders in this fashion—it just withheld documents. This Court finds that Health Net's latest argument—to wit, that their "burdensome" objections were never ruled upon by the Magistrate Judge, and that Defendants therefore could continue to rely on those objections to withhold discovery even after Court Orders to produce—is utterly without merit. It is not made in good faith. The Magistrate Judge heard scores of oral arguments on all discovery obligations pressed by Defendants, and she ruled. *Those rulings deserved compliance.*

239 F.R.D. at 94 (emphasis added). Sanctions are needed.

### d. Bad faith settlement conference sabotage.

Rule 16(f) provides for sanctions if a party fails to participate in good faith at a pretrial conference (including a settlement conference). Here, the Court long ago scheduled, at the parties' request and agreement, a settlement conference to take place on September 8, 2025. The parties reaffirmed their intent to participate in this settlement conference as recently as the status conference held on July 28, 2025. Yet on August 8, 2025, for the first time, Young sprung an ultimatum on the Court: the Board will not bring money to the settlement conference unless its protective order motion has been resolved.

There are certainly good faith reasons to decline to participate in a settlement conference; for example, if the two sides are too far apart on settlement. But that is not why the Board backed out. Like a prohibition-era mobster shaking down a store proprietor, the Board essentially said, "hey judge, we filed a motion we want you to grant. Oh and by the way, that settlement conference coming up? Be a real shame if it turns out to be a huge waste of everyone's time." In other words, the Board conditioned its good-faith participation at the settlement conference (which the rules required) on a favorable outcome to a newly filed motion that had nothing to do with the case's merits.

That is the essence of bad faith litigation conduct, and Plaintiff was prejudiced. The Board represented to Plaintiff and the Court that an early settlement conference made sense for this case. Plaintiff conducted discovery at a breakneck pace to ensure she would be prepared for the September 8 settlement conference. That required tradeoffs—such as conducting the first handful of depositions without the benefit of responses to written discovery. Had Plaintiff known the Board would later use its good-faith participation as a bargaining chip to extort concessions, Plaintiff

never would have agreed to the September date. The Board has have gone back on its word and blown up the settlement conference in an attempt to coerce the Court into granting a meritless motion.[6] Allowing the Board's gamesmanship to go unpunished is a precedent this Court should not set.

**2. The Board spoliated the ESI.**

There are three elements to a violation of Rule 37(e)'s mandate to preserve ESI: "(1) the ESI should have been preserved, (2) a party failed to take reasonable steps to preserve it, and (3) it cannot be restored or replaced." *Sky Jet M.G. Inc*., 2025 WL 1664002 at *5. All three are satisfied here. Additionally, Plaintiff has been prejudiced.

**a. The Board should have preserved the ESI.**

The Board's duty to preserve electronically stored information arose in July 2023, when LCSO learned of NMSP's investigation and Plaintiff was fired.[7] At that point, the Board "knew, or should have known, that litigation was imminent." *In re Gold King Mine Release in San Juan Cnty., Colorado, on Aug. 5, 2015*, No. 1:18-MD-02824-WJ, 2021 WL 3472440, at *5 (D.N.M. Aug. 6, 2021). Indeed, Roach admitted to knowing as early as June 2023 that litigation was likely. Exhibit P at 50:4-18. At the latest, the duty to preserve attached in March 2024, when this lawsuit was filed.

**b. The Board failed to take reasonable steps to preserve the ESI.**

Despite its duty to preserve the ESI, the Board: (1) allowed Walker to delete all texts from his work phone, including conversations with Jurado that likely involved Plaintiff; (2) never issued preservation instructions to its employees; (3) has allowed its LCSO leadership to continue using

---

[6] As Plaintiff has separately argued in its response to the motion for protective order, if Defendants' concern was confidentiality of discovery items, it could have accepted Plaintiff's offer to enter a stipulated confidentiality order months ago, which it never did.

[7] At all relevant times the Board has also had an independent duty to preserve documents under the New Mexico Public Records Act, which is relevant to the determination of bad faith and intent. *E.E.O.C. v. Dillon Companies, Inc*., 839 F. Supp. 2d 1141, 1145 (D. Colo. 2011) ("indicat[ion] [of] bad faith" where an employee "created a work-around to allow the master to be taped over, … in violation of company policy.")

Slack with 90-day autodeletion enabled; (4) never conducted a search for discoverable materials; and (5) let Jimenez keep (and then lose) his work phone upon retirement. Those actions and omissions were manifestly unreasonable:

> Despite knowing of the lawsuit and the claims alleged, it is undisputed that until June 23, 2009—17 months after the lawsuit was filed—no written instructions were sent to BCT employees to preserve documents related to the Philips lawsuit. Further, there is no documentary evidence that BCT did anything to fulfill its duty and obligation to preserve any relevant documents for over a year and a half after the lawsuit was filed. Gasparovich testified that, after the lawsuit was filed, BCT did not change any of its practices to ensure that relevant documents stored on its computers were not deleted or destroyed[.]

*Philips Elecs. N. Am. Corp. v. BC Tech*., 773 F. Supp. 2d 1149, 1204 (D. Utah 2011). *See also id*. at 1203 ("Regarding the collection and review of evidence, after the duty to preserve attaches, the failure to collect either paper or electronic records from key players, the destruction of email, or the destruction of backup tapes was grossly negligent or willful behavior.").

### c.   The ESI cannot be replaced or restored.

The auto-purged Slack content and deleted device texts are simply gone. As is Jimenez's lost work phone, and years of text messages from Walker's phone. No alternative repositories or backups have been identified to restore or replace that ESI. "[T]hose documents are simply gone forever. *Philips*, 773 F. Supp. 2d at 1215. *See also, id*. at 1156 (noting that "a case can turn on only a few key documents.").

### d.   Prejudice to Plaintiff.

To prove prejudice, the movant need only "establish a reasonable possibility, based on concrete evidence rather than a fertile imagination that access to the lost material would have produced evidence favorable to his cause." *Gates Rubber Co. v. Bando Chem. Indus., Ltd*., 167 F.R.D. 90, 104 (D. Colo. 1996). Here, prejudice is apparent.

Walker admitted that he likely deleted texts with Jurado related to Plaintiff. This is corroborated by the 41 pages of text messages with Roach, which include texts where Walker mocks Plaintiff after the video's dissemination. If Walker had relevant, contemporaneous text conversations with Roach, it stands to reason that he had relevant conversations with other co-

defendants as well. Moreover, Walker testified that he deleted text messages because no one told him not to—that is precisely the type of mistaken belief that a simple preservation letter would have prevented. For the same reasons, Jimenez's work phone likely contained relevant text messages that would have been preserved had the Board made any effort, at all, to prevent their loss or destruction. Indeed, Roach's personal phone contained at least 41 pages of relevant text messages. What was Jimenez discussing on his work phone?  We will never know.

Likewise, Kim testified that Walker and other top brass at LCSO routinely use Slack for official communications. LCSO's reasons for firing Plaintiff are hotly disputed. Plaintiff claims she was fired for retaliatory and discriminatory reasons. The Board claims she was not, and that she was terminated only for unrelated policy violations. It is reasonably possible LCSO employees used their secret, encrypted, autodeleting messaging service to discuss their reasons for Plaintiff's dismissal.  "If th[at] is true, it would lend further support to the claim that plaintiff's discharge was motivated by discriminatory animus." *Dillon Companies, Inc*., 839 F. Supp. 2d at 1145.

### 3.   Appropriate Sanctions.

#### a.   Rules 26(g), 37(c), 37(d), and 16(f).

The Tenth Circuit provides guidance on the correct sanctions for the Board and Mynatt Springer's misconduct. The Court should consider: "(1) the degree of actual prejudice to [Plaintiff]; (2) the amount of interference with the judicial process; (3) the culpability of the litigant[;] … (4) whether the court warned the party in advance that [default] would be a likely sanction for noncompliance, … and (5) the efficacy of lesser sanctions." *Ehrenhaus v. Reynolds*, 965 F.2d 916, 921 (10th Cir. 1992) (citations and quotations omitted). However, "[t]hese factors do not constitute a rigid test; rather, they represent criteria for the district court to consider prior to imposing [default] as a sanction." *Id*. Applied here, severe sanctions are justified.

***First***, the Board's failure to search for responsive documents and Young's intentional withholding of Roach's texts has deprived Plaintiff of the ability to use them in depositions. Were documents located and produced earlier, the whole direction of the case may have changed—it is conceivable that the Officer Defendants would not have bet the farm on perjured denials, based on

the hope that Plaintiff would be unable to corroborate the NMSP text messages. Hundreds of hours of attorney time could have been saved.

*Second*, the Board has not just interfered with the judicial process, it has undermined discovery and flouted the Court's authority. Again, this is not a case of mere neglect. The Board and its lawyers have engaged in escalating, willful misconduct throughout this case. Even now, they shrug off their refusals to abide by the rules and act in good faith as "appropriate."

*Third and for the same reasons*, the Board and Mynatt Springer are plainly culpable. Virtually all the misconduct discussed in this motion was intentional (*e.g.*, withholding Roach's texts), or the product of reckless disregard (refusing to search for responsive documents).

*Fourth*, while the Court has not previously warned the Board about the imposition of terminating sanctions, it should consider them anyway. Reviewing the record, one could easily conclude the County Defendants *would rather be defaulted than litigate this case (which they perceive as "bullshit") in good faith*.

*Fifth and finally*, it is difficult to imagine minor sanctions deterring the Board, which has more than $800 million in cash on hand and a sizable budget surplus.[8] The monetary sanctions courts normally use to enforce compliance would be meaningless considering the Board's vast resources.

Accordingly, Plaintiff requests that, at a minimum, the Court impose the following sanctions:

- Preclude the Board from disputing that the Officer Defendants disseminated the TracFone messages, including the intimate video;

- Deem it established that the Board authorized or ratified the Officer Defendants' conduct;

---

[8] Pages 10-11 of the County's 2025-26 budget show $829,475,246 in available funds, and an additional $5,641,044 projected surplus. *See* Lea County (N.M.), FY 25–26 Final Budget Book (PDF), available at <https://www.leacounty.net/DocumentCenter/View/5492/FY-26-Final-Budget-Book?bidId=>, claiming current fund balances of $829,475,246

- Appointment of a discovery monitor to conduct an independent search for discoverable documents in the Board's possession, custody, or control;

- Require the Board and Mynatt Springer, jointly and severally, to pay reasonable attorney's fees incurred in preparing this motion, as well as the discovery monitor's fees, the costs of Fernando Jimenez's depositions, as well as the depositions of Sean Roach and Sonia Estrada.

 **b. Rule 37(e).**

  The key inquiry under Rule 37(e) is whether the spoliating party acted with an "intent to deprive" its opponent of the lost ESI. Upon a showing of intent, the Court may "(A) presume that the lost information was unfavorable to the party; (B) instruct the jury that it may or must presume the information was unfavorable to the party; or (C) dismiss the action or enter a default judgment." Fed. R. Civ. P. 37(e)(2). If the Court does not find intent, it may only "order measures no greater than necessary to cure the prejudice[.]" Fed. R. Civ. P. 37(e)(1).

  "Although Rule 37(e) does not define intent, "courts have found that a party's conduct satisfies the intent requirement when the evidence shows or it is reasonable to infer a party purposefully destroyed evidence to avoid its litigation obligations." *Com. Resins Co., Inc. v. Carlson*, No. 19-CV-616-SEH-CDL, 2024 WL 3843598, at *11 (N.D. Okla. July 12, 2024) (cleaned up). "Intent may [also] be inferred if a party is on notice that the evidence was potentially relevant and fails to take measures to preserve relevant evidence, or otherwise seeks to keep incriminating facts out of evidence. *Franklin v. Stephenson*, No. 20-CV-0576 MIS-JFR, 2022 WL 6225303, at *9 (D.N.M. Feb. 16, 2022), *report and recommendation adopted*, No. 1:20-CV-576 MIS/JFR, 2022 WL 6103342 (D.N.M. Oct. 7, 2022) (quotation marks omitted).

  The Court should infer that the Board acted with an intent to deprive Plaintiff of the ESI. Bova testified that the Board has issued preservation letters in the past, so why has one never been issued here? Likewise, it was obvious to Roach that mid-2023 communications involving Plaintiff would likely be needed in litigation. That must have been apparent to Walker as well during his weekly text message deletion sessions. And remarkably, the Board told Jimenez he could take his

work phone with him when he retired, without taking any measures to copy the communications stored on the device. That authorization was given ***almost a year*** after this case was filed. It is well-established that "[b]ad faith spoliation of evidence can be proved through circumstantial evidence." *See Managed Care Sols., Inc. v. Essent Healthcare, Inc*., 736 F. Supp. 2d 1317, 1322 (S.D. Fla. 2010). And here, the circumstantial evidence is overwhelming.

Accordingly, Plaintiff recommends that the Court provide the following relief:

- Order the Board to issue an immediate litigation hold and disable Slack auto-deletion;

- Third-party imaging of all LCSO relevant devices and Board-managed iCloud/Google accounts, at the Board's expense;

- *If the Court finds that the Board acted with intent to deprive*: instruct the jury that it must presume that communications from each lost created after the Board learned of NMSP's investigation were unfavorable to the Board;

- *If the Court does not find intent to deprive*: (1) preclude the Board from offering reasons for Plaintiff's termination that are not documented in the preserved ESI; (2) permit Plaintiff to introduce evidence of the Board's failure to preserve ESI at trial; (3) instruct the jury that the ESI should have been preserved; and (4) reopen Estrada, Roach, Jimenez, and Walker's depositions at the Board's cost.

## E.  CONCLUSION

For the foregoing reasons the motion should be granted.

August 29, 2025                                         **WGLA, LLP**

By:*/s/ Benjamin Gubernick*
Benjamin Gubernick (SBN 145006)
ben@wglawllp.com
Curtis Waldo (SBN 163604)
curtis@wglawllp.com
Telephone (346) 394-8056
717 Texas St. Suite 1200
Houston, TX 77002

## CERTIFICATE OF SERVICE

I hereby certify that on August 29, 2025, I served this document on counsel of record in compliance with the Federal Rules of Civil Procedure.

 */s/ Benjamin Gubernick*
Benjamin Gubernick

## CERTIFICATE OF CONFERENCE

I hereby certify that I conferred with opposing counsel as described above.

 */s/ Benjamin Gubernick*
Benjamin Gubernick