## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**KARINA TELLO,**

**Plaintiff,**

**v.**                                             **2:24-cv-00390-KG-GJF**

**LEA COUNTY BOARD OF COUNTY**
**COMMISSIONERS, COREY HELTON,**
**MICHAEL WALKER, FERNANDO JIMENEZ,**
**SEAN ROACH, SONIA ESTRADA,**
**DIANE JURADO-GARCIA,**
**AILEEN VIZCARRA, ALYSSA PORRAS,**
**DOE DEFENDANTS 1-50,**

**Defendants.**

### DECLARATION OF BENJAMIN GUBERNICK IN SUPPORT OF PLAINTIFF'S MOTION FOR DISCOVERY SANCTIONS AGAINST THE LEA COUNTY BOARD OF COUNTY COMMISSIONERS

My name is Benjamin Gubernick. I am over the age of 18 and counsel for Plaintiff in the above-captioned matter. If called upon to testify I would competently do so as follows:

1.      I have attached as Exhibit A a true and correct copy of a press release the Lea County Sheriff's Office posted on its Facebook page on March 26, 2024.

2.      I have attached as Exhibit B a true and correct copy of Plaintiff's First Set of Requests for Production, Interrogatories, and Requests for Admission to All Defendants" (the Discovery Requests). The Discovery Requests were served on all Defendants on April 10, 2025.

3.      I have attached as Exhibit C a true and correct copy of responses to the Discovery Requests that Fernando Jimenez served on Plaintiff on June 16, 2025.

4.      I have attached as Exhibit D a true and correct copy of responses to the Discovery Requests that Sean Roach served on Plaintiff on June 16, 2025.

1

5.      I have attached as Exhibit E a true and correct copy of responses to the Discovery Requests that the Lea County Board of County Commissioners served on Plaintiff on June 27, 2025.

6.      I have attached as Exhibit F a true and correct copy of excerpts from the July 1, 2025, deposition of Fernando Jimenez.

7.      I have attached as Exhibit G a true and correct copy of an email I received from the Board's attorney, Benjamin Young, on July 7, 2025.

8.      I have attached as Exhibit H a true and correct copy of a letter I emailed to the Board's attorneys on July 7, 2025.

9.      I have attached as Exhibit I a true and correct copy of a letter I emailed to the Board's attorneys on July 7, 2025.

10.      I have attached as Exhibit J a true and correct copy of an email I received from the Board's attorney, Benjamin Young, on July 17, 2025.

11.      I have attached as Exhibit K a true and correct copy of responses to the Discovery Requests that the Lea County Board of County Commissioners served on Plaintiff on July 25, 2025.

12.      I have attached as Exhibit L a true and correct copy of excerpts from an extraction report generated by the New Mexico State Police from the Cellebrite extraction of Diana Jurado-Garcia's phone.

13.      I have attached as Exhibit M true and correct excerpts from the deposition of Sonia Estrada.

14.      I have attached as Exhibit N true and correct copies of Sean Roach's supplemental responses to the Discovery Requests, which were emailed to me at 8:40 AM on August 12, 2025, 50 minutes prior to the start time of Roach's deposition.

15.      I have attached as Exhibit O true and correct documents of Bates numbered documents included with Sean Roach's August 12, 2025 discovery responses.

16.     I have attached as Exhibit P true and correct excerpts from the deposition of Sean Roach.

17.     I have attached as Exhibit Q true and correct excerpts from the deposition of Michael Walker.

18.     I have attached as Exhibit R true and correct excerpts from the deposition of Chan Kim.

19.     I have attached as Exhibit S true and correct excerpts from a deposition of Craig Bova.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.


August 28, 2025                                By:*/s/ Benjamin Gubernick*
                                               Benjamin Gubernick

# EXHIBIT A

 **Lea County Sheriff's Office**
March 26, 2024 · 🌐



**LEA COUNTY SHERIFF'S OFFICE**
**SHERIFF COREY HELTON**
1417 South Commercial
Lovington, NM 88260
(575) 396-3611
**FOR IMMEDIATE RELEASE**



| CONTACT: Corey Helton, Sheriff | (575) 396-8200 | chelton@leacounty.net |

**March 26, 2024 –** In light of the recent publicity regarding the Lea County Sheriff's Office and Lea County, we strongly deny the allegations. We feel confident that we will prevail when all the facts are presented.

###

 194                                          164 comments   25 shares

# EXHIBIT B

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

**KARINA TELLO,**
**Plaintiff,**

**v.**                                                    **2:24-cv-00390-KG-GJF**

**LEA COUNTY BOARD OF COUNTY**
**COMMISSIONERS, COREY HELTON,**
**MICHAEL WALKER, FERNANDO JIMENEZ,**
**SEAN ROACH, SONIA ESTRADA,**
**DIANA JURADO-GARCIA,**
**AILEEN VIZCARRA, ALYSSA PORRAS,**
**DOE DEFENDANTS 1-50,**

**Defendants**

**PLAINTIFF'S FIRST SET OF REQUESTS FOR PRODUCTION,**
**INTERROGATORIES, AND REQUESTS FOR ADMISSION**
**TO ALL DEFENDANTS**

**To:  Defendants Lea County Board of County Commissioners, Corey Helton, Michael**
**Walker, and Fernando Jimenez, via counsel Benjamin Young and Sara Woods**
**(bjy@mynattspringer.com, sew@mynattspringer.com); Defendants Sonia Estrada,**
**Diana Jurado-Garcia, and Aileen Vizcarra, via counsel Cody Rogers**
**(crogers@serpeandrews.com); Defendant Alyssa Porras, via counsel Mike Newell**
**(mnewell@newelllawnm.com)**

Karina Tello ("Plaintiff") serves these First Set of Requests for Production, Interrogatories,

and Requests for Admission to All Defendants ("Discovery Requests"). Please provide responses

within thirty (30) days to undersigned counsel. Do not hesitate to contact us if you have questions

regarding the Discovery Requests. These Discovery Requests are continuing, so if additional

responsive documents or information becomes available after thirty (30) days, please supplement

accordingly.

Date:  April 10, 2025

**WALDO GUBERNICK**
**LAW ADVOCATES LLP**


By: _____
Benjamin Gubernick
WALDO GUBERNICK
LAW ADVOCATES LLP
Benjamin Gubernick (SBN 321883)
ben@wglawllp.com
Curtis Waldo (SBN 163604)
curtis@wglawllp.com
Telephone (346) 394-8056
717 Texas St. Suite 1200
Houston, TX 77002

## CERTIFICATE OF SERVICE

I hereby certify that on April 10, 2025, I served these Discovery Requests on counsel of record in compliance with the Federal Rules of Civil Procedure.

 _/s/ Curtis Waldo_ _____
Curtis Waldo

## INSTRUCTIONS

1.     In accordance with the Federal Rules of Civil Procedure, if you object to a request, the grounds for each objection must be stated with specificity.

2.     If, in responding to these requests, the responding party encounters any ambiguities when construing a request or definition, the response shall set forth the matter deemed ambiguous and the construction used in responding.

3.     Any objection to a document request must state whether any responsive materials are being withheld on the basis of that objection.

4.     If you are withholding the document for any reason other than an objection that it is beyond the scope of discovery, identify as to each document and please state the reason for withholding the document.

5.     If you are withholding any document under claim of privilege (including, but not limited to, the work product doctrine), please provide a privilege log with the information required under the Federal Rules.

6.     When a document contains both privileged and non-privileged material, the non-privileged material must be disclosed to the fullest extent possible without thereby disclosing the privileged material.  If a privilege is asserted with regard to part of the material contained in a document, the party claiming the privilege must clearly indicate the portions as to which the privilege is claimed.  When a document has been redacted or altered in any fashion, identify as to each document the reason for the redaction or alteration, the date of the redaction or alteration, and the person performing the redaction or alteration.  Any redaction must be clearly visible on the redacted document.

7.      It is intended that these Discovery Requests will not solicit any material protected either by the attorney/client privilege or by the work product doctrine which was created by, or developed by, counsel for the responding party after the date on which this litigation was commenced.  If any Discovery Request is susceptible of a construction which calls for the production of such material, that material need not be provided.

## DEFINITIONS

1.      "Plaintiff" means Karina Tello.

2.      "Defendants" means Lea County Board of County Commissioners, Corey Helton, Michael Walker, Fernando Jimenez, Sean Roach, Sonia Estrada, Diana Jurado-Garcia, Aileen Vizcarra, and Alyssa Porras, including their employees, employers, agents, and representatives.

3.      The "Board" means Defendant Lea County Board of County Commissioners, including its subsidiary entities, employees, and the LCSO.

4.      "Helton" means Defendant Corey Helton, including his employees, employers, agents, and representatives.

5.      "Walker" means Defendant Michael Walker, including his employer, agents and representatives.

6.      "Roach" means Defendant Sean Roach, including his employer, agents, and representatives.

7.      "Jiminez" means Defendant Fernando Jimenez, including his employer, agents, and representatives.

8.      "Estrada" means Defendant Sonia Estrada, including her employer, agents, and representatives.

9.      "Garcia" means Defendant Diana Jurado-Garcia, including her employer, agents, and representatives.

10.      "Vizcarra" means Defendant Aileen Vizcarra, including her employer, agents, and representatives.

11.      "Porras" means Defendant Alyssa Porras, including her employer, agents, and representatives.

12.     "LCSO" means the Lea County Sheriff's Office, including its employees, agents, and representatives.

13.     "NMSP" means the New Mexico State Police.

14.     "Intimate Video" means the approximately 51-second video clip that Plaintiff took of herself, as described in the Lawsuit.

15.     "Complaint" means the Third Amended Complaint filed by Plaintiff in the Lawsuit on or around April 1, 2025.

16.     "Lawsuit" means *Karina Tello v. Lea County Board of County Commissioners, et al.,* 2:24-cv-00390-KG-GJF (D.N.M.).

17.     "Documents" means any written, printed, recorded, or graphic matter, however produced or reproduced, of any kind or description, whether sent or received, maintained in hard copy, electronic format, or otherwise. This includes but is not limited to letters, emails, reports, videos, text messages, instant messages, chat logs, contracts, meeting minutes, written statements, photographs, recordings, and social media postings.

18.     "Communication" means any transmission, conveyance, or exchange of information, thoughts, messages, or data, regardless of the medium used, and whether sent or received. This includes but is not limited to written documents such as letters or notes, electronic communication such as emails, voice messages, or text messages, and social media messages or postings.

19.     "Relating to" means regarding or pertaining to in any way.

20.     "Reflecting" means showing or evidencing.

## Requests for Production

To the Board:

1. Personnel file and disciplinary history of each Defendant.
2. Policies and procedures relating to bullying, revenge pornography, and harassment.
3. Policies and procedures relating to when an LCSO employee's reputation has been "sullied"; what it means to have a "sullied" reputation; and when an LCSO employee's reputation being "sullied" may lead to termination.
4. All communications, including emails, text messages, and instant messages regarding Plaintiff, from February 1, 2023, to the present.
5. All documents concerning any internal investigations conducted by LCSO into the dissemination of Plaintiff's intimate video.
6. All documents and communications relating to Plaintiff's termination from employment at LCSO.
7. Communication relating to the dissemination of the Intimate Video.
8. Communication relating to the criminal prosecutions of Estrada, Garcia, and Vizcarra.
9. Communication between you and the NMSP relating to Plaintiff and/or the Intimate Video.
10. Each social media post made by the LCSO relating to the Intimate Video or the criminal prosecutions of Estrada, Garcia, and Vizcarra, including related communication.
11. Each phone recording you possess relating to Plaintiff or the Intimate Video.
12. Documents relating to the investigation of Plaintiff's complaints against Estrada.
13. Documents relating to the investigation of Plaintiff's complaints about dissemination of the Intimate Video.
14. Documents relating to the investigation of complaints against Plaintiff, if any.
15. Plaintiff's personnel file and disciplinary history.

To Helton:

1. Communications between you and any other Defendant relating to Plaintiff.
2. Communications between you and Daniel Soto or Victor Murillo relating to Plaintiff.
3. The Intimate Video.
4. Each phone recording you possess relating to Plaintiff or the Intimate Video.
5. Text messages between your phone and the number (575) 266-3539.
6. Communication between you and the NMSP relating to Plaintiff or the Intimate Video.
7. Communications related to any investigations of Plaintiff or the Intimate Video.
8. Communications related to the termination of Plaintiff from LCSO.

To Walker:

1. Communications between you and any other Defendant relating to Plaintiff.
2. Communications between you and Daniel Soto and/or Victor Murillo relating to Plaintiff.
3. The Intimate Video.
4. Each phone recording you possess relating to Plaintiff and/or the Intimate Video.
5. Text messages between your phone and the number (575) 266-3539.

6. Communication between you and the NMSP relating to Plaintiff and/or the Intimate Video.
7. Communications related to any investigations of Plaintiff or the Intimate Video.
8. Communications related to the termination of Plaintiff from LCSO.

To Jimenez:

1. Communications between you and any other Defendant relating to Plaintiff.
2. Communications between you and Daniel Soto and/or Victor Murillo relating to Plaintiff.
3. The Intimate Video.
4. Each phone recording you possess relating to Plaintiff and/or the Intimate Video.
5. Text messages between your phone and the number (575) 266-3539.
6. Communication between you and the NMSP relating to Plaintiff and/or the Intimate Video.
7. Communications related to any investigations of Plaintiff or the Intimate Video.
8. Communications related to the termination of Plaintiff from LCSO.

To Roach:

1. Communications between you and any other Defendant relating to Plaintiff.
2. Communications between you and Daniel Soto and/or Victor Murillo relating to Plaintiff.
3. The Intimate Video.
4. Each phone recording you possess relating to Plaintiff and/or the Intimate Video.
5. Text messages between your phone and the number (575) 266-3539.
6. Communication between you and the NMSP relating to Plaintiff and/or the Intimate Video.
7. Communications related to any investigations of Plaintiff or the Intimate Video.
8. Communications related to the termination of Plaintiff from LCSO.

To Estrada:

1. Communications between you and any other Defendant relating to Plaintiff.
2. Communications between you and Daniel Soto and/or Victor Murillo relating to Plaintiff.
3. The intimate video of Plaintiff that is the subject of the Lawsuit.
4. Communication with Victor Murillo's wife relating to Plaintiff.
5. Communication with Andy Dominguez relating to Plaintiff.
6. Documents relating to a TracFone and minutes for that TracFone purchased to send messages relating to Plaintiff.  This request includes bank records or credit card statements that reflect the purchase of the TracFone and minutes.
7. Your bank statements reflecting transactions from June 1, 2023 to June 14, 2023.
8. Each video and photo of Plaintiff in your possession.
9. Each phone recording you possess relating to Plaintiff and/or the Intimate Video.
10. Text messages between your phone and the number (575) 266-3539.
11. Communication between you and the NMSP relating to Plaintiff and/or the Intimate Video.

To Garcia:

1. Communications between you and any other Defendant relating to Plaintiff.
2. Communications between you and Daniel Soto and/or Victor Murillo relating to Plaintiff.
3. The Intimate Video.
4. Communication with Victor Murillo's wife relating to Plaintiff.
5. Communication with Andy Dominguez relating to Plaintiff.
6. Documents relating to a TracFone and minutes for that TracFone purchased to send messages relating to Plaintiff. This request includes bank records or credit card statements that reflect the purchase of the TracFone and minutes.
7. Each video and/or photo of Plaintiff in your possession.
8. Each phone recording you possess relating to Plaintiff and/or the Intimate Video.
9. Text messages between your phone and the number (575) 266-3539.
10. Communication between you and the NMSP relating to Plaintiff and/or the Intimate Video.

To Vizcarra:

1. Communications between you and any other Defendant relating to Plaintiff.
2. Communications between you and Daniel Soto and/or Victor Murillo relating to Plaintiff.
3. The Intimate Video.
4. Communication with Victor Murillo's wife relating to Plaintiff.
5. Communication with Andy Dominguez relating to Plaintiff.
6. Documents relating to a TracFone and minutes for that TracFone purchased to send messages relating to Plaintiff. This request includes bank records or credit card statements that reflect the purchase of the TracFone and minutes.
7. Each video and photo of Plaintiff in your possession.
8. Each phone recording you possess relating to Plaintiff and/or the Intimate Video.
9. Text messages between your phone and the number (575) 266-3539.
10. Communication between you and the NMSP relating to Plaintiff and/or the Intimate Video.

To Porras:

1. Communications between you and any other Defendant relating to Plaintiff.
2. Communications between you and Daniel Soto and/or Victor Murillo relating to Plaintiff.
3. The Intimate Video.
4. Communication with Victor Murillo's wife relating to Plaintiff.
5. Communication with Andy Dominguez relating to Plaintiff.
6. Documents relating to a TracFone and minutes for that TracFone purchased to send messages relating to Plaintiff. This request includes bank records or credit card statements that reflect the purchase of the TracFone and minutes.
7. Each video and photo of Plaintiff in your possession.
8. Each phone recording you possess relating to Plaintiff and/or the Intimate Video.
9. Text messages between your phone and the number (575) 266-3539.

9

10. Communication between you and the NMSP relating to Plaintiff and/or the Intimate Video.

## **Interrogatories**

To the Board:

1. Describe all reasons why Victor Murillo was not found to have violated ADM 1-01-2 and not disciplined in Administrative Investigation 23AI-007.
2. Do you contend the conduct of Estrada, Vizcarra, and Garcia toward Plaintiff did not warrant termination or other disciplinary action? Does the Board contend Estrada, Vizcarra, and Garcia acted in compliance with LCSO policies and procedures? If yes to either contention, describe the factual basis.
3. Do you contend that Plaintiff violated ADM 1-01-2 by creating or transmitting the Intimate Video? If yes, describe the basis for your contention. If no, why was Plaintiff's appearance in the video listed as grounds for her termination? Explain.
4. Describe the steps the LCSO took to investigate Plaintiff's complaints regarding harassment, bullying, and dissemination of the Intimate Video.
5. Regarding Plaintiff's complaint to the LCSO about dissemination of the Intimate Video, did LCSO cease its internal affairs investigation because it did not believe a crime had been committed? Or did LCSO cease its internal affairs investigation because Plaintiff brought her complaint to NMSP? Explain.
6. Does the LCSO contend the dissemination of the Intimate Video that is subject of the Lawsuit was not a crime? If yes, explain the legal and factual basis for this contention.
7. Explain why Daniel Soto was terminated.
8. Do you contend that Plaintiff engaged in wrongful or improper conduct by making a report to NMSP? If yes, explain the basis for your contention.
9. Identify all persons involved in the decision to terminate Plaintiff's employment, including each person's role and the basis for their recommendation or decision.
10. Identify all complaints of sexual harassment, gender discrimination, or retaliation received by LCSO from January 1, 2020, to present, including outcomes of each complaint.
11. Explain why disciplinary action was taken or not taken against Defendants Estrada, Garcia, or Vizcarra for the events alleged in Plaintiff's complaint.
12. Describe any training provided by LCSO to employees regarding workplace harassment, gender discrimination, retaliation, or First Amendment rights, including dates, trainers, and materials used.
13. Do you contend that LCSO has applied and does apply ADM 1-02-2 equally to male and female deputies? If yes, explain why Plaintiff was found to have violated the policy but Victor Murillo was exonerated of a violation in Administrative Investigation 23AI-007.

To Helton:

1. Describe how you first became aware of the Intimate Video. Specifically, when did you become aware of the existence of the Intimate Video? Who told you about it? Did someone send it to you, and if so, who and when? Did someone show it to you? If so, who and when?

2. Have you ever sent the Intimate Video to others?  If yes, identify each person to whom you sent the Intimate Video, when, and how it was sent.  For each person, describe why you sent the Intimate Video to that person.

3. Explain why disciplinary action was taken or not taken against Defendants Estrada, Garcia, or Vizcarra for the events alleged in Plaintiff's complaint.

4. Do you contend that LCSO has applied and does apply ADM 1-02-2 equally to male and female deputies?  If yes, explain why Plaintiff was found to have violated the policy but Victor Murillo was exonerated of a violation in Administrative Investigation 23AI-007.

5. Do you contend that Plaintiff engaged in wrongful or improper conduct by making a report to NMSP? If yes, explain the basis for your contention.

6. Regarding Plaintiff's complaint to the LCSO about dissemination of the Intimate Video, did LCSO cease its internal affairs investigation because it did not believe a crime had been committed?  Or did LCSO cease its internal affairs investigation because Plaintiff brought her complaint to NMSP?  Explain.

7. Do you contend that Plaintiff violated ADM 1-01-2 by creating or transmitting the Intimate Video?  If yes, describe the basis for your contention.  If no, why was Plaintiff's appearance in the video listed as grounds for her termination?  Explain.

To Walker:

1. Describe how you first became aware of the Intimate Video.  Specifically, when did you become aware of the existence of the Intimate Video?  Who told you about it?  Did someone send it to you, and if so, who and when?  Did someone show it to you?  If so, who and when?

2. Have you ever sent the Intimate Video to others?  If yes, identify each person to whom you sent the Intimate Video, when, and how it was sent.  For each person, describe why you sent the Intimate Video to that person.

3. Regarding Plaintiff's complaint to the LCSO about dissemination of the Intimate Video, did LCSO cease its internal affairs investigation because it did not believe a crime had been committed?  Or did LCSO cease its internal affairs investigation because Plaintiff brought her complaint to NMSP?  Explain.

4. Do you contend that LCSO has applied and does apply ADM 1-02-2 equally to male and female deputies. If yes, explain why Plaintiff was found to have violated the policy but Victor Murillo was exonerated of a violation in Administrative Investigation 23AI-007.

5. Do you contend that Plaintiff violated ADM 1-01-2 by creating or transmitting the Intimate Video? If yes, describe the basis for your contention.  If no, why was Plaintiff's appearance in the video listed as grounds for her termination? Explain.

6. Do you contend that Plaintiff engaged in wrongful or improper conduct by making a report to NMSP? If yes, explain the basis for your contention.

To Jimenez:

1. Describe how you first became aware of the Intimate Video.  Specifically, when did you become aware of the existence of the Intimate Video?  Who told you about it?  Did someone send it to you, and if so, who and when?  Did someone show it to you?  If so, who and when?

2. Have you ever sent the Intimate Video to others? If yes, identify each person to whom you sent the Intimate Video, when, and how it was sent. For each person, describe why you sent the Intimate Video to that person.

3. Regarding Plaintiff's complaint to the LCSO about dissemination of the Intimate Video, did LCSO cease its internal affairs investigation because it did not believe a crime had been committed? Or did LCSO cease its internal affairs investigation because Plaintiff brought her complaint to NMSP? Explain.

To Roach:

1. Describe how you first became aware of the Intimate Video. Specifically, when did you become aware of the existence of the Intimate Video? Who told you about it? Did someone send it to you, and if so, who and when? Did someone show it to you? If so, who and when?

2. Have you ever sent the Intimate Video to others? If yes, identify each person to whom you sent the Intimate Video, when, and how it was sent. For each person, describe why you sent the Intimate Video to that person.

3. Regarding Plaintiff's complaint to the LCSO about dissemination of the Intimate Video, did you tell the NMSP that no crime had been committed? If yes, explain the factual and legal basis.

4. Regarding Plaintiff's complaint to the LCSO about dissemination of the Intimate Video, did LCSO cease its internal affairs investigation because it did not believe a crime had been committed? Or did LCSO cease its internal affairs investigation because Plaintiff brought her complaint to NMSP? Explain.

5. Explain the basis for the finding in complaint 23AI-004 that a violation of ADM 1-02-2(E) had occurred.

To Estrada:

1. Describe how you first became aware of the Intimate Video. Specifically, when did you become aware of the existence of the Intimate Video? Who told you about it? Did someone send it to you, and if so, who?

2. Have you ever sent the Intimate Video to others? If yes, identify each person to whom you sent the Intimate Video, when, and how it was sent. For each person, describe why you sent the Intimate Video to that person. If you deny you sent the Intimate Video to others, whom do you contend sent the Intimate Video to Victor Murillo's wife, to Andy Dominguez, and to Jimenez?

3. Have you ever used a "TracFone" phone with the number (575) 266-3539? If yes, describe when you acquired this phone, why you acquired the phone, what you used the phone for, when you ceased to use the phone, how many minutes you purchased for the phone. If no, whom do you contend had a "TracFone" phone with this number?

4. Do you currently possess the "TracFone" phone with the number (575) 266-3539? If not, do you know who possesses it or its current location? If you at one point did possess it, state when you lost possession of it and the circumstances behind your loss of possession (e.g., did you hand it to someone, toss it in the garbage?).

13

5. Defendants the Board, Helton, Walker, Jimenez, and Roach produced text messages with their Initial Disclosures on or around April 1, 2025, purporting to be recovered by the NMSP from Garcia's phone. Do you contend you did not send any of the messages that identified as having come from your phone? Do you contend the messages were falsified in some way? If yes to either, explain the basis for this contention.

6. Have you deleted any text messages, WhatsApp messages, or any other electronic communications related to the Intimate Video or Karina Tello? If yes, identify with specificity the messages deleted, when you deleted them, and your reason for deleting them.

7. Your contentions in the Joint Status Report reference "illegal actions of the [NMSP]" and "serious doubts about the credibility of plaintiff's story to police and her employer." What "illegal actions" are being referred to? What "serious doubts" are being referred to?

8. Your contentions in the Joint Status Report reference your "non-involvement in this and other schemes orchestrated by plaintiff for financial and other gain." Do you contend you had no involvement in the dissemination of the Intimate Video? If yes, describe the factual basis. Further, what "scheme orchestrated by plaintiff" is being referred to here? What is your factual basis for this contention?

9. Of Helton, Walker, Jimenez, and Roach, to your knowledge, when did each of these persons know about the existence of the Intimate Video? Describe the role of each of these four Defendants, if any, in dissemination of the Intimate Video.

10. Describe the communication, including text messages, between you and the number (575) 266-3539.

11. Explain the basis for your contention in the Joint Status Report that Plaintiff sent the Intimate Video to Victor Murillo.

12. Do you contend that disseminating the Intimate Video was appropriate? If yes, state the basis for your contention.

13. Do you contend that Plaintiff deserved to be terminated? If so, explain the basis for your contention.

To Garcia:

1. Describe how you first became aware of the Intimate Video. Specifically, when did you become aware of the existence of the Intimate Video? Who told you about it? Did someone send it to you, and if so, who?

2. Have you ever sent the Intimate Video to others? If yes, identify each person to whom you sent the Intimate Video, when, and how it was sent. For each person, describe why you sent the Intimate Video to that person. If you deny you sent the Intimate Video to others, whom do you contend sent the Intimate Video to Victor Murillo's wife, to Andy Dominguez, and to Jimenez?

3. Do you currently possess the "TracFone" phone with the number (575) 266-3539? If not, do you know who possesses it or its current location? If you at one point did possess it, state when you lost possession of it and the circumstances behind your loss of possession (e.g., did you hand it to someone, toss it in the garbage?).

4. Defendants the Board, Helton, Walker, Jimenez, and Roach produced text messages with their Initial Disclosures on or around April 1, 2025, purporting to be recovered by the

14

NMSP from Garcia's phone.  Do you contend you did not send any of the messages that identified as having come from your phone? Do you contend the messages were falsified in some way?  If yes to either, explain the basis for this contention.

5. Have you deleted any text messages, WhatsApp messages, or any other electronic communications related to the Intimate Video or Karina Tello? If yes, identify with specificity the messages deleted, when the messages were deleted, and your reason for deleting them.

6. Describe all communication you have destroyed or otherwise deleted relating to Plaintiff and/or the Intimate Video since June 7, 2023.

7. Your contentions in the Joint Status Report reference "illegal actions of the [NMSP]" and "serious doubts about the credibility of plaintiff's story to police and her employer." What "illegal actions" are being referred to?  What "serious doubts" are being referred to?

8. Your contentions in the Joint Status Report reference your "non-involvement in this and other schemes orchestrated by plaintiff for financial and other gain."  Do you contend you had no involvement in the dissemination of the Intimate Video?  If yes, describe the factual basis.  Further, what "scheme orchestrated by plaintiff" is being referred to here?  What is your factual basis for this contention?

9. Of Helton, Walker, Jiminez, and Roach, to your knowledge, when did each of these persons know about the existence of the Intimate Video?  Describe the role of each of these four Defendants, if any, in dissemination of the Intimate Video.

10. Describe the communication, including text messages, between you and the number (575) 266-3539.

11. Describe your communication with Jimenez relating to the Intimate Video.  Specifically, describe the factual basis for your text message to Vizcarra on or around June 1, 2023, stating, "I've been thinking about it. Fernando said I should."

12. Explain the basis for your contention in the Joint Status Report that Plaintiff sent the Intimate Video to Victor Murillo.

13. Do you contend that disseminating the Intimate Video was appropriate? If yes, state the basis for your contention.

14. Do you contend that Plaintiff deserved to be terminated? If so, explain the basis for your contention.

To Vizcarra:

1. Describe how you first became aware of the Intimate Video.  Specifically, when did you become aware of the existence of the Intimate Video?  Who told you about it?  Did someone send it to you, and if so, who?

2. Have you ever sent the Intimate Video to others?  If yes, identify each person to whom you sent the Intimate Video, when, and how it was sent.  For each person, describe why you sent the Intimate Video to that person.  If you deny you sent the Intimate Video to others, whom do you contend sent the Intimate Video to Victor Murillo's wife, to Andy Dominguez, and to Jimenez?

3. Do you currently possess the "TracFone" phone with the number (575) 266-3539? If not, do you know who possesses it or its current location? If you at one point did possess it,

state when you lost possession of it and the circumstances behind your loss of possession (e.g., did you hand it to someone, toss it in the garbage?).

4. Defendants the Board, Helton, Walker, Jimenez, and Roach produced text messages with their Initial Disclosures on or around April 1, 2025, purporting to be recovered by the NMSP from Garcia's phone.  Do you contend you did not send any of the messages that identified as having come from your phone? Do you contend the messages were falsified in some way?  If yes to either, explain the basis for this contention.

5. Have you deleted any text messages, WhatsApp messages, or any other electronic communications related to the Intimate Video or Karina Tello? If yes, identify with specificity the messages deleted, when the messages were deleted, and your reason for deleting them.

6. Your contentions in the Joint Status Report reference "illegal actions of the [NMSP]" and "serious doubts about the credibility of plaintiff's story to police and her employer." What "illegal actions" are being referred to?  What "serious doubts" are being referred to?

7. Your contentions in the Joint Status Report reference your "non-involvement in this and other schemes orchestrated by plaintiff for financial and other gain."  Do you contend you had no involvement in the dissemination of the Intimate Video?  If yes, describe the factual basis.  Further, what "scheme orchestrated by plaintiff" is being referred to here? What is your factual basis for this contention?

8. Of Helton, Walker, Jiminez, and Roach, to your knowledge, when did each of these persons know about the existence of the Intimate Video?  Describe the role of each of these four Defendants, if any, in dissemination of the Intimate Video.

9. Describe the communication, including text messages, between you and the number (575) 266-3539.

10. Explain the basis for your contention in the Joint Status Report that Plaintiff sent the Intimate Video to Victor Murillo.

11. Do you contend that disseminating the Intimate Video was appropriate? If yes, state the basis for your contention.

12. Do you contend that Plaintiff deserved to be terminated? If so, explain the basis for your contention.

To Porras:

1. Describe how you first became aware of the Intimate Video.  Specifically, when did you become aware of the existence of the Intimate Video?  Who told you about it?  Did someone send it to you, and if so, who?

2. Have you ever sent the Intimate Video to others?  If yes, identify each person to whom you sent the Intimate Video, when, and how it was sent.  For each person, describe why you sent the Intimate Video to that person.  If you deny you sent the Intimate Video to others, whom do you contend sent the Intimate Video to Victor Murillo's wife, to Andy Dominguez, and to Jimenez?

3. Do you currently possess the "TracFone" phone with the number (575) 266-3539? If not, do you know who possesses it or its current location? If you at one point did possess it, state when you lost possession of it and the circumstances behind your loss of possession (e.g., did you hand it to someone, toss it in the garbage?).

4. Defendants the Board, Helton, Walker, Jimenez, and Roach produced text messages with their Initial Disclosures on or around April 1, 2025, purporting to be recovered by the NMSP from Garcia's phone. Do you contend you did not send any of the messages that identified as having come from your phone? Do you contend the messages were falsified in some way? If yes to either, explain the basis for this contention.

5. Have you deleted any text messages, WhatsApp messages, or any other electronic communications related to the Intimate Video or Karina Tello? If yes, identify with specificity the messages deleted, when the messages were deleted, and your reason for deleting them.

6. Of Helton, Walker, Jimenez, and Roach, to your knowledge, when did each of these persons know about the existence of the Intimate Video? Describe the role of each of these four Defendants, if any, in dissemination of the Intimate Video.

7. In the Joint Status Report, you contend you "never shared the [Intimate Video] or provided the [Intimate Video] to anyone else." Describe the factual basis for this contention. Specifically, do you contend you did not provide the Intimate Video to Garcia? Do you contend you did not provide the Intimate Video to Estrada? Do you contend Daniel Soto or Victor Murillo gave the Intimate Video directly to Garcia and/or Estrada without your involvement?

8. Describe the communication, including text messages, between you and the number (575) 266-3539.

9. Do you contend that disseminating the Intimate Video was appropriate? If yes, state the basis for your contention.

10. Do you contend that Plaintiff deserved to be terminated? If so, explain the basis for your contention.

17

**<u>Requests for Admission</u>**

To Helton:

1. Admit that it is your voice on the phone recording where you say "this is my county"; "make sure they all do as they are told, like the other times"; "everything will be okay"; "the girls will be okay"; and "if things don't go as planned, everything points to Craig; after what he did with SP and the others, no one will believe him over the sheriff".
2. Admit that, in reference to the criminal prosecutions of Estrada, Garcia, and Vizcarra, you told others at the LCSO that "our girls are going to be okay."
3. Admit that you had ultimate authority to determine whether Plaintiff violated ADM 1-02-2.

To Walker:
1. Admit that you were aware of the Intimate Video's existence prior to June 13, 2023.
2. Admit that you discussed the Intimate Video with Garcia prior to June 13, 2023.

To Jimenez:

1. Admit you received the Intimate Video from Estrada.
2. Admit you received the Intimate Video via text message from a number, (575) 266-3539.

To Estrada:

1. Admit you received the Intimate Video from Garcia.
2. Admit you sent the Intimate Video to Victor Murillo's wife.
3. Admit you sent the Intimate Video to Andy Dominguez.
4. Admit you sent the Intimate Video to Jimenez.
5. Admit you sent the Intimate Video to Jimenez, along with a message, "These are the whores you hire."
6. Admit that on or around June 13, 2023, you sent a message to Andy Dominguez stating: "FYI, Karina and Victor were in Albuquerque together. You don't believe me, asked Victor where he parked his unit."

To Garcia:

1. Admit the text messages produced by Defendants the Board, Helton, Walker, Jimenez, and Roach on or around April 1, 2025 (described as "Att-30 Extraction Report from Diana Jurado-Garcia"), are from your cell phone.
2. Admit Porras gave you the Intimate Video.
3. Admit you gave the Intimate Video to Estrada.
4. Admit you sent the Intimate Video to a phone with the number (575) 266-3539.

To Porras:

1. Admit you acquired the Intimate Video from Daniel Soto.

2. Admit you gave the Intimate Video to Garcia.

# EXHIBIT C

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**KARINA TELLO,**

> **Plaintiff,**

**v.**                                                         **No. 2:24-cv-00390-KG-GJF**

**LEA COUNTY BOARD OF COUNTY**
**COMMISSIONERS, COREY HELTON,**
**MICHAEL WALKER, FERNANDO JIMENEZ,**
**SEAN ROACH, SONIA ESTRADA,**
**DIANE JURADO-GARCIA,**
**AILEEN VIZCARRA, ALYSSA PORRAS,**
**DOE DEFENDANTS 1-50,**

> **Defendants.**

## DEFENDANT FERNANDO JIMENEZ'S ANSWERS AND RESPONSES TO FIRST INTERROGATORIES, REQUESTS FOR PRODUCTION, AND REQUESTS FOR ADMISSION

Defendant Fernando Jimenez, by and through counsel of record, MYNATT SPRINGER

P.C. (Benjamin J. Young and Sara E. Woods), hereby submits *Answers and Responses Plaintiff's*

*First Interrogatories, Requests for Production, and Requests for Admission.*

## GENERAL OBJECTIONS

1.  Defendant objects to all of plaintiff's requests to the extent they seek production of

information (a) protected by the attorney-client privilege, (b) protected by the attorney work

product doctrine, or (c) prepared in anticipation of litigation by or for this defendant, or by or for

this representative of this defendant.

2.  Defendant objects to any of plaintiff's definitions and/or instructions to the extent that they

facially exceed the requirements of or are contrary to the Federal Rules of Civil Procedure.

3.  Defendant objects to all requests to the extent they seek information that is not relevant to

any claim or defense in this lawsuit, and thus exceeds the scope of discovery permissible under Rule 26(b)(1) of the Federal Rules of Civil Procedure.

4.   Defendant objects to these requests to the extent that they seek information as to which the burden of ascertaining or obtaining such information is substantially the same for plaintiff as it is for defendant.

5.   Defendant objects to these interrogatories and requests to the extent they seek information which is in the possession of plaintiff.

6.   Defendant continues to identify, collect, and review information that may be responsive to these interrogatories and requests, and if additional responsive information is discovered, then Defendant will timely supplement her responses and objections, if necessary, and in accordance with Rule 26 of the Federal Rules of Civil Procedure and any pretrial scheduling order.

## <u>RESPONSES TO REQUESTS FOR PRODUCTION</u>

**REQUEST FOR PRODUCTION NO. 1:** Communications between you and any other Defendant relating to Plaintiff.

**RESPONSE: Defendant Jimenez has no records responsive to this request.**

**REQUEST FOR PRODUCTION NO. 2:** Communications between you and Daniel Soto and/or Victor Murillo relating to Plaintiff.

**RESPONSE: Defendant Jimenez has no records responsive to this request**

**REQUEST FOR PRODUCTION NO. 3:** The Intimate Video.

**RESPONSE: Defendant Jimenez has no records responsive to this request**

**REQUEST FOR PRODUCTION NO. 4:** Each phone recording you possess relating to Plaintiff and/or the Intimate Video.

**RESPONSE: Defendant Jimenez has no records responsive to this request**

**REQUEST FOR PRODUCTION NO. 5:** Text messages between your phone and the number (575) 266-3539.

**RESPONSE: Defendant Jimenez has no records responsive to this request**

**REQUEST FOR PRODUCTION NO. 6:** Communication between you and the NMSP relating to Plaintiff and/or the Intimate Video.

**RESPONSE: Defendant Jimenez has no records responsive to this request**

**REQUEST FOR PRODUCTION NO. 7:** Communications related to any investigations of Plaintiff or the Intimate Video.

**RESPONSE: Defendant Jimenez has no records responsive to this request**

**REQUEST FOR PRODUCTION NO. 8:** Communications related to the termination of Plaintiff from LCSO.

**RESPONSE: Defendant Jimenez has no records responsive to this request.**

## ANSWERS TO INTERROGATORIES

**INTERROGATORY NO. 1:** Describe how you first became aware of the Intimate Video. Specifically, when did you become aware of the existence of the Intimate Video? Who told you about it? Did someone send it to you, and if so, who and when? Did someone show it to you? If so, who and when?

**ANSWER: I heard there was an inappropriate video of an employee circulating but had no personal knowledge of it. Subsequently, Chief Martinez advised me that a nude video of Plaintiff was circulating. Shortly afterwards, I received a text with the video from an unknown number. I do not know who sent it to me. At the request of my supervisor, I submitted it to Captain Roach.**

**INTERROGATORY NO. 2:** Have you ever sent the Intimate Video to others? If yes, identify each person to whom you sent the Intimate Video, when, and how it was sent. For each person, describe why you sent the Intimate Video to that person.

**ANSWER: I recall receiving the video from an unknown number. I told my supervisor who told me to provide the video to Sean Roach who was conducting an investigation of personnel matters involving the Plaintiff.**

**INTERROGATORY NO. 3:** Regarding Plaintiff's complaint to the LCSO about dissemination of the Intimate Video, did LCSO cease its internal affairs investigation because it did not believe a crime had been committed? Or did LCSO cease its internal affairs investigation because Plaintiff brought her complaint to NMSP? Explain.

**ANSWER: I do not know what transpired with any investigation of the dissemination of the video. I was not involved in the investigation.**

<u>**RESPONSES TO REQUESTS FOR ADMISSION**</u>

**REQUEST FOR ADMISSION NO. 1:** Admit you received the Intimate Video from Estrada.

**RESPONSE: I do not know who sent the video to me.**

**REQUEST FOR ADMISSION NO. 2:** Admit you received the Intimate Video via text message from a number, (575) 266-3539.

**RESPONSE: I do not know which number I received it from.**

Respectfully submitted,

MYNATT SPRINGER P.C.

BENJAMIN J. YOUNG
New Mexico Bar No. 144702
SARA E. WOODS
New Mexico Bar No. 149555
P.O. Box 2699
Las Cruces, New Mexico 88004-2699
(575) 524-8812
bjy@mynattspringer.com
sew@mynattspringer.com
*Attorneys for County Defendants*

# EXHIBIT D

<div align="center">

**N THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

</div>

**KARINA TELLO,**

       **Plaintiff,**

**v.**                                                                                   **No. 2:24-cv-00390-KG-GJF**

**LEA COUNTY BOARD OF COUNTY**
**COMMISSIONERS, COREY HELTON,**
**MICHAEL WALKER, FERNANDO JIMENEZ,**
**SEAN ROACH, SONIA ESTRADA,**
**DIANE JURADO-GARCIA,**
**AILEEN VIZCARRA, ALYSSA PORRAS,**
**DOE DEFENDANTS 1-50,**

    **Defendants.**

<div align="center">

**DEFENDANT SEAN ROACH'S ANSWERS AND RESPONSES TO FIRST**
**INTERROGATORIES AND REQUESTS FOR PRODUCTION,**

</div>

Defendant Sean Roach, by and through counsel of record, MYNATT SPRINGER P.C. (Benjamin J. Young and Sara E. Woods), hereby submits *Answers and Responses Plaintiff's First Interrogatories and Requests for Production.*

<div align="center">

**GENERAL OBJECTIONS**

</div>

1.  Defendant objects to all of plaintiff's requests to the extent they seek production of information (a) protected by the attorney-client privilege, (b) protected by the attorney work product doctrine, or (c) prepared in anticipation of litigation by or for this defendant, or by or for this representative of this defendant.

2.  Defendant objects to any of plaintiff's definitions and/or instructions to the extent that they facially exceed the requirements of or are contrary to the Federal Rules of Civil Procedure.

3.  Defendant objects to all requests to the extent they seek information that is not relevant to any claim or defense in this lawsuit, and thus exceeds the scope of discovery permissible under

Rule 26(b)(1) of the Federal Rules of Civil Procedure.

4.    Defendant objects to these requests to the extent that they seek information as to which the burden of ascertaining or obtaining such information is substantially the same for plaintiff as it is for defendant.

5.    Defendant objects to these interrogatories and requests to the extent they seek information which is in the possession of plaintiff.

6.    Defendant continues to identify, collect, and review information that may be responsive to these interrogatories and requests, and if additional responsive information is discovered, then Defendant will timely supplement her responses and objections, if necessary, and in accordance with Rule 26 of the Federal Rules of Civil Procedure and any pretrial scheduling order.

## <u>RESPONSES TO REQUESTS FOR PRODUCTION</u>

**REQUEST FOR PRODUCTION NO. 1:** Communications between you and any other Defendant relating to Plaintiff.

**RESPONSE: Defendant Sean Roach has no records responsive to this request.**


**REQUEST FOR PRODUCTION NO. 2:** Communications between you and Daniel Soto and/or Victor Murillo relating to Plaintiff.

**RESPONSE: Defendant Sean Roach has no records responsive to this request.**


**REQUEST FOR PRODUCTION NO. 3:** The Intimate Video.

**RESPONSE: Defendant Sean Roach has no records responsive to this request.**


**REQUEST FOR PRODUCTION NO. 4:** Each phone recording you possess relating to Plaintiff and/or the Intimate Video.

**RESPONSE: Defendant Sean Roach has no records responsive to this request.**

**REQUEST FOR PRODUCTION NO. 5:** Text messages between your phone and the number (575) 266-3539.

**RESPONSE: Defendant Sean Roach has no records responsive to this request.**

**REQUEST FOR PRODUCTION NO. 6:** Communication between you and the NMSP relating to Plaintiff and/or the Intimate Video.

**RESPONSE: Captain Sean Roach has no records responsive to this request.**

**REQUEST FOR PRODUCTION NO. 7:** Communications related to any investigations of Plaintiff or the Intimate Video.

**RESPONSE: Previously disclosed documents in initial disclosures BN 000113-000652 and BN 001063-001293.**

**REQUEST FOR PRODUCTION NO. 8:** Communications related to the termination of Plaintiff from LCSO.

**RESPONSE: Previously disclosed documents in initial disclosures BN 000113-000652 and BN 001063-001293.**

## ANSWERS TO INTERROGATORIES

**INTERROGATORY NO. 1:** Describe how you first became aware of the Intimate Video. Specifically, when did you become aware of the existence of the Intimate Video? Who told you about it? Did someone send it to you, and if so, who and when? Did someone show it to you? If so, who and when?

**ANSWER: The sequence of events is documented in the IA report that I prepared at the time. When the video was disseminated, I was handling the investigation of a personnel matter resulting from complaints initiated by Sergeant Estrada, Plaintiff, and Victor Murillo. The complaints had nothing to do with the video since it had not been circulated yet.**

**After the investigation had commenced, Chief Deputy Fernando Jimenez and I were standing outside of the office speaking with others. He pulled me aside so we could speak privately. He told me that he had received a video of Plaintiff and sent it to me so that I could determine if it should be included in my IA investigation. I downloaded it to the IA file and removed it from my phone.**

**INTERROGATORY NO. 2:** Have you ever sent the Intimate Video to others? If yes, identify each person to whom you sent the Intimate Video, when, and how it was sent. For each person, describe why you sent the Intimate Video to that person.

**ANSWER: No.**

**INTERROGATORY NO. 3:** Regarding Plaintiff's complaint to the LCSO about dissemination of the Intimate Video, did you tell the NMSP that no crime had been committed? If yes, explain the factual and legal basis.

**ANSWER: No. I advised State Police that the video was part of a personnel investigation pursuant to County human resources policies. At the time, the dissemination of the video had not been presented to me for investigation as a criminal matter. If it had, that investigation would have been referred out to an outside law enforcement agency.**

**INTERROGATORY NO. 4:** Regarding Plaintiff's complaint to the LCSO about dissemination of the Intimate Video, did LCSO cease its internal affairs investigation because it did not believe a crime had been committed? Or did LCSO cease its internal affairs investigation because Plaintiff brought her complaint to NMSP? Explain.

**ANSWER: The LCSO was not investigating the dissemination of the video. There was an ongoing investigation of personnel matters and the video was eventually made part of that investigation, which was completed. LCSO did not investigate the dissemination of the video as a criminal matter because Plaintiff made those claims to State Police. If Plaintiff had claimed that the dissemination of the video was a crime, that investigation would have been referred to an outside law enforcement agency.**

**INTERROGATORY NO. 5:** Explain the basis for the finding in complaint 23AI-004 that a violation of ADM 1-02-2(E) had occurred.

**ANSWER: The finding was based on the fact that the video was sent to multiple members of our office, other law enforcement agencies, and the public. The perception of our deputies in the community, to other agencies, and the judiciary is an important part of our profession. The wide circulation of the video created a risk of damage to both her and the agency's reputation and credibility.**

Respectfully submitted,

MYNATT SPRINGER P.C.

BENJAMIN J. YOUNG
New Mexico Bar No. 144702
SARA E. WOODS
New Mexico Bar No. 149555
P.O. Box 2699
Las Cruces, New Mexico 88004-2699
(575) 524-8812
bjy@mynattspringer.com
sew@mynattspringer.com
*Attorneys for County Defendants*

# EXHIBIT E

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**KARINA TELLO,**

       **Plaintiff,**

**v.**                               **No. 2:24-cv-00390-KG-GJF**

**LEA COUNTY BOARD OF COUNTY**
**COMMISSIONERS, COREY HELTON,**
**MICHAEL WALKER, FERNANDO JIMENEZ,**
**SEAN ROACH, SONIA ESTRADA,**
**DIANE JURADO-GARCIA,**
**AILEEN VIZCARRA, ALYSSA PORRAS,**
**DOE DEFENDANTS 1-50,**

       **Defendants.**

## DEFENDANT LEA COUNTY BOARD OF COUNTY COMMISSIONERS' ANSWERS AND RESPONSES TO FIRST INTERROGATORIES AND REQUESTS FOR PRODUCTION

Defendant Lea County Board of County Commissioners, by and through counsel of record, MYNATT SPRINGER P.C. (Benjamin J. Young and Sara E. Woods), hereby submits *Answers and Responses to Plaintiff's First Interrogatories and Requests for Production*.

## GENERAL OBJECTIONS

1. Defendant objects to all of plaintiff's requests to the extent they seek production of information (a) protected by the attorney-client privilege, (b) protected by the attorney work product doctrine, or (c) prepared in anticipation of litigation by or for this defendant, or by or for this representative of this defendant.

2. Defendant objects to any of plaintiff's definitions and/or instructions to the extent that they facially exceed the requirements of or are contrary to the Federal Rules of Civil Procedure.

3. Defendant objects to all requests to the extent they seek information that is not relevant to

any claim or defense in this lawsuit, and thus exceeds the scope of discovery permissible under Rule 26(b)(1) of the Federal Rules of Civil Procedure.

4.   Defendant objects to these requests to the extent that they seek information as to which the burden of ascertaining or obtaining such information is substantially the same for plaintiff as it is for defendant.

5.   Defendant objects to these interrogatories and requests to the extent they seek information which is in the possession of plaintiff.

6.   Defendant continues to identify, collect, and review information that may be responsive to these interrogatories and requests, and if additional responsive information is discovered, then Defendant will timely supplement her responses and objections, if necessary, and in accordance with Rule 26 of the Federal Rules of Civil Procedure and any pretrial scheduling order.

## <u>RESPONSES TO REQUESTS FOR PRODUCTION</u>

**REQUEST FOR PRODUCTION NO. 1:**  Personnel file and disciplinary history of each Defendant.

**RESPONSE: This request will be supplemented.**

**REQUEST FOR PRODUCTION NO. 2:**   Policies and procedures relating to bullying, revenge pornography, and harassment.

**RESPONSE: See documents BN 000029 – 000037.**

**REQUEST FOR PRODUCTION NO. 3:**   Policies and procedures relating to when an LCSO employee's reputation has been "sullied"; what it means to have a "sullied" reputation; and when an LCSO employee's reputation being "sullied" may lead to termination.

**RESPONSE: There are no documents responsive to this request.**

**REQUEST FOR PRODUCTION NO. 4:**  All communications, including emails, text messages, and instant messages regarding Plaintiff, from February 1, 2023, to the present.

**RESPONSE: The Defendant Board has no communication records responsive to this request.**

**REQUEST FOR PRODUCTION NO. 5:** All documents concerning any internal investigations conducted by LCSO into the dissemination of Plaintiff's intimate video.

**RESPONSE: Previously disclosed documents in initial disclosures BN 000113-000652 and BN 001063-001293.**

**REQUEST FOR PRODUCTION NO. 6:** All documents and communications relating to Plaintiff's termination from employment at LCSO.

**RESPONSE: Previously disclosed documents in initial disclosures BN 000113-000652 and BN 001063-001293.**

**REQUEST FOR PRODUCTION NO. 7:** Communication relating to the dissemination of the Intimate Video.

**RESPONSE: Previously disclosed documents in initial disclosures BN 000113-000652 and BN 001063-001293.**

**REQUEST FOR PRODUCTION NO. 8:** Communication relating to the criminal prosecutions of Estrada, Garcia, and Vizcarra.

**RESPONSE: The Defendant Board has no records responsive to this request.**

**REQUEST FOR PRODUCTION NO. 9:** Communication between you and the NMSP relating to Plaintiff and/or the Intimate Video.

**RESPONSE: The Defendant Board has no records responsive to this request**

**REQUEST FOR PRODUCTION NO. 10:** Each social media post made by the LCSO relating to the Intimate Video or the criminal prosecutions of Estrada, Garcia, and Vizcarra, including related communication.

**RESPONSE: Defendant Board has no records responsive to this request**

**REQUEST FOR PRODUCTION NO. 11:** Each phone recording you possess relating to Plaintiff or the Intimate Video.

**RESPONSE: Defendant Board has no records responsive to this request**

**REQUEST FOR PRODUCTION NO. 12:** Documents relating to the investigation of Plaintiff's complaints against Estrada.

**RESPONSE: Previously disclosed documents in initial disclosures BN 000113-000652 and BN 001063-001293.**

**REQUEST FOR PRODUCTION NO. 13:** Documents relating to the investigation of Plaintiff's complaints about dissemination of the Intimate Video.

**RESPONSE: Previously disclosed documents in initial disclosures BN 000113-000652 and BN 001063-001293.**

**REQUEST FOR PRODUCTION NO. 14:** Documents relating to the investigation of complaints against Plaintiff, if any.

**RESPONSE: Previously disclosed documents in initial disclosures BN 001063-001293.**

**REQUEST FOR PRODUCTION NO. 15:** Plaintiff's personnel file and disciplinary history.

**RESPONSE: Previously disclosed documents in initial disclosures BN 000113-000652 and BN 001063-001293.**

## ANSWERS TO INTERROGATORIES

**INTERROGATORY NO. 1:** Describe all reasons why Victor Murillo was not found to have violated ADM 1-01-2 and not disciplined in Administrative Investigation 23AI-007.

**ANSWER:** The Board does not have knowledge of the conduct of individual employees in the sheriff's office, investigations, or final actions. This is the purview of the sheriff's office rather than the Board. Outside of situations that result in litigation, the Board would not have any prior knowledge. To the extent representatives of the Sheriff's Office officials have responded to this and similar interrogatories, the Board incorporates them herein.

**INTERROGATORY NO. 2:** Do you contend the conduct of Estrada, Vizcarra, and Garcia toward Plaintiff did not warrant termination or other disciplinary action? Does the Board contend Estrada,

Vizcarra, and Garcia acted in compliance with LCSO policies and procedures? If yes to either contention, describe the factual basis.

**ANSWER:** The Board does not have knowledge of the conduct of individual employees in the sheriff's office, investigations, or final actions. This is the purview of the sheriff's office rather than the Board. Outside of situations that result in litigation, the Board would not have any prior knowledge. To the extent representatives of the Sheriff's Office officials have responded to this and similar interrogatories, the Board incorporates them herein.

**INTERROGATORY NO. 3:** Do you contend that Plaintiff violated ADM 1-01-2 by creating or transmitting the Intimate Video? If yes, describe the basis for your contention. If no, why was Plaintiff's appearance in the video listed as grounds for her termination? Explain.

**ANSWER:** The Board does not have knowledge of the conduct of individual employees in the sheriff's office, investigations, or final actions. This is the purview of the sheriff's office rather than the Board. Outside of situations that result in litigation, the Board would not have any prior knowledge. To the extent representatives of the Sheriff's Office officials have responded to this and similar interrogatories, the Board incorporates them herein.

**INTERROGATORY NO. 4:** Describe the steps the LCSO took to investigate Plaintiff's complaints regarding harassment, bullying, and dissemination of the Intimate Video.

**ANSWER:** The Board does not have knowledge of the conduct of individual employees in the sheriff's office, investigations, or final actions. This is the purview of the sheriff's office rather than the Board. Outside of situations that result in litigation, the Board would not have any prior knowledge. To the extent representatives of the Sheriff's Office officials have responded to this and similar interrogatories, the Board incorporates them herein.

**INTERROGATORY NO. 5:** Regarding Plaintiff's complaint to the LCSO about dissemination of the Intimate Video, did LCSO cease its internal affairs investigation because it did not believe a crime had been committed? Or did LCSO cease its internal affairs investigation because Plaintiff brought her complaint to NMSP? Explain.

**ANSWER:** The Board does not have knowledge of the conduct of individual employees in the sheriff's office, investigations, or final actions. This is the purview of the sheriff's office rather than the Board. Outside of situations that result in litigation, the Board would not have any prior knowledge. To the extent representatives of the Sheriff's Office officials have responded to this and similar interrogatories, the Board incorporates them herein.

**INTERROGATORY NO. 6:**  Does the LCSO contend the dissemination of the Intimate Video that is subject of the Lawsuit was not a crime?  If yes, explain the legal and factual basis for this contention.

**ANSWER:** The Board does not have knowledge of the conduct of individual employees in the sheriff's office, investigations, or final actions. This is the purview of the sheriff's office rather than the Board. Outside of situations that result in litigation, the Board would not have any prior knowledge. To the extent representatives of the Sheriff's Office officials have responded to this and similar interrogatories, the Board incorporates them herein.

**INTERROGATORY NO. 7:** Explain why Daniel Soto was terminated

**ANSWER:** The Board does not have knowledge of the conduct of individual employees in the sheriff's office, investigations, or final actions. This is the purview of the sheriff's office rather than the Board. Outside of situations that result in litigation, the Board would not have any prior knowledge. To the extent representatives of the Sheriff's Office officials have responded to this and similar interrogatories, the Board incorporates them herein.

**INTERROGATORY NO. 8:** Do you contend that Plaintiff engaged in wrongful or improper conduct by making a report to NMSP? If yes, explain the basis for your contention.

**ANSWER:** The Board does not have knowledge of the conduct of individual employees in the sheriff's office, investigations, or final actions. This is the purview of the sheriff's office rather than the Board. Outside of situations that result in litigation, the Board would not have any prior knowledge. To the extent representatives of the Sheriff's Office officials have responded to this and similar interrogatories, the Board incorporates them herein.

**INTERROGATORY NO. 9:** Identify all persons involved in the decision to terminate Plaintiff's employment, including each person's role and the basis for their recommendation or decision.

**ANSWER:** The Board does not have knowledge of the conduct of individual employees in the sheriff's office, investigations, or final actions. This is the purview of the sheriff's office rather than the Board. Outside of situations that result in litigation, the Board would not have any prior knowledge. To the extent representatives of the Sheriff's Office officials have responded to this and similar interrogatories, the Board incorporates them herein.

**INTERROGATORY NO. 10:** Identify all complaints of sexual harassment, gender discrimination, or retaliation received by LCSO from January 1, 2020, to present, including outcomes of each complaint.

**ANSWER:** Objection. This request has a scope that far exceeds the proportional needs of this case.

**INTERROGATORY NO. 11:** Explain why disciplinary action was taken or not taken against Defendants Estrada, Garcia, or Vizcarra for the events alleged in Plaintiff's complaint.

**ANSWER:** The Board does not have knowledge of the conduct of individual employees in the sheriff's office, investigations, or final actions. This is the purview of the sheriff's office rather than the Board. Outside of situations that result in litigation, the Board would not have any prior knowledge. To the extent representatives of the Sheriff's Office officials have responded to this and similar interrogatories, the Board incorporates them herein.

**INTERROGATORY NO. 12:** Describe any training provided by LCSO to employees regarding workplace harassment, gender discrimination, retaliation, or First Amendment rights, including dates, trainers, and materials used.

**ANSWER:** The Board does not provide these trainings to LCSO employees. To the extent representatives of the Sheriff's Office officials have responded to this and similar interrogatories, the Board incorporates them herein.

**INTERROGATORY NO. 13:** Do you contend that LCSO has applied and does apply ADM 1-02-2 equally to male and female deputies? If yes, explain why Plaintiff was found to have violated the policy but Victor Murillo was exonerated of a violation in Administrative Investigation 23AI-007.

**ANSWER:** The Board does not have knowledge of the conduct of individual employees in the sheriff's office, investigations, or final actions. This is the purview of the sheriff's office rather than the Board. Outside of situations that result in litigation, the Board would not have any prior knowledge. To the extent representatives of the Sheriff's Office officials have responded to this and similar interrogatories, the Board incorporates them herein.

Respectfully submitted,

MYNATT SPRINGER P.C.

BENJAMIN J. YOUNG
New Mexico Bar No. 144702
SARA E. WOODS
New Mexico Bar No. 149555
P.O. Box 2699
Las Cruces, New Mexico 88004-2699
(575) 524-8812
bjy@mynattspringer.com
sew@mynattspringer.com
*Attorneys for County Defendants*

EXHIBIT F

Transcript of Fernando Jimenez

Conducted on July 1, 2025

1 (1 to 4)

---

**Page 1**

```
 1        IN THE UNITED STATES DISTRICT COURT
 2          FOR THE DISTRICT OF NEW MEXICO
 3        Case No.: 2:24-cv-00390-KG-GJF
 4   --------------------------------x
 5   KARINA TELLO,                   :
 6          Plaintiff,               :
 7      v.                           :
 8   LEA COUNTY BOARD OF COUNTY      :
 9   COMMISSIONERS, COREY HELTON,    :
10   MICHAEL WALKER, FERNANDO JIMENEZ, :
11   SEAN ROACH, SONIA ESTRADA,      :
12   DIANA JURADO-GARCIA,            :
13   AILEEN VIZCARRA, ALYSSA PORRAS, :
14   DOE DEFENDANTS 1-50,            :
15          Defendants.              :
16   --------------------------------x
17      Videotaped Deposition of Fernando Jimenez
18              Hobbs, New Mexico
19            Tuesday, July 1, 2025
20                 9:44 a.m.
21
22
23   Job No.: 589384
24   Pages: 1 - 179
25   Transcribed by: Debra McCostlin
```

**Page 2**

```
 1        Videotaped deposition of FERNANDO
 2   JIMENEZ, held at the offices of:
 3
 4
 5        Center of Recreational Excellence
 6        4827 North Lovington Highway
 7        Hobbs, NM 88240
 8
 9
10
11
12
13        Pursuant to Notice, before Lisa Gross,
14   Notary Public in and for the State of New Mexico.
15
16
17
18
19
20
21
22
23
24
25
```

**Page 3**

```
 1            A P P E A R A N C E S
 2   ON BEHALF OF THE PLAINTIFF, KARINA TELLO:
 3        BENJAMIN GUBERNICK, ESQUIRE
 4        CURTIS WALDO, ESQUIRE
 5        WALDO GUBERNICK LAW ADVOCATES LLP
 6        717 Texas Avenue
 7        Suite 1200
 8        Houston, TX 77002
 9        (346) 394-8056
10   ON BEHALF OF THE DEFENDANTS, LEA COUNTY BOARD OF
11   COUNTY COMMISSIONERS, COREY HELTON, MICHAEL
12   WALKER, AND FERNANDO JIMENEZ, AND SEAN ROACH:
13        BENJAMIN YOUNG, ESQUIRE
14        MYNATT SPRINGER PC
15        1660 Hickory Loop
16        Las Cruces, NM 88005
17        (575) 524-8812
18   ON BEHALF OF THE DEFENDANTS, DIANA JURADO, AILEEN
19   VIZCARRA, AND SONIA ESTRADA:
20        CODY R. ROGERS, ESQUIRE
21        SERPE ANDREWS
22        2540 El Paseo Road,
23        Suite D
24        Las Cruces, NM 88001
25   (575) 288-1453
```

**Page 4**

```
 1        A P P E A R A N C E S (Continued)
 2   ON BEHALF OF THE DEFENDANT, ALYSSA PORRAS:
 3        MICHAEL NEWELL, ESQUIRE
 4        NEWELL LAW FIRM, LLC
 5        10 W. Adams Avenue
 6        Suite E
 7        Lovington, NM 88260
 8        (575) 739-6395
 9   ALSO PRESENT:
10        ROGER COUGHLIN, VIDEOGRAPHER
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

Transcript of Fernando Jimenez
Conducted on July 1, 2025

141

1  Q  Here's what I am interested in though.
2  Have you met with your attorney prior to this
3  deposition?
4  **A  Yes.**
5  Q  Okay.  And again, don't tell me what you
6  said.  I don't want to know.  When did you meet
7  with your attorney prior to this deposition?
8  **A  In person or --**
9  Q  Well, let's talk about both.  In person,
10 when did you do that?
11 **A  He gave me a phone call telling me that,**
12 **you know, I was going to have a disposition and we**
13 **setup a time to meet.  We couldn't meet yesterday**
14 **because I had stuff going on, he had stuff going**
15 **on.**
16 Q  I actually don't even want to know that.
17 I don't want to know why you had to reschedule it
18 or anything.  I just want to know -- so was your
19 first in-person meeting -- your attorney, is that
20 Ben Young?
21 **A  Yes, sir.**
22 Q  Okay.  So, your first in-person meeting
23 with Ben Young was what day?
24 **A  This morning.**
25 Q  This morning.

142

1  **A  Yes, sir.**
2  Q  Around what time this morning?
3  **A  7:30.**
4  Q  Okay.  And how long did you meet with
5  Mr. Young before we got here about 9:30?  Were you
6  with him the entire time?
7  **A  No, sir.**
8  Q  So, about how long?
9  **A  Five minutes maybe.**
10 Q  Okay.  Have you talked to Mr. Young or
11 any of your other attorneys on the phone prior to
12 today?
13 **A  To Ben.**
14 Q  Okay.  Mr. Young?
15 **A  Yes.**
16 Q  And you told me that there was a call
17 where you guys were like trying to schedule a time
18 to meet.
19 **A  Uh-huh.**
20 Q  Were there any other phone calls with
21 Ben Young or any of your other attorneys, if you
22 had any?
23 **A  Just talked to Ben.**
24 Q  Okay.  How much time total would you say
25 you spent on the phone with Mr. Young prior to

143

1  today?  Add it up.  Give me your best estimate.
2      MR. YOUNG:  Form and foundation.
3  **A  Shit, I don't know, give or take five**
4  **minutes, ten minutes.  I don't know.**
5  Q  Okay.  So, not very long, fair to say?
6  **A  No.**
7  Q  Okay.  Got you.  Have you reviewed any
8  documents?  And again, I'm not interested in
9  anything your attorney wrote.  If your attorney
10 emailed you, sent you an email, I don't want to
11 know.  Have you reviewed any documents though,
12 aside from that, in preparation for this
13 deposition?
14 **A  Yes, some disclosure questions.**
15 Q  Okay.  So, you've gone over discovery
16 answers with your attorney?
17 **A  Yes.**
18 Q  Okay.  How about any documents from the
19 case, any police reports, memorandums, anything
20 like that, any evidence in the case?
21 **A  No, sir.**
22 Q  Okay.  Have you reviewed any text
23 messages?
24 **A  No, sir.**
25 Q  Okay.  Have you talked to any people who

144

1  have already been deposed in this case to your
2  knowledge?
3  **A  In reference to this?**
4  Q  Yeah.
5  **A  Or just talked to them in general?**
6  Q  No, I mean, in general, of
7  course -- like Michael Walker, for example, has
8  been deposed.  Of course you've talked to Michael
9  Walker before.  You worked with him for years.  In
10 reference to this case?
11 **A  No.**
12 Q  Okay.  So, you've not talked to Michael
13 Walker about this case?
14 **A  No.**
15 Q  Okay.  You have not talked to Aileen
16 Vizcarra?
17 **A  No.**
18 Q  Estrada?
19 **A  Nobody.**
20 Q  Nobody.  Okay.  Got you.  I'm sorry
21 for --
22 **A  No, that's fine.  Nobody.**
23 Q  I just want to make sure we're on the
24 same page here.  Okay.  Have you -- and you have
25 not talked to any witnesses -- are you aware of

**145**

1  any deposition testimony any witness has given in
2  this case?
3      **A   I haven't talked to anybody about this**
4  **case.**
5      Q   Anybody about this case except for --
6      **A   Depositions.**
7      Q   -- obviously your attorney?
8      **A   Correct.**
9      Q   Okay.  Got you.  All right.
10      MR. GUBERNICK:  All right.  I think this
11  be a good time for lunch.  Does that work for
12  everybody?
13      MR. YOUNG:  That works.
14      VIDEOGRAPHER:  Okay.  We will be going
15  off the record approximately 12:13.
16      (Off the record.)
17      VIDEOGRAPHER:  We are back on the record
18  at 1:28.
19  BY MR. GUBERNICK:
20      Q   Okay.  We're back from lunch.  So, sir,
21  did you have a nice lunch?
22      **A   It was lunch.**
23      Q   Where did you go?
24      **A   We went to Rosa's Fast Food Mexican**
25  **Restaurant.**

**146**

1      MR. GUBERNICK:  What happened here?  Go
2  off the record for a second.
3      (Off the record.)
4      MR. GUBERNICK:  Let's go back on the
5  record whenever you're ready.
6      VIDEOGRAPHER:  I've already went on the
7  record.
8      MR. GUBERNICK:  Oh, okay.
9  BY MR. GUBERNICK:
10      Q   All right.  So, did you -- when you said
11  we went to Rosa's, did you go with your attorney?
12      **A   Yes, sir.**
13      Q   Did you look at any documents over
14  lunch?
15      **A   No.**
16      Q   Okay.  All right.  So, we were talking,
17  if I remember correctly, about rumors involving
18  Karina Tello.  Now, have you read the complaint in
19  this case, the one where you're named as a
20  defendant?
21      **A   Yes.**
22      Q   When did you read that?
23      **A   A while back and then I browsed over it**
24  **this morning.**
25      Q   So, when you said to me before we went

**147**

1  on break that you hadn't reviewed any documents,
2  that wasn't true?
3      MR. YOUNG:  Form and foundation.
4      **A   I said I looked over disclosure with my**
5  **attorneys is what I said.**
6      Q   The complaint is disclosure?  Okay.
7  That's fine.  I'm not trying to trap you.  That's
8  fine.
9      **A   I ain't going to lie to you.  I'm just**
10  **telling you --**
11      Q   Okay.  All right.  Now, that's fine.  'm
12  just trying to understand what you reviewed.  All
13  right.  So, what were your reactions to the
14  complaint?  Is the stuff in there true?  Is it
15  false?  What do you think?
16      MR. YOUNG:  Form and foundation.
17      **A   The whole complaint or it includes me?**
18      Q   Well, let's go with the whole thing.
19  What's your general reaction to it?  Is it just a
20  bunch of lies?
21      **A   A bunch of bullshit.**
22      Q   A bunch of bullshit.
23      **A   Yeah.**
24      Q   What part of it specifically would you
25  say is bullshit?

**148**

1      **A   For everything that's in there about me**
2  **is a bunch of BS and it includes -- just reading**
3  **it, it reads like a bunch of BS.**
4      Q   It reads like a bunch of bullshit, like
5  that's not how it happened?
6      **A   I don't know how it happened.  It just**
7  **reads like a bunch of crap that doesn't make**
8  **sense. I don't know.**
9      Q   Okay.  Well, you were there so --
10      **A   I wasn't there.**
11      MR. YOUNG:  Form and foundation.
12      Q   Can I finish my question, please?  You
13  were there as in you were at the Lovington -- or
14  at the Lea County Sheriff's Office at the time,
15  right?
16      **A   Lea County.  Yes, sir.**
17      Q   Yeah.  I'm sorry.  Lea County Sheriff's
18  Office.  So, walk me through what actually
19  happened.  What was this --
20      **A   I don't know what happened.**
21      Q   When this video started being
22  circulated, what happened?
23      **A   I don't know.**
24      MR. YOUNG:  Form and foundation.
25      Q   What do you mean you don't know?

165

1      MR. NEWELL: I'm going to join that
2  because I don't think they said --
3      MR. GUBERNICK: You've made your
4  objection.
5      COURT REPORTER: One at a time, please.
6  Thanks.
7  **A  Do you want me to answer or not?**
8  Q   Yes.
9  **A  Okay. I've not been involved in a group**
10 **message, like you've stated, with Aileen, Karina**
11 **Tello, or whoever all you said. I can't control**
12 **what they say. If they said something, I don't**
13 **know what to tell you.**
14 Q   Okay. Are you aware that the state
15 police investigated this?
16 **A  Yes.**
17 Q   How did you become aware of that?
18 **A  I was told they came to the office and**
19 **they were doing an investigation.**
20 Q   Who told you that?
21 **A  I believe it was the undersheriff.**
22 Q   Walker?
23 **A  Uh-huh.**
24 Q   Okay. Are you aware that they executed
25 search warrants on the phones of Aileen Vizcarra,

166

1  Sonia Estrada, and Diane Garcia?
2  **A  Yes.**
3  Q   Okay. Do you know what a Cellebrite
4  extraction is?
5  **A  Yes.**
6  Q   It's when -- would you agree with me
7  that it's when you copy whatever is on the phone
8  and then you can search that copy to see what's in
9  there, right?
10 **A  Uh-huh.**
11 Q   And this is something that law
12 enforcement routinely uses to catch criminals,
13 right? Yes?
14 **A  Yes.**
15 Q   Have you ever ordered a Cellebrite
16 extraction?
17 **A  I have not.**
18 Q   Okay. You're aware -- so you are aware
19 though that this is something that police officers
20 use?
21 **A  Yes.**
22 Q   Okay. Did you ever send any text
23 messages about the intimate video?
24 **A  No.**
25 Q   And we already know you received the

167

1  one. I'm not asking about that one. Did you ever
2  send any? Did you ever talk to anybody about it?
3  **A  The undersheriff.**
4  Q   Via text message?
5  **A  No.**
6  Q   How about emails?
7  **A  No.**
8  Q   Okay. If I asked you to take out your
9  cell phone right now and scroll up to text
10 messages that you sent in this May and June 2023
11 time period, could you do that?
12 **A  Probably not.**
13 Q   Why not?
14 **A  I don't keep old messages.**
15 Q   Well, what happens to them?
16 **A  Shit if I know. They get deleted, I**
17 **guess.**
18 Q   Did you delete them?
19 **A  You set your phone to delete messages so**
20 **you don't carry up storage.**
21 Q   Okay. Have you -- when did you set your
22 phone -- wait. How do you actually set your phone
23 to do that?
24 **A  Go to settings.**
25 Q   No, but have you set your phone to do

168

1  that?
2  **A  Yeah.**
3  Q   Are you sure?
4  **A  I'm sure.**
5  Q   Can you please check? Scroll up and
6  tell me how far back you can go.
7  **A  Shit.**
8  Q   I'm sorry. What was that?
9  **A  I closed out the app on accident.**
10 Q   Okay. I'm sorry. What are you showing
11 your attorney?
12 **A  The date I'm fixing to tell you.**
13 Q   Okay. Got for it. What's the date?
14 **A  June '23.**
15 Q   Of this year?
16 **A  June of '23.**
17 Q   Oh, June of '23. You can go back to
18 June of '23. What day in June of '23?
19 **A  June 4th.**
20 Q   June 4th. Okay. So, here's what we're
21 going to do. On the record I'm going to ask the
22 defense attorney here and you not to destroy any
23 text messages on your phone or delete anything.
24 Do you understand that?
25 **A  Uh-huh.**

Transcript of Fernando Jimenez
Conducted on July 1, 2025

43 (169 to 172)

169

1    Q   Okay. Let's -- pull your phone back
2  out. I want to ask some more questions about it.
3  Do you have any text messages in that time frame
4  with Diana Garcia, Sonia Estrada, or Aileen
5  Vizcarra?
6    **A   Is there a way to search this so I don't**
7  **have to go through all this?**
8        MS. ROGERS: Is that a iPhone?
9        THE WITNESS: Yes.
10       MS. ROGERS: At the very top --
11       THE WITNESS: Okay.
12       MS. ROGERS: -- when you open the
13 messages up there's a search bar.
14   **A   I have a text with Diana on Thursday.**
15   Q   Of what year?
16   **A   This year, this past Thursday.**
17   Q   What did she say?
18   **A   I have service now. Call me when you**
19 **can.**
20   Q   What did you talk about?
21   **A   A cruise.**
22   Q   I'm sorry. What?
23   **A   Her cruise.**
24   Q   Her cruise? Okay. But that's not what
25 I'm interested in. I want you to go back

170

1  to -- just scroll up your phone. Just go back to
2  the June 2023, June 4th. Let's see what text
3  messages you were sending in that time frame.
4  Scroll up to that.
5    **A   Okay.**
6    Q   Okay. Read me off the recipients there.
7  Who did you send text messages to on June 4th?
8    **A   Court supervisors.**
9    Q   Who?
10   **A   Let me see.**
11   Q   Just the full list of people you sent
12 text messages to on June 4th.
13   **A   Court -- it's just one text.**
14   Q   Who?
15   **A   Court supervisors.**
16   Q   How about June 5th?
17   **A   Sean, Jasmine, Dustin.**
18   Q   Who are those people?
19   **A   Sean Roach, Jasmine Sanchez is probably**
20 **over --**
21   Q   Well, let's open it up and take a look
22 and see what you were texting with them about.
23   **A   Explorers competition.**
24       MR. GUBERNICK: This would be easier if
25 we could just put these up so we can all see them.

171

1        MR. YOUNG: We're not going to do that.
2        MR. GUBERNICK: I know you're not going
3  to do that, but I also don't know that I trust you
4  not to destroy anything. Or not you. Let me
5  rephrase.
6        MR. YOUNG: You know what, we're going
7  to take a break and you're going to think about
8  insinuations like that about us. We're going to
9  take a break.
10       VIDEOGRAPHER: Are we clear to go off
11 the record?
12       MR. GUBERNICK: Yeah, that's fine.
13       VIDEOGRAPHER: Okay. We're going to be
14 going off the record approximately 1:53.
15       (Off the record.)
16       VIDEOGRAPHER: We are back on the record
17 approximately 1:56.
18 BY MR. GUBERNICK:
19   Q   Okay. So, we were talking before about
20 discovery requests I sent you. Do you remember
21 you talked about that, talked to your attorney
22 about discovery requests?
23   **A   Yes, sir.**
24   Q   Okay. All right. One of those
25 discovery requests was -- request number five was

172

1  text messages between your phone and the number
2  575-266-3539. You told me, Defendant Jimenez has
3  no records responsive to this request. Did you
4  actually look?
5    **A   Yeah.**
6    Q   What did you do to look?
7    **A   That number.**
8    Q   Did you search your phone for that
9  number?
10   **A   Yes.**
11   Q   Okay. You were asked here, request for
12 production number one, communications between you
13 and any other defendant relating to plaintiff.
14 What did you -- you said, again, answer, Defendant
15 Jimenez has no records responsive to this request.
16 If I search your phone for the word Tello, am I
17 not going to find anything? If I search your
18 messages for the word Tello, there will be zero?
19 Or Karina? None of that is going to yield any
20 results?
21   **A   Sure.**
22   Q   Did you check?
23   **A   Yeah.**
24   Q   How did you check?
25   **A   I can pull up the phone and --**

Transcript of Fernando Jimenez
Conducted on July 1, 2025

173

1    Q   Did you type Karina in?  Did you type
2  Tello in?
3        MR. YOUNG:  To the extent it
4  releases --
5        MR. GUBERNICK:  No, this --
6        MR. YOUNG:  -- addresses attorney-client
7  privileged communications.
8    Q   The question is -- I'm not asking you to
9  pull up your phone.  I'm asking whether you
10  checked.  No, I'm not asking you to check now.
11   **A   No.**
12   Q   I'm asking whether you checked before
13  you told me this.
14   **A   Yes.**
15   Q   How did you -- walk me through what you
16  did to check.
17   **A   You can go in the search bar and check.**
18   Q   No, walk me through what you did to
19  check.
20   **A   Checked my search engine to see if I had**
21  **anything.**
22   Q   So, what did you search for, what terms?
23   **A   Karina.**
24   Q   And Tello?
25   **A   I don't recall if I searched under**

174

1  **Tello.**
2    Q   Okay.  You entered the word Karina in
3  and you clicked search and nothing came up?
4    **A   Correct.  Well --**
5    Q   What came up?
6    **A   Want me to look?**
7    Q   Yes.  Let's start with Karina.
8    **A   Diva's Creations.**
9    Q   I'm sorry.  What?
10   **A   I believe this lady's name is Karina.**
11  **It's from Diva's Creations.  It's a place that**
12  **sells soft drinks.**
13   Q   All right.  Anything else come up?
14   **A   No, sir.**
15   Q   How about Tello?  How many results?
16       MR. GUBERNICK:  Okay.  So, I think what
17  we're going to have to do here is leave the
18  deposition open and once you guys have
19  supplemented your request for production here, we
20  can go -- we can do this again and finish this
21  deposition.  Is that okay with everybody?
22       MR. YOUNG:  I'm fine with that.
23       MR. GUBERNICK:  Okay.  All right.  Let's
24  go off the record.  No, actually, let me ask
25  everybody else.  Cody, Mike, you got a problem

175

1  with that?
2        MR. NEWELL:  No objection.
3        MS. ROGERS:  That's fine.
4        MR. NEWELL:  I think it's a workable
5  solution, yeah.
6        MR. GUBERNICK:  Okay.
7        VIDEOGRAPHER:  So, are we going off for
8  good?
9        MR. GUBERNICK:  Let me take a minute.  I
10  mean, how long is this going to take?  Can you
11  guys supplement now or within the next few
12  minutes?
13       MR. YOUNG:  Well, I can't supplement now
14  because I haven't had a chance to read it.
15       MR. GUBERNICK:  Yeah.  And neither has
16  he and neither has anybody else probably, and
17  that's very frustrating to me because I sent
18  requests for production exactly so this trip
19  wouldn't be -- anyway.
20       MR. YOUNG:  I'm sorry.  Let's go off the
21  record.
22       VIDEOGRAPHER:  We're going to be going
23  off the record at 2:01.
24       (Off the record.)
25  VIDEOGRAPHER:  We're back on the record

176

1  at approximately 2:02.
2        MR. YOUNG:  All right.  Go ahead.
3        MR. GUBERNICK:  Okay.  So, I guess the
4  question is -- I'm assuming there are documents
5  that would be at least potentially responsive to
6  the discovery requests.
7        MR. YOUNG:  Potentially, but I have not
8  seen and reviewed yet.
9        MR. GUBERNICK:  Okay.  No, which I
10  understand.  So, what we're going to do -- again,
11  and I understand you haven't reviewed them yet,
12  but they appear to be at least potentially
13  responsive and potentially not privileged.
14       MR. YOUNG:  Correct.
15       MR. GUBERNICK:  So, we're going to have
16  to go off the record and continue -- and leave the
17  deposition open until the discovery requests have
18  been supplemented.
19       MR. YOUNG:  That will work.
20       MR. GUBERNICK:  Is everyone good with
21  that?
22       MR. YOUNG:  That will work.
23       MR. GUBERNICK:  All right.  Thank you.
24  Off the record.
25  VIDEOGRAPHER:  Okay.  We're going off

# EXHIBIT G



**Ben Gubernick <ben@wglawllp.com>**

# Tello v. Lea County, et al.

**Benjamin J. Young** <bjy@mynattspringer.com>          Mon, Jul 7, 2025 at 10:00 AM
To: Curtis Waldo <curtis@wglawllp.com>, Ben Gubernick <ben@wglawllp.com>
Cc: "Jennifer M. Meyer" <JMeyer@serpeandrews.com>, Cody Rogers
<crogers@serpeandrews.com>, Sara Woods <sew@mynattspringer.com>, Mike Newell
<mnewell@newelllawnm.com>, Corina Marrufo <cmarrufo@serpeandrews.com>

Good morning, all:

I am waiting to hear back from Sean Roach for his availability the 12th. He was out of town last week and returning today. I should be able to let you know by mid-afternoon.

If we are able to schedule Roach (or someone else) for the 12th and you are unavailable the 13th, will we be looking at the weeks of the 18th and 25th for the remaining depositions (Roach, Jimenez part 2, Soto, Rivera, Hardy, and potentially Murillo)? I have to be in Santa Fe on the 14th.

We'll be supplementing several discovery responses later this week/beginning of the following so you all have your requested information with a decent amount of lag time before the August depositions.

Thanks.
Ben


BENJAMIN J. YOUNG
Attorney at Law
Mynatt Springer P.C.
1660 Hickory Loop
Las Cruces, New Mexico
(575) 524-8812
Fax (575) 524-0726
BJY@mynattspringer.com



This transmission may be: (1) subject to the Attorney-Client Privilege,(2) an attorney work product, or (3) strictly confidential. If yo
are not the intended recipient of this message, you may not disclose, print, copy or disseminate this information. If you have receiv
this in error, please reply and notify the sender (only) and delete the message. Unauthorized interception of this e-mail is a violatio
of federal criminal law.

Case 2:24-cv-00390-KG-GJF Waldo & Guerrieri Law Advocates for the People of Eddy County, N.M. Document 94-1 Filed 08/29/25 Page 55 of 115

**From:** Curtis Waldo <curtis@wglawllp.com>
**Sent:** Thursday, July 3, 2025 2:50 PM
**To:** Jennifer M. Meyer <JMeyer@serpeandrews.com>
[Quoted text hidden]


[Quoted text hidden]

# EXHIBIT H

# WGLA, LLP

717 Texas Ave., Ste. 1200
Houston, TX 77002
wglawllp.com

July 7, 2025

Benjamin Gubernick
WGLA, LLP
717 Texas Avenue, Ste. 1200
Houston, TX 77002
734.678.5169
ben@wglawllp.com

***Sent via email to:***

Benjamin Young
Sara Woods
bjy@mynattspringer.com
sew@mynattspringer.com

      **Re:**     ***Tello v. Lea County Board, et al.***

Dear Ben and Sara:

As you are aware, Fernando Jimenez testified under oath at his deposition on July 1, 2025 that he conducted a good faith search for communication on his phone relating to Karina Tello and the allegations in this lawsuit, and that he did not locate anything. He also stated that his phone was set to delete messages every 30 days. Yet, when I prompted him to search his phone for the term "Tello," numerous responsive text messages appeared. Moreover, Mr. Jimenez's phone contained text messages dating back to June 4, 2023.

It is apparent that Mr. Jimenez failed to conduct a good faith search for responsive communications, and that his testimony to the contrary was false and misleading. That is why we have to resume his deposition at a later date (for which we will seek fees and costs). Mr. Jimenez's failure also raises significant concerns about the document collection efforts of your other clients in this case—Sean Roach, Michael Walker, Corey Helton, and Lea County. All four represented in their discovery responses that they possessed no communications with other Defendants relating to Ms. Tello, or relating to the Intimate Video or Ms. Tello's termination. Yet if their document collection efforts were as feeble/non-existent as those of Mr. Jimenez, it is highly likely that responsive documents do exist and can be located. Additionally, the July 1 deposition calls into question whether your clients have enacted even rudimentary document preservation measures.

Mr. Jimenez stated under oath that he believes this case is "bullshit," a sentiment that his co-defendants appear to share. But while that may explain your clients' flagrant disregard of their discovery obligations (and in the case of Mr. Jimenez, outright perjury), it is not an excuse. On or before July 18, 2025, please search the messages (text, WhatsApp, and any other message

services) on all personal and work phones in your clients' possession, custody, or control, for the terms "Karin," "Karina," and "Tello," and produce all responsive, non-privileged documents.  If you fail to do so, we will be forced to seek relief with the Court compelling production of such documents and imposing sanctions.

Do not hesitate to contact me with any questions.


Sincerely,


*/s/ Benjamin Gubernick*


Benjamin Gubernick


CC:     Curtis Waldo (firm)
        Cody Rogers
        Mike Newell

# EXHIBIT I

# WGLA, LLP

717 Texas Ave., Ste. 1200
Houston, TX 77002
wglawllp.com

July 7, 2025

Benjamin Gubernick
WGLA, LLP
717 Texas Avenue, Ste. 1200
Houston, TX 77002
734.678.5169
ben@wglawllp.com

***Sent via email to:***

Benjamin Young
Sara Woods
bjy@mynattspringer.com
sew@mynattspringer.com

Re:     ***Tello v. Lea County Board, et al. — Deficiency in Board's June 27 Interrogatory & RFP Responses***

Dear Ben and Sara:

Under Fed. R. Civ. P. 26–37 and D.N.M.LR-Civ. 26.3, Plaintiff writes to confer regarding the Board's discovery responses served June 27, 2025 (the "Responses"). The Responses are facially deficient and must be cured by July 18, 2025; otherwise, we must seek relief from the Court and fees under Rule 37(a)(5).

Specifically, the Responses fail to comply with the Federal Rules of Civil Procedure in the following ways:

1. Blanket objections – "General Objections 1-6" are untethered to any specific request, violating Rules 33(b)(4) and 34(b)(2)(B). It is well-established that such objections are "worthless for anything beyond delay of the discovery" and tantamount to no objection at all. *Johnson v. Kraft Foods N. Am., Inc.*, 236 F.R.D. 535, 538 (D. Kan. 2006). Moreover, as the Board has failed to make any "meaningful effort to show how any of the general objections apply to a specific interrogatory," the objections are deemed waived. *Gassaway v. Jarden Corp.,* 292 F.R.D. 676, 680 (D. Kan. 2013). Please withdraw these objections.

2. Non-answers – The Board has failed to provide substantive responses to Plaintiff's interrogatories. Instead, for 12 out of 13 interrogatories, the Board claims to "not have knowledge of the conduct of individual employees in the sheriff's office[.]" But under New Mexico law, all lawsuits against county entities (such as sheriff's departments) are brought against the county board of commissioners. NMSA 1978, § 4-46-1. The Supreme Court has

held that a county is legally responsible for actions of its sheriff's office deputies. *Loya v. Gutierrez*, 2015-NMSC-017, ¶ 56, 350 P.3d 1155, 1169. And the Board has already admitted that the Lea County Sheriff's Office is one of its subsidiaries. Dkt. No. 36 at ¶ 6. *See Cotracom Commodity Trading Co. v. Seaboard Corp.*, 189 F.R.D. 655, 663 (D. Kan. 1999) ("the court would consider documents within the possession, custody, or control of a wholly-owned subsidiary to be within the control of the parent corporation."). Please answer these interrogatories.

3.  Improper incorporation – The Board purports to "incorporate[]" responses "[t]o the extent representatives of the Sheriff's Office officials have responded to this and similar interrogatories[.]" But that is inadequate under Fed. R. Civ. P. 33(d), which permits incorporation only with a detailed record citation. Please supplement these responses.,

4.  No privilege log – The Board's first "general objection" references the attorney-client privilege, yet no privilege log has been supplied, even though one is required by Rule 26(b)(5)(A). Please provide a detailed privilege log.

5.  Equivocal RFP response – The Board's response to RFP No. 1, which seeks personnel files and disciplinary history for each Defendant, reads in full: "This request will be supplemented." However, the Board does not say when the promised supplementation will occur, or explain what it will include. Likewise, the Board answers other RFP's by claiming it has "no records responsive to this request," but fails to state whether any search was performed, much less the scope of the search, whether it was performed with reasonable diligence, and whether it included the Board's subsidiaries (e.g. LCSO). Please supplement the Responses to provide this information.

6.  Unverified interrogatories – As of the date of this letter, no verification page has been provided. Please provide a verification.

Do not hesitate to contact me with any questions.


Sincerely,


*/s/ Benjamin Gubernick*


Benjamin Gubernick

CC:     Curtis Waldo (firm)
        Cody Rogers
        Mike Newell

# EXHIBIT J

8/27/25, 9:14 AM    Wolcott Gubernick Law Advocates Mail - Follow up on Rule 37 letter and Lea County supplemental disclosures

Case 2:24-cv-00390-KG-GJF   Document 94-1   Filed 08/29/25   Page 64 of 115

    **Ben Gubernick <ben@wglawllp.com>**

---

# Follow up on Rule 37 letter and Lea County supplemental disclosures

---

**Benjamin J. Young** <bjy@mynattspringer.com>                  Thu, Jul 17, 2025 at 4:04 PM

To: Ben Gubernick <ben@wglawllp.com>, Curtis Waldo <curtis@wglawllp.com>
Cc: Sara Woods <sew@mynattspringer.com>, Brandi Breen <bb@mynattspringer.com>, Cody Rogers <crogers@serpeandrews.com>

Good afternoon, Gentlemen:

Due to a confluence of conflicts between both my client's and my schedules, I will not be able to meet the July 18 deadline in your July 7 letter. I am also working with Ms. Rogers on a proposed confidentiality order so that I can designate some responsive supplemental disclosures as confidential. I'd like to have at least the framework of an agreement on that in place before turning them over. I anticipate being able to have the supplements completed by Friday the 25.

Thank you.
Ben


BENJAMIN J. YOUNG
Attorney at Law
Mynatt Springer P.C.
1660 Hickory Loop
Las Cruces, New Mexico
(575) 524-8812
Fax (575) 524-0726
BJY@mynattspringer.com



This transmission may be: (1) subject to the Attorney-Client Privilege,(2) an attorney work product, or (3) strictly confidential. If yo
are not the intended recipient of this message, you may not disclose, print, copy or disseminate this information. If you have receiv
this in error, please reply and notify the sender (only) and delete the message. Unauthorized interception of this e-mail is a violatio
of federal criminal law.

# EXHIBIT K

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**KARINA TELLO,**

      **Plaintiff,**

**v.**                                 **No. 2:24-cv-00390-KG-GJF**

**LEA COUNTY BOARD OF COUNTY
COMMISSIONERS, COREY HELTON,
MICHAEL WALKER, FERNANDO JIMENEZ,
SEAN ROACH, SONIA ESTRADA,
DIANE JURADO-GARCIA,
AILEEN VIZCARRA, ALYSSA PORRAS,
DOE DEFENDANTS 1-50,**

      **Defendants.**

## DEFENDANT LEA COUNTY BOARD OF COUNTY COMMISSIONERS' FIRST SUPPLEMENTAL ANSWERS AND RESPONSES TO FIRST INTERROGATORIES AND REQUESTS FOR PRODUCTION

Defendant Lea County Board of County Commissioners, by and through counsel of record, MYNATT SPRINGER P.C. (Benjamin J. Young and Sara E. Woods), hereby submits *First Supplemental Answers and Responses to Plaintiff's First Interrogatories and Requests for Production.*

## GENERAL OBJECTIONS

1.  Defendant objects to all of plaintiff's requests to the extent they seek production of information (a) protected by the attorney-client privilege, (b) protected by the attorney work product doctrine, or (c) prepared in anticipation of litigation by or for this defendant, or by or for this representative of this defendant.

2.  Defendant objects to any of plaintiff's definitions and/or instructions to the extent that they facially exceed the requirements of or are contrary to the Federal Rules of Civil Procedure.

3.   Defendant objects to all requests to the extent they seek information that is not relevant to any claim or defense in this lawsuit, and thus exceeds the scope of discovery permissible under Rule 26(b)(1) of the Federal Rules of Civil Procedure.

4.   Defendant objects to these requests to the extent that they seek information as to which the burden of ascertaining or obtaining such information is substantially the same for plaintiff as it is for defendant.

5.   Defendant objects to these interrogatories and requests to the extent they seek information which is in the possession of plaintiff.

6.   Defendant continues to identify, collect, and review information that may be responsive to these interrogatories and requests, and if additional responsive information is discovered, then Defendant will timely supplement her responses and objections, if necessary, and in accordance with Rule 26 of the Federal Rules of Civil Procedure and any pretrial scheduling order.

## RESPONSES TO REQUESTS FOR PRODUCTION

**REQUEST FOR PRODUCTION NO. 1:** Personnel file and disciplinary history of each Defendant.

**RESPONSE:** This request will be supplemented.

**FIRST SUPPLEMENTAL RESPONSE: See documents Bates numbered 001298 - 001348 for Defendants Helton and Walker. Documents for Defendants Estrada, Vizcarra, Jurado, Roach, and Jimenez will be supplemented.**

## ANSWERS TO INTERROGATORIES

**INTERROGATORY NO. 1:** Describe all reasons why Victor Murillo was not found to have violated ADM 1-01-2 and not disciplined in Administrative Investigation 23AI-007.

**ANSWER:** The Board does not have knowledge of the conduct of individual employees in the sheriff's office, investigations, or final actions. This is the purview of the sheriff's office rather than the Board. Outside of situations that result in litigation, the Board would not have any prior knowledge. To the extent representatives of the Sheriff's Office officials have responded to this and similar interrogatories, the Board incorporates them herein.

**FIRST SUPPLEMENTAL ANSWER: See Defendant Michael Walker's Answer to Interrogatory No. 4. See also Sheriff Corey Helton's Answer to Interrogatory No. 4.**

**INTERROGATORY NO. 2:** Do you contend the conduct of Estrada, Vizcarra, and Garcia toward Plaintiff did not warrant termination or other disciplinary action? Does the Board contend Estrada, Vizcarra, and Garcia acted in compliance with LCSO policies and procedures? If yes to either contention, describe the factual basis.

**ANSWER:** The Board does not have knowledge of the conduct of individual employees in the sheriff's office, investigations, or final actions. This is the purview of the sheriff's office rather than the Board. Outside of situations that result in litigation, the Board would not have any prior knowledge. To the extent representatives of the Sheriff's Office officials have responded to this and similar interrogatories, the Board incorporates them herein.

**FIRST SUPPLEMENTAL ANSWER: See Defendant Sheriff Corey Helton's Answer to Interrogatory No. 3. See also Bates numbered documents 000113-000652 and 001063-001293.**

**INTERROGATORY NO. 3:** Do you contend that Plaintiff violated ADM 1-01-2 by creating or transmitting the Intimate Video? If yes, describe the basis for your contention. If no, why was Plaintiff's appearance in the video listed as grounds for her termination? Explain.

**ANSWER:** The Board does not have knowledge of the conduct of individual employees in the sheriff's office, investigations, or final actions. This is the purview of the sheriff's office rather than the Board. Outside of situations that result in litigation, the Board would not have any prior knowledge. To the extent representatives of the Sheriff's Office officials have responded to this and similar interrogatories, the Board incorporates them herein.

**FIRST SUPPLEMENTAL ANSWER: See Defendant Michael Walker's Answer to Interrogatory No. 5. See also Sheriff Corey Helton's Answer to Interrogatory No. 7. See Defendant Sean Roach's Answer to Interrogatory No. 5. See Bates numbered documents 000113-000652 and 001063-001293.**

**INTERROGATORY NO. 4:** Describe the steps the LCSO took to investigate Plaintiff's complaints regarding harassment, bullying, and dissemination of the Intimate Video.

**ANSWER:** The Board does not have knowledge of the conduct of individual employees in the sheriff's office, investigations, or final actions. This is the purview of the sheriff's office rather than the Board. Outside of situations that result in litigation, the Board would not have any prior knowledge. To the extent representatives of the Sheriff's Office officials have responded to this and similar interrogatories, the Board incorporates them herein.

**FIRST SUPPLEMENTAL ANSWER: See Defendant Sean Roach's Answer to Interrogatory No. 1. See also Defendant Corey Helton's Answers to Interrogatory Nos. 3 and 6 and Bates numbered documents 000113-000652 and 001063-001293.**

**INTERROGATORY NO. 5:** Regarding Plaintiff's complaint to the LCSO about dissemination of the Intimate Video, did LCSO cease its internal affairs investigation because it did not believe a crime had been committed? Or did LCSO cease its internal affairs investigation because Plaintiff brought her complaint to NMSP? Explain.

**ANSWER:** The Board does not have knowledge of the conduct of individual employees in the sheriff's office, investigations, or final actions. This is the purview of the sheriff's office rather than the Board. Outside of situations that result in litigation, the Board would not have any prior knowledge. To the extent representatives of the Sheriff's Office officials have responded to this and similar interrogatories, the Board incorporates them herein.

**FIRST SUPPLEMENTAL ANSWER: See Defendant Sheriff Corey Helton's Answer to Interrogatory No. 6. See Defendant Sean Roach's Answer to Interrogatory No. 4. See Defendant Michael Walker's Answers to First Interrogatory No. 3.**

**INTERROGATORY NO. 6:** Does the LCSO contend the dissemination of the Intimate Video that is subject of the Lawsuit was not a crime? If yes, explain the legal and factual basis for this contention.

**ANSWER:** The Board does not have knowledge of the conduct of individual employees in the sheriff's office, investigations, or final actions. This is the purview of the sheriff's office rather than the Board. Outside of situations that result in litigation, the Board would not have any prior knowledge. To the extent representatives of the Sheriff's Office officials have responded to this and similar interrogatories, the Board incorporates them herein.

**FIRST SUPPLEMENTAL ANSWER: Objection. This interrogatory calls for a speculative response outside of the purview of the Board's authority and/or knowledge. The Board is not the state police, the district attorney, or a judge. The determination of whether the dissemination of the video is a crime falls within the purview of those entities and individuals. The criminal cases against the Defendants Estrada, Jurado-Garcia, Vizcarra, and Porras were dismissed.**

**See also, Answer to Interrogatory No. 5.**

**INTERROGATORY NO. 8:** Do you contend that Plaintiff engaged in wrongful or improper conduct by making a report to NMSP? If yes, explain the basis for your contention.

**ANSWER:** The Board does not have knowledge of the conduct of individual employees in the sheriff's office, investigations, or final actions. This is the purview of the sheriff's office rather than the Board. Outside of situations that result in litigation, the Board would not have any prior knowledge. To the extent representatives of the Sheriff's Office officials have responded to this and similar interrogatories, the Board incorporates them herein.

**FIRST SUPPLEMENTAL ANSWER: See Defendant Sheriff Corey Helton's Answer to Interrogatory No. 5.**

**INTERROGATORY NO. 9:** Identify all persons involved in the decision to terminate Plaintiff's employment, including each person's role and the basis for their recommendation or decision.

**ANSWER:** The Board does not have knowledge of the conduct of individual employees in the sheriff's office, investigations, or final actions. This is the purview of the sheriff's office rather than the Board. Outside of situations that result in litigation, the Board would not have any prior knowledge. To the extent representatives of the Sheriff's Office officials have responded to this and similar interrogatories, the Board incorporates them herein.

**FIRST SUPPLEMENTAL ANSWER: See Bates numbered documents 000113-000652 and 001063-001293.**

**INTERROGATORY NO. 13:** Do you contend that LCSO has applied and does apply ADM 1-02-2 equally to male and female deputies? If yes, explain why Plaintiff was found to have violated the policy but Victor Murillo was exonerated of a violation in Administrative Investigation 23AI-007.

**ANSWER:** The Board does not have knowledge of the conduct of individual employees in the sheriff's office, investigations, or final actions. This is the purview of the sheriff's office rather than the Board. Outside of situations that result in litigation, the Board would not have any prior knowledge. To the extent representatives of the Sheriff's Office officials have responded to this and similar interrogatories, the Board incorporates them herein.

**FIRST SUPPLEMENTAL ANSWER: See Defendant Michael Walker's Answer to Interrogatory No. 4. See also Defendant Sheriff Corey Helton's Answer to Interrogatory No. 4.**

Respectfully submitted,

MYNATT SPRINGER P.C.

BENJAMIN J. YOUNG
New Mexico Bar No. 144702
SARA E. WOODS
New Mexico Bar No. 149555
P.O. Box 2699
Las Cruces, New Mexico 88004-2699
(575) 524-8812
bjy@mynattspringer.com
sew@mynattspringer.com
*Attorneys for County Defendants*

# EXHIBIT L

| # | Source | From | To | All timestamps | Content | Deleted | * |
|---|--------|------|-----|----------------|---------|---------|---|
| | | | | | PM(UTC-6)<br><br>doporto243@yahoo.com<br>Diana Garcia<br><br>**Status:** Read<br>**Message Type:**<br>iMessage<br>**Folder:**<br>Inbox | | |
| 209 | Native Messages | +15756022370<br>Diana Garcia*<br>(owner) | +15759421579<br>L-24 S. Estrada*<br>doporto243@yahoo.com<br>Diana Garcia* (owner) | Timestamp:<br>6/13/2023<br>6:01:55<br>PM(UTC-6) | **Direction:**<br>Outgoing<br>**Body:**<br>Oh yesss girl<br><br>**Participants:**<br><br>Participant Delivered Read Played<br><br>+15759421579 L-24 S.  6/13/2023<br>Estrada  6:01:55<br>PM(UTC-6)<br><br>doporto243@yahoo.com<br>Diana Garcia<br><br>**Status:** Sent<br>**Message Type:**<br>iMessage<br>**Folder:**<br>Sent | | |
| 210 | Native Messages | +15756022370<br>Diana Garcia*<br>(owner) | +15759421579<br>L-24 S. Estrada*<br>doporto243@yahoo.com<br>Diana Garcia* (owner) | Timestamp:<br>6/13/2023<br>6:02:00<br>PM(UTC-6) | **Direction:**<br>Outgoing<br>**Body:**<br>Ahorita te llamo<br><br>**Participants:**<br><br>Participant Delivered Read Played<br><br>+15759421579 L-24 S.  6/13/2023<br>Estrada  6:02:00<br>PM(UTC-6)<br><br>doporto243@yahoo.com<br>Diana Garcia<br><br>**Status:** Sent<br>**Message Type:**<br>iMessage<br>**Folder:**<br>Sent | | |
| 211 | Native Messages | +15756022370<br>Diana Garcia*<br>(owner) | +15759421579<br>L-24 S. Estrada*<br>doporto243@yahoo.com<br>Diana Garcia* (owner) | Timestamp:<br>6/13/2023<br>6:50:51<br>PM(UTC-6) | **Direction:**<br>Outgoing<br>**Body:**<br>Murillos truck is at Budrows<br><br>**Participants:** | | |

| # | Source | From | To | All timestamps | Content | Deleted | * |
|---|--------|------|----|----|---------|---------|---|
| | | | | | Participant Delivered Read Played<br><br>+15759421579 L-24 S. Estrada    6/13/2023 6:50:52 PM(UTC-6)<br><br>doporto243@yahoo.com Diana Garcia<br><br>**Status:** Sent<br>**Message Type:** iMessage<br>**Folder:** Sent | | |
| 212 | Native Messages | +15756022370 Diana Garcia* (owner) | +15759421579 L-24 S. Estrada* doporto243@yahoo.com Diana Garcia* (owner) | Timestamp: 6/13/2023 6:51:07 PM(UTC-6) | **Direction:** Outgoing<br>**Body:** He left with Karina<br><br>**Participants:**<br><br>Participant Delivered Read Played<br><br>+15759421579 L-24 S. Estrada    6/13/2023 6:51:08 PM(UTC-6)<br><br>doporto243@yahoo.com Diana Garcia<br><br>**Status:** Sent<br>**Message Type:** iMessage<br>**Folder:** Sent | | |
| 213 | Native Messages | +15756022370 Diana Garcia* (owner) | +15759421579 L-24 S. Estrada* doporto243@yahoo.com Diana Garcia* (owner) | Timestamp: 6/13/2023 6:51:21 PM(UTC-6) | **Direction:** Outgoing<br>**Body:** Te digo 🙊<br><br>**Participants:**<br><br>Participant Delivered Read Played<br><br>+15759421579 L-24 S. Estrada    6/13/2023 6:51:22 PM(UTC-6)<br><br>doporto243@yahoo.com Diana Garcia<br><br>**Status:** Sent<br>**Message Type:** iMessage<br>**Folder:** Sent | | |
| 214 | Native Messages | +15759421579 L-24 S. Estrada* | +15756022370 Diana Garcia* (owner) doporto243@yahoo.com | Timestamp: 6/13/2023 | **Direction:** Incoming | | |

| # | Source | From | To | All timestamps | Content | Deleted | * |
|---|--------|------|-----|----------------|---------|---------|---|
| | | | Diana Garcia* (owner) | 6:51:33 PM(UTC-6) | **Body:** Wtf <br><br> **Participants:** <br><br> Participant Delivered Read Played <br><br> +15756022370 Diana Garcia   6/13/2023 6:52:11 PM(UTC-6) <br><br> doporto243@yahoo.com Diana Garcia <br><br> **Status:** Read <br> **Message Type:** iMessage <br> **Folder:** Inbox | | |
| 215 | Native Messages | +15759421579 L-24 S. Estrada* | +15756022370 Diana Garcia* (owner) doporto243@yahoo.com Diana Garcia* (owner) | **Timestamp:** 6/13/2023 6:52:13 PM(UTC-6) | **Direction:** Incoming <br> **Body:** For sure ?? <br><br> **Participants:** <br><br> Participant Delivered Read Played <br><br> +15756022370 Diana Garcia   6/13/2023 6:52:12 PM(UTC-6) <br><br> doporto243@yahoo.com Diana Garcia <br><br> **Status:** Read <br> **Message Type:** iMessage <br> **Folder:** Inbox | | |
| 216 | Native Messages | +15759421579 L-24 S. Estrada* | +15756022370 Diana Garcia* (owner) doporto243@yahoo.com Diana Garcia* (owner) | **Timestamp:** 6/13/2023 6:52:17 PM(UTC-6) | **Direction:** Incoming <br> **Body:** He's with her ? <br><br> **Participants:** <br><br> Participant Delivered Read Played <br><br> +15756022370 Diana Garcia   6/13/2023 6:52:16 PM(UTC-6) <br><br> doporto243@yahoo.com Diana Garcia <br><br> **Status:** Read <br> **Message Type:** iMessage | | |

TELLO000567

| # | Source | From | To | All timestamps | Content | Deleted | * |
|---|--------|------|-----|----------------|---------|---------|---|
| | | | | | **Folder:** Inbox | | |
| 217 | Native Messages | +15759421579 L-24 S. Estrada* | +15756022370 Diana Garcia* (owner) doporto243@yahoo.com Diana Garcia* (owner) | **Timestamp:** 6/13/2023 6:52:31 PM(UTC-6) | **Direction:** Incoming **Body:** Gonna send you a text from the burner phone  **Participants:** Participant Delivered Read Played  +15756022370 Diana Garcia   doporto243@yahoo.com Diana Garcia  6/13/2023 6:52:30 PM(UTC-6)  **Status:** Read **Message Type:** iMessage **Folder:** Inbox | | |
| 218 | Native Messages | +15756022370 Diana Garcia* (owner) | +15759421579 L-24 S. Estrada* doporto243@yahoo.com Diana Garcia* (owner) | **Timestamp:** 6/13/2023 6:52:38 PM(UTC-6) | **Direction:** Outgoing **Body:** I bet you anything he told Megan that he was going on a work trip.  **Participants:** Participant Delivered Read Played  +15759421579 L-24 S. Estrada   doporto243@yahoo.com Diana Garcia  6/13/2023 6:52:39 PM(UTC-6)  **Status:** Sent **Message Type:** iMessage **Folder:** Sent | | |
| 219 | Native Messages | +15759421579 L-24 S. Estrada* | +15756022370 Diana Garcia* (owner) doporto243@yahoo.com Diana Garcia* (owner) | **Timestamp:** 6/13/2023 6:52:55 PM(UTC-6) | **Direction:** Incoming **Body:** We're gonna text her  **Participants:** Participant Delivered Read Played  +15756022370 Diana Garcia  6/13/2023 6:52:54 PM(UTC-6) | | |

TELLO000568

file:///C:/Users/Curtis/AppData/Local/Temp/ac36b40c-ed45-4057-a2f4-181029dd9e23_OneDrive_2_4-2-2025 (1).zip.e23/Att-30 Extraction Repor…     568/1511

| # | Source | From | To | All timestamps | Content | Deleted | * |
|---|--------|------|-----|----------------|---------|---------|---|
| | | | | | **Participants:**<br><br>Participant Delivered Read Played<br><br>+15759421579 L-24 S. Estrada    6/13/2023 6:53:31 PM(UTC-6)<br><br>doporto243@yahoo.com Diana Garcia<br><br>**Status:** Sent<br>**Message Type:** iMessage<br>**Folder:** Sent | | |
| 223 | Native Messages | +15756022370 Diana Garcia* (owner) | +15759421579 L-24 S. Estrada* doporto243@yahoo.com Diana Garcia* (owner) | Timestamp: 6/13/2023 6:53:36 PM(UTC-6) | **Direction:** Outgoing<br>**Body:** So it makes no sense<br><br>**Participants:**<br><br>Participant Delivered Read Played<br><br>+15759421579 L-24 S. Estrada    6/13/2023 6:53:36 PM(UTC-6)<br><br>doporto243@yahoo.com Diana Garcia<br><br>**Status:** Sent<br>**Message Type:** iMessage<br>**Folder:** Sent | | |
| 224 | Native Messages | +15759421579 L-24 S. Estrada* | +15756022370 Diana Garcia* (owner) doporto243@yahoo.com Diana Garcia* (owner) | Timestamp: 6/13/2023 6:53:43 PM(UTC-6) | **Direction:** Incoming<br>**Body:** Exactly<br><br>**Participants:**<br><br>Participant Delivered Read Played<br><br>+15756022370 Diana Garcia    6/13/2023 6:53:42 PM(UTC-6)<br><br>doporto243@yahoo.com Diana Garcia<br><br>**Status:** Read<br>**Message Type:** iMessage<br>**Folder:** Inbox | | |
| 225 | Native Messages | +15756022370 | +15759421579 L-24 S. Estrada* | Timestamp: 6/13/2023 | **Direction:** Outgoing | | |

| # | Source | From | To | All timestamps | Content | Deleted | * |
|---|--------|------|-----|----------------|---------|---------|---|
| | | Diana Garcia* (owner) | doporto243@yahoo.com Diana Garcia* (owner) | 6:54:25 PM(UTC-6) | **Participants:** Participant Delivered Read Played <br><br> +15759421579 L-24 S. Estrada — 6/13/2023 6:54:27 PM(UTC-6) <br><br> doporto243@yahoo.com Diana Garcia <br><br> **Attachments:** <br><br> IMG_7561.PNG ~/Library/SMS/Attachments/74/04/AAE959FB-EE12-4B52-AAA2-329601FD59C7/IMG_7561.PNG <br> **Status:** Sent <br> **Message Type:** iMessage <br> **Folder:** Sent | | |
| 226 | Native Messages | +15756022370 Diana Garcia* (owner) | +15759421579 L-24 S. Estrada* doporto243@yahoo.com Diana Garcia* (owner) | Timestamp: 6/13/2023 6:54:28 PM(UTC-6) | **Direction:** Outgoing <br> **Body:** Just got it <br><br> **Participants:** Participant Delivered Read Played <br><br> +15759421579 L-24 S. Estrada — 6/13/2023 6:54:28 PM(UTC-6) <br><br> doporto243@yahoo.com Diana Garcia <br><br> **Status:** Sent <br> **Message Type:** iMessage <br> **Folder:** Sent | | |
| 227 | Native Messages | +15759421579 L-24 S. Estrada* | +15756022370 Diana Garcia* (owner) doporto243@yahoo.com Diana Garcia* (owner) | Timestamp: 6/13/2023 6:54:39 PM(UTC-6) | **Direction:** Incoming <br> **Body:** She's gonna send you the video <br><br> **Participants:** Participant Delivered Read Played <br><br> +15756022370 Diana Garcia — 6/13/2023 6:54:39 PM(UTC-6) | | |

TELLO000571

| # | Source | From | To | All timestamps | Content | Deleted | * |
|---|--------|------|-----|---------------|---------|---------|---|
| | | | | | **Folder:**<br>Inbox | | |
| 294 | Native Messages | +15759421579<br>L-24 S. Estrada* | +15756022370<br>Diana Garcia* (owner)<br>doporto243@yahoo.com<br>Diana Garcia* (owner) | **Timestamp:**<br>6/14/2023<br>12:24:25<br>PM(UTC-6) | **Direction:**<br>Incoming<br>**Body:**<br>They ain't catching us<br><br>**Participants:**<br><br>Participant Delivered Read Played<br><br>+15756022370 Diana Garcia    6/14/2023 12:24:26 PM(UTC-6)<br><br>doporto243@yahoo.com Diana Garcia<br><br>**Status:** Read<br>**Message Type:** iMessage<br>**Folder:** Inbox | | |
| 295 | Native Messages | +15756022370<br>Diana Garcia* (owner) | +15759421579<br>L-24 S. Estrada*<br>doporto243@yahoo.com<br>Diana Garcia* (owner) | **Timestamp:**<br>6/14/2023<br>12:24:36<br>PM(UTC-6) | **Direction:**<br>Outgoing<br>**Body:**<br>Hell no they ain't. 😊<br><br>**Participants:**<br><br>Participant Delivered Read Played<br><br>+15759421579 L-24 S. Estrada    6/14/2023 12:24:36 PM(UTC-6)<br><br>doporto243@yahoo.com Diana Garcia<br><br>**Status:** Sent<br>**Message Type:** iMessage<br>**Folder:** Sent | | |
| 296 | Native Messages | +15759421579<br>L-24 S. Estrada* | +15756022370<br>Diana Garcia* (owner)<br>doporto243@yahoo.com<br>Diana Garcia* (owner) | **Timestamp:**<br>6/14/2023<br>12:26:13<br>PM(UTC-6) | **Direction:**<br>Incoming<br>**Body:**<br>Deny deny deny<br><br>**Participants:**<br><br>Participant Delivered Read Played<br><br>+15756022370 Diana Garcia    6/14/2023 12:30:20 PM(UTC-6) | | |

EXHIBIT M

**Page 1**

1       IN THE UNITED STATES DISTRCIT COURT
2          FOR THE DISTRICT OF NEW MEXICO
3    --------------------------
4    KARINA TELLO,
5              Plaintiff,
6       v.              Case No.:
7    LEA COUNTY BOARD OF        2:24-CV-00390-KG-GJF
8    COUNTY COMMISSIONERS,
9    COREY HELTON, MICHAEL
10   WALKER, FERNANDO JIMENEZ,
11   SEAN ROACH, SONIA ESTRADA,
12   DIANA JURADO-GARCIA,
13   AILEEN VIZCARRA, ALYSSA
14   PORRAS, DOE DEFENDANTS 1-50,
15            Defendants.
16   --------------------------
17
18        Deposition of SONIA ESTRADA
19           CONDUCTED VIRTUALLY
20            AUGUST 11, 2025
21             9:46 A.M.
22
23   Job No.: 593110
24   Pages: 1 - 213
25   Transcribed by: KRISTINA SWIFT

**Page 2**

1       Deposition of SONIA ESTRADA, conducted
2    virtually.
3
4
5
6       Pursuant to agreement, before BRIAN KRIEGER,
7    Notary Public in and for the State of NEW MEXICO.
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

**Page 3**

1              A P P E A R A N C E S
2
3    ON BEHALF OF THE PLAINTIFF, KARINA TELLO:
4         CURTIS WALDO, ESQUIRE
5         WALDO GUBERNICK LAW ADVOCATES LLP
6         717 TEXAS AVENUE
7         SUITE 1200
8         HOUSTON, TEXAS 77002
9         346-394-8056
10
11   ON BEHALF OF THE DEFENDANTS, LEA COUNTY BOARD
12   OF COUNTY COMMISSIONERS, COREY HELTON, MICHAEL
13   WALKER, FERNANDO JIMINEZ, AND SEAN ROACH:
14         BENJAMIN YOUNG, ESQUIRE
15         MYNATT SPRINGER PC
16         1660 HICKORY LOOP
17         LAS CRUCES, NEW MEXICO 88005
18         575-524-8815
19
20   ON BEHALF OF THE DEFENDANTS, DIANA JURADO,
21   AILEEN VIZCARRA, AND SONIA ESTRADA:
22         CODY R. ROGERS, ESQUIRE
23         SERPE ANDREWS
24         2540 EL PASEO ROAD
25         SUITE D

**Page 4**

1         LAS CRUCES, NEW MEXICO 88001
2         575-288-1453
3
4    ON BEHALF OF THE DEFENDANT, ALLYSSAS PORRAS:
5         MICHAEL NEWELL, ESQUIRE
6         NEWELL LAW FIRM, LLC
7         10 WEST ADAMS AVENUE
8         SUITE E
9         LOVINGTON, NEW MEXICO 88260
10        575-739-6395
11
12   ALSO PRESENT:
13   Kollin Casarez, Videographer
14   Jim Bob Hardy, Investigator
15
16
17
18
19
20
21
22
23
24
25

---

**5**

C O N T E N T S

EXAMINATION OF SONIA ESTRADA                     PAGE

By MR. WALDO                                        6

By MR. YOUNG                                      210

E X H I B I T S

(Attached to transcript)

ESTRADA DEPOSITION EXHIBIT                        PAGE

Exhibit 1  Screenshots                             10

Exhibit 2  Text messages                           13

Exhibit 3  Call log                                20

Exhibit 4  Discovery responses                     79

Exhibit 5  Screenshots                            102

Exhibit 6  Investigation report                   105

Exhibit 7  Memos                                  127

---

**6**

P R O C E E D I N G S

Whereupon,

SONIA ESTRADA,

being first duly sworn or affirmed to testify to
the truth, the whole truth, and nothing but the
truth, was examined and testified as follows:

EXAMINATION BY COUNSEL FOR THE PLAINTIFF

BY MR. WALDO:

Q   Ms. Estrada, my name is Curtis Waldo. I'm
an attorney. I represent Karina Tello in a civil
lawsuit that she has filed against you and a
number of others. Do you understand that, ma'am?

A   Yes, sir.

Q   Can you say your name and address for the
record, please?

MS. ROGERS:  No, you don't have to give
your full address, but you can say your name.

A   (Inaudible.)

THE COURT REPORTER:  I'm sorry, ma'am. Can
you please repeat that?

THE WITNESS:  Sonia Estrada.

MR. WALDO:  Can you hear the witness okay?

THE COURT REPORTER:  Yeah, if she can speak
up a little bit more, please.

THE WITNESS:  Sonia Estrada.

---

**7**

THE COURT REPORTER:  Perfect.

BY MR. WALDO:

Q   Ms. Estrada, I know you've been charged
with some criminal charges in the past relating to
your actions about Ms. Tello. You pled no contest to
those charges. You understand this is a different
proceeding than that proceeding, yes?

MS. ROGERS:  Object to the preamble. Go
ahead.

A   Yes.

Q   You understand this is a civil proceeding,
not a criminal proceeding, yes?

A   Yes.

Q   You understand, although you're called a
defendant in this case, you're not at risk of going
to prison, anything like that, right?

A   Yes.

Q   Have you ever been deposed before, ma'am,
in a civil lawsuit?

A   No.

Q   Well, let me just go through a few ground
rules and some of this you spoke about with the court
reporter and the videographer beforehand, but we're
trying to take a written record and a video record of
what goes on here, so it'll be easier for everyone if

---

**8**

we speak in actual words, not shrugs or mm-hmms,
things like that. It'll be a lot easier if you let me
finish my question. I'll try to do the same and let
you finish your answer. Does that sound okay?

A   Yes.

Q   We'll be together here for many hours
today, so if you want to take a break, go outside, go
to the restroom, get a snack, just let me know, okay?

A   Okay.

Q   Are you under any medication or other drugs
that would prevent you from giving me truthful
answers today?

A   No.

Q   I'll also be asking you a lot of questions
about what happened with Ms. Tello, some other
related matters. If you don't understand the question
that I ask you, I would ask that you tell me that and
I'll try to reword my question. Does that sound fair?

A   Yes.

Q   I want to talk for a second about the oath
you took a moment ago with the court reporter to tell
the truth. You understand that oath applies the same
here as if you were in front of a judge or a jury in
a courtroom?

A   Yes.

173

1  them in regards to a party? I'm trying to understand.
2  **A  Yeah, possibly.**
3  Q  We're 10 steps ahead of them, and then you
4  follow up with the text to Diana. You say, They ain't
5  catching us. Well, what is this referring to?
6  **A  We're the guys that were dating, and then**
7  **they catch us.**
8  Q  Yeah, so you're 10 steps ahead of the guys
9  that you're dating, and the guys aren't catching you.
10  **A  Possibly. We talk about men as well.**
11  Q  Diana responds to you on 596. Diana says,
12  Hell no, they ain't. Some sort of emoji there, and
13  then you respond, Deny, deny, deny. Do you see that?
14  **A  I do, sir.**
15  Q  What did you mean by that? Deny, deny,
16  deny?
17  **A  I do not recall what we were discussing.**
18  Q  All right, and we had a conversation
19  earlier about that, TracFone's, the text messages
20  that they get. Do you recall how that was sent the
21  evening of June 13th? Do you recall that?
22  **A  Yes, sir.**
23  Q  Now here is midday on June 14th, and you're
24  saying, Deny, deny, deny. So is it a coincidence that
25  you're saying, Deny, deny, deny, the day after the

174

1  text, the intimate video, was sent to Andy Dominguez.
2      MS. ROGERS:  Form and foundation.
3  **A  I'm just saying I don't know what the text**
4  **messages are about. I don't recall what the text**
5  **messages were about.**
6  Q  You're talking about this text message
7  where you say, Deny, deny, deny?
8  **A  All those text messages.**
9  Q  You deny that you know anything about the
10  text messages?
11      MS. ROGERS:  Form and foundation.
12  **A  I forgot about everything. It's been a long**
13  **time.**
14  Q  Yeah, so you're doing what you say right
15  here. You're denying that you know anything about the
16  text messages?
17      MS. ROGERS:  Form and foundation. She
18  already said that she doesn't remember what the
19  conversation was about.
20  **A  (Inaudible.)**
21      THE COURT REPORTER:  I'm sorry, ma'am. Can
22  you repeat that, please?
23      THE WITNESS:  I do not recall or remember
24  what the conversations were about it.
25  Q  97, this is after the deny, deny, deny

175

1  text. So Diana responds, 100, and then she follows up
2  with the text to you, I don't think they'll even ask
3  you if you did it. Do you see that?
4  **A  Yes.**
5  Q  Then you respond, I don't think they care,
6  and low-key, love it. Do you see that?
7  **A  I do.**
8  Q  Okay, and who is the they being referred to
9  here?
10  **A  I don't know.**
11  Q  That be the boyfriend?
12  **A  (Inaudible.)**
13  Q  What would the boyfriend be asking if you
14  did it?
15      MS. ROGERS:  Form and foundation.
16  **A  I'm assuming. I do not remember what this**
17  **conversation was about.**
18  Q  Well, you said it was possibly the
19  boyfriend, so I just wanted to understand if there
20  was some context I was missing.
21      MS. ROGERS:  Form and foundation.
22  **A  I don't remember the context.**
23  Q  I'm giving you a lot of context here, so
24  let's keep going. I don't think they care, and low-
25  key, love it. Now, Diana says, I agree, and then you

176

1  respond, The moral of the story is don't try to take
2  down good women, because they will fight back. Do you
3  see that?
4  **A  I do.**
5  Q  Who are the good women being referred to
6  here?
7  **A  I don't know.**
8  Q  Are you one of the good women?
9  **A  I'm a good woman.**
10  Q  Are you one of the good women trying to be
11  taken down?
12  **A  I don't recall what that text message was**
13  **about.**
14  Q  Were you -- scratch that. The next text
15  from Diana to you, Exactly, and you'll have an army
16  (inaudible.) You see that?
17  **A  Yes, I do.**
18  Q  Do you have an understanding of what was
19  being referred to here by Diana?
20  **A  I don't.**
21  Q  Okay, so that was all sort of midday, June
22  the 15th. Let's see what happens after that. Anything
23  new, question mark, from Sonia to Diana. Diana
24  responds, Nada, some sort of emoji there, music to
25  blame. Does this mean, if you know, Diana says to you,

# EXHIBIT N

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

KARINA TELLO,

        Plaintiff,

v.                                   No. 2:24-cv-00390-KG-GJF

LEA COUNTY BOARD OF COUNTY
COMMISSIONERS, COREY HELTON,
MICHAEL WALKER, FERNANDO JIMENEZ,
SEAN ROACH, SONIA ESTRADA,
DIANE JURADO-GARCIA,
AILEEN VIZCARRA, ALYSSA PORRAS,
DOE DEFENDANTS 1-50,

        Defendants.

## DEFENDANT SEAN ROACH'S FIRST SUPPLEMENTAL ANSWERS AND RESPONSES TO FIRST INTERROGATORIES AND REQUESTS FOR PRODUCTION,

Defendant Sean Roach, by and through counsel of record, MYNATT SPRINGER P.C. (Benjamin J. Young and Sara E. Woods), hereby submits *First Supplemental Answers and Responses Plaintiff's First Interrogatories and Requests for Production*.

## GENERAL OBJECTIONS

1.  Defendant objects to all of plaintiff's requests to the extent they seek production of information (a) protected by the attorney-client privilege, (b) protected by the attorney work product doctrine, or (c) prepared in anticipation of litigation by or for this defendant, or by or for this representative of this defendant.

2.  Defendant objects to any of plaintiff's definitions and/or instructions to the extent that they facially exceed the requirements of or are contrary to the Federal Rules of Civil Procedure.

3.  Defendant objects to all requests to the extent they seek information that is not relevant to any claim or defense in this lawsuit, and thus exceeds the scope of discovery permissible under

Rule 26(b)(1) of the Federal Rules of Civil Procedure.

4.    Defendant objects to these requests to the extent that they seek information as to which the burden of ascertaining or obtaining such information is substantially the same for plaintiff as it is for defendant.

5.    Defendant objects to these interrogatories and requests to the extent they seek information which is in the possession of plaintiff.

6.    Defendant continues to identify, collect, and review information that may be responsive to these interrogatories and requests, and if additional responsive information is discovered, then Defendant will timely supplement her responses and objections, if necessary, and in accordance with Rule 26 of the Federal Rules of Civil Procedure and any pretrial scheduling order.

## RESPONSES TO REQUESTS FOR PRODUCTION

**REQUEST FOR PRODUCTION NO. 1:** Communications between you and any other Defendant relating to Plaintiff.

**RESPONSE: Defendant Sean Roach has no records responsive to this request.**

**FIRST SUPPLEMENTAL RESPONSE: See Bates Nos. 001349 – 001389.**

Respectfully submitted,

MYNATT SPRINGER P.C.

_____
BENJAMIN J. YOUNG
New Mexico Bar No. 144702
SARA E. WOODS
New Mexico Bar No. 149555
P.O. Box 2699
Las Cruces, New Mexico 88004-2699
(575) 524-8812
bjy@mynattspringer.com
sew@mynattspringer.com
*Attorneys for County Defendants*

# EXHIBIT O







# EXHIBIT P

**1**

```
1        IN THE UNITED STATES DISTRICT COURT
2          FOR THE DISTRICT OF NEW MEXICO
3    ------------------------x
4  KARINA TELLO,
5           PLAINTIFF,
6  v.              :  2:24-cv-00390-KG-GJF
7  LEA COUNTY BOARD OF COUNTY:
8  COMMISSIONERS, COREY    :
9  HELTON, MICHAEL WALKER,  :
10 FERNANDO JIMENEZ, SEAN   :
11 ROACH, SONIA ESTRADA,    :
12 DIANA JURADO-GARCIA,AILEEN:
13 VIZCARRA, ALYSSA PORRAS,  :
14 DOE DEFENDANTS 1-50,     :
15         DEFENDANTS.      :
16 ------------------------x
17
18        DEPOSITION OF SEAN ROACH
19          Conducted Virtually
20        Tuesday, August 12, 2025
21             9:33 a.m. CDT
22
23 Job No.:  593112
24 Pages:  1 - 261
25 Transcribed By:  Tatian Friedt
```

**2**

```
1        Deposition of SEAN ROACH, conducted
2  virtually.
3
4
5
6
7
8
9
10
11
12        Pursuant to Notice, before Brian
13 Krieger, CER, Notary Public, in and for the State
14 of Texas.
15
16
17
18
19
20
21
22
23
24
25
```

**3**

```
1         A P P E A R A N C E S
2
3  ON BEHALF OF THE PLAINTIFF, KARINA TELLO:
4      BEN GUBERNICK, ESQUIRE
5      WALDO GUBERNICK LAW ADVOCATES LLP
6      717 Texas Avenue, Ste. 1200
7      Houston, Texas 77002
8      346.394.8056
9
10 ON BEHALF OF THE DEFENDANTS, SEAN ROACH:
11     BENJAMIN YOUNG, ESQUIRE
12     MYNATT SPRINGER PC
13     1660 Hickory Loop
14     Las Cruces, New Mexico 88005
15     575.524.8812
16
17 ON BEHALF OF THE DEFENDANTS, DIANA JURADO, AILEEN
18 VIZCARRA, AND SONIA ESTRADA:
19     CODY R. ROGERS, ESQUIRE
20     SERPE ANDREWS
21     2540 El Paseo Road, Suite D
22     Las Cruces, New Mexico 88001
23     575.288.1453
24
25
```

**4**

```
1     A P P E A R A N C E S (continued)
2
3  ON BEHALF OF THE DEFENDANTS, ALYSSA PORRAS:
4      MICHAEL NEWELL, ESQUIRE
5      NEWELL LAW FIRM, LLC
6      10 W. Adams Avenue, Suite E
7      Lovington, New Mexico 88260
8      575.739.6395
9
10 Also present:
11     KY SHANKLIN - Videographer
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

Transcript of Sean Roach
Conducted on August 12, 2025

29

1 contract or whatnot?
2    **A.  So if there's a criminal element with**
3 **say, one of our employees, if we believe there's a**
4 criminal element, then it (inaudible) using an
5 investigator (inaudible).
6    Q.  Okay.  How do you avoid conflicts of
7 interest?
8    **A.  Within our own agency?**
9    Q.  Yeah.
10   **A.  I can't answer that.  I don't -- I mean,**
11 **most of the IAs, as far as the ones I've done,**
12 **there wasn't anything that could be a conflict of**
13 **interest.  So I can't answer how to avoid one,**
14 because I (inaudible).
15   Q.  Okay.  You said, most, so more than
16 50 percent there haven't been any conflict issues?
17   **A.  I just, I haven't had any conflict**
18 **issue, conflict of interest issues that I've**
19 **(inaudible).**
20   Q.  Okay.  Well, let me -- let me ask a
21 question, let me ask the question like this:
22 Let's say a -- let's say there was an IA involving
23 Walker for instance, and let's say it wasn't a
24 criminal thing, would that get firmed out?
25   **A.  I can't answer that.  I'm not in his**

30

1 **chain of command, he's above mine, so I can't**
2 **answer what would happen with his.**
3    Q.  Okay.  All right.  Let's talk about
4 documents for a minute because I think you talked
5 about -- about a text message and we'll get to
6 those in a second.  Let's -- let's look at a
7 document.  All right.
8        I want to look at a document here.
9 These are your responses, your original discovery
10 responses.  And we'll call this Exhibit A.  All
11 right.  Defendant Sean Roach's Answers to
12 Responses to First Interrogatories Request for
13 Admission.  Let's -- let's -- or I'm sorry,
14 Request for Production.  Let's look at a couple of
15 these.
16       (Exhibit A marked for identification.)
17   **A.  Okay.**
18   Q.  Make sure the big one I want to talk
19 about here is -- okay.  This is on page 2 of the
20 document Responses to Request for Production, this
21 is Request for Production 1.  All right.
22       Here's what the request was,
23 communications between you and any other defendant
24 relating to Plaintiff.  All right.  I'm going to
25 represent to you that these were -- that you were

31

1 served these responses on June 16th.  Does that
2 sound about right?
3    **A.  Yes, sir.**
4    Q.  All right.  What did -- what steps did
5 you take to find communications between you and
6 any other defendant relating to Plaintiff?
7    **A.  I honestly didn't think my phone -- I've**
8 been look (inaudible).  I was too far back to find
9 the ones that he provided to me with for me on
10 Sunday.
11   Q.  Okay.  Well, that's not my -- that
12 wasn't my question.  It said here, Defendant
13 Sean -- Sean Roach has no records responsive to
14 this request.  What steps did you take to see if
15 you had records responsive to the request before
16 you signed off on this?
17   **A.  As I just said, talked with the attorney**
18 **when I was doing it, I did not believe at the**
19 time, I didn't look, because I (inaudible) that
20 far back (inaudible).
21   Q.  Okay.  So you did not look back to text
22 messages from mid-2023, to see if you had anything
23 responsive to this request?
24   **A.  Nope.**
25   Q.  You got to be kidding me.  You're

32

1 serious about this?
2       MR. YOUNG:  Form.  Foundation.
3    Q.  Are you positive about that?
4    **A.  I had assumed, I just said I did not**
5 **realize my phone went back that far.**
6    Q.  But you didn't check?
7    **A.  No, sir.**
8    Q.  What did you check?
9    **A.  Talked with the attorney, answered the**
10 **questions based on my knowledge I had, but I**
11 **(inaudible).**
12   Q.  Was your attorney in -- working at LCSO
13 in mid-2023?
14       MR. YOUNG:  Form.  Foundation.
15   Q.  And how could he possibly help you
16 answer this question?
17       MR. YOUNG:  Foundation.
18   **A.  I can't -- I can't answer.**
19   Q.  This -- these response -- these requests
20 were directed to you; right?
21   **A.  To our attorney, yes, sir.**
22   Q.  No.  But they're not directed to your
23 attorney, they're directed to you, Sean Roach;
24 right?
25   **A.  Yes, sir.**

45

1  Q.  You don't have Slack?
2  **A.  No, sir.**
3  Q.  Do you know what Slack is?
4  **A.  I've heard of it.  The chiefs have**
5  mentioned Slack before, but (inaudible) never had
6  the app or the program.
7  Q.  Okay.  Do you know if -- sure about
8  that?
9  **A.  That I've never had it?  Yeah.**
10  Q.  Yeah.
11  **A.  100 percent sure.**
12  Q.  Okay.  All right.  I want to just follow
13  up with something we talked about a minute ago.
14  So for people at LCSO on your work phone, do you
15  have their contact saved in your -- in that phone?
16  **A.  Yes, sir.**
17  Q.  All right.  So if you need to send a
18  text message to Michael Walker, how would you go
19  about doing that?
20  **A.  Go to his text string.  I talk to him**
21  **quite a bit because of work, so I'll just go to**
22  **his text string, click on it, send a text.**
23  Q.  Okay.  So all right.  I'm having a
24  problem with that because -- well, let me ask a
25  question like this:  Do you know Michael Walker,

46

1  are you aware that he's a defendant in this case;
2  right?
3  **A.  Yes, sir.**
4  Q.  Okay.  Let's look at Request For
5  Production 1, communications between you and any
6  other defendant relating to Plaintiff.  Now, you
7  told me a few minutes ago that you scrolled down
8  and you didn't see any text chains with any of
9  those people but that was a lie, wasn't it,
10  because you saw a text chain --
11  MR. YOUNG:  Foundation.  Don't answer
12  that.
13  Q.  No.
14  MR. YOUNG:  It's not a lie.
15  Q.  Did you or did you not see a text chain
16  of Michael Walker?  Did you or did you not?
17  MR. YOUNG:  Foundation.
18  **A.  Yes, I did.**
19  Q.  Right?
20  **A.  Yeah.**
21  Q.  Because you text him all the time;
22  right?
23  **A.  But I didn't -- not any far enough back**
24  **on that one that I saw.**
25  Q.  Okay.  So let me just be clear on what

47

1  you did.  You clicked on -- did you click on that
2  text chain?
3  **A.  Already answered it.  I told you all I**
4  **did when I answered that question.**
5  Q.  Oh, no.  That's not what you said,
6  because you told me you scrolled back a little bit
7  and you didn't see any text chains between you or
8  those people.
9  **A.  (Inaudible).**
10  Q.  Okay.  So did you click the text chain
11  of Michael Walker and scroll back?
12  **A.  Yeah, I remember scrolling, that's what**
13  **I remember.  I remember what -- what specifically**
14  **(inaudible) anything like that.**
15  Q.  All right.  Let's talk about -- let's go
16  to another document.  Actually, let me ask you
17  some -- some more -- some more questions.  Did you
18  ever get a preservation letter related to
19  communications in the Tello case?
20  **A.  No, sir.**
21  MR. YOUNG:  Form.  Foundation.
22  Q.  No?
23  **A.  No.**
24  Q.  Do you know what I mean by a
25  preservation letter?

48

1  **A.  Yes, sir.**
2  Q.  You're confident you did not receive
3  one?
4  **A.  Confident I did not request one, yes,**
5  **sir.**
6  Q.  I'm sorry.  No, that wasn't my question.
7  You asked -- you said request.  Did you ever get
8  one?
9  **A.  (Inaudible).**
10  Q.  So you -- you're confident you never
11  received any communications telling you to
12  preserve documents?
13  **A.  If I did receive it?**
14  Q.  Yes.
15  **A.  No, I don't remember ever receiving.**
16  Q.  Okay.  And then -- and to be clear, I
17  don't just mean a preservation letter, did -- did
18  anybody ever tell you in any way to preserve
19  documents related to the Tello matter?
20  MR. YOUNG:  Form.  Foundation.
21  **A.  I don't remember receiving anything like**
22  **that.**
23  Q.  Do you ever delete text messages?
24  **A.  No.**
25  Q.  Okay.  Do you ever delete emails?

Transcript of Sean Roach
Conducted on August 12, 2025

---

49

1  A.  Yes.
2  Q.  What -- what emails do you delete?
3  A.  Inbox gets full, whenever our email on
4  our phone says our box gets full it'll start
5  limiting the amount of storage we have, so
6  (inaudible).
7  Q.  How -- how often do you delete emails?
8  A.  I can't put a time frame.  Just as I
9  open my email, if it doesn't open, I'll start
10  (inaudible).
11  Q.  Okay.  So is that every week, every
12  year, every five years?
13  A.  Once (inaudible).
14  Q.  Okay.  And which emails do you delete?
15  A.  Ones that I should -- think I will
16  delete as far as -- I get emails from being over
17  fleet, the vehicles, I get vendor emails, I get
18  all kinds of emails, so I'll just clean up the
19  ones I don't think I'll need.
20  Q.  So you talked about -- okay.  So how
21  many -- okay.  So help me understand, so do you
22  just start at the top, start scrolling down, and
23  select stuff that you don't think you'll need?
24  A.  Yes, sir.
25  Q.  Okay.  And you do that perhaps every few

---

50

1  months?
2  A.  Yeah.  It'll be a week, you know how
3  many emails I get (inaudible).
4  Q.  So during the pendency of this case,
5  it's conceivable that you deleted emails related
6  to the Tello case?
7  A.  No, sir.
8  Q.  Why not?
9  A.  Because as I just said, things I -- I
10  don't (inaudible).  I'm not the type of person to
11  go and delete stuff that I might need later.
12  Q.  Okay.  So when did you -- when did you
13  form the opinion that you might need this stuff
14  later?
15  A.  (Inaudible).
16  Q.  What do you mean by always?
17  A.  It's my work, I don't delete work stuff
18  (inaudible).
19  Q.  I think you're misunderstanding my
20  question.  (Inaudible) means I'm not asking you.
21  When did you come to the opinion that the Tello
22  stuff was something that you might need later?
23  A.  (Inaudible).
24  Q.  Okay.  All right.  I understand.  All
25  right.  Now, let's get to, we'll call this Exhibit

---

51

1  B.  And this is Defendant Sean Roach's First
2  Supplemental Answers in Responses First
3  Interrogatories Request for Production
4  (inaudible).
5      I'm going to say for the record here
6  that I received this about 50 minutes before the
7  start of the deposition.  All right.
8      When -- do you have -- can you tell me
9  anything about when this document?
10      (Exhibit B marked for identification.)
11  A.  When the document was created?
12  Q.  Yeah.
13  A.  I don't have any idea when this document
14  was (inaudible).
15  Q.  Okay.  Well, it -- it references some
16  supplemental documents here.  I'm going to see if,
17  I think we talked about these a little earlier,
18  these text messages.  I don't care about the
19  substance of any conversations you've had with
20  your attorneys, and I don't want to know, but when
21  did you provide these documents to your attorney?
22  A.  We met on Sunday and went through my
23  phone preparing for deposition and that's about
24  it.
25  Q.  Okay.  So your attorney was with you

---

52

1  when you went through your phone?
2  A.  Yes, sir.
3  Q.  Okay.  And so these documents were --
4  okay.  So you said they were found on Sunday?
5  A.  Yes, sir.
6  Q.  What time of day Sunday?
7  A.  Evening, 5:00, 5:30 (inaudible).
8  Q.  Okay.  And how did these -- how did
9  these documents get off your phone and over to
10  your attorney?  Did he take pictures of them?  Did
11  you screenshot them?  What happened?
12  A.  I screenshotted them and sent them to
13  him.
14  Q.  Okay.  What day did you send them?
15  A.  Monday morning.
16  Q.  Okay.  How long did you spend with your
17  attorney going through your phone?  Again, I don't
18  want to hear about any conversations you had.
19  A.  I was there like an hour,
20  hour-and-a-half, something like that (inaudible).
21  Q.  Where did this meeting take place?
22  A.  The sheriff's office.
23  Q.  Had you ever met with your attorney
24  before?
25  A.  Not in person, no, sir.

---

Transcript of Sean Roach
Conducted on August 12, 2025

53

1    Q.  Okay.  And I think you mentioned that
2  you had a -- did you ever have a phone call with
3  your attorney?
4    **A.  Yes, sir.  (Inaudible).**
5    Q.  All right.  If you had to put a number
6  on it, total in this case, prior to this -- these
7  meetings on -- or meeting or Sunday, how -- how
8  many hours have you spent on the phone with your
9  attorney?
10   **A.  I would say not even an (inaudible).**
11   Q.  Okay.  So you're confident it's less
12  than that?
13   **A.  Yeah.  Very confident.  It's less than**
14  **(inaudible) short conversation.**
15   Q.  So just a series of short conversations?
16   **A.  Yes, sir.**
17   Q.  Okay.  Have you ever been asked to
18  review documents related to -- related to this
19  case -- and actually that's a bad question.
20  Because that kind of gets into -- have you ever
21  reviewed documents related to this case?
22   **A.  I think I answered it the first time.  I**
23  sent (inaudible), I reviewed the -- my IA report,
24  just to refresh my memory, but it was two weeks.
25   Q.  Okay.  So just to be clear, so let's go

54

1  back to Exhibit A then.  You reviewed -- so you
2  reviewed after -- well, let me -- help me just
3  understand response here, Defendant Sean Roach's
4  no records responses request, and in fact, that is
5  your answer for every -- for interrogatory -- for
6  Request for Production 1 through 6 has the same
7  answer; is that correct?
8    **A.  Yes, sir.**
9    Q.  All right.  Did you write that or did
10  someone else write that?
11   **A.  Someone else.**
12   Q.  Okay.  But to be clear, you reviewed
13  these after this answer had been entered in?
14   **A.  Yes, sir.**
15   Q.  Okay.  And you signed off on this;
16  right?
17   **A.  Yes, sir.**
18   Q.  Okay.  All right.  Let's look at some
19  more documents.  Okay.  Here's another -- here's
20  another PDF I received today at -- 50 minutes
21  before the start time for the deposition.  All
22  right.
23        We talked about some text messages that
24  you screenshotted and sent to your attorney;
25  correct?

55

1    **A.  Yes, sir.**
2    Q.  Is that this?
3    **A.  Yes.**
4    Q.  Or is that these, I should say.  It's
5  about 41 pages or so?
6    **A.  Yes, sir.**
7    Q.  Okay.  Let's start.  All right.  This is
8  with -- this is dated May 31, 2023, do you see
9  that?
10   **A.  Yes, sir.**
11   Q.  Okay.  And KT, that's Karina Tello;
12  right?
13   **A.  Yes, sir.**
14   Q.  Okay.  How did you find these -- these
15  text messages on your phone?
16   **A.  Like, actually, like, opened up to start**
17  **a text message, I didn't realize she was still in**
18  my phone (inaudible) contact (inaudible) it popped
19  up and (inaudible).
20   Q.  Okay.  So you clicked, like, new
21  message?
22   **A.  Yes, sir.**
23   Q.  And then you started typing Karina?
24   **A.  Yes, sir.**
25   Q.  And then this popped up; right?

56

1    **A.  Yes, sir.**
2    Q.  How long did it take from the moment you
3  decided to do that to see if you had messages from
4  Karina Tello, to when these popped up?
5    **A.  Not long.**
6    Q.  Less than 20 seconds?
7    **A.  Yes, sir.**
8    Q.  Okay.  And that's the same process as --
9  and let me ask you:  Is that the same --
10  substantively the same process you used to find
11  all the other messages that were produced?
12   **A.  That was the same process on Sonia --**
13  **Sonia Estrada and Victor Murillo.**
14   Q.  Okay.  What about the others?
15   **A.  Walker, I -- I just started scrolling**
16  **forever back and realized that it didn't -- I was**
17  **scrolling, stopped for a second, and then it**
18  opened up more text (inaudible) had to scroll
19  back.
20   Q.  Okay.  But that was -- but that was a
21  very easy text -- wait a minute.  So you -- you
22  first realized that yesterday?
23   **A.  Sunday.**
24        MR. YOUNG:  Form.  Foundation.
25   Q.  Or Sunday, I mean, I'm sorry.

Transcript of Sean Roach
Conducted on August 12, 2025

27 (105 to 108)

105

1    Q.  Let's say instead of -- of going to the
2  Allsup's on Lovington Highway, I go to a gas
3  station that's not on Lovington Highway, I get
4  coffee there.  Now, should I be investigated in an
5  IA?
6    **A.  No, sir.**
7    Q.  Why not?
8    **A.  Because you're still making your way**
9  **back, you're not stopping to get food, you're not**
10  stopping (inaudible).
11    Q.  Okay.  Well, let's -- let's (inaudible)
12  our hypothetical here.  Not only have I stopped to
13  get coffee, I'm also ordering a hot dog.
14        MR. YOUNG:  Form.
15    Q.  What do you think?
16    **A.  Depends on the town and circumstances.**
17  **I can't answer -- I can do hypothetical.**
18    Q.  I know, but this is actually, it does
19  depend, because I'm trying to figure out why you
20  thought this was a big deal.  Okay.  If I have a
21  brief conversation with the gas station attendant
22  before driving back to Hobbs, have I violated
23  policy?
24        MR. YOUNG:  Form.  Foundation.
25    **A.  So the question is not if I felt it was**

106

1  **important, it's the fact that it's three deputies**
2  **filed a complaint (inaudible).**
3    Q.  I don't -- I don't -- I'm not -- but I'm
4  not asking you about that.  The question is
5  whether you felt it was important because you're
6  the witness here.  I'm interested solely in what's
7  going on in your brain, the information in there.
8    **A.  Yes.  I --**
9        MR. YOUNG:  Form.  Foundation.
10    **A.  Three people filed a complaint**
11  **(inaudible).**
12    Q.  Okay.  But wait a minute.  Wait a
13  minute.  Only one person filed a complaint about
14  Tello being at the park; right?
15    **A.  No.**
16    Q.  Who else did?
17    **A.  Multiple instances.  That's a -- that's**
18  a (inaudible) can't take out what they were --
19  what they (inaudible).
20    Q.  Wait a minute.  Are you saying that
21  Tello complained about herself being at the park?
22    **A.  No.**
23    Q.  What are you saying?
24    **A.  Saying they're all three complaining**
25  **about that incident.**

107

1    Q.  Okay.  But again, I'm just trying to
2  understand, let's go back to my gas station
3  hypothetical.  I've swung by a gas station that's
4  not on Lovington Highway, I've ordered a cup of
5  coffee and also a hot dog, and I spend a couple
6  minutes talking to the gas station attendant
7  about -- just small talk.
8        Someone complains about this, has a
9  video of me at the gas station eating the hot dog
10  and talking to the attendant.  Are you going to
11  open an IA into that?
12        MR. YOUNG:  Form.
13    **A.  Again, it depends on (inaudible).  Was**
14  **there a call going on?  Was there not a call going**
15  **on?**
16    Q.  Okay.
17    **A.  Are you supposed to be there?**
18  **(Inaudible).**
19    Q.  Let's try to understand this.  Let's try
20  to understand.  Was there a call going on that
21  Tello was not responding to?
22    **A.  No.**
23    Q.  Okay.  So that answers that question.
24  There's no call going on, make her way back to
25  Hobbs, but I've decided to take this detour, spend

108

1  a couple minutes eating a hot dog, talk to gas
2  station attendants.  Internal investigation?
3        MR. YOUNG:  Form.  Foundation.
4    **A.  Your hypothetical, after she (inaudible)**
5  already told me that (inaudible).
6    Q.  Okay.  Well, let's -- we can -- we can
7  add that in as well.  Here comes the supervisor,
8  the person who's videotaping eating the hot dog,
9  walks in the door and says, hey, what are doing
10  here?  Get back to the office.  And let's say I
11  spend another minute or two talking to the gas
12  station attendant before I leave.  IA?
13        MR. YOUNG:  Form.  Foundation.
14    **A.  It depends.**
15    Q.  What am I -- what does it depend on?
16  What else do you need to know?
17    **A.  The totality.  You can't just**
18  **randomly -- first off, there's no -- there's no**
19  **other gas stations in Lovington at that time of**
20  **night besides Lovington Highway, so it's all --**
21  **it's all irrelevant in a -- on a hypothetical.**
22    Q.  Okay.  What if it's a coffee shop and
23  not a gas station?
24        MR. YOUNG:  Form.
25    **A.  Again, not (inaudible).**

# EXHIBIT Q

Transcript of Michael Walker
Conducted on May 14, 2025

---

**Page 1**

```
              IN THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF NEW MEXICO

KARINA TELLO,                   )
                                )
           Plaintiff,           )
                                )
vs.                             )   2:24-cv-00390-KG-GJF
                                )
LEA COUNTY BOARD OF COUNTY      )
COMMISSIONERS, COREY HELTON,    )
MICHAEL WALKER, FERNANDO        )
JIMENEZ, SEAN ROACH, SONIA      )
ESTRADA, DIANA JURADO-GARCIA,   )
AILEEN VIZCARRA, ALYSSA         )
PORRAS, DOE DEFENDANTS 1-50,    )
                                )
           Defendants           )
```

VIDEOTAPED ORAL DEPOSITION OF

MICHAEL WALKER

MAY 14, 2025

        VIDEOTAPED ORAL DEPOSITION OF MICHAEL WALKER,

produced as a witness at the instance of the Plaintiff,

and duly sworn, was taken in the above-styled and numbered

cause on May 14, 2025, from 9:30 a.m. to 3:23 p.m.,

Mountain Standard Time, by Susan Myatt, Certified Court

Reporter for the States of Texas and New Mexico and

Registered Professional Reporter, reported by computerized

stenotype machine at CORE, 4827 N. Lovington Highway,

Hobbs, New Mexico, pursuant to the Federal Rules of Civil

Procedure and the provisions stated on the record or

attached hereto.

---

**Page 2**

APPEARANCES

FOR PLAINTIFF:

        MR. BENJAMIN GUBERNICK
        MR. CURTIS WALDO
        WALDO GUBERNICK LAW ADVOCATES, LLP
        717 Texas St., Suite 1200
        Houston, TX 77002
        (346) 394-8056
        ben@wglawllp.com
        curtis@wglawllp.com

FOR LEA COUNTY DEFENDANTS:

        MS. SARA E. WOODS
        MYNATT SPRINGER, P.C.
        P. O. Box 2699
        Las Cruces, NM 88004-2699
        (575) 524-8812
        sew@mynattspringer.com

FOR DEFENDANTS ESTRADA, JURADO-GARCIA, AND VIZCARRA:

        MS. CODY R. ROGERS
        SERPE ANDREWS
        2540 El Paseo Road, Suite D
        Las Cruces, NM 88001
        (713) 452-4400
        crogers@serpeandrews.com

FOR DEFENDANT PORRAS:

        MR. MICHAEL NEWELL
        NEWELL LAW FIRM, LLC
        10 W. Adams Avenue, Suite E
        Lovington, NM 88260
        (575) 739-6395
        mnewell@newelllawnm.com

Also Appearing:  Stephen Stone, Videographer

---

**Page 3**

                I N D E X

                                        PAGE

Appearances                               2

WITNESS:  MICHAEL WALKER

        Examination by Mr. Gubernick      5

        Further Examination by Mr. Newell  233

Deposition Concluded                     234

Changes and Signature Page               235

Reporter's Certification                 237


                E X H I B I T S

WALKER DEPOSITION EXHIBIT                 PAGE

A, Walker's LinkedIn Page                 13

B, Defendant Michael Walker's Answers and

        Responses to First Interrogatories  78

C, Roach's Report                        117

D, Termination Notice of Tello           184

E, Employment Evaluation of Tello        185

F, Text Messages                         191

---

**Page 4**

        THE VIDEOGRAPHER:  Here begins the Media

Number 1 in the videotaped deposition of Michael Walker

in the matter of Tello versus Lea County Board of County

Commissioners, et al., in the United States District

Court for the District of New Mexico, Cause Number

2:24-CV-00390-KG-KRS.  Today's date is May 14th, 2025,

and the time on the video monitor is 9:30 a.m.

        The videographer today is Stephen Stone

representing Planet Depos.  And the video deposition is

taking place at 4827 North Lovington Highway, Hobbs, New

Mexico, 88240.

        Would Counsel please voice identify

themselves and state who they represent?

        MR. GUBERNICK:  Ben Gubernick for Plaintiff

Karina Tello.

        MS. WOODS:  Sara Woods for the witness and

the County Defendants.

        MS. ROGERS:  Cody Rogers on behalf of

Aileen Vizcarra, Dinae Garcia, and Sonia Estrada.

        MR. NEWELL:  Michael Newell for Alyssa

Porras.

        THE VIDEOGRAPHER:  Okay.  Our court

reporter today is Susan Myatt, representing Planet Depos.

She will swear in the witness.

---

Transcript of Michael Walker
Conducted on May 14, 2025

85

1   A   Just work stuff.
2   Q   Okay.  And do you ever use a personal phone for
3   work stuff?
4   A   Yes.
5   Q   Okay.  So let me ask you this:  Are Estrada,
6   Vizcarra, and Garcia -- are those contacts saved in your
7   work phone?
8   A   I don't think Estrada is in there any longer,
9   since she doesn't work for us, but the other two, yes.
10  Q   Vizcarra and Garcia are saved contacts in your
11  work phone?
12  A   Yes.
13  Q   Okay.  What about your personal phone?
14  A   Yes.
15  Q   Estrada, too?
16  A   I don't think so.  I think she's gone, too.
17  Q   Did you delete it, or she was never in there?
18  A   No.  She -- I try to clean it up.  So, if it's
19  somebody that doesn't work for us or I don't talk to, I
20  just delete it.
21  Q   Okay.  Would you have deleted the context from
22  the work phone, or would someone in IT, or how would that
23  have gotten deleted?
24  A   No.  That would have been me.
25  Q   That would have been you?

86

1   A   Yes.
2   Q   And you think it's probable, at least, that you
3   also deleted that contact from your personal phone?
4   A   Yes.
5   Q   Okay.  Now, have you searched your work phone
6   for any communications with any Defendant related to
7   Karina Tello?
8   A   Yes.
9   Q   How did you know that?
10  A   I looked at messages and emails that are on my
11  phone.
12  Q   Your work phone?
13  A   Yes.
14  Q   How did you know that?
15  A   I physically looked.
16  Q   Okay.  No.  How did you do that?
17  A   Physically looked.
18  Q   All right.  So I'm going to hold up my cell
19  phone, just as an example.  You know, there's like a
20  little hourglass up here --
21  A   Uh-huh.
22  Q   -- you can use to search for things.  Like, you
23  can query it with terms.  Did you do that?
24  A   No.
25  Q   What did you do?

87

1   A   I just looked like -- because the emails will
2   stay on your phone for so long, whatever it's called, I'll
3   look through there.  I don't have anything.  And I delete
4   all text messages on Mondays.
5   Q   All text messages.  Okay.  So this was pretty
6   quick to do, because you delete all of your text messages
7   every week?
8   A   Yes.
9   Q   So it's not like you -- because if you ask, you
10  know, some people, they might have 15 years of text
11  messages --
12  A   Right.
13  Q   -- saved.  And, obviously, you know, it's going
14  to take a while to search all of those, right?
15  A   Right.
16  Q   Okay.  But that's not an issue for you because
17  you delete all of your text messages every week, right?
18  Q   How long has that been your practice?
19  Q   How long has that been your practice?
20  A   Oh, I've done that for a long time.
21  Q   Can you give me a ballpark?
22  A   Oh, probably -- I know I've done it as long as
23  I've been at the Sheriff's Office, and most -- and I'm
24  sure before that.
25  Q   Is it a standard practice at the Sheriff's

88

1   Department?
2   A   No.  We don't have a policy.
3   Q   You don't have a policy?
4   A   No.
5   Q   So it's just something you do?
6   A   Yes.
7   Q   Did anyone ever ask you to do it?
8   A   No.
9   Q   Do you know anyone else who does it?  And,
10  again, I'm just asking what's in your knowledge.  If you
11  don't, that's fine.
12  A   I have no idea.
13  Q   Okay.  Your personal phone; do you have the
14  same -- do you take the same approach on text messages on
15  your personal phone?
16  A   Yes.
17  Q   Okay.  Is it the same thing, the Monday
18  schedule?
19  A   Yes.
20  Q   And how do you actually go about deleting these
21  things?  Do you just like go through and select everything
22  and then click "delete"?
23  A   Yes.
24  Q   Okay.  And is this like something you do in the
25  morning?  Is it something in the afternoon, end of the

89

1 day? How do you -- How do you remember to do this?
2 **A  I usually do it either Sunday evening or Monday**
3 **mornings.**
4 Q   And this is just routine, like bringing in the
5 newspaper, right --
6 **A  Yes.**
7 Q   -- or checking the mail?  Okay.  Are you
8 familiar with any laws in New Mexico about retention of
9 public records?
10 **A  Very vaguely.**
11 Q   Again, I know you're not a lawyer.  I'm not, you
12 know, trying to like -- I'm not trying to trap you.  I
13 just want to know what you know.
14 **A  Correct.**
15 Q   If I represented to you that there is a law
16 against deleting, you know, text messages and emails and
17 other electronic communications that are sent in your --
18 or received in your official capacity, would that surprise
19 you?
20 **A  Would it surprise me?**
21 Q   Yeah.
22 **A  No.**
23 Q   You would actually expect there to be such a
24 law?
25 **A  Yes.**

90

1 Q   Why would you expect that?
2 **A  Well, I know that there's -- there is a law, to**
3 **some extent, because I know that like we have to keep --**
4 **the email server has to keep it for so many years.**
5 Q   And how long have you known that?
6 **A  For emails?**
7 Q   Yeah.
8 **A  Oh, ten-plus years, I guess.**
9 Q   It's common knowledge?
10 **A  Yeah.**
11 Q   Yeah.  Okay.  So let's try to understand this
12 then.
13     Why have you thought it's okay, for the
14 whole time you've been the Undersheriff, to delete all the
15 messages on your work phone?
16 **A  Because my understanding is:  There's nothing**
17 **that -- There's no law that talks about messaging on a**
18 **phone.**
19 Q   Where -- How have you come to develop this
20 understanding?  Did someone tell you that?
21 **A  That's just my understanding.  No one has ever**
22 **told me anything differently.**
23 Q   It's a hunch?
24 **A  No one has ever told me anything differently.  It's a**
25 Q   Okay.  So I'm going to try that again.  It's a

91

1 hunch?
2 **A  I'm not going to agree with that answer.**
3 Q   Well, then, where did this idea come from?
4 **A  It's just my practice.**
5 Q   Okay.  But it started being your practice at
6 some point.  I'm just trying -- Is this similar to what we
7 were talking about yesterday?
8     Okay.  Let me ask it like this:  What's the
9 difference between an email and a text message?
10 **A  Well, email is sent to an exchange server.**
11 Q   I know.  I'm not asking you the nerdy like
12 technical answer to it.
13     I'm asking:  What is the difference, as
14 just a practical matter?  It's an electronic communication
15 sent by a State actor, right?
16 **A  It's an electronic message.  Yes.**
17 Q   Yeah.  Okay.  What's the difference then?
18 **A  It's -- My understanding is:  There's nothing**
19 **that dictates anything about messaging on the -- messages,**
20 **like texts, or iMessage or any of those things; that**
21 **that's not covered.**
22 Q   Okay.  If I were to represent to you that they
23 are covered, would that surprise you?
24 **A  Yes.**
25     MS. ROGERS:  I'm just going to object to

92

1 the extent that you're misstating the public records laws
2 of New Mexico, but go ahead.
3     MR. GUBERNICK:  That's okay.  You can
4 object however you want.
5 Q   (By Mr. Gubernick:)  Okay.  So your
6 understanding, though, is:  It's fine to just delete these
7 things every week?
8 **A  Yes.**
9 Q   All right.  Did you do anything else to
10 respond -- to see -- to search for responsive documents to
11 Request for Production Number (1)?
12 **A  No.**
13 Q   All right.  Nothing?
14 **A  No.**
15 Q   Do you have any like paper documents laying
16 around your office and stuff?
17 **A  No.**
18 Q   I have no idea what your office looks like.
19 Some people have got piles of paper everywhere.
20 **A  No.**
21 Q   All right.  Request for Production Number (2),
22 did you do anything else, besides what you did for Request
23 for Production Number (1)?
24 **A  No.**
25 Q   (3), same deal?

Transcript of Michael Walker
Conducted on May 14, 2025

---

209

1  did Walker say?" This is right afterwards, where, at
2  2:56 p.m., "Melissa is about to leave. So you can come
3  tell us."
4          I'm assuming that would be Melissa White,
5  right?
6      A  I have no idea.
7          (Discussion off the record out of hearing
8  of court reporter.)
9          MR. GUBERNICK: Yeah. Okay.
10     Q  (By Mr. Gubernick:) And then we have a response
11  here, Dinae telling Aileen, "I'm going to meet with
12  Fernando for the second sample of rice."
13         So they're still talking about the rice,
14  right? And then they say, "Give me a bit. It's a lot."
15         And the response to this: "What did Walker
16  say?" You don't -- They're saying you said a lot. And
17  you don't remember saying anything?
18     A  No.
19     Q  Okay. And then, we get to 4:02. So we're at
20  about an hour, 20 minutes later.
21         "Fernandez and Walker gave us the go to
22  post the video of Karina." It sounds like they're having
23  a lot of contact with you guys on this day.
24         And you agree that this thing with the rice
25  happened. There was apparently a graduation that you went

210

1  to. But you have absolutely no idea what Dinae Garza is
2  saying when she tells Aileen that "Fernando and Walker
3  gave us the go to post the video of Karina"?
4      A  Not at all.
5      Q  To your knowledge, you did not give them the go
6  to post any video?
7      A  That's correct.
8      Q  Okay. Let's look at another one here.
9          It's not even just that they seemed to have
10  talked about you giving them the go. There's actually
11  like kind of a distribution scheme for this, right?
12         "FB," I'm assuming that's Facebook. That's
13  Dinae and Aileen. And then Dinae and Aileen again.
14         "Fernando will record it on his phone from
15  FB 411 and the other pages, and send it up the chain." Do
16  you see that?
17     A  Yes.
18     Q  And you know nothing about this?
19     A  Nothing.
20     Q  Can you agree with me that it reads from this
21  like you and Fernando were involved in the scheme?
22     A  It does.
23     Q  Okay. And just so I'm -- Just so we're clear,
24  you text or texted, I guess, and said you still do, with
25  Dinae quite a lot, right?

211

1      A  On occasion.
2      Q  On occasion? All right. On September 28th,
3  2023, "Major and I have been texting all morning." You
4  know, I --
5      A  I don't know what any of that means.
6      Q  You don't know what they're texting about? And
7  the rest of it is in Spanish.
8      A  Oh.
9      Q  And I'm not asking you what the Spanish means.
10  You don't speak Spanish?
11     A  No.
12     Q  I don't either. I'm not judging.
13         Okay. But it sounds like you text Dinae
14  quite a bit.
15     A  Yes.
16     Q  Okay. So it's possible that you've texted with
17  Dinae about this plan they were discussing, right?
18         MS. WOODS: Form.
19     A  No.
20     Q  (By Mr. Gubernick:) It's possible that you've
21  texted with Dinae about Karina Tello?
22     A  Yes.
23     Q  Okay. In fact, it's probably likely, right?
24     A  It's -- Yes.
25     Q  Okay. And those messages were intentionally

212

1  deleted by you?
2      A  I delete all messages.
3      Q  Okay. Now, that's not my question. Those
4  messages were intentionally deleted by you?
5      A  Yes.
6      Q  Okay. Let's look at some more texts.
7          All right. Here's something interesting.
8  This is Estrada to Dinae Garcia, right?
9          "Tell her to say something. They've both
10  filed complaints against me, mentioned bullying. LMAO.
11  She needs to find out game on bitches."
12         Do you see that?
13     A  Yes.
14     Q  And this is around 6/21/2023. This is around
15  when these memorandums showed up, right?
16     A  Yes.
17     Q  These competing complaints, correct?
18     A  Yes.
19     Q  And one of those -- And two of those complaints
20  were about bullying by Estrada, right?
21     A  Yes.
22     Q  Okay. We agree it's plausible that's what
23  they're talking about here?
24     A  Yes.
25     Q  All right. Well, actually, here's kind of a

# EXHIBIT R

Transcript of Chan Kim

1 (1 to 4)

Conducted on August 7, 2025

**Page 1**

```
 1        IN THE UNITED STATES DISTRICT COURT
 2           FOR THE DISTRICT OF NEW MEXICO
 3   --------------------------------x
 4   PATRICK BURKE,                  :
 5              PLAINTIFF,           :
 6      v.                          :  Case No.:
 7   LEA COUNTY BOARD OF COUNTY      :  2:24-cv-00601-JHR-GBW
 8   COMMISSIONERS, AND COREY HELTON, :
 9              DEFENDANTS.          :
10   --------------------------------x
11
12
13
14
15           Deposition of CHAN KIM
16             Hobbs, New Mexico
17          Thursday, August 7, 2025
18                9:22 a.m.
19
20
21
22
23   Job No.: 593199
24   Pages: 1 - 171
25   Recorded By: Lisa Gross
```

**Page 2**

```
 1      Deposition of CHAN KIM, held at the offices of:
 2
 3
 4
 5
 6      CORE (Center of Recreational Excellence)
 7      4827 N. Lovington Highway
 8      Hobbs, New Mexico 88240
 9
10
11
12
13      Pursuant to Notice, before Lisa Gross, Notary
14   Public, in and for the State of New Mexico.
15
16
17
18
19
20
21
22
23
24
25
```

**Page 3**

```
 1              A P P E A R A N C E S
 2
 3   ON BEHALF OF THE PLAINTIFF, PATRICK BURKE:
 4        BENJAMIN GUBERNICK, ESQUIRE
 5        CURTIS WALDO, ESQUIRE
 6        WALDO GUBERNICK LAW ADVOCATES, LLP
 7        717 Texas Avenue
 8        Suite 1200
 9        Houston, Texas 77002
10        (346) 394-8056
11
12   ON BEHALF OF THE DEFENDANTS, LEA COUNTY BOARD OF
13   COUNTY COMMISSIONERS, AND COREY HELTON:
14        ALAN J. DAHL, ESQUIRE
15        MYNATT SPRINGER P.C.
16        1660 Hickory Loop
17        Las Cruces, New Mexico 88005
18        (575) 524-8812
19
20
21
22
23
24   ALSO PRESENT:
25        Roger Coughlin - Videographer
```

**Page 4**

```
 1              C O N T E N T S
 2   EXAMINATION OF CHAN KIM              PAGE
 3      By Mr. Gubernick                    6
 4
 5
 6              E X H I B I T S
 7        (None marked)
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

Transcript of Chan Kim
Conducted on August 7, 2025

121

1    A   With a small group?  Yes.
2    Q   Okay.  And that's that favored group
3  we're talking about?
4    A   Yes.
5    Q   Okay.  What training does LCSO provide
6  in -- because I know New Mexico has a very robust
7  public records regime for retention of documents.
8  What -- what training does LCSO provide its
9  employees on compliance with it?
10   A   You talking about, like, with the
11 retention?
12   Q   Yes.
13   A   Records, retention, ER requests, things
14 like that or --
15   Q   That sort of thing, yes?
16       MR. DAHL:  Object to form.
17       THE WITNESS:  I would say it depends on
18 the people.  If it's their responsibility, I
19 believe they -- they receive training.
20 BY MR. GUBERNICK:
21   Q   Okay.
22   A   Like, I -- I -- I -- I don't know.
23 Specifically, no.  That's not, for instance,
24 patrol's forte to know what HIPAA requests are,
25 how long you should hold onto records or evidence

122

1  or things like that.  I mean, everyone has got
2  every responsibility.
3    Q   Does senior leadership -- do they
4  comply with record retention requirements?
5        MR. DAHL:  Form.
6        THE WITNESS:  I can't vouch for senior
7  leadership as a whole.
8  BY MR. GUBERNICK:
9    Q   Well, not -- again, you're right.
10 That's -- that's -- that -- that's too broad.
11 Well, let's try to do something a bit more
12 concrete.  Are, you know, written communications,
13 are those done via email?
14   A   Sometimes.
15   Q   When else -- what other medium would be
16 used?
17   A   For directives or just passing along
18 information?
19   Q   Yeah, just -- well, let's look at both.
20 So for directives first?
21   A   I would say as far as directives
22 they're usually via email.
23   Q   Okay.  What about for passing along
24 information?
25   A   We use text messages.  We do use -- we

123

1  use Slack.
2    Q   What -- what is Slack?
3    A   Slack is just another -- it's kind of
4  like GroupMe.  It's just another platform to --
5  to, you know, send information, disseminate
6  information.
7    Q   Okay.  So if let's say Corey Helton and
8  Michael Walker are sending written communications
9  back and forth, they'd be using the Slack system?
10   A   Not necessarily.  Again, that's another
11 difficulty is we really don't have no directive as
12 far as, okay, if it's this, this, and that, you
13 send out an email.  If it's this, this, and that,
14 it's via Slack.  If it's this and that, it's via
15 text messages.  I can just tell you, for instance,
16 if I call in to work and say, hey, I'm -- I'm
17 going to be sick or, you know, I'm sick today, I
18 can't go into work, I'm usually going to send a
19 direct message to the undersheriff to -- on Slack
20 and say, hey, look, I'm not going to be in today.
21 Or I'm going to text message him and say, I'm not
22 going to be in today.  I wouldn't send them an
23 email because, you know, I mean, we don't -- we
24 check emails maybe once, twice, three times a day
25 or whatnot.

124

1    Q   Okay.
2    A   But if it needs immediate attention,
3  I'm usually going to text him or I'm going to send
4  him a direct message on Slack.
5    Q   What -- what is the most used method of
6  communication, then, between -- of text message,
7  email, and Slack?
8    A   It's hard.  It -- it's preference.
9  It's -- it's personal preference as far as if I
10 need to disseminate information that all the
11 chiefs and administration need to know, like an --
12 a -- an ongoing incident, I'm going to put it on
13 Slack.  If it's -- again, if it doesn't need
14 immediate attention, I might just say, hey, you
15 know, I'm going to send it via a text message.  I
16 mean, it's just personal preference.
17       THE VIDEOGRAPHER:  Counsel, could I go
18 off the record for a second for a problem?
19       MR. GUBERNICK:  Oh, yeah, we can do
20 that.
21       THE VIDEOGRAPHER:  Just real quick?
22       MR. GUBERNICK:  Sure.
23       (A recess was taken.)
24       THE VIDEOGRAPHER:  We are back on the
25 record approximately 1:01.

BY MR. GUBERNICK:
Q Okay. So if I remember correctly, before we went off record, we were talking a bit about -- about the systems that LCSO uses for internal communications. And -- and specifically, I was interested in the Slack system because I haven't heard of this.
So -- so how is -- is -- so just like -- just so I understand it just conceptually, is it like a -- is -- do the messages appear on your phone? Do they appear on a computer? Is it like email? How does it work?
**A Yeah, so you can -- I'm sure there's a -- there's a desktop. It's on -- it was on my desktop on my old computer, but it's -- it's -- it's also an app on the phone.**
Q Got it.
**A And so basically the administrator can invite whoever to join the -- the -- the network.**
Q Okay.
**A And so we've got -- usually it's for our captains and above.**
Q So wait, it's captains and above? So -- so it's a network. So is it like a big chat room or something or --



**A Right. Right. Yes, it could be a chat or -- or private message.**
Q Okay. Got it. All right. So do people post a lot of stuff for everyone to look at, or is it mostly just people sending private messages to each other?
**A No, mainly it's -- well, I -- I don't know how others use it if it's private messages because I'm not in that group. But I know that the majority of us use it just to disseminate information that we all need that the command staff need to know about.**
Q Okay.
**A Whether it's a fatal accident or a homicide or a SWAT standoff or something like that.**
Q Well, you said that that group, what group are you referring to?
**A That'd be the -- the general group would be captains and up and -- and up.**
Q Okay. You're -- you're in that group?
**A Yes. Right. I understand that.**
Q Right.
**A But I can also send a direct message --**
Q Oh, okay.
**A -- to the undersheriff or to the**



**sheriff. And it's just seen between the two.**
Q Okay. Got it. Okay. I think I understand. So is there stuff that other people, messages people send on chat that are sent to, you know, everyone that you see or how does --
**A No.**
Q No? Everyone is just private messaging?
**A Only the people that are in that network can see the messages if it's in the group. Because you can have it set-up with administration. You can have it set up with patrol. You can have it -- it's just like GroupMe. You can -- you can group --**
Q Got it.
**A -- the people that want to be on the -- the network in a group or, you know, individually.**
Q So what group are you in?
**A I'm in the administration.**
Q Okay.
**A And then I can -- I can message anyone directly that's on -- on -- on the group.**
Q I understand. So again, you mentioned the -- the groups were administration --
**A And I believe IT.**
Q IT?



**A So that would include all of the command staff and have our IT administrator.**
Q Got it. And what was the other group?
**A I believe that's it on that.**
Q Okay.
**A Or individually we can message --**
Q Send a direct message?
**A Yes, sir.**
Q Okay. I understand. When did -- when did people start using Slack?
**A So as soon as I got promoted to chief deputy, that's the first time I'd heard of it is whenever I was invited by the undersheriff and said, this is what we use for -- for messaging. And so he invited me, I accepted and that's --**
Q Okay. So -- and that was Walker?
**A Yes, sir.**
Q Okay. Just from what you've seen, do -- you know, people, there's, like, the undersheriff and the other chief deputies and the other high-ranking people, do they mostly use Slack or is this used infrequently?
**A Again, what I see the majority of the time is just information sharing of what's going on. Like, for instance, if I had something come**

129

1  up in the Court system to where -- like the other
2  day we had some protesters --
3      Q  Yeah.
4      A  -- at the -- at the courthouse.  So I
5  put on there, group of protesters at the
6  Courthouse, 30, 40 people.  And I said what type
7  of hearing that was going on.
8      Q  Okay.
9      A  That disseminated to our
10 administration.  The sheriff knows what's
11 happening.  The undersheriff knows what's
12 happening.
13     Q  Okay.  So -- but to be clear, though,
14 people are using this system for, you know,
15 work-related communication?
16     A  Yes, sir.
17     Q  Right?
18     A  Yes, sir.
19     Q  Okay.  Has anyone -- as you mentioned
20 you got in, you were invited by Walker.  You use
21 -- he said, this is what we use for messaging.
22 What did he say?
23     A  Yeah, I believe that's what -- that's
24 -- yeah, I believe he said that's what we use.
25 This is our -- we -- we communicate through this.

130

1      Q  Okay.  I got it.  All right.  What's
2  the -- does -- does Slack auto-delete?
3      A  So what -- what I've learned recently --
4      Q  Okay.
5      A  -- is that the program that we're on --
6  I don't know if it's a free trial or not, because
7  I try to go and retrieve information and I can
8  only go past 90 days without -- without being,
9  like, upgrading or something like that.  So I
10 don't know if we're on a free trial.  I don't know
11 what -- I don't -- I don't know much about it.
12     Q  So it doesn't go back more than 90
13 days, though?
14     A  No.  That's what I've experienced.
15     Q  Okay.  All right.  I don't want to get
16 into nuts and bolts of, like, data retention or
17 anything, but that seems a little short, doesn't
18 it?
19     A  Yes, sir.  And I don't know if that's
20 internal issue or if that's -- like again to
21 upgrade to premium services or whatnot.  I -- I --
22 I -- I don't know.
23     Q  You don't know why it's set at 90?
24     A  No, sir.  I do not know.
25     Q  Okay.  I -- I understand.  Have -- have

131

1  you -- are -- are you aware of an -- has you or
2  anyone else brought the fact that, you know, that
3  this doesn't really seem to be Public Records
4  Act-compliant?  Has anyone brought attention to
5  that?
6      MR. DAHL:  Object to foundation.
7      THE WITNESS:  I'm not aware, sir.
8  BY MR. GUBERNICK:
9      Q  Okay.  Huh.  And I think we talked
10 about this a little bit earlier, but -- and so you
11 said it's only captains and above?
12     A  I -- I believe so.
13     Q  Why?
14     A  Because I -- I --
15     Q  Any idea why?
16     A  I -- I -- I don't know.  I mean, that's
17 -- again I mean, like, I have -- a lot of times I
18 have no business talking to a -- a patrol line
19 guy.  I'm going to address my concerns with my
20 supervisor, my captain over that.  I don't need to
21 talk to a sergeant, you know.  So I'll -- I'll
22 message the captain and say, hey, look, this, you
23 know, dude, knock this out or, you know, get this
24 accomplished or whatnot.  So I don't need to have
25 direct contact with -- with my sergeant.  I mean,

132

1  that's the people that report to me.  And what
2  they have in place to communicate with their
3  sergeants, that's kind of up to them.
4      Q  Okay.  And I -- I think -- I think I
5  understand.  So this Slack thing, this wasn't your
6  idea.  This was --
7      A  No, sir.
8      Q  Okay.  All right.  Let me ask you about
9  -- about phones.  We talked a little bit about
10 that earlier, but -- so do you have a work phone
11 and a -- do you -- you have a work phone and a
12 personal phone, right?  I think you --
13     A  Yes, sir.
14     Q  -- you talked about that?
15     A  Yes, sir.
16     Q  Yeah.  I -- I -- I -- correct me.
17 Well, explain to me how this works.  Who -- who at
18 the LCSO gets an actual work phone?  Does
19 everybody, the patrol people get it, or is it not
20 like that?
21     A  I -- I don't know.  I mean, in the
22 beginning, I know that it was supervisors.  So
23 that included corporal, sergeants and up.
24     Q  Right.
25     A  Then I understand, like, for instance,

Transcript of Chan Kim
Conducted on August 7, 2025

34 (133 to 136)

133

1  I believe our PIO might have one.  I -- I don't
2  know.  I don't make those decisions.  I don't know
3  who all has -- unless I look at the roster --
4       Q   Yeah.
5       A   -- and it says work phone and I see
6  that the personal number is different, that's the
7  only way I know that they've got a work phone.
8       Q   Okay.  I -- I -- I understand.  I was
9  just curious.
10      A   Yes, sir.
11      Q   PIO, that's Public Information Officer?
12      A   That's correct.
13      Q   That's what it's called, right?
14      A   That's correct.
15      Q   Yeah.  Okay.  All right.  So you know,
16 just -- just from, I mean, from your experience --
17 well, I -- let me ask a question like this.  Do --
18 as part of your job, do you ever, you know, text
19 with Michael Walker or I guess, well, Fernando
20 Jimenez isn't there anymore, but when he was would
21 you text with them about work ever?
22      A   Sure.
23      Q   And which phone would you use for that?
24      A   Predominantly, I use my work phone.
25      Q   Okay.  Would the numbers -- because I

134

1  -- I imagine you have their contacts saved in your
2  -- in your work phone, right?
3       A   Yes, that's correct.
4       Q   Would -- when -- in your communications
5  with them, either texts you sent them or texts you
6  got from them, did they always use their work
7  phones?
8       A   Majority of the time, yeah.  I mean, I
9  don't -- very seldom do I message someone's
10 personal phone unless I -- they didn't pick up on
11 their -- on their work phone or -- or whatnot.
12 But I don't know -- without even looking, I don't
13 know if I've received a message from his private
14 number or anything like that.
15      Q   Okay.  You're not aware of ever
16 receiving --
17      A   Right.
18      Q   -- messages from these people's --
19      A   That's -- yes, sir.
20      Q   Yeah.  I was wondering if maybe if you
21 had two contacts saved for them, one personal, one
22 work?
23      A   Right.  Right.
24      Q   So you could see where it was coming
25 from, or something like that?

135

1       A   Yes, sir.
2       Q   Okay.  All right.  And have you ever
3  had any sort of -- and not -- I mean, not you
4  generally, but are you aware of any -- any
5  instruct -- well, actually, this -- this is --
6  this is kind of an important question I'd like to
7  know about.  I mean, so the -- the -- you know,
8  I'm sure you're aware, there's quite a bit of
9  litigation involving the Sheriff's Office that's
10 ongoing.
11          Have -- has there ever been any --
12 any data retention instructions or preservation
13 emails, anything like that that's gone around?
14      A   No.  No.
15      Q   Nothing telling people, you got to
16 save, you know, communications that are related to
17 X, Y, Z, anything like that?
18      A   No.
19      Q   You're positive?
20      A   It is my recollection, yes.  Unless
21 there's an old email that I overlooked or
22 something like that, I don't remember receiving
23 anything that said anything about that.
24      Q   So to your knowledge, no one at LCSO --
25 you're -- you're not aware of anyone at LCSO being

136

1  instructed to preserve categories of documents or
2  anything like that?
3       A   No.  I mean, it should be a common
4  practice, but I don't know if anyone is saying
5  where to preserve certain -- no.
6       Q   Oh, yeah.  Well, I mean, it -- it
7  should be a common --
8       A   Right.
9       Q   I think that's exactly correct.
10      A   Right.
11      Q   But I'm -- I'm wondering if it actually
12 -- if it's common practice, was actually --
13      A   Yes, sir.
14      Q   -- actually done here or not.  It
15 sounds like the answer is no; is that right?
16      A   That's correct.
17      Q   Okay.  Okay.  So -- and of course, you
18 you -- you can't speak to what, you know, other
19 people are using Slack to communicate with each
20 other about, right?
21      A   That's correct.  I don't know what
22 private messages they send each other.  Direct
23 messages, should I say.
24      Q   Okay.  Have -- did -- was there ever
25 any instruction from Walker or anybody else to not

# EXHIBIT S

Transcript of Sraie Roha

1 (1 to 4)

SonCdctuCon Adedst gg12, 20

---

**Page 1**

1            IN THE UNITED STATES DISTRICT COURT

2            FOR THE DISTRICT OF NEW MEXICO

3    ---------------------------------x

4    ROPERT PKANCHARDBB            ,

5                :KAINTIFFB      ,

6      Lv                , C.as Nev,

7    THE CITo OF HOPPSB KEA COUNTo    , 2,24-CY-00900-cWR-JGF

8    POARD OF COUNTo COMMISSIONERSB    ,

9                DEFENDANTSv      ,

10   ---------------------------------x

11            DE:OSITION OF CRAIJ POYA

12            Cepitnfsi Lbwft.hhu

13            Mepi.uB Atrtaf 11B 2025

14              10,33 .vdv

15

16

17

18

19

20

21

22

23   Gey Nev, 595440

24   :.rsa, 1 - 74

25   Rsnewisi Pu, Ksugyswf Sg.wm

---

**Page 2**

1        Dsmeabfbep el Cw.br PeL.B nepitnfsi

2    Lbwft.hhuv

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24    :twat.pf fe .rwssdspfB yslews Ksugyswf Sg.wmB Nef.wu :tyhbn

25    bp .pi lew fgs Sf.fs el Tsx.av

---

**Page 3**

1            A : : E A R A N C E S

2

3    ON PEHAKF OF THE :KAINTIFFB ROPERT PKANCHARDB,

4        PENGAMIN JUPERNICcB ESQUIRE

5        WAKDO JUPERNICc KAW ADYOCATES KK:

6        717 Tsx.a ALsptsB Sfsv 1200

7        HetafepB TX 77002

8        V346( 394-8056

9

10   ON PEHAKF OF THE DEFENDANTSB KEA COUNTo POARD OF COUNTo

11   COMMISSIONERS,

12       AKAN Gv DAHKB ESQUIRE

13       MoNATT S:RINJER :vC

14       1660 Hbn)ewu Keem

15       K.a CwtnsaB NM 88005

16       V575( 524-8812

17

18   ON PEHAKF OF THE DEFENDANTB THE CITo OF HOPPS,

19       CHEKSEA JREENB ESQUIRE

20       HINcKE SHANOR KK:

21       400 N :sppauhL.pb. ALsv

22       ReakshhB NM 88201

23       V575( 622-6510

24

25

---

**Page 4**

1    INDEX

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

40

1 . Aru Kod ab aru of tl osu uy aim s xuine proCdcuC

2 in CiscohurKin tl is casu?

3 **A. No, not aware.**

4 . AnCI saiCll ob axodt for tl u Rrob n casu1

0 aru Kod ab aru of tl uy xuine proCdcuC for CiscohurK

6 in tl u Rrob n casu?

7 **A. I'm not aware.**

8 . Amriel t. Co ;; oQuK v od dnCurstan C

9 tl at ;; mt y u asQKod tl is. Uor tl u Rrob n RdrQu

g, casu1l ahu Kod uhur rucuihuCanKcoy y dnications froy

gg anKonu axodt prusurhine Cocdy unts rumtuCto tl u

g2 casus?

g3 MH. EAGP: Uory .

g4 Rv MH. I ? RNHLISq

g0 . Uor prusurhine Cocdy unts or Cocdy unt

g6 prusurhation?

17 **A. I mean, I believe that's the language when**

18 **the attorney requests documents that they should be**

19 **preserved.**

2, . DQuK Co b as tl uru uhur1to Kodr Qnob mCeu1

2g miQu ;; Kod Qnob 1miQu a xmst uy aimsunt arodnCtl u

22 codntKsaKine ConB Cumtu stdff rumtuCto k 1v 1Z?

23 **A. Ko.**

24 . v odBu positihu of tl at?

25 **A. Not aware of any blast that would have gone**

46

1 **out. I don't know.**

2 . Gob axodt an uy aimto Kod saKine ConB

3 Cumtu Cocdy unts rumtuCto k 1v 1Z?

4 **A. It would have been just from an attorney.**

0 . v od l ahu no rucornction of anKl ine miQu

6 tl at l appunine?

7 **A. No.**

8 . DQuK AnClB y not inturustuCin tl u

9 contunts of coy y dnications Kod y iel t l ahu l aC

g, tl rodel codnsunlxdt l ahu Kod uhur suarcl uC for

gg Cocdy unts rusponsihu to CiscohurKru' dusts in Rrob n

g2 RdrQu?

g3 MH. EAGP: DxJuct to fory . Rmncl arC?

g4 MH. I ? RNHLISq : IB y sorrKlI saiCRdrQu.

g0 MH. EAGP: v ual .

g6 MH. I ? RNHLISq : IB y euttine tl uy arm;

g7 b umltl uKamstart b itl a R. v od Qnob 1tl atB tl u

g8 proxmy l uru1Kua1 1IB y sorrK

g9 Rv MH. I ? RNHLISq

2, . Rrob n or Rmncl arCll ahu Kod uhur xuun

2g tasQuCb itl or taQun it dpon Kodrsurfito suarcl for

22 Cocdy unts tl at b uru rusponsihu to CiscohurK

23 ru' dusts?

24 **A. Just to produce the personnel file.**

20 . DQuK

47

1 **A. Or whatever files are requested.**

2 . DQuK Co in tury s of b l at Cocdy unts tl at

3 KodBu proCdcuCor suarcl uCfor1so Kod saKtl u

4 pursonnunfim1Kod y uan Rrob nB pursonnunfim?

5 **A. Uh-huh.**

6 . AnKl ine umsu?

7 **A. Uh-uh.**

8 . Gahu Kod uhur dnCurtaQun to suarcl uy aim s

9 for Cocdy unts in rusponsu to CiscohurKru' dusts?

10 **A. That has been requested in the past for**

11 **other circumstances.**

g2 . DQuK Dtl ur casus?

13 **A. Other cases.**

g4 . DQuK Wl at axodt Rrob n anCRmncl arC?

15 **A. I don't recall email searches for those two.**

g6 . DQuK AnKiCua b l KKod l ahunBxuun asQuC

g7 to Co tl at?

18 **A. No.**

g9 . Eous tl at suuy straneu to Kod?

20 **A. No.**

2g MH. EAGP: DxJuct to fory .

22 Rv MH. I ? RNHLISq

23 . Wl KCousnBit suuy straneu to Co it for

24 soy u casus anCnot for otl urs?

20 MH. EAGP: Cay u oxJuction.

48

g TGN WITL NCO: I mahu it to tl u attornuKto

2 ru' dust b l at tl uKb ant.

3 Rv MH. I ? RNHLISq

4 . DQuK v od Jdst Co b l at puopm asQKod to

0 Co. I dnCurstanC. IB y not xuine criticam IB y

6 Jdst. )dst trKine to fiedru odt b l atB xuun Conu.

7 DQuK Aru Kod fay irmar b itl Lub MuFicoB pdxmc

8 rucorCs rutuntion mb s?

9 **A. Pretty much you got to keep them forever.**

g, . DQuK v ual 1itB a fair sdy y arK Gahu ;;

gg aru Kod ab aru of anK;; of anKcoy y dnications

g2 rumtuCto tl usu Rrob n or Hoxurt Rmncl arCcasus

g3 xuine CustroKuC?

14 **A. Uh-uh.**

g0 . Lo?

16 **A. Uh-uh.**

g7 MH. EAGP: AdCixm ansb ur.

g8 MH. I ? RNHLISq : v ual .

g9 TGN WITL NCO: Dl 1IB y sorrK Lo.

2, Rv MH. I ? RNHLISq

2g . v ual 1IB y sorrK v ual 1IB y not1Kod Qnob l

22 Jdst ;; Kual 1it Jdst y aQus for a xaCrucorC. DQuK

23 Co if Kod b uru asQuCll y uan1I suu Kod l ahu tb o

24 pl onus. Is onu of tl osu Kodr b orQpl onu?

25 **A. Yes.**

Transcript of Sraie Roha

SonCdctuCon Adedst gg12, 20

---

**49**

g  - . Cb if I b uru to asQKod to finCtl u uy ains
2 froy Miclaum Wan Qur b itl tl osu CiscipnmarK
3 Cocdy unts for Zanu Rrob n1tl at B soy utl ine Kod codrC
4 Jdst Cb riel t nob 1riel t?
5  **A. If it will let me.**
6  - . Wl at Cb Kod y uan if it b imnut Kod?
7  **A. Sometimes I have to go back to my desktop to**
8 **go further back. It doesn't always come on the**
9 **phone.**
g,  - . 5roxaxnKsoy u Inturnut issdu or soy utl ine.
11  **A. We went to whatever-365 recently and.**
g2  - . SmdCstoraeu?
13  **A. Yeah.**
g4  - . I dnCurstanC. Rdt tl uoruticamKtl is is
g0 soy utl ine ;; assdy ine Kod l aCaccuss1Kod b uru in
g6 Kodr officu1tl is is soy utl ine Kod codrC Cb 1riel t?
17  **A. Yes.**
g8  - . DQnK AnCprusdy axnKtl osu uy ains b odnC
g9 stimxu ahaimxm1riel t?
20  **A. Should be.**
2g  - . DQnK
22  **A. Should be. I mean, that's an IT question.**
23  - . v od ;; Kod pursonamKl ahu no ruason to
24 xumuhu tl uKb odnfn1Bxu?
25  **A. Correct.**

---

**0,**

g  - . DQnK Eo Kod ;; Cb Kod dsu tuFt y ussaeus to
2 coy y dnicatu b itl anKonu at tl u sl urifiB officu?
3  **A. Occasionally.**
4  - . Wl o Cb Kod coy y dnicatu b itl at tl u sl urifiB
0 officu hia tuFt y ussaeu?
6  **A. Walker. Some of the chief deputies, at**
7 **times, sometimes the sergeants with questions.**
8 **It's -- it's just --**
9  - . Eo Kod ;; IB sorrKleo al uaC
10  **A. It's just -- it just depended on them.**
gg  - . DQnK Eo Kod dsu Kodr b orQpl onu or
g2 pursonampl onu for tl osu coy y dnications?
13  **A. The work phone.**
g4  - . DQnK Kod ;; b l at stups Cb Kod taQu to
g0 prusurhu tl osu coy y dnications1tl osu tuFt y ussaeus
g6 for xuine CumtuC?
17  **A. Just keep them.**
g8  - . DQnKl am riel t.
19  **A. That's all.**
2,  - . Gahu Kod xuun asQuCor taQm it dpon
2g Kodrsunfito suarcl Kodr tuFt y ussaeus for
22 coy y dnications rusponsihu to CiscohurKru' dusts in
23 Rrob n or Rmncl arC?
24  MH. EAGP: DxJuct to fory .
20  TGN WITL NOQ Tl u ;; I xumuhu so. I

---

**0g**

g  xumuhu for Rrob n. Lo1IB sorrKl for Rmncl arC I
2 rucuihuCa tuFt froy y Kassistant b l un tl uKb uru
3 ruhiub ine tl u fim saKine1Kod Qnob 1tl uKBu tan Qne
4 axodt foreurKtl is anCtl at. Cb I rucuihuCtl at1
0 anCI forb arCtl at to Gurton.
6  - . DQnK Cb b l un Kod saiCKod forb arC;; oQnK
7 I tl inQKod ansb uruCa Cffurunt ' dustion tl an b l at
8 I asQuC MK.; y K' dustion is in finCine Cocdy unts
9 or suarcl ine for Cocdy unts tl at b uru Ciscohuraxm in
gg tl u Rrob n or Rmncl arCcasu1b uru ;; GlCKod ;; b uru
gg Kod ;; GlCKod uhur ;; mt y u Jdst start tl u
g2 ' dustion ohur.
g3  Amriel t. Gahu ;; asiCu froy tl at instancu
g4 anCb l at Kod Jdst CuscrixuCof forb arCine tl at tuFt
g0 y ussaeu froy Kodr sKstuy to Gurton1l ahu Kod uhur
g6 suarcl uCfor tuFt y ussaeus rumtuCto Rrob n or
g7 Rmncl arC?
g8  MH. EAGP: Ubry .
g9  TGN WITL NOQ Lot tl at I rucamm
2,  Rv MH. I ? RNHLISq
2g  - . DQnK Lo onuBuhur asQuCKod to Cb tl at?
22  **A. No.**
23  - . Cb Kod y aKl ahu tuFt y ussaeus on Kodr b orQ
24 pl onu riel t nob rumtuCto tl is casu1Kod Jdst ConB
20 Qnob ?

---

**02**

1  **A. For Blanchard?**
2  - . v ual .
3  **A. It would be the comment from my assistant.**
4  - . DQnK Cb Kod for sdru l ahu tl at1riel t?
5  **A. I'm going to say yes.**
6  - . Is it possixm tl at Kod l ahu coy y dnications
7 rumtuCto Zanu Rrob n?
8  MH. EAGP: Ubry .
9  TGN WITL NOQ I ConBrucammanK
g, conhursations1xdt ;;
gg Rv MH. I ? RNHLISq
g2  - . ItB possixm?
13  **A. Possible.**
g4  - . Rucadsu Kod l ahu tl osu1riel t?
15  **A. Yeah.**
g6  - . Rucadsu no onuB asQuCKod to mooQ?
17  **A. No one's asked me to look, no.**
g8  - . DQnK Aru tl uru anKcasus ;; b umh
g9 actdamKl Kod Bu ab aru tl uru aru a ndy xur of casus
2, punCine riel t nob aeainst Pua SodntKlriel t?
21  **A. Uh-huh.**
22  - . Gahu Kod uhur xuun asQuCor taQm it dpon
23 Kodrsunfito mooQfor tuFt y ussaeus rumtuCto anKof
24 tl osu casus?
20  MH. EAGP: Ubry .

---

03

```
g        TGN WITL NOO:  Lo.
2   Rv MH. I ? RNHL ISq
3   - .  DQtK  Co itB possixm tl at Kod l ahu tuFt
4   y ussaeus on Kodr pl onu riel t nob  tl at aru rumatuCto
0   anKndy xur of tl osu punCine casus Kod ConBQnob?
6      A. I don't recall any text messages related to
7   the cases, but it could be possible.
8   - .  Co Kod y untionuC;;  GCKod sut Kodr pl onu
9   to ;; nuhur y inC.  Tl at ;; tl atB finu.  Co1oQtK
g,  Put y u asQa ' dustion miQu tl is.  To Kodr Qnob mCeu1
gg  is Kodr pl onu sut to adto Cumtu tuFt y ussaeus?
12     A. To audible?
g3  - .  Adto Cumtu.
14     A. Oh, auto delete.
g0  - .  Aftur1miQu1a sut purioCof tiy u.
16     A. Not that I'm aware of.
g7  - .  DQtK  Eo Kod dsu anK;; to coy y dnicatu b itl
g8  codntKpursonnumxodt codntKxdsinuss1Co Kod uhur
g9  dsu Kodr pursonanpl onu?
20     A. No.
2g  - .  DQtK  Co Co Kod ;; anCfor Kodr b orQpl onu1
22  Co Kod dsu anKpps xusiCus tuFt y ussaeu to
23  coy y dnicatu b itl  codntKuy pmKuus axodt codntK
24  xdsinuss?
25     A. It'll just be through county email.
```

04

```
g   - .  Co codntKuy aimanCtuFt y ussaeu?
2      A. That would be the only two, yeah.
3   - .  I dnCurstanC  ItB not miQu ;; I y uan1
4   tl uKBu not miQu omcQor Cienamor anKWl atsApp or
0   soy utl ine?
6      A. No.
7      MH. I ? RNHL ISq :  I dnCurstanC  Amriel t.
8   WuBu xuun ;; b uBu xuun eoine axodt an l odr l uru1
9   so b ant to taQu a ' dicQxruaQ' AnCI ruamKConB
g,  l ahu a not umsu1so mtB ;; mtB taQu miQu a
gg  g,, y indtu xruaQ
g2     MH. EAGP:  g,  y indtus.
g3     TGN EII ITAP TNS GLISIAL:  Dff tl u rucorC
g4        jA rucuss b as l urCfroy  gg:4,  a.y .
g0        dntingg:04 a.y .(
g6     TGN EII ITAP TNS GLISIAL:  RacQon tl u rucorC
g7  Rv MH. I ? RNHL ISq
g8  - .  DQtK  PutB tanQaxodt1a nitmy y oru axodt
g9  tl is ;; tl is inciCunt b itl  Rmncl arCruhiub ine
2,  Rrob nB fim at tl u ;; at tl u codrtl odsu.  I b as
2g  eoine to asQl so b l o is Kodr assistant?  )dst so b u
22  l ahu odr nay u.
23     A. Kimberly Serrano.
24  - .  DQtK  Co q iy xurnKCurrano1Kod y untionuCl
20  Kod tuFtuC;;  sl u ;; Kod eot a tuFt froy  l ur anCKod
```

00

```
g   forb arCuCit to Gunton?
2      A. Yes.
3   - .  DQtK  EiCKod amso at anKpoint tanQto l ur
4   axodt tl u inciCunt?
5      A. I was out of the office.  When I came back,
6   I talked to her.
7   - .  v od y untionuCKod b uru odt of tl u officu.
8   Wuru on hacation or b uru Kod Jdst ;;
9      A. No.  I was -- I believe I was in Hobbs on
10  the county business.
gg  - .  Amriel t.  Co Kod tanQuCto l ur tl at say u
g2  CaKor tl u nuFt CaK?
13     A. I believe it was that afternoon.
g4  - .  DQtK  Lob 1b1 at GCsl u tumrKod?
15     A. Just the same thing that she had texted me,
16  that they were making comments that they thought the
17  documents were forged and this wasn't in the file.
18  This was added after the fact type.
g9  - .  DQtK  Wl at b as Kodr ruaction to ;; to
2,  marnine tl at tl u Rmncl arCanCtl u purson l u b as
2g  b itl ;;
22     A. I was very upset at the allegation.
23  - .  DQtK  Wl KGCit dpsut Kod?
24     A. Because they're alligating that I'm breaking
25  the law.
```

06

```
g   - .  DQtK  Wuru tl uKarmeine Kod xroQu tl u mb
2   or soy uonu umsu GiC?
3      MH. EAGP:  DxJuct to fory .
4      TGN WITL NOO:  It codniC1 ahu xuun uitl ur GH
0   or tl u OD.
6   Rv MH. I ? RNHL ISq
7   - .  DQtK  Lob 1in fairnuss1tl osu Cocdy unts
8   b uru aCCuCaftur Kodr y uy o1riel t?
9      A. Because Zane Brown was still an employee of
10  the county, so there were documents added after the
11  fact, after this 12th, July 12th.
g2  - .  Put y u rupl rasu.  Coy u of tl osu CisciprimarK
g3  Cocdy unts1miQu tl u onu Rrob n xrodel t xacQfroy tl u
g4  trdcQltl osu b uru aCCuCaftur tl is y uy o b as cruatuCl
g0  riel t?
16     A. Right.
g7  - .  DQtK  Co codniCKod dnCurstanCor GCKod
g8  dnCurstanCb1 Ktl uKy iel t tl inQtl at b as sdspiciods?
g9     MQ I HNNL:  Uory .
2,     TGN WITL NOO:  I b as ;; actdamK1 b as ;; I
2g  b as y oru dpsut at tl u amneation of foreurKtl an
22  anK;;
23  Rv MH. I ? RNHL ISq
24  - .  DQtK  Co GCanKonu actdamKsdeeust tl at
20  Kod l aCforeuCsoy utl ine?
```

69

g   -  . Oo Kod ConBtl inQl u appruciatu ;;  Kodr ;;
2   Kodr ;; Kodr opinion1l u GCnot at tl u tiy u
3   appruciatu tl u suhuritKof tl u anecations or uhun
4   dnCurstanCb l at tl u anecations b uru?
5       A.  But -- yeah.  I don't -- I don't -- I don't
6   think he fully understood what I was trying to tell
7   him.
8       -  . DQuK  v od y untionuCtuFtine l iy  afturb arCs.
9   EiCKod l ahu anKy oru Cscdssions b itl l iy  or
g,  conhursations b itl l iy  axodt tl u ;; tl u inciCunt?
11      A.  Possibly.  I don't remember what those were.
g2      -  . DQuK  Wl un b odn6tl osu l ahu xuun?
13      A.  It would have been after the text.  I don't
14  remember -- I don't remember any conversations after
15  that.  But there could have been just to rehash what
16  I thought had happened.
g7      -  . DQuK  EiCKod tarQto anKonu usu at tl u OD
g8  axodt tl is uhunt Runcl ur ruhiub ine Zanu Rrob nB
g9  finl?
20      A.  I don't believe so.
2g      -  . DQuK  Micl aunWanQur?
22      A.  I don't believe so.
23      -  . DQuK  Gob  axodt tl u codntKy anaeur?
24      A.  No.
20      MH. I ? RNHLISq :  DQuK  EiCKod l ahu anK
        SHDCODUSHAII  RDYA Rv  MH. EAGP

7g

g       -  . DQuK  AnCtl un Kod tustifiuCuarninr
2   axodt ;; b umKod l aCy untionuC1oxhiodsnKl tl u
3   issdu of prusurhation of Cocdy unts.  Gahu Kod uhur
4   rucuihuCa prusurhation nntur froy  tl u codntK
0   instrdctine Kod to prusurhu curtain Cocdy unts?
6       A.  Yes.
7       -  . Eo Kod Qnob  if KodBu rucuihuCanKsdcl
8   nntur b itl  ruspuct to anKof tl u casus tl at
9   Mr. I dxurnicQis ;; in b l icl  Mr. I dxurnicQis
g,  inhoituC?
11      A.  I can't say for certain, but I'm -- I
12  probably have.
g3      -  . DQuK  AnCtl un aru Kod ab aru of anKotl ur
g4  tuFt y ussaeus runntine to tl u Runcl arCfnn ruhiub l
g0  asiCu froy  Ms. Currano B tuFt y ussaeu1tl at aru in
g6  Kodr possussion?
17      A.  No.
g8      MH. EAGP:  Tl atB anny K' dustions.  IBm
g9  tdrn tl u tiy u ohur to Goxxs.
2,      MQ. I HNNL:  Tl anQKod.  AnCtl anQKod for
2g  xuine l uru1Mr. Roha.  I ConBl ahu anK' dustions
22  for Kod at tl is tiy u.
23      MH. I ? RNHLISq :  Amriel t.  I tl inQtl atB
20  it.  Qo b umKod tsuaCanCsien.
20      MH. EAGP:  HuaCanCsien.
        SHDCODUSHAII  RDYA Rv  MH. EAGP

7,

g   fay inaritK;; actdanKl tl atB a xaC' dustion.  I
2   tl inQtl atB actdanKannl l ahu.  I y aKl ahu onu
y   y oru ' dustion if Mr. Eanon l as ruCiruct.
4       MH. EAGP:  )dst a codpnn of cnarifKine
0   ' dustions anCtl un IBndrn it ohur to Goxxs if
6   tl uKl ahu anK' dustions.
7   SHDCO. Nk AMILATIDL Rv  MH. EAGP:
8       -  . Oo Kod tustifiuCuarninr1Mr. Roha1tl at tl u
9   notation of not rul iraxnu codnGxu pnncuCin
g,  soy uonuB fnn if tl uKnnft b itl  nnss tl an tb o b uuQs
gg  noticu.  Aru tl uru anKotl ur circdy stancus b l un tl at
g2  notation is y aGi?
13      A.  That's the only thing, policy wise, that
14  specifically relates to rehirable or not rehirable.
15  If an employee is terminated for cause, that is
16  definitely brought up if they request any sort of --
17  or if they try to be rehired with the county.
g8      -  . DQuK
19      A.  So -- so, yeah.
2,      -  . DQuK  Oo pnnKb isu1tl atB tl u onnK;;
2g  tl u onnKcircdy stancus1tl u tb o b uuQs noticu.  Rdt
22  practicanKspuaQne1itB not?
23      MH. I ? RNHLISq :  Dxduct to fory .
24      TGN WITL NCQ.  v us.
20  Rv  MH. EAGP
        SHDCODUSHAII  RDYA Rv  MH. EAGP

72

g       MH. I ? RNHLISq :  HuaCanCsien.  DQuK  IBm
2   Jdst taQu;; for orCur11Bndst taQu fodr pur paeu
3   utran.  Lo rdsl .
4       MH. EAGP:  DQuK  Ony u orCur1umctronic1
0   fodr pur paeu.  Lo rdsl .
6       MQ. I HNNL:  AnCtl u say u orCur as b umfor
7   tl u SitKof Goxxs.
8       TGN EII ITAP TNSGLISIAL :  DQuK1purfuct.  AnC
9   b itl  tl at1b uBu eoine to eo off tl u rucorC.  Rdt
g,  tl un staKl uru for a codpnn y indtus for soy u
gg  spunnines.  Oo off tl u rucorCnob .
g2      jTl u Cuposition concnnlCuCat
g3      g2:g0 p.y .(
g4
g0
g6
g7
g8
g9
2,
2g
22
23
24
20