**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

**KARINA TELLO,
Plaintiff,**

**v.**                                                    **2:24-cv-00390-KG-GJF**

**LEA COUNTY BOARD OF COUNTY
COMMISSIONERS, COREY HELTON,
MICHAEL WALKER, FERNANDO JIMENEZ,
SEAN ROACH, SONIA ESTRADA,
DIANA JURADO-GARCIA,
AILEEN VIZCARRA, ALYSSA PORRAS,
DOE DEFENDANTS 1-50,**

**Defendants**

**PLAINTIFF'S RESPONSE TO
DEFENDANT SONIA ESTRADA'S MOTION TO COMPEL**

Plaintiff Karina Tello ("Plaintiff") files this Response to Defendant Sonia Estrada ("Estrada")'s Motion to Compel, and in support states as follows:

**PRELIMINARY STATEMENT**

Counsel for Estrada and Plaintiff conferred by phone about the subject of Estrada's Motion for the first time[1] on October 14, 2025. Based on that call, Plaintiff believes most but not all of the issues in Estrada's Motion can be resolved between now and October 29, 2025. Out of caution, Plaintiff files this Response to Estrada's Motion to preserve Plaintiff's objections to Estrada's vastly overbroad discovery requests.

Estrada's Motion is a classic example of turning the spotlight on the victim. Estrada seeks vast amounts of information relating to Plaintiff's phone logs and text messages, but Plaintiff is

---

[1] Plaintiff's counsel had offered to confer by phone in its September 29 letter, but Estrada's counsel ignored that offer and filed the Motion to Compel on October 3. Estrada's counsel did not agree to pick up the phone until after the Court instructed the parties to confer at the conference on October 8.

1

not the one who weaponized a cell phone to humiliate and fire a colleague. Estrada's fantastical ideas about Plaintiff's sex life, even if true (which they are not), are not relevant to the parties' claims or defenses. For example, Estrada seeks text messages between Plaintiff and Victor Murillo from the time *after* LCSO terminated Plaintiff, but how is this relevant? Nothing said between Plaintiff and Victor Murillo would change the fact that Estrada, Vizcarra, and Jurado ganged up on Plaintiff, and with the help of LCSO upper brass, got Plaintiff fired. That is what this case is about, as much as Estrada might wish it were not so.

Plaintiff has already provided more than enough information and documents. Defendant had ample opportunity to ask Plaintiff questions about her phone, her phone conversations, her past love affairs, etc., at Plaintiff's May 13, 2025 deposition. For these reasons and those below, Estrada's Motion should be denied.

## RELEVANT BACKGROUND

Discovery opened in this case on March 18, 2025, at the parties' Rule 26 conference. Plaintiff served discovery on all parties on April 10, 2025. Estrada, on the other hand, waited until July 31, 2025, to serve her discovery requests. Estrada could have waited to depose Plaintiff until after sending written discovery, but Estrada declined to do that, opting for an early deposition, which took place on May 13, 2025. At that deposition, Estrada's attorneys asked Plaintiff detailed questions about the same matters that are the subject of Estrada's discovery requests at issue in this Motion—the May 31, 2023 incident at Chaparral Park in Lovington; Plaintiff's relationship with Daniel Soto; Plaintiff's conversations with Victor Murillo; Plaintiff's relationship with Chris Leyva; Plaintiff's various cell phones; Plaintiff's damages; the intimate Video and whom Plaintiff sent it to; and Plaintiff's trip to Albuquerque in June 2023. Plaintiff answered those questions the best she could recall.

After receiving Estrada's belated[2] discovery requests, Plaintiff was confused why Estrada was asking for the same information she had already supplied at deposition. No other defendant has served written discovery on Plaintiff. Apparently they were satisfied with Plaintiff's deposition, and/or they assumed rightly that this lawsuit is not about *Plaintiff's* text messages and phone calls. Nonetheless Plaintiff attempted to provide answers to Estrada's requests in good faith, serving 48 pages of responses on September 2. Many of Estrada's requests were poorly worded, contained loaded or incorrect premises, and were redundant (see below). Where Plaintiff could not understand what Estrada was asking for, Plaintiff offered to confer.

On September 12, Estrada sent Plaintiff a so-called good faith letter outlining supposed deficiencies in Plaintiff's responses with an arbitrary September 18 deadline to respond. On information and belief, Estrada did not actually care about conferring or obtaining additional discovery; she simply wanted some excuse to file a motion to compel. Plaintiff responded to the letter on September 29 and provided supplemental responses to several of Estrada's requests. Plaintiff offered to confer by phone to better understand Estrada's requests and potentially provide additional responsive information. Estrada ignored Plaintiff's offer, and on October 3, filed the present Motion to Compel.[3]

On October 8, the Court held a status conference and ordered Estrada and Plaintiff to submit a joint email by October 27 about remaining issues to be decided in Estrada's Motion.

---

[2] The actual discovery requests sent by Estrada have no date of service on them, though they were sent on July 31, 2025. The PDF enclosing the discovery requests was titled "2025.05.29," suggesting Estrada meant to send the discovery requests on May 29 but for some reason waited two months to send them. Or perhaps Estrada's attorneys mixed up May and July in the title of the PDF.

[3] Page one of Estrada's Motion refers to compelling responses to Requests for Admission, though Estrada does not mention any deficient RFA responses, so Plaintiff will assume the RFAs are not at issue.

Plaintiff took this as an order that counsel (finally) confer about the subject Motion, which they did on October 14. During that call, Estrada's counsel explained in more detail what Estrada wanted to know. Plaintiff's counsel represented Plaintiff would make a good faith attempt to supplement some requests but that Plaintiff stood on her objections for others.

## ARGUMENT

### A. Interrogatories

*Plaintiff's Response to Interrogatory No. 3*

**INTERROGATORY NO. 3**: Please describe in detail any conversations you had with the Lea County Sheriff's Office, including any deputies, agents, or employees, since you were terminated in July 2023. For each conversation, please state:

a. Your relationship with each person;
b. What statements or remarks were made in each conversation;
c. The name or description of the person who made said statements or remarks;
d. The date, time, and place the statements were made; and
e. The identity and/or description of the persons present when such remarks were made.

**ANSWER**: Plaintiff objects this interrogatory is overly broad and unduly burdensome and would require Plaintiff to summarize detailed information from a long time ago that took place during oral conversations.

Subject to this objection, the only such person with whom Plaintiff has had conversations is Victor Murillo. Those conversations took place primarily by phone. Most of the conversations took place during the second half of 2023 and first half of 2024. These conversations were not romantic or sexual in nature. Plaintiff and Murillo had both been through a traumatic experience relating to the intimate video and the LCSO and were supporting each other through that time. Plaintiff has not spoken to Murillo much if at all since August 2024. See also Plaintiff's response to Interrogatory No. 19.

Estrada wants more detail about Plaintiff's conversations with Murillo, but Plaintiff does not know what more to say. There were several conversations, almost two years ago. They were by phone, not in writing. Plaintiff and Murillo were comforting each other as friends during a stressful time. Plaintiff cannot recall further detail than this. If Estrada had a more specific question, she could have asked a better interrogatory, or she could have asked Plaintiff during

Plaintiff's deposition. Plaintiff has nothing to add to this answer.[4] Moreover, further detail about Plaintiff's phone calls with Victor Murillo from late 2023 and early 2024 is not relevant. This was after Plaintiff was terminated from LCSO, and after Estrada, Vizcarra, and Jurado sent out the intimate Video of Plaintiff. Plaintiff has already said she does not recall the exact content of what she and Murillo talked about, and she does not have recordings of her calls with Murillo. Estrada seems to want the length and time/date of the calls, but even if Plaintiff could locate this information, what would it prove? Whether Plaintiff spoke with Murillo five times or ten times, or whether these conversations were two minutes or eight minutes—none of that would move the needle on the parties' claims and defenses.

*Plaintiff's Response to Interrogatory No. 6*

> **INTERROGATORY NO. 6**: Please itemize all economic damages and expenses (including out-of-pocket expenses and monetary losses) you are claiming in this lawsuit, including the approximate dollar amounts and the general factual basis for each.

> **ANSWER**: Plaintiff seeks lost wages suffered as a result of being wrongfully terminated. This includes the difference between what she would have earned at the LCSO and what she earns now, as well as the decreased value of her pension. Plaintiff has described these amounts in detail in the form of an expert report. Plaintiff also seeks medical expenses relating to the treatment she has sought and received stemming from the events at issue in the lawsuit.

> Plaintiff has agreed to supplement with the medical expenses she is seeking. That should

resolve whatever issue Estrada has with this answer.

*Plaintiff's Response to Interrogatory No. 12*

> **INTERROGATORY NO. 12**: Please explain your allegation that you "submitted a complaint about [Estrada] the night before the Tracfone messages started" in

---

[4] For many of these Interrogatories, Estrada confusingly says Plaintiff supplemented her answers when Plaintiff did not do so. For instance, Estrada says Plaintiff supplemented her answer to Interrogatory No. 3 (Mot. at 5), which she did not do. On information and belief, Estrada is referring to Plaintiff's September 29 letter, which was not so much a supplement but a response to Estrada's September 12 letter.

paragraph 41 of the TAC. In your explanation, please include when the messages started, to whom the messages were sent, the content of the messages, the phone number from which the messages were sent, and how you learned about the messages.

**ANSWER**: Plaintiff obtained this understanding from Defendant Roach. Roach told this to Plaintiff around the time of the IA "investigation" that Roach undertook in June 2023.

**SUPPLEMENTAL RESPONSE**: Plaintiff believes Estrada is misunderstanding Plaintiff's response. Plaintiff became aware of these messages via Roach. Plaintiff is only aware of what Roach told her, which is why she answered as she did. If Estrada requires further information, she should send an interrogatory to Roach.

Estrada seems to be misunderstanding her own interrogatory. Interrogatory No. 12 asks a fair question: Explain Plaintiff's allegation that her complaint about Estrada was the night before the TracFone messages started. Plaintiff responded: She heard this from co-defendant Sean Roach. *I.e.*, Roach told Plaintiff that the TracFone messages started the night after Plaintiff submitted the complaint about Estrada. That is what Plaintiff knows about this allegation. Plaintiff answered the question. Estrada was free to ask Plaintiff questions about this allegation at her deposition to the extent it matters (which it is not clear how it does).

*Plaintiff's Response to Interrogatory No. 14*

**INTERROGATORY NO. 14**: Please explain the full factual basis for your statement to the New Mexico State Police that you only shared the Video with your fiancé, Andy Dominguez. In your explanation, please identify any other individuals (male or female) to whom you sent the Video and whether or not you provided this information to the State Police. If you did not provide this information to the State Police, please explain why.

**ANSWER**: When she said this, Plaintiff had not seen the whole video, only a screenshot of the video. Plaintiff thought it was a more recent video that she had sent only to Andy Dominguez.

Plaintiff has agreed to supplement this answer.

*Plaintiff's Response to Interrogatory No, 15*

6

**INTERROGATORY NO. 15**: Please state whether your current personal cell phone ("phone") is the cell phone you had in 2023. If you currently have a different personal cell phone, please describe every cell phone(s) you have had since January 2023, your phone carrier(s), the number associated with the phone(s), the reason(s) you changed your phone, the current location of your previous phones, and whether you transferred the data to your new cell phone by device-to-device transfer or a backup from a cloud. In your explanation, please include whether you had more than one cell phone in 2023, including but not limited to a work cell phone or an additional personal cell phone. If you answer in the affirmative, please explain whether you still have the phone(s) and provide the carrier and phone number associated with the phone(s).

**ANSWER**: To the first question, no, it is not. Plaintiff changed her number to the present 806 number because of the harassing calls and voice messages she was getting at the end of 2023 due to her past employment at LCSO and LCSO's discrimination and ensuing termination of her. Strange anonymous men would call Plaintiff and taunt her about the intimate video and her termination. Plaintiff has had AT&T from 2022 onward. Plaintiff has not had a work phone during this period.

**SUPPLEMENTAL RESPONSE**: Plaintiff's current number is 806.500.5948.

Estrada argues Plaintiff's response is deficient because:

"[t]he information sought is central to the issues in this case, including the source, distribution, and recipients of the intimate Video. Without information as to which cell phone Plaintiff used during the relevant period, it is impossible for Defendant Estrada to determine whether those phones contained the Video, whether the phones were used to send the Video, or whether the phones may contain other relevant information."

Plaintiff does not know what additional information Estrada is looking for. Estrada, her co-defendants, and their counsel have long had Plaintiff's cell phone number from 2023, and she knows Plaintiff uses AT&T. If Estrada wanted to send a subpoena to AT&T, she could have done so long ago. All this talk about Plaintiff's different phones is at best a fishing expedition. It is completely speculative how Plaintiff's changing phones would yield evidence relevant to the parties' claims or defenses.

*Plaintiff's Response to Interrogatory No. 17*

**INTERROGATORY NO. 17**: Please explain what "acts" Defendants Estrada, Vizcarra and Jurado-Garcia did, or caused to be done, "in furtherance of the conspiracy" as alleged in paragraph 123 of the TAC. In your explanation, please describe each "act" including who committed the act, when the act was committed, and how the act was accomplished.

**ANSWER**: Plaintiff objects that this interrogatory is overly broad and unduly burdensome and would require her to describe every text message and conversation by Defendants. Subject to this objection, the conspiracy to acquire and circulate the video was by and between Estrada, Vizcarra, Jurado-Garcia, and Alyssa Porras. Estrada, Vizcarra, and Jurado-Garcia acquired the intimate video of Plaintiff from Porras and, using a TracFone, sent it to at least the following: (1) Andy Dominguez, (2) Megan Murillo, (3) Jon Martinez, (4) Fernando Jimenez, and (5) Chan Kim's wife. Estrada, Jurado-Garcia, and Vizcarra then conspired with Jimenez, Helton, Roach, and Walker to conceal their wrongdoing as evidence by the text messages from Jurado-Garcia's phone.

Again, Plaintiff does not know what more Estrada wants Plaintiff to say here. It seems Estrada simply does not like Plaintiff's answer. In her September 29 letter, Plaintiff offered to copy and paste the 1500 pages of text messages from Jurado's phone, an offer Estrada ignored. Estrada points out Plaintiff does not specify how Jimenez, Helton, Roach, and Walker were involved in the conspiracy, but Interrogatory No. 17 did not ask about Jimenez, Helton, Roach, or Walker. It asked about Estrada, Vizcarra, and Jurado. That said, Plaintiff identifies the following text messages from Jurado's phone showing the involvement of Jimenez, Helton, Roach, and Walker:

- 6/1/23 4:51:49 PM    Jurado to Estrada    "I just got off the phone with Fernando…Vicente and Roach, Fernando and Major all have your back. 100%"[5]

- 6/1/23 4:56:52 PM    Jurado to Estrada    "Fernando is on the phone with roach now"

- 6/1/23 5:46:57 PM    Jurado to Vizcarra    "Exactly what I told the major I said MICHAEL SHES ON PROBATION! Imagine when she's off of it?!?"

---

[5] "Major" refers to Defendant, Undersheriff Michael Walker. "Fernando" refers to Defendant and former Chief Deputy, Fernando Jimenez.

- 6/1/23 5:59:41 PM    Jurado to Vizcarra    "No because everyone knows now….I've been thinking about it….Fernando said I should"

- 6/2/23 9:32:42 AM    Jurado to Vizcarra    "Sheriff just left my office asking about videos of Karina and said she's not gonna be here long."

- 6/7/23 1:57:36 PM    Jurado to Soto, Vizcarra, and Porras "Danny  I'm  talking  to Fernando rn…I'll text you in a bit and let you know what he recommends."

- 6/7/23 2:07:21 PM    Soto to Jurado, Vizcarra, and Porras "I  can't  sleep  now  that Fernando knows about this.  I mean he knew but now it's IA.  And I don't even work there"

- 6/7/23 2:46:07 PM    Jurado to Estrada    "Karina is done for…Still talking to Fernando. Just wait till I tell you everything. I know we were supposed to meet up at 2 I haven't forgetter. I'm gonna head your way in about 10 min from Lovington are you home? I have a full blown plan"

- 6/7/23 4:02:45 PM    Jurado to Vizcarra    "Fernando and Walker gave us the go to post the video of karina…on FB…Fernando will record it on his phone from FB 411 and the other pages and send it up the chain"

- 6/7/23 6:06:20 PM    Jurado to Soto, Vizcarra, and Porras  "Fernando wants you to work with us.  He has your back 100%....He wants you to tell the whole truth tho"

- 6/13/23    4:09:15 PM    Jurado to Estrada    "Fernando said he's waiting for the video dude. He said he didn't receive anything 🙄…It's okay… Give me a second the major is texting about Murillo taking off in his unit to Albuquerque to meet Karina 🙄"

- 6/14/23    12:13:47 PM  Jurado to Estrada    "Roach just came up to me and showed me thescreenshot from Murillo's wife. So Murillo sent itto Roach and Roach sent it to the Major. 🤭"

- 6/14/23    12:19:18 PM  Jurado to Estrada    "And then I said the major asked about it. So you sent it to him? He's like yeah 😂… And that he told Murillo 'idk what you want me to do about it bro.' 😂"

- 6/15/23    5:11:50 PM    Jurado to Estrada    "Asking if it was a kid that sent the video…He wants whoever sent it to send it to Chan and then get rid of the phone…Don't tell Aileen I'm telling you"

This is just a sampling.  There are many more.

*Plaintiff's Response to Interrogatory No. 19*

> **INTERROGATORY NO. 19**: Please describe your relationship with Victor Murillo including when the relationship began, the nature and length of this relationship, whether you were in any other romantic relationship(s) at that time, and the reasons that the relationship ended.

> **ANSWER**: Plaintiff objects to the use of the phrase "other romantic relationship(s)," as it assumes Plaintiff's relationship with Murillo was "romantic." Plaintiff objects that this interrogatory is vague and ambiguous about what is a "romantic" relationship.

> Subject to these objections, prior to June 2023, Plaintiff was work friends with Murillo, and there was no sexual element to their relationship. Around the time of June 2023 when Defendants were circulating the intimate video, Plaintiff came to rely more on Murillo because of the high degree of stress placed on her, and their texting turned more sexual in nature. The two exchanged sexually themed messages during this time but they never had any sort of physical sexual contact. A few months later, around August or September of 2023, the sexual aspect of their texting ceased though they remained friends. Around this time of August or September 2023, Plaintiff had several conversations with Murillo to the effect that Plaintiff wanted to focus on her relationship with Andy, but Murillo was resistant to this idea. This caused strain on the friendship between Murillo and Plaintiff. Since then, Murillo and Plaintiff have become friendly again though not in a sexual way.

Plaintiff thinks her answer to Interrogatory No. 19 is pretty darn good, and this is on top of the detailed testimony she gave during her deposition.  Plaintiff refers the Court and Estrada to pages 72:21-74:7 of the Tello transcript.  Questions from Estrada's counsel included "Ms. Tello, is it your testimony here today that you and Mr. Murillo never had a romantic relationship?...Was it a sexual relationship?...Tell me what it was…No physical intimacy?...When did that relationship begin?...Was it after you were terminated from the Sheriff's Office?...And you said you guys were friends before. At some point, did the nature of your relationship change from friendship to something more?...But it never turned into a sexual relationship; is that your testimony?"  Plaintiff does not know what more Estrada needs here.

Plaintiff also points out that Estrada defined "Romantic Relationship" or "Relationship" to be "a type of intimate relationship characterized by emotional and/or physical attraction, often involving physical touch, sexual intimacy, or sexual relations with another person." Under this definition, Estrada's interrogatory is meaningless and circular. Estrada has already defined "relationship" to be synonymous with a romantic relationship, so by asking Plaintiff to describe her "relationship" with Murillo, Estrada is assuming Plaintiff had a romantic relationship with Murillo, which Estrada then defines what a "romantic relationship" is. It would have been a much clearer interrogatory if Estrada had never defined relationship or romantic relationship and had instead asked Plaintiff to describe the nature of her relationship with Murillo. Plaintiff pointed out this poor wording in her September 2 answer and objected on that basis. Estrada's September 12 letter ignored her error and doubled down on the poor wording.

*Plaintiff's Response to Interrogatory No. 20*

> **INTERROGATORY NO. 20**: Please describe what you and Victor Murillo were doing when Defendant Estrada caught the two of you alone in Murillo's vehicle on May 31, 2023. Please include in your description whether you or Murillo were on duty at the time and/or whether you or Murillo were supposed to be at the station when this incident occurred.
>
> **ANSWER**: Plaintiff objects to the use of the word "caught" as it implies Plaintiff and Murillo were doing something illicit. Plaintiff objects to the use of the phrase "supposed to be" as it is vague and ambiguous as Plaintiff was "supposed to be" at two different places around that time, Hobbs and Lovington.
>
> Subject to this objection, Plaintiff and Murillo were talking to each other before Estrada flashed her lights at Plaintiff and Murillo. There were only a few minutes between when Plaintiff left the Lovington station and when Estrada flashed her lights at Plaintiff. Plaintiff told Roach to check the radio traffic and dash camera footage as part of Roach's investigation into Estrada's complaint, as it would have shown exactly what happened and exonerated Plaintiff from Estrada's bizarre complaints. Plaintiff is not aware if Roach ever did this. Plaintiff further states she was assigned to Hobbs that shift but had been summoned to Lovington for a call.

Again, this is a loaded question that Plaintiff did her best to answer. Plaintiff was not "caught" doing anything because she did not do anything wrong. Estrada may have her own twisted take on what she thinks Plaintiff and Murillo were doing on May 31, 2023, but Plaintiff does not have to buy into Estrada's frame. This is classic abuser behavior by Estrada. Plaintiff provided a good faith answer to Interrogatory No. 20. And again, Plaintiff already provided extensive testimony about the May 31 park encounter during her deposition:

**Q How far is the park that you went to from the office?**

**A It's like a block. You can actually see it from the -- I mean, I could wave at somebody from the parking lot to there.**

**Q How long were you at the park with Mr. Murillo?**

**A Like, five minutes.**

**Q Did you eat your dinner at the park?**

**A No.**

**Q Did you take your dinner with you?**

**A Yes. I -- Like I said, it had been delivered. I took it inside, thinking we're going to eat there, and he wanted to talk to me. I said, "Okay. We can eat really quick." And so, when she approached the office, I grabbed my food, and we met up at the park, which she followed us.**

**Q How long were you at the park before you noticed that Ms. Estrada pulled up to the park?**

**A I don't know. Like I said, it was very quick. We had just barely -- He had just started barely telling me, "Hey, this is" -- it didn't take very long to say, "Hey, just so you know, you know, she's been asking questions." And it sounded like she's kind of**

starting rumors. So, again, I don't remember the details, but it was -- I mean, it didn't

take very long to say that. And, I mean, I was like, "Okay. I mean, what should we

do?" And, you know, it was a very quick conversation. And then she pulled up, and

he said, "Oh, that's her." And I rolled my window down, waved her down, and tried

to pull up to her, and she actually reversed away from me and left.

Q After Ms. Estrada left the park, what did you do?

A Like, I called Roach; is that what you're – or what I did as far as did I say --

Q Immediately after that, did you stay there and eat your dinner; did you --

A No.

Q Did you call Roach; did you call Sergeant Estrada? What did you do?

A I actually didn't eat my dinner until much later. I got upset after Murillo told me

that. So I got on the phone and drove to Hobbs.

Tello Dep. Tr. at 27:21-29:15.

*Plaintiff's Response to Interrogatory No. 24*

> **INTERROGATORY NO. 24**: Please describe your relationship with Chris Leyva
> with the New Mexico State Police in Hobbs, including the nature and length of this
> relationship, and whether you and Chris Leyva ever spoke about the New Mexico
> State Police's investigation into your complaint. If so, please describe each
> conversation you had with Mr. Leyva about the investigation including when the
> conversation occurred, what information was discussed, and whether your
> communications were in person, over the phone, or via email or text
> communications.

> **ANSWER**: Plaintiff objects this Interrogatory is overly broad, unduly burdensome,
> and an impermissible fishing expedition. Plaintiff does not understand how her
> relationship with Leyva is relevant to the parties' claims and defenses. Plaintiff also
> does not understand this Interrogatory. Leyva has never been with the New Mexico
> State Police to her knowledge.

> Subject to this objection, Leyva was Plaintiff's first training officer at Lovington
> PD. They have been friends for several years and worked at Lovington PD together.
> Leyva spoke to Plaintiff about the polygraph that Lovington PD gave to Soto when

Soto returned to Lovington PD in early 2023. Plaintiff understands that Soto confessed in this polygraph to giving the intimate video to Porras.

This is another example where Estrada asks a question with an incorrect premise—Leyva never worked for State Police—and despite Plaintiff's good faith effort to answer the question Estrada should have asked, Estrada refuses to correct herself or compromise and instead blames Plaintiff for an answer she does not like.  Plaintiff does not know what else Estrada wants.[6]

### B.  Requests for Production

*Plaintiff's Response to RFP No. 2*

> **REQUEST FOR PRODUCTION NO. 2**: Please produce documents related to the purchase of your current cell phone(s) and any other cell phones you have purchased or acquired from 2022 to date.

> **RESPONSE**: Plaintiff objects it is vague and ambiguous what is being requested. If Estrada clarifies this request, Plaintiff is willing to confer. Plaintiff does not see how a sales contract for a cell phone is relevant to the parties' claims or defenses.

Estrada's Motion admits the goal of this RFP is to search for other potential recipients of the intimate Video.  But Estrada has no reason to believe such people exist.  Estrada is on a wishful thinking, fishing expedition.  But more than that, even if Estrada were entitled to conduct her fishing expedition, RFP No. 2 is not narrowly tailored to discover this information.  How would cell phone contracts show whom Plaintiff sent a Video to?

Plaintiff also points out that this whole idea that she may have sent the Video to someone else is not relevant to the claims and defenses in the case.  This is all just more slut-shaming from Estrada.  "Maybe Plaintiff sent the Video to someone else!"  Even if true (which it is not, and for which there is no evidence), so what?  Estrada, Jurado, and Vizcarra acquired the Video from

---

[6] Estrada is correct the dates do not line up.  Plaintiff meant early 2024, not early 2023.  As Estrada states, everyone knows Soto started at Lovington PD in early 2024.  Estrada does not need an interrogatory response from Plaintiff for this fact.  If Estrada wants a clean record, Plaintiff is happy to serve an amended response changing the date.

Porras, and they sent it via an anonymous TracFone to Andy Dominguez, Megan Murillo, and others, as a result of which *Plaintiff* was fired for having a "sullied reputation."  That is proven by the text messages the parties *do have* from Jurado's phone, coupled with the data about times of messages sent/receive by the TracFone, acquired by the New Mexico State Police.  That Plaintiff may have sent the Video to someone else is not relevant.  It is as if the police caught a bank robber red-handed, and the bank robber defends himself by pointing to a customer leaving the bank with cash withdrawn from the ATM.

*Plaintiff's Response to RFP No. 3*

> **REQUEST FOR PRODUCTION NO. 3**: Please produce all communications, including but not limited to text messages, chat conversations, emails, WhatsApp messages, pictures, videos, Snapchats, or social media posts that you exchanged with Victor Murillo from January 1, 2023, until present.
>
> **RESPONSE**: Plaintiff objects this is request is overly broad and unduly burdensome. Every conversation with Murillo is not relevant. This request is not tailored toward the parties' claims or defenses. If Estrada is willing to narrow this request, Plaintiff is willing to confer.

This request is vastly overbroad.  Again, there is no reason to believe any text messages between Murillo and Plaintiff are relevant to any claim or defense.  This is pure blame-the-victim strategy by Estrada.  But even if some text messages might be relevant, the timeframe listed is vastly overbroad.  Defendants did not search their text messages outside the May 1-September 30, 2023 timeframe.  Why should the timeframe be broader for Plaintiff?  Estrada never explains.

*Plaintiff's Response to RFP No. 4*

> **REQUEST FOR PRODUCTION NO. 4**: Please produce all communications, including but not limited to, text messages, chat conversations, emails, WhatsApp messages, pictures, videos, Snapchats, or social media posts exchanged with Daniel Soto from January 1, 2022, until present.
>
> **RESPONSE**: Plaintiff objects this is request is overly broad and unduly burdensome. Every conversation with Soto is not relevant. This request is not

tailored toward the parties' claims or defenses. If Estrada is willing to narrow this request, Plaintiff is willing to confer.

Again, this request is vastly overbroad. Estrada is going back even further for Soto than for Murillo, presumably to capture the blow-by-blow details of Plaintiff's relationship with Soto in the summer of 2022. But who cares? Why is that relevant to anything? Plaintiff and Soto both testified to the affair. Why does Estrada need every detail of who, when, where, a year before the incident at issue? These requests for communications between Plaintiff and Soto/Murillo are not only overbroad; they are harassing.

*Plaintiff's Response to RFP No. 15*

**REQUEST FOR PRODUCTIO NO. 15**: Please produce all communications, including but not limited to, text messages, chat conversations, emails, WhatsApp messages, pictures, or videos with any member of the New Mexico State Police from July 3, 2023, until present.

**RESPONSE**: Will produce.

**SUPPLEMENTAL RESPONSE**: Plaintiff will conduct a reasonable search for such documents and produce them if she locates any.

Plaintiff will supplement this response.

## CONCLUSION

For the reasons stated herein, Estrada's Motion should be DENIED. Plaintiff seeks all other relief to which she may be entitled at law or in equity.

16

October 15, 2025

**WALDO GUBERNICK**
**LAW ADVOCATES LLP**


By:_____/s/ Curtis Waldo_____
Benjamin Gubernick (SBN 145006)
ben@wglawllp.com
Curtis Waldo (SBN 163604)
curtis@wglawllp.com
Telephone (346) 394-8056
717 Texas St. Suite 1200
Houston, TX 77002

## CERTIFICATE OF SERVICE

I hereby certify that on October 15, 2025, I served the foregoing document on counsel of record in compliance with the Federal Rules of Civil Procedure.

_/s/ Curtis Waldo_____
Curtis Waldo

17