IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

KARINA TELLO,

Plaintiff,

v.  2:24-cv-00390-KG-GJF

LEA COUNTY BOARD OF COUNTY
COMMISSIONERS, COREY HELTON,
MICHAEL WALKER, FERNANDO JIMENEZ,
SEAN ROACH, SONIA ESTRADA,
DIANA JURADO-GARCIA,
AILEEN VIZCARRA, ALYSSA PORRAS,
DOE DEFENDANTS 1-50,

Defendants.

**PLAINTIFF'S RESPONSE TO DEFENDANT ALYSSA PORRAS' FIRST AMENDED MOTION FOR SUMMARY JUDGMENT (Dkt. 148)**

Plaintiff Karina Tello ("Plaintiff"), through undersigned counsel, responds as follows to Defendant Alyssa Porras' ("Porras" or "Defendant") First Amended Motion for Summary Judgment (Dkt. 148, the "MSJ" or "Def. Mot."). As explained below, material factual disputes exist, so the Court should deny Porras' motion.

## I. INTRODUCTION

In June 2023, Porras and three Lea County Sheriff's Office ("LCSO") employees—Diana Jurado ("Jurado"), Aileen Vizcarra ("Vizcarra") and Sonia Estrada ("Estrada") (collectively, the "Officer Defendants")—conspired to disseminate a sexually explicit video of Plaintiff, with the aim of humiliating Plaintiff and causing LCSO to fire her. These events were documented in real time, over text messages, by the conspirators. The scheme—and Porras' role in the scheme—are recounted in granular detail in approximately 1500 pages of contemporaneous text messages recovered from Jurado's phone by the New Mexico State Police ("NMSP"). The authenticity of the NMSP text messages is undisputed. The Officer Defendants have been deposed and acknowledged sending and receiving them. Nonetheless, the Officer Defendants steadfastly deny

1

involvement in the scheme. When confronted with the text messages, Jurado, Vizcarra, and Estrada generally claimed amnesia.

Porras has yet to be deposed but now attempts to piggyback on her co-conspirators' denials. Indeed, the MSJ relies entirely on the Court accepting the Officer Defendants' denials as gospel. Essentially the whole motion is built on the same junk logic:

- Overwhelming evidence points to the Officer Defendants' and Porras' guilt; BUT
- The Officer Defendants deny doing what they obviously did; THEREFORE
- "[T]here exists no evidence that Porras engaged in any extreme or outrageous conduct[.]" MSJ at 9.

That conclusion does not follow. A reasonable jury could (and, realistically, would) reject the Officer Defendants' self-serving denials and instead credit the *dozens of confessions* uncovered by NMSP. As those confessions are admissible against Porras as co-conspirator statements, the MSJ fails.

The only other argument offered by the MSJ—that Porras was not motivated by discriminatory animus—likewise falls flat. According *to the conspirators*, the whole conspiracy was designed to excise someone they saw as a "whore" from LCSO. In other words, Plaintiff was targeted *because of* her non-conformance with gender stereotypes. Accordingly, the Court should deny the MSJ in its entirety.

## II.  LEGAL STANDARD

Summary judgment is only appropriate if evidence "shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Pitman v. Blue Cross & Blue Shield*, 217 F.3d 1291, 1295 (10th Cir. 2000) (quoting Fed. R. Civ. P. 56(c)). The moving party bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party meets its initial burden, the non-movant must then defeat summary judgment by showing that there is a genuine dispute of material facts. *Id*. A fact is considered material if it "might affect the outcome

of the suit under governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. In reviewing summary judgment evidence, the court draws all reasonable inferences in favor of the nonmoving party to determine if "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

### III.     PORRAS' UNDISPUTED MATERIAL FACT

For purposes of this motion only, Plaintiff responds as follows to Defendant's Undisputed Facts ("DUF"):

DUF Nos. 1-4: Undisputed.

DUF No. 5: Disputed. Tello testified that she made the video that is the subject of this litigation (the "Intimate Video) for Daniel Soto ("Soto"). See Exhibit 3 to the attached Declaration of Benjamin Gubernick ("Gubernick Decl.") at 43:12 – 44:3. Soto testified that he sent the Intimate Video to Porras. Gubernick Decl. Ex. 5 at 51:20-23. The text messages from Jurado's phone show Porras gave a video to Jurado on June 6, 2023. Gubernick Decl. Ex. 1 at 524-528. The context of the messages in the text chain strongly indicate that this was the Intimate Video. *Id.* Moreover, the TracFone started disseminating the Intimate Video on or about June 13, 2023.[1] A reasonable jury could find based on the foregoing that Porras provided Jurado with the Intimate Video.

DUF No. 6: Disputed. Defendant cites Jurado's deposition, yet Jurado did not testify that Porras gave her "a video of Tello at the park with Deputy Victor Murillo[.]" Rather, Jurado stated, repeatedly, that she did not remember what video the text messages referred to. *See* MSJ Ex. E at 213:9-1 ("I don't remember exactly what video, but I know it wasn't the [Intimate Video]"); MSJ Ex. F at 214:21-22 ("I don't recall the video, but I know that it was not [the Intimate Video]. I don't know which video."). Jurado also agreed that the "park videos" were submitted as part of the back-

---

[1] Estrada tried to send the video to Jimenez prior to June 13, but it did not go through. Gubernick Decl. Ex. 1 at 873-74 (Vizcarra on June 13: "I am still tripping out on the fact that they didn't get the damn video bro…."); (Jurado on June 13: "Fernando said he's waiting for the video dude. He said he didn't receive anything….").

3

and-forth complaints between Plaintiff and Estrada. Ex P at 51:23 – 52:1. That happened almost a week *before* Jurado obtained the Intimate Video from Porras. Gubernick Decl. Ex. 1 at 524-28.

DUF No. 7: It is unclear what Defendant means by "multiple videos of Tello[.]" Plaintiff does not dispute that she made multiple videos for her romantic partners, although that fact has no relevance to the MSJ. Porras fails to cite any evidence that any video other than the Intimate Video was disseminated publicly.

DUF No. 8: Disputed. This is the same factual contention as DUF No. 6 and suffers from the same infirmities. The only evidence Porras cites for DUF No. 8 is an excerpt from Vizcarra's deposition that reads, in pertinent part: "Q. Do you know what videos are being referred to here? A. I can only *assume* that they were the ones at the park with Victor and Karina." MSJ Ex. H, 272:20-23 (emphasis added). So, even if the Court credits Vizcarra's testimony, Vizcarra does not remember what video Porras provided. Assumptions and speculation are not admissible summary judgment evidence, and there is no evidence that Vizcarra was even present when Porras delivered the video to Jurado.

DUF No. 9: Disputed, to the extent Porras is claiming that the Intimate Video was circulated prior to June 13, 2023. Gubernick Decl. Ex. 3 at 74:8-18. Additionally, the only evidence cited by Porras—an excerpt from Fernando Jimenez's deposition—is mere speculation. Jimenez testified that he had *no* firsthand knowledge of any video of Tello circulating at a conference in Ruidoso. MSJ Ex. I at 209:23 – 201:3 ("There was something that went around at a conference about a video. I don't know what video. I don't know. I'm assuming this is [sic] intimate video[.]").

DUF No. 10: Undisputed that Jurado made that claim in her deposition. Disputed that she was telling the truth. *See* response to DUF No. 5.

DUF No. 11: It is unclear what Defendant means by "six videos of Tello circulating around Lea County, which were a topic of conversation around the LCSO Officer's [*sic*] [.]" Plaintiff's fiancé showed her part of the Intimate Video, as did Roach, and they appeared to be the same. Gubernick Decl. Ex. 3 at 38:18-39:16. Defendant puts forward no evidence of any sexually explicit videos of Plaintiff "circulating around Lea County."

4

DUF No. 12: Disputed. The MSJ includes no admissible evidence that a video of "Tello and Soto having sex" even exists. Defendant cites Jurado's deposition, but Jurado merely regurgitated intraoffice gossip. *See* MSJ Ex. K at 34:9 – 35:4. Jurado did not claim to have any personal knowledge.

DUF No. 13: Plaintiff has no idea what Porras means with this factual contention. As far as Plaintiff knows, no one involved in this litigation has ever suggested that there is a video of "Tello and Walker having sex[.]" The lone deposition excerpt cited by Porras says nothing about that.

DUF No. 14: Disputed. Defendant has failed to put forward admissible evidence that such a video exists. Jurado testified that she has no personal knowledge of a video depicting Plaintiff and Soto having sex, just that she "was told" by someone that it exists. Ex. N. at 37:2-14. That is hearsay evidence for which no exception applies.

DUF No. 15: Disputed, for the same reasons as DUF No. 14.

DUF No. 16: Disputed, for the same reasons as DUF No. 5.

DUF No. 17: Undisputed.

DUF No. 18: Disputed that the Intimate Videos was "circulating around a conference in Ruidoso[.]" The only evidence Porras cites is Jimenez's deposition, and as discussed in Plaintiff's response to DUF No. 9, Jimenez has no personal knowledge of this factual contention.

DUF No. 19: Undisputed.

DUF No. 20: Undisputed.

DUF No. 21: Disputed. LCSO's internal disciplinary recommendation specifically references the Intimate Video. Gubernick Decl. Ex. 4. It also finds that Plaintiff had violated an LCSO policy requiring deputies to keep their reputations "unsullied[.]" *Id*.

DUF No. 22: Plaintiff has no idea what DUF No. 22 means. Obviously Soto "violated Tello's trust" when he gave the video to Porras. However, Plaintiff has not alleged that Soto knew (or even suspected) that Porras would give it to anyone else.

DUF No. 23: Plaintiff has no idea what DUF No. 23 means, either. Although Soto and Porras had a similar *actus reus* (transferring the Intimate Video to a third party), the *mens rea* was entirely different. There is no evidence that Soto intended to harm Plaintiff when he gave the video to Porras—to the contrary, he testified that he was motivated by a misguided desire to protect himself. Gubernick Decl. Ex. 5 at 51:20-52:7 (Soto sent it to Porras for "safekeeping"). There is ample evidence, however, that Porras knew the Officer Defendants wanted the video so they could harm Plaintiff, and that Porras was happy to join in the conspiracy. Gubernick Decl. Ex. 1 at 524-28.

DUF No. 24: Disputed as to Murillo, undisputed as to Soto. Murillo *pretended* to harbor ill will towards Plaintiff to gain Soto's trust. Gubernick Decl. Ex. 2. As part of that deception, he fabricated text messages between himself and Plaintiff, and himself and Andy Dominguez. *Id*. The only exhibits Porras cites for her contention are (1) the fabricated Murillo text messages; and (2) testimony from Soto. But Soto does not know whether the Murillo/Tello and Murillo/Dominguez exchanges actually happened.

DUF No. 25: Disputed, for the same reasons as DUF No. 24.

## IV. PLAINTIFF'S ADDITIONAL UNDISPUTED FACTS

The following Plaintiff's Additional Undisputed Facts ("PAF") are material to resolving the MSJ:

PAF No. 1: Plaintiff and Soto dated from around May 2022 to August 2022. Gubernick Decl. Ex. 5 38:3-7.

PAF No. 2: While Plaintiff and Soto were dating, Plaintiff made a video of herself masturbating (the Intimate Video) and sent it to Soto. Gubernick Decl. Ex. 3 at 43:12 – 44:3.

PAF No. 3: Plaintiff did not send the Intimate Video to anyone else. Gubernick Decl. Ex. 3 at 43:12 – 44:3.

PAF No. 4: In late 2022 or early 2023, Soto sent the Intimate Video to Porras for "safekeeping." Gubernick Decl. Ex. 5 at 51:20-52:7.

PAF No. 5: Porras is friends with Jurado. MSJ Ex. P at 49:12-17.

6

PAF No. 7: Estrada obtained the video of Plaintiff and Murillo talking at a park in Lovington, and notified Roach. Gubernick Decl. Ex. 6, p.2 ("My daughter than showed me the video she captured while at the park.").

PAF No. 8: During the morning of June 6, 2023, Jurado unsuccessfully attempted to convince Soto to provide her with sexually explicit pictures of Plaintiff. Gubernick Decl. Ex. 1 at 806-808 (Jurado: "I've been talking to Soto outside for the past 25 min. ... I asked him to give me all the dirt on Karina. I saw like 30+ pics and screenshots of sex talk.").

PAF No. 9: On June 6, 2023, Jurado met with Porras and pitched her on the scheme to harm Plaintiff. Gubernick Decl. Ex. 1 at 524-28.

PAF No. 10: On June 6, 2023, Porras gave Jurado the Intimate Video. Gubernick Decl. Ex. 1 at 524-28 ("Alyssa is on board with us. I didn't even have to ask her for it. She offered it to me and said do it.").

PAF No. 11: On June 7, 2023, Porras attempted to convince Soto to hand over sexually explicit pictures of Plaintiff. Gubernick Decl. Ex. 1 at 193 (Porras to Soto: "You sent videos and dick pics?? Is that why you don't want to give what you have on her?").

PAF No. 11: On June 13, 2023, an anonymous TracFone began sending LCSO officials and their family members the Intimate Video. Gubernick Decl. Ex. 3 at 38:18-39:16.

PAF No. 12: The TracFone was operated by Estrada, in concert with Vizcarra and Jurado. Gubernick Decl. Ex. 1 at 568 (Estrada to Jurado: "Gonna send you a text from the burner phone"); 637-38 (Estrada to Jurado: "I'm gonna turn on the track phone and tell him !! Lmao…I bet he tasted Soto's sperm"); 918-19 (Jurado to Vizcarra: "It's called a track phone for a reason it cannot be tracked…"); 835 (Jurado: "Not even with a track phone?"); 876 (Jurado to Vizcarra: "Tell Sonia what to text Megan … To Andy and the 2nd one to Megan"); 618-19 (Jurado to Estrada: "He wants whoever sent it to send it to Chan and then get rid of the phone").

## V. ARGUMENT

The MSJ is wholly without merit for two reasons: (1) Porras' "no evidence" mantra is contradicted by the record, *including the exhibits attached to her motion*; and (2) Porras and the Officer Defendants' scheme was built around and driven by gender-based animus.

**A. Defendant's "No Evidence" Arguments Fail.**

    **i. Porras has not met her initial burden.**

The Court should deny the MSJ outright, as Porras has failed to demonstrate an absence of disputed material facts. The thrust of the MSJ is that the text messages collected by NMSP merely document Porras giving Jurado a video of Plaintiff and Murillo at a park. However, Porras has failed to put forward any admissible evidence supporting that proposition—the closest Porras comes is Vizcarra's testimony that she "assumed" it was a park video. But "[u]nsubstantiated allegations carry no probative weight in summary judgment proceedings. … [E]vidence, including testimony, must be based on more than mere speculation, conjecture, or surmise." *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004). The only other "evidence" Defendant cites is from Jurado's deposition, where she claimed not to remember what video her text messages referred to.

It bears emphasis: hardly any factual contentions in the MSJ are drawn from witnesses' personal knowledge. Many are supported by little more than rumor. *See, e.g.,* DUF Nos. 7-9, 11-14.  And Porras has not submitted an affidavit or declaration in support of her MSJ. She merely argues, through counsel, that she is innocent. But "[f]actual statements in the memorandum are not evidence that can be considered on … motions for summary judgment." *Barney v. Gillespie*, 813 F. Supp. 1537, 1543 (D. Utah 1993). There is simply nothing in the record to support Porras' contention that "[t]he video Jurado received from Porras was a video of Tello at the park with Deputy Victor Murillo[.]" DUF No. 6.

When the gossip and speculation are stripped away, all that remains is "a narrative over three pages long of what [Defendant] characterizes as 'undisputed facts' without citing any factual or evidentiary support." *Edge Constr., LLC v. Owners Ins. Co.*, No. 14-CV-00912-MJW, 2015

WL 4035567, at *2 (D. Colo. June 29, 2015), *aff'd sub nom. Sable Cove Condo. Ass'n v. Owners Ins*. Co., 668 F. App'x 847 (10th Cir. 2016). That will not suffice. Nor can Porras carry her burden through the MSJ's interspersed, *ipse dixit* assertions of "no evidence." *See, e.g.,* Def. Mot. at 2 ("There simply is a lack of proof to support Tello's claims against Porras"); *id*. ("there is no evidence Porras shared the video Soto gave her with anyone."); *id*. at 7 ("There exists no evidence of any discriminatory motivation"). The Federal Rules of Civil Procedure

> do[] not have a "no-evidence" summary judgment rule … that allows a litigant to move for summary judgment as to all or part of a lawsuit on the ground that there is no evidence of one or more essential elements of a claim or defense on which an adverse party would have the burden of proof at trial.

*Edge Constr*., 2015 WL 4035567 at *2 fn. 2. Thus, Porras may not "merely move[] for summary judgment based upon a conclusory claim of [Plintiff's] 'lack of evidence.'" *Id*. at 2.

In short, "the court has before it little more than an allegation that plaintiff cannot prove her claims." *Luttjohann v. Goodyear Tire & Rubber Co*., 938 F. Supp. 694, 696 (D. Kan. 1996). "Mere conclusory allegations are not competent summary judgment evidence, and they are therefore insufficient to defeat or support a motion for summary judgment." *Id*. Accordingly, the MSJ should be denied.

### ii.     Disputed questions of material fact preclude summary judgment.

Even if the Court finds that Porras has somehow met her initial burden, the MSJ still fails because a reasonable jury could find in Plaintiff's favor. As Defendant correctly recognizes, "Tello's claims against Porras all center on the same premise, that the so-called intimate video was given to Soto who gave it to Porras who then gave it to one of the other Defendants for the purpose of harming Tello." Def. Mot. 6. The problem for Porras, though, is evidence exists that she handed over the Intimate Video to Jurado, Vizcarra, and Estrada.

To start with, Plaintiff never sent the Intimate Video to anyone besides Soto, and Soto never provided the video to anyone except Porras. At this stage in the proceedings, the Court is required to credit that testimony. *Fogarty v. Gallegos*, 523 F.3d 1147, 1165 (10th Cir. 2008) ("On summary judgment, a district court may not weigh the credibility of the witnesses.").

9

Also, Porras admits she obtained the Intimate Video from Soto, (Def. Mot. at 2), and concedes there is a "text that indicates she shared a video" with Jurado. *Id*. at 8. That text was sent on June 6, 2023. Gubernick Decl. Ex. 1 at 524-28. And less than a week after Porras gave the video to Jurado, the TracFone started sending the Intimate Video to LCSO's top brass. *See generally*, *Etherton v. Owners Ins. Co*., 829 F.3d 1209, 1220 (10th Cir. 2016) (temporal proximity "relevant to identifying causal relationships").

Next, the text messages collected by NMSP are damning. On the morning of June 6, 2023, Jurado spent "25 minutes" on the phone with Soto, attempting to convince him to "give [her] all the dirt on Karina." Gubernick Decl. Ex. 1 at 806-808. However, Soto refused to unless Jurado could "guarantee that she's given all those nudes to other men then he will turn them over to me." *Id*. A couple hours later, Porras stopped by and Jurado announced to Vizcarra (1) that Jurado "ha[d] the video"; (2) "Alyssa is on board with us"; (4) "[Jurado] didn't even have to ask her for it"; and (5) "[Porras] offered it to [Jurado] and said do it." Gubernick Decl. Ex. 1 at 524-28. The next day, Jurado texted Vizcarra, "Now [Plaintiff's] gonna have to see the mean (bullying) part of us" and that Jurado is "about to go talk to walker [sic] and show him this video of this whore!" Gubernick Decl. Ex. 1 at 819-23.

And those are just a handful of texts among hundreds that are admissible against Porras as co-conspirator statements. The Rules of Evidence specifically define statements "made by the party's coconspirator during and in furtherance of the conspiracy" as non-hearsay. Fed. R. Evid. 801(d)(2)(E). They may be considered at the summary judgment stage if the "plaintiff … establish[s] by a preponderance of the evidence that a conspiracy existed, that the declarant and defendant against whom the statement is offered were members of the conspiracy, and that the statement was made in the course of and in furtherance of the conspiracy." *Champagne Metals v. Ken-Mac Metals, Inc*., No. CIV-02-0528-HE, 2008 WL 5205204, at *1 (W.D. Okla. Dec. 11, 2008). That showing is remarkably easy here. Saying "do it" and giving Jurado the video qualifies

as an agreement, knowledge of specific intent, and an overt act in furtherance of the conspiracy.[2] Moreover, Porras' participation in the conspiracy did not end when she turned over the Intimate Video. On June 7, 2023, in a group text with the Officer Defendants and Soto, Porras *tried to convince Soto to send the pictures of Plaintiff that he had refused to provide to Jurado*. See Gubernick Decl. Ex. 1 at 193 ("You sent videos and dick pics?? Is that why you don't want to give what you have on her?"). Porras may not downplay her role now by claiming, as she does in the MSJ, that "there exists no evidence she did anything in that regard other than the text that indicates she shared a video." Def. Mot. at 9.

Whether a jury ultimately finds Porras responsible is besides the point. On summary judgment, the question is: does a triable issue exist? Based on the timeline of events, Porras' animosity towards Plaintiff, and the reems of text messages evincing Porras' guilt, one surely does.

### iii. Defendant's remaining evidentiary arguments misstate the law.

The MSJ largely ignores the evidence discussed in the previous section. Instead, it attempts to move the goalposts by misstating Plaintiff's evidentiary burden

First, Porras claims that Plaintiff could not have suffered emotional distress because "evidence clearly reveals Tello's videos were going around at a conference in Ruidoso well before she alleges Porras shared an intimate video of her." Def. Mot. at 9. But that misstates the record—there is no admissible evidence of videos circulating at a conference in Ruidoso. And even if there was, so what? An anonymous TracFone started sending the Intimate Video to Plaintiff's coworkers on June 13, 2023. Is Defendant's argument that if some other video of Plaintiff was already in the public sphere, she was now somehow humiliation-proof? If so, Defendant is wrong on the law. *Lazy S Ranch Props., LLC v. Valero Terminaling & Distribution Co.*, 92 F.4th 1189, 1204 (10th

---

[2] It makes no difference that this statement is drawn from a text by Jurado. *See Champagne Metals v. Ken-Mac Metals, Inc.*, No. CIV-02-0528-HE, 2008 WL 5205204, at *2 (W.D. Okla. Dec. 11, 2008) ("In determining whether, for purposes of the co-conspirator hearsay exception, the evidence makes the existence of a conspiracy more likely than not, the court may consider both hearsay and independent evidence.").

Cir. 2024) ("the amount of damages is separate from whether [the plaintiff] has presented sufficient evidence to create a genuine issue of material fact as to legal injury.").

Second, Porras speculates that since "Soto shared [the Intimate Video] with Porras … he could have shared it with others, same for Murillo." Def. Mot. at 9. But once again, the MSJ bungles the facts and the law. There is no admissible evidence that Murillo ever received the Intimate Video. And more fundamentally, to prevail on summary judgment, a plaintiff is not required to "exclude the possibility the so-called intimate video was shared by someone else[.]" Def. Mot. at 8. Plaintiff is only required to prove her claims at trial, and even then, only by a preponderance of the evidence. It would be absurd to hold her to a higher burden of proof on summary judgment. *Lazy S Ranch Props*, 92 F.4th at 1204 (summary judgment improper where "[l]ooking at the totality of the evidence presented, a rational trier of fact could [find for the plaintiff]" and noting "[t]hat conclusion need not be an absolute certainty.")

### B. Defendants' Class-Based Animus Arguments Lack Merit.

Porras puts forward a cursory challenge to Plaintiff's 42 USC §1985, conspiracy to interfere with civil rights claim, but none of her objections hold water.

First, Porras argues that "[t]here clearly is no discriminatory basis for the alleged improper actions of Porras" because "Porras and Plaintiff are, as females in the same protected class." Def. Mot. at 8. The MSJ fails to cite any legal authority for this proposition, which is unsurprising as no authority exists. As the Supreme Court has explained, "it would be unwise to presume as a matter of law that human beings of one definable group will not discriminate against other members of their group." *Oncale v. Sundowner Offshore Servs., Inc*., 523 U.S. 75, 78 (1998). *See also*, *S.E.S. v. Galena Unified Sch. Dist*. No. 499, No. 18-2042-DDC-GEB, 2018 WL 3389880, at *3 (D. Kan. July 12, 2018) (Actionable same-sex discrimination where the harassers "were acting to punish the plaintiff for failing to conform to the stereotypes of his or her gender").

Next, the MSJ asserts generally that "Tello fails to present any evidence of discriminatory bias or animus by Porras." Def. Mot. at 8. But that claim is undercut by Defendant's own statements. The text messages recovered by NMSP include hundreds of communications between

Porras and Jurado. In one text, Porras describes Tello as "dirty" and having "no self-respect!" Gubernick Decl. Ex. 1 at 217. In another, she responds with a laugh emoji when Jurado says Tello is "community property" and "belongs to the streets[.]" *Id*. at 229-30. Viewed in the light most favorable to the non-moving party, Porras had the same motivation as her co-conspirators, i.e. to punish and expose Tello as "the Lea county [*sic*] whore[,]" (*id*. at 226-28), a "nasty bitch[,]" (*id*. at 383-84), and "Fucken [sic] gross[.]" *Id*. at 380.

In other words, it can be reasonably inferred that Porras targeted Plaintiff *because of* her perceived failure to conform to gender stereotypes about female chastity. *Delsa Brooke Sanderson v. Wyoming Highway Patrol*, 976 F.3d 1164, 1177 (10th Cir. 2020) (Sex-based harassment where a female law enforcement officer "was subjected to persistent, repeated rumors of sexual promiscuity."). That is enough for a jury to find Porras was motivated by gender-based animus when "[s]he offered [the Intimate Video] to [Jurado] and said do it." *See e.g.*, *Doe v. Sch. Dist. No. 1, Denver, Colorado*, 970 F.3d 1300, 1312 (10th Cir. 2020) (Reasonable jury could find harassment based on sex where woman was "called a dirty slut"); *Winsor v. Hinckley Dodge, Inc.*, 79 F.3d 996, 998 (10th Cir. 1996) (gender-based discrimination where "salesmen would regularly call plaintiff a 'curb side cunt' and 'floor whore' behind her back, and would state that 'it's not who you know but who you blow' in reference to plaintiff."); *Plotke v. White*, 405 F.3d 1092, 1107 (10th Cir. 2005) ("gender-based comments by a plaintiff's supervisor can be relevant evidence of pretext demonstrating that the supervisor had preconceived notions premised on the plaintiff's gender"); *Long v. Alpha Media, LLC*, No. 24-2400-DDC, 2025 WL 3101011, at *4 (D. Kan. Nov. 6, 2025) ("that [defendant] called [plaintiff] a 'dumb slut' … presents a huge problem [for defendant]").

## VI. CONCLUSION

For the foregoing reasons the MSJ should be denied.

[Signature on following page]

13

| | |
|---|---|
| December 12, 2025 | **WGLA, LLP** |
| | By:*/s/ Benjamin Gubernick* <br> Benjamin Gubernick (SBN 145006) <br> ben@wglawllp.com <br> Curtis Waldo (SBN 163604) <br> curtis@wglawllp.com <br> Telephone (346) 394-8056 <br> 717 Texas St. Suite 1200 <br> Houston, TX 77002 |
| | *Counsel for Plaintiff* |

## CERTIFICATE OF SERVICE

  I hereby certify that on December 12, 2025, I served this document on counsel of record in compliance with the Federal Rules of Civil Procedure.

*/s/ Benjamin Gubernick*
Benjamin Gubernick
