IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

KARINA TELLO,

    Plaintiff,

v.                                                                         No. 2:24-cv-00390-KG-GJF

LEA COUNTY BOARD OF COUNTY
COMMISSIONERS, et al.,

    Defendants.

## MEMORANDUM OPINION AND ORDER

    This matter is before the Court on two motions: (1) a motion to dismiss for failure to join an indispensable party under Federal Rule of Civil Procedure 12(b)(7) filed by Defendants the Lea County Board of County Commissioners, Corey Helton, Michael Walker, Fernando Jimenez, and Sean Roach ("County Defendants"), Doc. 129; and (2) a motion to dismiss for failure to state a claim under Rule 12(b)(6) filed by Defendants Sonia Estrada, Diane Jurado-Garcia, and Aileen Vizcarra ("Law Enforcement Defendants"), Doc. 50.  For the reasons below, the Court denies the County Defendants' Rule 12(b)(7) motion in its entirety and grants in part the Law Enforcement Defendants' Rule 12(b)(6) motion as to Count Ten but denies the motion in part in all other respects.

### I.  *Background*

    The Court draws this case's background from the allegations in Plaintiff's Third Amended Complaint, which the Court must accept as true at the motion to dismiss stage. *E.g.*, *WildEarth Guardians v. U.S. Forest Serv.*, 2025 WL 2430383, at *1 n.1 (D.N.M.).

    Plaintiff Karina Tello was a deputy with the Lea County Sherriff's Office ("LCSO") from February to July 2023.  Doc. 41 ¶¶ 20, 51.  Estrada was Tello's "immediate supervisor."

1

*Id.* ¶ 20.  Estrada, Vizcarra (LCSO's public relations officer) and Jurado-Garcia (a deputy at LCSO) blamed Tello because "a friend of theirs" lost his job "after [Tello] reported him for sexual harassment."  *Id.* ¶¶ 13, 14, 21.

In May 2023, Estrada began "spreading false rumors" about Tello "having an affair" with "another LCSO deputy."  *Id.* ¶ 22.  Tello "filed a complaint" with LCSO about "Estrada's harassment and threats."  *Id.* ¶ 24.  "Hours after [Tello] filed [the] complaint," Estrada, Vizcarra, and Jurado-Garcia "devised a scheme to humiliate [Tello] and ruin her career."  *Id.* ¶ 25. Estrada, Vizcarra, and Jurado-Garcia "purchased a Tracfone" to send "defamatory messages" about Tello, thinking they "would be anonymous and untraceable."  *Id.* ¶ 26.  Around that time, Defendant Alyssa Porras, "a Lovington Police Department officer," acquired an "intimate video of [Tello]."  *Id.* ¶ 28.  Tello recorded this video "in October 2022…solely for her romantic partner."  *Id.* ¶ 29.  Porras "agreed" to "disseminate" the video and "offered it" to Jurado-Garcia. *Id.* ¶ 30.

Around June 13, 2023, "LCSO officials" and others "began receiving the [v]ideo" "from the Tracfone."  *Id.* ¶ 34.  Recipients included Tello's fiancée; Lea County Sherriff Helton; Chief Deputy Jimenez; and Captain Roach.  *Id.* ¶¶ 8, 10, 11, 35–36.  A message accompanying the video read: "Are these the kind of whores y'all hire at the Lea County Sheriff's Office?"  *Id.* ¶ 37.  On June 16, 2023, Tello "was called [into] a meeting with Roach, and [was informed] that because of the [v]ideo, *she* had violated LCSO's code of ethics."  *Id.* ¶ 39.  Tello "identified Estrada as the likely culprit" who had disseminated the video, and "Roach agreed" "but took no action."  *Id.* ¶ 41.  Tello asked Roach to "notify New Mexico State Police" ("NMSP") "so that they could investigate" a possible criminal violation of New Mexico's "revenge porn statute."

2

*Id.* ¶¶ 45, 47; *see also* NMSA 1978, § 30-37A-1 (Cum. Supp. 2015).  Tello eventually "filed a report with NMSP" on "July 3, 2023." *Id.* ¶ 49.

Two weeks later, "NMSP requested a meeting with [Tello] to get her statement," and "[Tello] notified Roach." *Id.* ¶ 50.  The next morning, "Walker called [Tello] into his office and fired her…because the [v]ideo violated LCSO's code of ethics, and…[Tello] did not get along with her coworkers." *Id.* ¶ 51, 52.  Tello allegedly violated "ADM 1-02-2(E)," which requires that "deputies keep [their] private li[ves] unsullied as an example to all." *Id.* ¶ 55.  LCSO did not similarly discipline a "male LCSO deputy" who "had sent an unwanted sexually explicit video to a woman he had been talking with on a social media application." *Id.* ¶ 61.  The male deputy was "exonerated" because the "incident occurred while off duty, was not repetitive, and there was no indication that Sheriff's Office paraphernalia was seen in the video." *Id.* ¶ 62.  Here, Tello argues that she "was not even working at LCSO" "when the [v]ideo was made," and "[t]he recipient of the [v]ideo consented to receiving it." *Id.* ¶ 63, 65.  The policy manual "vest[s] Helton with complete discretion to determine what conduct violates ADM 1-02-2(E)." *Id.* ¶ 66.  Estrada, Vizcarra, Jurado-Garcia, and Porras were criminally charged by NMSP with violating the revenge porn statute in February 2024.  *Id.* ¶ 68.

Tello filed a lawsuit in state court, and Defendants removed the case to this Court in April 2024.  Doc. 1.  Tello filed her operative complaint (the Third Amended Complaint) on April 1, 2025, alleging violations of Title VII; the Fourteenth Amendment's due process and equal protection clauses under § 1983; § 1985(3)'s prohibition against conspiracies to interfere with civil rights; the First Amendment; intentional infliction of emotional distress ("IIED"); and New Mexico's Whistleblower Protection Act.  Doc. 41.  The County Defendants filed their Rule 12(b)(7) motion to dismiss on October 22, 2025, arguing that Daniel Soto and Victor Murillo,

3

"former romantic partners" of Tello, are necessary and indispensable parties to the lawsuit because "both individuals received explicit videos" from Tello "and felt animosity" toward her. Doc. 129 at 1–2.  The Law Enforcement Defendants filed their Rule 12(b)(6) motion to dismiss Count Four, violation of the Equal Protection Clause under § 1983; Count Seven, conspiracy to interfere with civil rights under § 1985; and Count Ten, IIED, on April 15, 2025.  Doc. 50.  The Law Enforcement Defendants argue that Tello failed to state any "personal involvement" of Estrada in her equal protection claim, that her conspiracy claim "was not the result of class-based animus," and that "sovereign immunity is not waived" under New Mexico's Tort Claims Act ("NMTCA") for IIED liability "against a public employee." Doc. 50 at 3, 6.

## II.     Legal Standards

Rule 12(b)(7) allows dismissal of a complaint for "failure to join a party under Rule 19." Fed. R. Civ. P. 12(b)(7).  Ordinarily, the party seeking dismissal bears the burden to prove that the absent party is necessary under Rule 19.  *See Citizen Band Potawatomi Indian Tribe of Okla. v. Collier*, 17 F.3d 1292, 1293 (10th Cir. 1994).  When applying Rule 19, the district court "must first determine whether the absent party is necessary to the lawsuit and, if so, whether joinder of the absent party is feasible." *Davis v. United States*, 192 F.3d 951, 957 (10th Cir. 1999).  The absent party is necessary if:

> (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest.

*Id.* at 957–58. Complete relief contemplated by Rule 19(a) refers to "relief between the persons already parties to the action," "not as between a present party and the absent party whose joinder

4

is sought." *Champagne v. Kansas City*, 157 F.R.D. 66, 67 (D. Kan. 1994). A court can afford complete relief when a party's absence "does not prevent the plaintiffs from receiving their requested…relief." *Sac & Fox Nation of Missouri v. Norton*, 240 F.3d 1250, 1258 (10th Cir. 2001). If an absent party is found to be necessary but joinder is unfeasible, the district court must decide "whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed." Fed. R. Civ. P. 19(b). If the "district court concludes that the action cannot proceed" "it must deem the absent party indispensable and dismiss the suit." *Davis*, 192 F.3d at 959.

To survive a Rule 12(b)(6) motion to dismiss, a complaint must allege facts that, if true, state a plausible claim for relief that is plausible on its face. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint satisfies this standard if it contains sufficient factual allegations for the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* When a complaint is dismissed pursuant to Rule 12(b)(6), courts generally permit plaintiffs to file an amended complaint. *See Brever v. Rockwell Int'l*, 40 F.3d 1119, 1131 (10th Cir. 1994).

Section 1983 creates a cause of action for federal constitutional violations against persons acting "under color of" state law. 42 U.S.C. § 1983; *see McCarty v. Gilchrist*, 646 F.3d 1281, 1285 (10th Cir. 2011). Section 1983 requires state action— *i.e.*, that the deprivation of a plaintiff's rights "be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the [S]tate or by a person for whom the State is responsible." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982).

The Fourteenth Amendment's Equal Protection Clause prohibits "a state actor from engaging in discriminatory conduct." *Shepherd v. Robbins*, 55 F.4th 810, 816 (10th Cir. 2022). Sexual harassment "constitutes sex discrimination," and a "state actor violates the Equal

Protection Clause of the Fourteenth Amendment when he commits sexual harassment." *Id.* at 817. Courts analyze the "nature of the relationship between the plaintiff and the defendant, and not the specific harassing conduct…when determining whether a constitutional violation occurred." *Id.* at 818. Sexual harassment claims "exist[] for subordinates against their supervisors in government positions." *Id.* at 818. If a supervisor "participates in or consciously acquiesces in sexual harassment," the supervisor is liable. *Woodward v. City of Worland*, 977 F.2d 1392, 1401 (10th Cir. 1992); *see also Bohen v. City of East Chicago*, 799 F.2d 1180, 1185 (7th Cir. 1986) ("Creating abusive conditions for female employees and not for male employees is discrimination.").

Section 1985(3), originally passed as the Ku Klux Klan Act, states in relevant part that "if two or more persons in any State or territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws...the party so injured or deprived may have an action for the recovery of damages." 42 U.S.C. § 1985(3). To bring a § 1985(3) claim, a plaintiff must plausibly allege a conspiracy to interfere with their rights because of racial or other class-based animus, an act in furtherance of the conspiracy, and a resulting injury or deprivation. *See Tilton v. Richardson*, 6 F.3d 683, 686 (10th Cir. 1993). The plaintiff must be a "member of a statutorily protected class, and the actions taken by defendant must stem from plaintiff's membership in the [protected] class." *Yaklich v. Grand Cty.*, 2378 Fed. Appx 797, 802 (10th Cir. 2008); *see, e.g.*, *Nielson v. Soltis*, 1994 WL 589460, at *9 (dog trainers are not members of statutorily protected class); *see also Lesley v. Bennett*, 778 F. Supp. 3d 1201, 1215 ("while the Tenth Circuit has yet to make a specific finding on whether sex is a class…discriminatory conspiracies motivated by a sex-based

6

animus are within the scope of Section 1985(3)"). There "must be some…invidiously discriminatory animus behind the conspirator's action." *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971).

States including New Mexico have passed laws prohibiting the nonconsensual distribution of intimate images. *See* NMSA 1978, § 30-37A-1 (Cum. Supp. 2015). Congress created a civil remedy for the nonconsensual distribution of intimate images as part of an amendment to the Violence Against Women Act. 15 U.S.C. § 6851. Congress enacted the Violence Against Women Act with the express purpose of redressing "the escalating problem of violence against women." S. REP. NO. 103–138, at 37 (1993).

The NMTCA is the "exclusive remedy against a governmental entity or public employee for any tort for which immunity has been waived under the Tort Claims Act," and "no other claim…may be brought against a governmental entity or against the public employee or his estate whose act or omission gave rise to the suit or claim." NMSA 1978, § 41-4-17 (Cum. Supp. 1976). "Public employee means an officer, employee or servant of a governmental entity." *Id.* "Unless the NMTCA contains a waiver of immunity," a plaintiff "may not sue…for a damage claim arising out of violations of rights under the New Mexico Constitution." *Lymon v. Aramark Corp.*, 728 F. Supp. 2d 1222, 1251 (D.N.M. 2010). The statute provides exceptions to the immunity of law enforcement officers for multiple torts, including "assault, battery, false imprisonment," but IIED is not included among those exceptions. NMSA 1978, § 41-4-12 (Cum. Supp. 2020).

### III.     Analysis

For the reasons below, the Court (A) denies the County Defendants' Rule 12(b)(7) motion and (B) grants in part the Law Enforcement Defendants' Rule 12(b)(6) motion as to Count Ten but denies the motion in part in all other respects.

#### A.     *The Rule 12(b)(7) motion is denied.*

The County Defendants argue that this case should be dismissed under Rule 12(b)(7) because Soto and Murillo, "former romantic partners" of Tello, are indispensable parties that have not been joined to this action. Doc. 129 at 2. The Court disagrees and denies the motion.

The County Defendants argue that, because "Soto had shared the video with Porras" and Murillo "received videos from Plaintiff," "in their absence, the [C]ourt cannot accord complete relief among existing parties" for Tello's §§ 1983 and 1985 claims. Doc. 129 at 5. This argument lacks merit. Tello's claims seek to "hold[] the Sheriff's Office and the four women…accountable" for creating a hostile work environment, sexually harassing her, and wrongfully terminating her. *Id.* at 5. Soto and Murillo "had nothing to do with" the decision to terminate Tello, they are both private actors, and Tello does not allege that they conspired with any Defendant. Doc. 138 at 14.

The County Defendants fail to persuade the Court that complete relief may not be accorded among the current parties for actions taken against Tello after the videos' dissemination without the addition of Murillo and Soto. *See Rishell v. Jane Phillips Episcopal Mem'l Med. Ctr.*, 94 F.3d 1407, 1411 (10th Cir. 1996) ("[T]he moving party has the burden of persuasion in arguing for dismissal"). Murillo and Soto are not necessary parties within the terms of Rule 19(a)(1), and the County Defendants' motion is therefore denied.

### B. The Rule 12(b)(6) motion is denied in part and granted in part.

Next, the Court denies in part and grants in part the Law Enforcement Defendants' Rule 12(b)(6) motion to dismiss Counts Four, Seven, and Ten. Doc. 50. The Court considers each Count below in turn.

***Count Four.*** The Court first rejects the Law Enforcement Defendants' arguments to dismiss Count Four of Tello's complaint.

Count Four alleges that Defendants violated the Fourteenth Amendment's Equal Protection Clause under § 1983. Doc. 41 ¶ 97. Tello alleges that Estrada, "acting under color of law, punished [Tello] for sending an intimate video of herself" by "sexually harass[ing], humiliat[ing], and subject[ing] [Tello] to a hostile work environment." *Id.* ¶ 98, 99. The "disparate" treatment of Tello "was motivated by a desire to enforce impermissible gender stereotypes" and included "[m]ale deputies" "who engage in identical conduct are not subjected to adverse employment action." *Id.* ¶ 100–01.

The Law Enforcement Defendants argue that the § 1983 claim against Estrada should be dismissed because there are no "plausible facts [alleged] demonstrating that Defendant Estrada had any personal involvement…in the alleged violations of [Tello's] right to equal protection." Doc. 50 at 3. Specifically, they argue that "[t]here are no facts asserted to suggest" that "Estrada allegedly participated in the decision to terminate [Tello's] employment." *Id.* They argue that "a supervisor cannot be held liable individually unless they affirmatively participated or acquiesced in the constitutional violations." *Id.*

The Court disagrees. Tello plausibly alleges in Count Four that Estrada conspired to obtain and then disseminate the illicit video, thereby contributing to sex-based harassment and that the harm to Tello resulted at least in part from Estrada's actions.

***Count Seven.***   Next, the Law Enforcement Defendants move to dismiss Count Seven of Tello's complaint.  Doc. 50 at 4.

Count Seven alleges that Defendants "conspired to deprive Plaintiff of the equal protection of the laws" and caused "acts in furtherance of the conspiracy," in violation of 42 U.S.C. § 1985.  Doc. 41 ¶¶ 122, 123.  The Law Enforcement Defendants argue that Count Seven is "insufficient as a matter of law" because the alleged conspiracy "was not the result of class-based discriminatory animus" but was instead "motivated purely by *personal* animus toward [Tello]."  Doc. 50 at 6.  The Court, however, finds that Tello plausibly alleged sex-based animus that survives the motion to dismiss.  Section 1985(3) covers discriminatory conspiracies motivated by sex-based animus.  *Lesley v. Bennett*, 778 F. Supp. 3d at 1215.  Here, Tello alleges that the Law Enforcement Defendants disseminated, throughout the workplace, an intimate video of her without her consent, along with a message reading: "Are these the kind of whores y'all hire at the Lea County Sheriff's Office?"  Doc. 41 ¶ 37.  The Violence Against Women Act's prohibitions against revenge porn suggest that revenge porn is, at least in part, grounded in sex-based animus against women, *see* 15 U.S.C. § 6851, and the "term 'whore' is usually gender specific" and "offensive when directed at a woman."  *See EEOC v. Sam & Sons Produce Co., Inc.*, 872 F. Supp. 29, 35 (W.D.N.Y. 1994).  Tello therefore plausibly alleges sex-based violations of § 1985.

***Count Ten.***   Finally, the Law Enforcement Defendants move to dismiss Count Ten of Tello's complaint alleging IIED under New Mexico law.

Count Ten alleges that the Law Enforcement Defendants "engaged in extreme and outrageous conduct directed at [Tello]" causing her "extreme and severe emotional distress."  Doc. 41 ¶¶ 154, 156.  The Law Enforcement Defendants argue that, because "intentional

infliction of emotional distress is not included in the list of torts for which immunity has been waived" for public employees under the NMTCA, Tello's IIED claim "fails as a matter of law." Doc. 50 at 6, 7.

The Court agrees that the NMTCA provides immunity to the Law Enforcement Defendants and therefore dismisses Count Ten under Rule 12(b)(6) with prejudice. Tello's claims arise from the conduct of her co-workers as law enforcement officers and public employees. Indeed, Tello concedes in her response that the Law Enforcement Defendants "were acting within the scope of their employment" as public officials. Doc. 52 at 6. Because of that, "[a]t this stage in the litigation, the Moving Defendants' argument fails." *Id.* at 7. Because granting leave to amend would be futile, Count Ten is dismissed with prejudice. *See Knight v. Mooring capital Fund, LLC*, 749 F.3d 1180, 1190 (10th Cir. 2014).

### IV. Conclusion

The Court denies the County Defendants' Rule 12(b)(7) motion. Doc. 129. The Court denies in part and grants in part the Law Enforcement Defendants' 12(b)(6) motion to dismiss. Doc. 50. The motion is granted in part in that Count Ten is dismissed with prejudice, but the motion is denied in all other respects.

IT IS SO ORDERED.

/s/Kenneth J. Gonzales
CHIEF UNITED STATES DISTRICT JUDGE

- Please note that this document has been electronically filed. To verify its authenticity, please refer to the Digital File Stamp on the NEF (Notice of Electronic Filing) accompanying this document. Electronically filed documents can be found on the Court's PACER public access system.