# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW MEXICO

KARINA TELLO,

      Plaintiff,

v.                                                                    Civ. No. 24-390 KG/GJF

LEA COUNTY BOARD OF COUNTY
COMMISSIONERS, COREY HELTON,
MICHAEL WALKER, FERNANDO JIMENEZ,
SEAN ROACH, SONIA ESTRADA,
DIANE JURADO-GARCIA,
AILEEN VIZCARRA, ALYSSA PORRAS,
DOE DEFENDANTS 1-50,

      Defendants.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

THIS MATTER comes before the Court[1] on Plaintiff's Motion for Sanctions Against

Defendant Lea County Board of County Commissioners and Mynatt Springer P.C. Dkt. No. 94.

The Motion is fully briefed (*see* Dkt. Nos. 107, 113), and the Court held an evidentiary hearing on

October 29, 2025, at which it admitted Plaintiff's Exhibits 1 through 20[2] (Dkt. No. 135). Having

considered the parties' briefs and arguments, the evidence, and the relevant law, the Court

**RECOMMENDS** that the Motion be **GRANTED IN PART** as discussed below.

---

[1] The presiding judge referred Plaintiff's Motion for Sanctions (Dkt. No. 94) to the undersigned for determination pursuant to 28 U.S.C. § 636(b)(1)(A) and Federal Rule of Civil Procedure 72(a). *See* Dkt. No. 124. Because an adverse jury instruction is among the sanctions recommended, the undersigned has elected to submit findings and recommendations for the presiding judge's consideration in the form of this PFRD.

[2] The Court admitted these exhibits for purposes of Plaintiffs' Motion for Sanctions without objection from Defendants. *See* Dkt. No. 130 at 2. With the exception of the addition of Exhibit 20 (Transcript from the Second Deposition of Fernando Jimenez) and Plaintiff's Notice of Errata (attaching inadvertently omitted excerpts of Exhibit 16), that same evidence was also appended to Plaintiff's Motion for Sanctions, though by *lettered* exhibit. *Compare* Dkt. Nos. 130, 131, *with* Dkt. No. 94. The Court's references herein are to the CM/ECF pagination from Plaintiff's separately-filed, *numbered* exhibits found on the Court's docket at Document Nos. 130 and 131. County Defendants did not submit any evidence in opposition to Plaintiff's Motion with their briefing or at the evidentiary hearing. *See* Dkt. Nos. 107, 135. The Court has not considered the proposed additional exhibit that Plaintiff submitted as "Exhibit 21" more than two months after the evidentiary hearing, and after the evidence on her Motion was closed. *See* Dkt. No. 167.

## I. BACKGROUND

This case arises from Plaintiff's allegations that, in June 2023, her former colleagues at the Lea County Sheriff's Office ("LCSO") conspired against her by surreptitiously acquiring and disseminating by anonymous TracFone an intimate video of her to humiliate her and cause her to lose her job as a deputy. Plaintiff contends that LCSO administrators tolerated and encouraged this "revenge porn" scheme and helped the disseminators cover it up. According to Plaintiff, she was terminated after she reported the video's dissemination to New Mexico State Police ("NMSP"), which launched a criminal investigation.

A central dispute in this case is whether the Officer Defendants disseminated the subject intimate video, which they deny, and whether that dissemination was authorized and/or ratified by County Defendants.[3] In an effort to prove her claims, Plaintiff propounded discovery requests seeking communications, including text messages, between Defendants about which she was the subject.

Specifically, on April 10, 2025, Plaintiff sent a Request for Production ("RFP") to the Lea County Board of County Commissioners ("the Board") seeking production of "[a]ll communications, including emails, text messages, and instant messages regarding Plaintiff from February 1, 2023" to the time of the request. Dkt. No. 130-2 at 8 (RFP 4). That same day, Plaintiff sent a similar request to each named Defendant seeking "[c]ommunications between [each Defendant] and any other Defendant relating to Plaintiff." *Id.* (RFPs 1). In their June 16, 2025 responses to these RFPs, signed by County Defendants' counsel, the Board and Defendants Sean

---

[3] The Court refers to the Lea County Board of County Commissioners, Corey Helton, Michael Walker, Fernando Jimenez, and Sean Roach collectively as "County Defendants" and to Sonia Estrada, Diane Jurado-Garcia, and Aileen Vizcarra collectively as "Officer Defendants." The Court recognizes that rank-and-file law enforcement personnel at sheriff's offices are "deputies" and not "officers." The Court also recognizes that Vizcarra is neither. Nonetheless, for the sake of simplicity, this PFRD uses the label "Officer Defendants" for Estrada, Jurado-Garcia, and Vizcarra.

Roach and Fernando Jimenez swore that they did not have any communications or documents responsive to Plaintiff's requests. Dkt. No. 130-3 at 3 (RFP 1); Dkt. No. 130-4 at 1 (RFP 1); Dkt. No. 130-5 at 3 (RFP 1); Dkt. No. 131-1 at 30:22–31:3. But deposition testimony offered by Jimenez a few weeks later raised questions about the accuracy of those responses and the thoroughness of County Defendants' searches for responsive documents.

At his July 1, 2025 deposition, Jimenez initially testified that he did not keep old text messages on his phone, as his phone was set to automatically delete messages to preserve storage space. Dkt. No. 130-6 at 167:8–168:4. When Plaintiff's counsel directed him to perform searches on his cell phone mid-deposition, however, Jimenez admitted that those searches returned text messages from as far back as June 4, 2023, as well as messages that contained the name "Tello." *Id.* at 168:5–24, 172:11–176:19. Recognizing that these messages were potentially responsive to Plaintiff's discovery requests but had not been produced, the parties agreed to adjourn the deposition to permit Jimenez to supplement his discovery responses. *Id.* at 176:3–176:24.

To that end, County Defendants' counsel sent an e-mail to Plaintiff's counsel on July 7, 2025, in which he advised: "We'll be supplementing several discovery responses later this week/beginning of the following so you all have your requested information with a decent amount of lag time before the August depositions." Dkt. No. 130-7 at 2. That same day, Plaintiff's counsel emailed two letters to County Defendants' counsel concerning their responses to Plaintiff's discovery requests. The first letter requested that Jimenez produce all responsive communications on his phone within 11 days and observed that Jimenez's deposition testimony had "call[ed] into question whether [Defendants] ha[d] enacted even rudimentary document preservation measures." Dkt. No. 130-8, at 2–3. Plaintiff's second letter detailed alleged deficiencies in the Board's responses to various RFPs. Dkt. No. 130-9 at 2–3. As to Plaintiff's request for personnel files and

disciplinary histories for each Defendant, Plaintiff's counsel noted that the Board's response indicated only that the "request will be supplemented" but did not identify when the promised supplementation would occur or what it would include. *Id.* at 3. In addition, Plaintiff's counsel requested that the Board supplement RFP responses in which it stated that it had no responsive documents to indicate whether a search was performed for the requested documents and, if so, the scope of that search. *Id.* In response to these letters, County Defendants' counsel advised that he "anticipate[d] being able to have the supplements completed by [July 25, 2025]." Dkt. No. 130-10 at 2.

Some supplementation followed.  On July 22, 2025, Jimenez supplemented with four pages of text messages. Dkt. No. 94 at 7. Although the Board supplemented with personnel files three days later (Dkt. No. 130-11 at 3), it provided no supplemental responses to Plaintiff's request for communications related to Plaintiff. *Compare* Dkt. No. 130-5, *with* Dkt. No. 130-11.

In early August 2025, Defendants[4] filed a Motion for Protective Order seeking an order sealing this case in its entirety. Dkt. No. 79. In conjunction with that motion, Defendants Sean Roach and Sonia Estrada filed Notices of Non-Appearance for depositions noticed for later that month. *See* Dkt. Nos. 80, 81. The following day, the Court convened a status conference to discuss the Motion for Protective Order, the depositions, and the parties' upcoming settlement conference. *See* Dkt. No. 84. At the status conference, Mr. Young advised that County Defendants and their insurer did not intend to bring settlement funds to the settlement conference until the issues in Defendants' Motion for Protective Order were addressed. *Id.* at 2. The Court expressed disappointment at any intimation that County Defendants would limit their contribution to a settlement if the Court did not rule in their favor on the Motion for Protective Order. *Id.* Mr. Young

---

[4] Although Defendant Alyssa Porras initially joined that motion (*see* Dkt. No. 79), she later withdrew as co-movant, indicating that she took no position on the motion (Dkt. No. 83).

clarified that County Defendants were not attempting to leverage the Court's decision on that motion one way or another but instead simply wished to have the motion resolved before any settlement conference. *Id.* at 3. As to the noticed depositions of Roach and Estrada, the Court ordered that they proceed as scheduled but subject to an interim confidentiality order that provided for blanket confidentiality, to which both sides agreed. *Id.* at 4. The Court memorialized the terms of its August 8, 2025 interim confidentiality order in a formal filing the next business day. *See* Dkt. No. 85.

In accordance with the Court's orders, the depositions of Estrada and Roach proceeded as scheduled on August 11th and August 12th, respectively. During Estrada's deposition, she denied any involvement in the dissemination of the intimate video at the center of this lawsuit. *See* Dkt. No. 130-13 at 173:11–17. At Roach's deposition, Plaintiff's counsel elicited testimony about his discovery efforts and the Board's preservation efforts. Specifically, Roach testified that he had no recollection of receiving from Lea County a preservation letter or any other instructions to preserve documents or communications related to the instant case. Dkt. No. 131-1 at 47:15–48:22. He further testified that, prior to a deposition preparation meeting with his attorney two days before his deposition, he had not looked through his cell phone to determine whether he had any text messages between himself and another Defendant from mid-2023 that might be responsive to Plaintiff's discovery requests. *Id.* at 31:17–24. As a result, it was not until the deposition preparation meeting on the evening of August 10th that Roach discovered text messages responsive to Plaintiff's discovery requests. *Id.* at 51:24, 52:1–7.

According to Roach, after discovering the responsive material on his cell phone, he provided what amounted to 41 pages of responsive text messages to his attorney the next morning, on August 11th. *See id.* at 51:15–52:15. August 11th was also the day of Estrada's deposition, and

although County Defendants' counsel was present, he did not alert the parties that Roach had discovered text messages responsive to Plaintiff's requests. *See* Dkt. No. 130-13. Indeed, it was not until the morning of August 12th – 50 minutes before Roach's deposition commenced – that County Defendants' attorney first made Plaintiff's counsel aware of Roach's recently-discovered text messages. *See* Dkt. No. 131-1 at 51:5–7, 54:18–55:6, 112:9–16.

After Plaintiff's counsel referenced the timing of Roach's supplemental production, County Defendants' counsel interjected: "For the record, Judge [Fouratt] entered a confidentiality order yesterday relating to how things have been disseminated from this case . . . on social media. So it's absolutely appropriate that these things were produced when they were produced." *Id*. at 111:5–19. Plaintiff's counsel sought clarification, asking, "You're saying that you held off producing these until 50 minutes before the deposition because [of] the confidentiality order?" *Id*. at 111:20–27. County Defendants' counsel responded, "That's not what I said." *Id*. at 111:25. But when Plaintiff's counsel pressed as to why the documents had not been produced earlier, County Defendants' counsel reiterated, "In conjunction with the Court's order yesterday, it's appropriate that they did show up when they showed up." *Id*. at 112:1–16.

Of the 41 pages of supplemental discovery responses that Roach produced the morning of his own deposition, at least three text exchanges between himself and Undersheriff Michael Walker constituted potential impeachment material for Plaintiff: (1) an exchange in which Walker called Plaintiff a "child" for complaining about Estrada's alleged harassment and Walker agreed (Dkt. No. 130-15 at 3 (Bates No. 001379)); (2) an exchange in which Roach reacts "Lol" to Plaintiff's suggestion that NMSP investigate the dissemination of the subject intimate video because "it could be criminal" (*id*. at 4 (Bates No. 001380)); and a June 13, 2023 exchange in which Roach forwarded to Walker a screenshot message stamped 7:07 p.m. that Meghan Murillo

6

purportedly received from the TracFone and which reported that her husband was "with his mistress out of town" and his truck was parked "at Budrows" (*id*. at 2 (Bates No. 001375)). As Plaintiff explains, this final exchange constitutes potential impeachment material when read in parallel with text messages that NMSP extracted from the Officer Defendants' cell phones in 2023 in which Diane Jurado-Garcia's number texted Estrada's number, at 6:50 p.m. on June 13, 2023, "Murillos truck is at Budrows," and then Estrada's number texted Jurado's number, at 6:52 p.m. (15 minutes before the TracFone message to Ms. Murillo), "We're gonna text her." *See id*. at 3–6 (Bates No. 000565–568).

Additional deposition testimony provided by parties and witnesses throughout the spring and summer of 2025 also bears on the current dispute. First, in May 2025, Walker testified that he deletes all text messages from his work phone every week, that he intentionally deleted messages about Plaintiff, and that he had never been instructed *not* to delete text messages on his work phone. Dkt. No. 130-17 at 87:1–25, 90:16–91:24, 211:20–212:5.

Craig Bova, Lea County Human Resources Director, testified that he had not searched – and had not been asked to search – for text messages related to lawsuits pending against Lea County. Dkt. No. 130-19 at 51:6–53:7. As for preservation letters, he testified that he had received such letters from Lea County instructing him to preserve documents related to other matters. *Id*. at 71:1-12.

Chan Kim, LCSO Chief Deputy, testified that, despite frequent litigation involving LCSO, he was not aware of *any* instructions issued by LCSO to preserve documents or communications, though he admitted that it should have been a common practice. Dkt. No. 130-18 at 135:2–136:16. In addition, he testified that most LCSO employees with the rank of Captain and above communicate with other high-ranking officials through an app called "Slack," which auto-deletes

every 90 days. *Id.* at 122:23–130:22.

Finally, Jimenez testified at his second deposition, on August 18, 2025, that he did not recall anyone at LCSO asking him to preserve any information from his work phone and, relatedly, that LCSO did nothing to extract or retain communications from that phone. Dkt. No. 130-20 at 203:3–9. He further explained that LCSO permitted him to keep his work phone upon his retirement in March 2025, and that he lost it shortly thereafter, in approximately April 2025. *Id.* at 199:7–202:8.

## II.  APPLICABLE LEGAL STANDARDS

### A.  Rule 37 Standards

Federal Rule of Civil Procedure 37 outlines available sanctions when a party fails to make disclosures or to cooperate in discovery. If a party fails to make initial or pretrial disclosures, for instance, subsection (c) authorizes a court, after giving the party an opportunity to be heard, to order payment of attorneys' fees caused by the failure, inform the jury of the party's failure, and impose other appropriate sanctions, including those enumerated in Rule 37(b)(2)(A)(i)–(vi):

> (i)   directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;
> (ii)  prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;
> (iii) striking pleadings in whole or in part;
> (iv)  staying further proceedings until the order is obeyed;
> (v)   dismissing the action or proceeding in whole or in part; [or]
> (vi)  rendering a default judgment against the disobedient party[.]

Similarly, Rule 37(d) authorizes sanctions when "a party, after being properly served with . . . a request for inspection under Rule 34, fails to serve its answers, objections, or written response." Fed. R. Civ. P. 37(d). As with subsection (c), subsection (d) of Rule 37 authorizes the sanctions enumerated in Rule 37(b)(2)(A)(i)–(vi).

Rule 37(e), in turn, specifically addresses the failure to preserve electronically stored information ("ESI"). Fed. R. Civ. P. 37(e). Under this subsection of the rule, a court may sanction a party "[i]f [ESI] that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery." Fed. R. Civ. P. 37(e). If the court finds prejudice to the opposing party from the loss of ESI, it may order "measures no greater than necessary to cure the prejudice." Fed. R. Civ. P. 37(e)(1). If the court finds the party who failed to preserve ESI "*acted with intent* to deprive another party of the information's use in the litigation," the court may "(A) presume that the lost information was unfavorable to the party; (B) instruct the jury that it may or must presume the information was unfavorable to the party; or (c) . . . enter a default judgment." Fed. R. Civ. P. 37(e)(2) (emphasis added).

Parties to a lawsuit are under an "obligation to preserve evidence . . . when the party has notice that the evidence is relevant to litigation or when a party should have known that the evidence may be relevant to future litigation." *Browder v. City of Albuquerque*, 209 F. Supp. 3d 1236, 1243 (D.N.M. 2016) (citations omitted). The Tenth Circuit has specified that the duty to preserve arises once "litigation is imminent." *See Turner v. Pub. Servs. Co. of Colo*., 563 F.3d 1136, 1149 (10th Cir. 2009) (quotation omitted). "[O]nce a party reasonably anticipates litigation, it must suspend its routine document retention/destruction policy and put in place a 'litigation hold' to ensure the preservation of relevant documents." *Browder*, 187 F. Supp. 3d at 1295 (quotation omitted).

"The Tenth Circuit has made clear that Rule 37 grants district courts 'substantial discretion' to craft orders imposing sanctions that serve the interests of justice. *Martinez v. CorrHealth, Pro. Ltd. Liab. Co.*, 734 F. Supp. 3d 1190, 1193 (D.N.M. 2024) (citing *Olcott v. Del. Flood Co.*, 76

F.3d 1538, 1555 (10th Cir. 1996)). Even so, the Court's discretion "is limited in that the chosen sanction must be both 'just' and 'related to the particular "claim" which was at issue in the order to provide discovery.'" *Ehrenhaus v. Reynolds*, 965 F.2d 916, 920–21 (10th Cir. 1992) (quoting *Ins. Corp. of Ir. v. Compagnie des Bauxites de Guinee,* 456 U.S. 694, 707 (1982)). When imposing sanctions, a court considers the factors set out by the Tenth Circuit in *Ehrenhaus*, namely: "(1) the degree of actual prejudice; (2) the amount of interference with the judicial process; (3) the culpability of the litigant; (4) whether the court warned the party in advance that dismissal of the action would be a likely sanction for non-compliance; and (5) the efficacy of lesser sanctions." *Id.* at 921 (internal quotations and citations omitted).

### B. Rule 16(f) Standard

Rule 16(f) is a separate mechanism for imposing sanctions based on a party or attorney's pretrial conduct. Pursuant to Rule 16(f)(1)(B), if a party or its attorney fails to participate in a pretrial conference in good faith, a "court may issue any just orders," including prohibiting that party from supporting or opposing claims or defenses, striking pleadings, staying proceedings, dismissing an action, rendering default judgment, or treating the failure as an act of contempt. *See* Fed. R. Civ. P. 16(f)(3); *see also* Fed. R. Civ. P. 37(b)(2)(A)(ii)–(vii). "Instead of or in addition to any other sanction, the court must order the party, its attorney, or both to pay the reasonable expenses – including attorney's fees – incurred because of any noncompliance" with Rule 16(f), "unless the noncompliance was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 16(f)(2). The Tenth Circuit has specified that sanctions under Rule 16(f) may be warranted when a party fails to participate in a settlement conference in good faith. *Smith v. Nw. Fin. Acceptance, Inc.*, 129 F.3d 1408, 1419 (10th Cir. 1997).

### C. Rule 26(g) Standard

Finally, Rule 26(g) provides independent authority for imposing sanctions when a party or attorney defies the certification of completeness and correctness accompanying discovery responses. *See* Fed. R. Civ. P. 26(g). That rule provides that "[b]y signing" a discovery response or objection, "an attorney or party certifies that to the best of the person's knowledge, information, and belief formed after a reasonable inquiry" that disclosure "is complete and correct as of the time it is made." Fed. R. Civ. P. 26(g)(1)(A). "If a certification violates [Rule 26(g)] without substantial justification, the court, on motion or on its own, must impose an appropriate sanction on the signer, the party on whose behalf the signer was acting, or both." Fed. R. Civ. P. 26(g)(3). Sanctions under Rule 26(g) "may include an order to pay the reasonable expenses, including attorney's fees, caused by the violation." *Id*.

## III. PARTIES' PRIMARY ARGUMENTS

Plaintiff argues that conduct by the Board and its legal counsel during the discovery phase of this case warrants the imposition of sanctions. First, she contends that the Board and Mynatt Springer violated Rules 16(f), 26(g), 37(c), and 37(d) by (1) responding to discovery responses to indicate that they had no discoverable information without first conducting a reasonably diligent search; (2) intentionally withholding evidence; and (3) engaging in "[b]ad faith settlement sabotage." Dkt. No. 94 at 15–19. For these alleged discovery violations, Plaintiff seeks four sanctions: (1) an order precluding the Board from disputing that the Officer Defendants disseminated the TracFone messages, including the intimate video; (2) an order deeming it established that the Board authorized or ratified the Officer Defendants' conduct; (3) the appointment of a discovery monitor to conduct an independent search for discoverable information; and (4) an order that the Board and Mynatt Spinger are jointly and severally

responsible for Plaintiff's reasonable attorneys' fees for preparing the Motion for Sanctions and for costs related to the discovery monitor and the depositions of Jimenez, Roach, and Estrada. *Id.* at 23–24.

Second, Plaintiff argues that the Board spoliated ESI with the intent to deprive her of that information in violation of Rule 37(e). *Id.* at 20–25. For relief, she seeks (1) an order that the Board issue an immediate litigation hold and disable Slack auto-deletion; (2) an order requiring third-party imaging at the Board's expense of all LCSO relevant devices and Board-managed iCloud/Google accounts; and (3) an instruction to the jury that it must presume that communications from each loss created after the Board learned of NMSP's investigation were unfavorable to the Board. *Id.* at 25. If the Court disagrees that the Board's spoliation was the product of their intent to deprive Plaintiff of that information, Plaintiff instead seeks: (1) an order precluding the Board from offering reasons for Plaintiff's termination that are not documented in the preserved ESI; (2) an order permitting Plaintiff to introduce evidence of the Board's failure to preserve ESI at trial; (3) an instruction to the jury that the ESI should have been preserved; and (4) reopening the depositions of Estrada and and Walker[5] at the Board's expense. *Id.*

For their part, County Defendants and Mynatt Springer contend that Plaintiff's Motion for Sanctions was untimely and fails to support the imposition of sanctions as to any discovery conduct alleged therein.  Dkt. No. 107 at 3. To the extent Plaintiff accuses Defendants of spoliating ESI, County Defendants and Mynatt Springer describe those allegations as "spurious at best." *Id.* at 4. As the Court observed at the evidentiary hearing, the length and depth of County Defendant's response brief, and its failure to submit for the Court's consideration any evidence, suggest that County Defendants do not consider Plaintiff's Motion for Sanctions to be a serious motion with

---

[5] At the evidentiary hearing, Plaintiff withdrew her previous request that the Court reopen the depositions of Roach and Jimenez, unless Jimenez locates the work phone he has lost. *See* Dkt. No. 135 at 2.

serious potential consequences. *See* Oct. 29, 2025 Hr'g Tr. at 10:35:33.

## IV.   ANALYSIS

### A.   Timeliness

As a preliminary matter, the Court addresses County Defendants' contention that Plaintiff's Motion for Sanctions came too late. In this regard, County Defendants contend that Plaintiff filed her Motion outside the applicable 21-day deadline provided in Local Rule 26.6. Dkt. No. 107 at 3 (citing D.N.M.LR-Civ. 26.6). They observe that Jimenez and the Board supplemented their discovery responses on July 22, 2025 and July 25, 2025, respectively, but Plaintiff's Motion for Sanctions was not filed until more than 21 days later, on August 29, 2025. *Id.* Plaintiff counters that County Defendants' reliance on Rule 26.6 is misplaced, as the plain language of that rule applies to motions to compel, not motions for sanctions. Dkt. No. 113 at 2.  Plaintiff has the better of the arguments.

Local Rule 26.6 provides that a party served with objections to a discovery request must proceed under Local Rule 37.1 within 21 days of service of the objection unless the response specifies that documents will be produced or inspection allowed. Local Rule 37.1, in turn, identifies the attachments that must be included with a motion to compel or motion for protective order. Simply put, these rules have no application here. Plaintiff's Motion for Sanctions neither addresses objections to discovery requests nor comes in the form of a motion to compel or motion for protective order. Moreover, County Defendants do not make any compelling argument as to why a party should be prevented from seeking sanctions for alleged discovery violations that evade detection for more than 21 days. Indeed, they have not identified any prejudice they have suffered on account of the timing of Plaintiff's Motion.

The applicable Federal Rules of Civil Procedure do not specify when a motion for

sanctions must be filed, and the Tenth Circuit has concluded only that such a motion must be filed without "unreasonable delay." *Lancaster v. Indep. Sch. Dist. No. 5*, 149 F.3d 1228, 1237 (10th Cir. 1998). Given the allegations that Plaintiff makes, and the evidence on which she relies, the Court cannot say that her Motion for Sanctions was unreasonably delayed. As such, the Court **RECOMMENDS** that the presiding judge find Plaintiff's Motion for Sanctions to be timely.

### B. Alleged Discovery Violations

Plaintiff contends that the Board has engaged in "systemic, severe, and willful" discovery misconduct that has been "enabled at every turn" by its legal counsel. Dkt. No. 94 at 15. Plaintiff contends that the conduct of the Board and its counsel during the pretrial phase of this case warrants sanctions pursuant to Federal Rules of Civil Procedure 16(f), 26(g), 37(c), and 37(d).

### i. Failure to Discover/Produce Responsive Communications about Plaintiff

First, Plaintiff points to the Board, Roach and Jimenez's June 16, 2025 responses to Plaintiff's RFPs requesting production of communications about Plaintiff. In each of those responses, County Defendants swore that they had no responsive documents. At least with respect to Roach and Jimenez, those responses turned out to be manifestly inaccurate. Jimenez discovered responsive text messages on his personal cell phone at his July 1, 2025 deposition and then supplemented his discovery responses with four pages of text messages three weeks later. As for Roach, he discovered responsive text messages during his deposition preparation with his attorney, just two days before his August 12, 2025 deposition, and he supplemented his own responses with 41 pages of text messages a mere 50 minutes before his deposition.

But Plaintiff's principal complaint is not that these Defendants' discovery responses turned out to be inaccurate when responsive communications were later discovered. Instead, she complains that the initial discovery responses were not the product of a reasonably diligent search,

nor of any search at all. To be sure, a party responding to discovery requests has a duty to conduct a reasonable search for responsive documents or communications. "Parties 'jeopardize the integrity of the discovery process by engaging in halfhearted and ineffective efforts to identify and produce relevant documents.' A party does not 'meet its discovery obligations by sticking its head in the sand and refusing to look for [responsive documents or communications].'" *Robinson v. City of Arkansas City, Kan*., No. 10-1431-JAR-GLR, 2012 WL 603576, at *4 (D. Kan. Feb. 24, 2012) (citations omitted).

Here, despite June 2025 discovery responses indicating no responsive documents to the RFP requesting communications related to Plaintiff, the evidence before the Court suggests that Roach did not perform a thorough search of his phone for responsive communications until shortly before his August 12, 2025 deposition. And Roach testified that he did not receive from LCSO any instructions to preserve documents related to the instant case. Jimenez's testimony was along the same lines. He indicated that LCSO made no efforts to extract or retain communications from his work phone before permitting him to keep (and subsequently lose) that phone when he retired. As for the Board, County Defendants have presented no evidence to suggest that the Board made diligent efforts to obtain responsive communications from LCSO employees. Craig Bova, Lea County Human Resources Director, testified that he had not been asked to search for any text messages related to cases against Lea County (Dkt. No. 130-19 at 41:6–53:7), and Chan Kim, LCSO Chief Deputy, testified that despite frequent litigation involving LCSO, he was not aware of *any* instructions LCSO had issued to preserve documents or communications, though he admitted that such instructions should have been common practice (Dkt. No. 130-18 at 135:2–136:16). And yet, parties, their employees, and their attorneys must engage in a "joint effort 'to identify all employees likely to have been authors, recipients or custodians of documents'

15

responsive to the requests for production." *Robinson*, 2012 WL 603576, at *4. There is no evidence before the Court to suggest that there was any such joint effort by the Board, LCSO employees, and their attorneys here.

Instead, based on the record before it, the Court finds and concludes that the efforts, if any, by the Board, Roach, and Jimenez to search for communications responsive to Plaintiff's discovery requests were, at least initially, woefully inadequate. At best, these Defendants' discovery efforts were lackadaisical. At worst, they intentionally refrained from performing any searches for the communications Plaintiff sought and then represented – without reasonably inquiry – that they had no responsive communications. Moreover, the Court finds that Plaintiff has been prejudiced by the inadequate searches that led to County Defendants' inaccurate discovery responses, not least because she was unable to confront Estrada in her deposition with the text messages discovered on Roach's cell phone in the days leading up to his deposition.[6] Plaintiff provides compelling arguments as to how those text messages would have undermined Estrada's testimony that she was not involved in the dissemination of the subject intimate video. *See* Dkt. No. 94 at 9–12.

Although Roach and Jimenez failed to adequately discharge their discovery obligations, Plaintiff seeks sanctions against only the Board and its legal counsel, explaining that it considers the Board and its counsel primarily culpable. The Court, too, considers the Board and LCSO administration, in consultation with legal counsel, to bear the primary responsibility for guiding LCSO employees in the search for and preservation of discoverable information. It follows that the Board, and not individual Defendants, should bear the brunt of any sanctions imposed here.

---

[6] Plaintiff clarified at the evidentiary hearing that she does not contend that she was prejudiced by the delayed production of four pages of text messages from Jimenez's personal cell phone. Instead, she explains, Jimenez's late production illustrates County Defendants' pattern of failing to perform adequate searches for responsive communications and demonstrates that the Board was on notice of that inadequacy.

For these reasons, the Court recommends that the presiding judge impose sanctions against the Board, as discussed below, pursuant to Rule 37(c) and 37(d).

### ii. Defense Counsel's Conduct in Discovery

Plaintiff contends that the Board's counsel, Mynatt Spinger, failed to satisfy its own discovery obligations under the Federal Rules of Civil Procedure. She notes that Rule 26(g) provides that by signing discovery responses, counsel certifies that those responses are, to the best of their "knowledge, information, and belief formed after reasonably inquiry[,] . . . complete and correct as of the time [they are] made." Fed. R. Civ. P. 26(g)(1). Plaintiff contends that Mynatt Springer "shirk[ed]" these obligations "by barely even communicating with [its] clients [and yet] signing multiple Rule 26(g) certifications attesting to the thoroughness and completeness of the Board's search for responsive documents." Dkt. No. 94 at 17. Although "Rule 26(g) does not require the signing attorney to certify the *truthfulness* of the client's factual responses to a discovery request[,]" the attorney's signature "certifies that [he] made a reasonable effort to assure the client has provided all the information and documents available to him that are responsive to the discovery demand." *Beachley v. Trans Union, LLC*, No. 23-cv-03098-NYW-KAS, 2025 WL 661693, at *6 (D. Colo. Feb. 28, 2025), *report and recommendation adopted*, 2025 WL 2093212 (D. Colo. Mar. 17, 2025) (emphasis added) (citation omitted).

Mynatt Springer made representations at the October 29, 2025 evidentiary hearing as to instructions provided to their clients, but critically, they submitted no correspondence or declarations in that regard. As a result, the record is devoid of any showing by Mynatt Springer that they signed the County Defendants' discovery responses only after reasonable inquiry as to their accuracy and after being reasonably assured that their clients had in fact made diligent efforts to search for and produce the requested communications. As things stand, the evidence is to the

contrary.

But Plaintiff's Motion levels an even more serious allegation against defense counsel: she accuses Mynatt Springer, specifically Ben Young, of *intentionally withholding* critical evidence, at least for a time, with the intent to prejudice Plaintiff's case. According to Plaintiff, "[w]hen [Mr.] Young made the decision to put off disclosing the 41 pages of Roach text messages until August 12, he deliberately concealed critical evidence" and thereby deprived Plaintiff "of the ability to confront Estrada with those documents" at her August 11, 2025 deposition. Dkt. No. 94 at 18. Plaintiff insists that Mr. Young's actions were contrary to his obligations under Rule 26(e), which imposes a continuing duty to disclose documents responsive to discovery requests upon receipt. *Id*. (citing *In re Ray*, 951 F.3d 650, 654 (5th Cir. 2020)).

The transcript of Roach's August 12, 2025 deposition features an on-the-record exchange between Plaintiff's counsel and Mr. Young relevant to the timing of Young's production of Roach's text messages. There, Mr. Young offered the following explanation:

> For the record, Judge [Fouratt] entered a confidentiality order yesterday [August 11th] relating to how things have been disseminated from this case . . . on social media.  So it's absolutely appropriate that these things were produced when they were produced. . . . In conjunction with the Court's order yesterday, it's appropriate that they did show up when they showed up.

Dkt. No. 131-1 at 111:5–112:16. But as the Court observed at the evidentiary hearing, it "ruled with [its] mouth" at its August 8th status conference, and the filing that followed on August 11th (the day of Estrada's deposition and the day before Roach's) only memorialized that earlier order. Oct. 29, 2025 Hr'g Tr. at 11:08:29–11:09:10. In other words, the absence of a *written* interim confidentiality order was not a legitimate basis for defense counsel to either (1) delay the production of Roach's text messages, or (2) fail to apprise Plaintiff's counsel, on August 10th or August 11th, of the discovery of those text messages.

Mynatt Springer responds that Roach's supplemental discovery responses were provided less than 48 hours after they were received by counsel, which in defense counsel's view was "well within the reasonable window of time permitted for supplementation." Dkt. No. 107 at 3 (citing Fed. R. Civ. P. 26(e)(1)(a), which provides that supplemental discovery responses should be made "in a timely manner"). Mynatt Springer goes on to suggest that Roach's text messages could not realistically have been produced any sooner, given the need to review and Bates-number them. *Id.* at 3–4.

While there may have been good reasons that it was not feasible for Mynatt Springer to produce Roach's text messages the same day it received them – including the need to review them for irrelevant or privileged communications – it is telling that Mynatt Springer put forth no explanation for why it could not at the very least *advise* Plaintiff's counsel of their existence and Roach's forthcoming supplementation. Informing Plaintiff's counsel in this manner would have provided them an opportunity to request that Estrada's and/or Roach's depositions be rescheduled or held open. Instead, Plaintiff contends that because she was unaware of Roach's text messages, she effectively lost the ability to confront Estrada with evidence that would have "blow[n] up" her testimony concerning the dissemination of the intimate video. It is not clear to the Court whether Roach's text messages would have, in fact, had an appreciable impact on Estrada's denial of involvement in the video's dissemination, but it *is* clear that Plaintiff lost the opportunity to confront her with potential impeachment material that originated around the time of the video's dissemination. Defense counsel's silence concerning Roach's text messages—until *after* Estrada's deposition and only 50 minutes before Roach's deposition—strikes the Court as outside the spirit of Rule 26(e)(1)(a), lacking in professional courtesy, and antithetical to fair play and substantial justice.

### ii. Alleged Failure to Participate in Good Faith at Settlement Conference

Next, Plaintiff accuses the Board of conditioning its participation at a settlement conference on a favorable outcome to a motion unrelated to the merits of the case. Plaintiff explains that the parties agreed to participate in a September 8, 2025 settlement conference "long ago," reaffirming that intent at a July 28, 2025 status conference. Dkt. No. 94 at 19. As Plaintiff puts it, Mr. Young then "sprung an ultimatum on the Court: the Board will not bring money to the settlement conference unless its [Motion for Protective Order] has been resolved." *Id.*

Plaintiff's allegation arises from an August 8, 2025 status conference at which the Court addressed Defendants' newly-filed Motion for Protective Order, two Notices of Non-Appearance for noticed depositions, and the parties' September 8, 2025 settlement conference. *See* Dkt. No. 84. At the conference, Mr. Young announced that County Defendants and their insurer did not intend to bring funds to a settlement conference until the issues in the Motion for Protective Order were addressed. *Id.* at 2. After the Court expressed disappointment at any intimation that County Defendants might limit their settlement contribution absent a favorable ruling on the Motion for Protective Order, Mr. Young clarified that County Defendants were not attempting to leverage the Court's decision on that motion one way or another. *See id.* at 2–3.

Plaintiff characterizes Mr. Young's statements as a bad faith attempt to coerce the Court into granting its Motion for Protective Order, noting that Rule 16(f) authorizes sanctions if a party fails to participate in good faith at a pretrial conference. In terms of prejudice, Plaintiff suggests that Defendants' initial representation that they preferred an early settlement conference meant that discovery proceeded "at a breakneck pace" with the "first handful of depositions" being conducted without the benefit of written discovery. Dkt. No. 94 at 19. She explains that had she known the Board would "later use its good-faith participation as a bargaining chip to extort

concessions, [she] never would have agreed to the September [8, 2025] date." *Id*. at 19–20. Plaintiff urges the Court to punish the Board's "gamesmanship" with respect to the September 8, 2025 settlement conference. *Id*. at 20.

For their part, County Defendants describe Plaintiff's allegation of an attempt to leverage an outcome on the Motion for Protective Order as "laughable." Dkt. No. 107 at 2. But the Court wasn't laughing when it expressed disappointment at its impression that County Defendants might be "tight-fisted" at a settlement conference if the motion was not resolved in their favor. Dkt. No. 84 at 2. Nor was it laughing when it suggested that County Defendants consider disengaging their approach to settlement from the outcome of that pending motion if they seek the Court's future assistance at a settlement conference. *Id*.

Still, the Court acknowledges that County Defendants' assessment of the productiveness of the upcoming settlement conference may have shifted after Plaintiff and her counsel published in a Court filing a Defendant's minor child's name, with that filing and the minor's name being disseminated on social media shortly thereafter. *See* Dkt. Nos. 79 at 7–8; 84 at 4. Moreover, the Court's Order Setting Settlement Conference instructs the parties that if they "believe[] for any reason that negotiations attempts would not be fruitful at the time set for the conference, . . . the parties should contact . . . chambers to schedule a status conference to discuss the concern." Dkt. No. 51 at 5. At a minimum, County Defendants expressed their concern at the August 8, 2025 status conference that a settlement conference would not be fruitful in light of developments related to the doxing of the Defendant's minor child, issues that were taken up in their Motion for Protective Order. *See* Dkt. No. 79 at 7–8. So long as County Defendants were not conditioning their good faith participation at a settlement conference on a favorable resolution of their Motion for Protective Order, bringing that matter to the Court's attention did not constitute bad faith and,

in fact, comported with the Court's instructions.

With the benefit of hindsight – the Motion for Protective Order having now been resolved *against* County Defendants (*see* Dkt. No. 115), and County Defendants having demonstrated willingness to participate in good faith at a settlement conference set for a later date (*see* Dkt. No. 162) – the concerns the Court expressed at the August 8th status conference have been assuaged. In addition, the Court notes that despite frontloading depositions in the early stages of discovery and conducting some early depositions without the benefit of written discovery, Plaintiff is effectively in no worse position than she would have been had the September 8, 2025 settlement conference proceeded but failed to produce a settlement. As a result, the Court finds and concludes that sanctions are not warranted pursuant to Rule 16(f).

### iii.  Alleged Spoliation of ESI

Finally, Plaintiff seeks sanctions pursuant to Rule 37(e) – for the Board's spoliation of ESI. Dkt. No. 94 at 20. "A spoliation sanction is proper where . . . a party has a duty to preserve evidence because it knew, or should have known, that litigation was imminent . . . ." *Jones v. Norton*, 809 F.3d 564, 580 (10th Cir. 2015) (citation omitted). The point at which litigation is imminent is a "flexible fact-specific standard that allows a district court to exercise the discretion necessary to confront the myriad factual situations inherent in the spoliation inquiry." *Browder*, 187 F. Supp. 3d at 1296 (quotation omitted). In Plaintiff's view, the Board's duty to preserve ESI arose in July 2023, when LCSO and the Board learned of NMSP's investigation and when Plaintiff was fired. Dkt. No. 94 at 20.  Plaintiff insists that, by that time, the Board knew or should have known that litigation was imminent.

County Defendants do not offer a competing timeframe for the imposition of their duty to preserve. *See* Dkt. No. 107. Moreover, the Court observes that the Board and LCSO's current

administration are hardly newcomers to litigation or discovery obligations. By the Court's count, the Board had been sued no less than a dozen times between the beginning of the current sheriff's tenure, in January 2019, and Plaintiff's termination in July 2023. This lends support to the notion that litigation should have been front of mind when NMSP commenced a criminal investigation and Plaintiff was terminated. In other words, the Court's assessment of when the Board should have known that litigation was imminent squares with that of Plaintiff.

Despite the duty to preserve that arose in July 2023, or at the very latest in March 2024 with the filing of Plaintiff's lawsuit, Plaintiff contends that the Board unreasonably: (1) permitted Walker to delete all text messages from his work phone, including conversations about Plaintiff; (2) never issued preservation instructions to its employees; (3) never conducted a thorough search for discoverable materials; (4) allowed LCSO leadership to continue communicating via Slack with the app's 90-day auto-deletion enabled; and (5) permitted Jimenez to keep, and then lose, his work phone upon his retirement in early 2025. Significantly, Plaintiff submits deposition testimony in support of each of these allegations. In response, County Defendants offer only representations of counsel that County Defendants "turned over what they have been able to locate" and their characterization of Plaintiff's allegations as "spurious." *See* Dkt. No. 107 at 4.

To demonstrate entitlement to spoliation sanctions, Plaintiff must also show that the lost ESI "cannot be restored or replaced through additional discovery." Fed. R. Civ. P. 37(e). In this regard, Plaintiff insists that the text messages deleted from Walker's cell phone, communications stored on Jimenez's misplaced work phone, and auto-deleted Slack communications are simply gone and cannot be restored. County Defendants do not contend otherwise, nor do they identify any backups or alternative repositories for the lost communications. Instead, in both their briefing and at the evidentiary hearing, they suggested that evidence of relevant communications *was*

preserved: when NMSP, during its criminal investigation in 2023, extracted content from the Officer Defendants' cell phones. *See* Dkt. No. 107 at 4 (describing the 2023 NMSP extractions as "determinative of Plaintiff's claims" and "literally the best evidence"); *see also* Oct. 29, 2025 Hr'g Tr. at 10:41:13–10:42:32 (explaining that, in the County's mind, the NMSP investigation "was what was being done to preserve evidence"). That there may have been limited preservation of *some* communications between *some* Defendants from a limited point in time misses the point and amounts to an incomplete document preservation approach on County Defendants' part. Simply put, the 2023 NMSP cell phone extractions did not relieve the Board of its own preservation efforts in this case.

Based on the evidence before it, which again the Court notes came entirely from Plaintiff, the Court finds that the Board failed to take reasonable steps to preserve communications that were contemporaneous with and relevant to the events giving rise to Plaintiff's claims, to include text messages from the work cell phones of Walker and Jimenez and communications between LCSO upper brass via Slack. The Court further finds that these communications have been irretrievably lost. Having so found, the Court turns to the issue of appropriate spoliation sanctions.

The Court may impose spoliation sanctions if it finds prejudice to Plaintiff from the loss of ESI. *See* Fed. R. Civ. P. 37(e)(1). To establish prejudice, Plaintiff need only "establish 'a reasonable possibility based on concrete evidence . . . that access to the [lost material] would have produced evidence favorable to [her claims].'" *See Gates Rubber Co. v. Bando Chem. Indus., Ltd.*, 167 F.R.D. 90, 104 (D. Colo. 1996) (quotation omitted). In attempting to make that showing, Plaintiff points to recently-discovered text exchanges between Roach and Walker from July 2023 in which, for example, Walker referred to Plaintiff as "a child" for complaining about harassment by Estrada. Plaintiff suggests that if she was the subject of text conversations with Roach and

Walker contemporaneous with the events giving rise to her lawsuit, it stands to reason that Walker also had relevant text conversations with *other* Defendants about which she was the subject. And yet, as Plaintiff observes, Walker testified that he likely deleted text messages about her because no one told him not to. Similarly, given the discoverable text messages found mid-deposition on Jimenez's personal phone, Plaintiff suggests that discoverable text messages were also likely contained on his work phone, which the Board permitted him to keep and to subsequently lose when he retired. And finally, Plaintiff contends that it is reasonably possible that LCSO decision makers used their auto-deleting Slack app to communicate about the reasons for her termination – communications that may have supported her claims here. *Id*.

Based on the record before it, the Court finds that Plaintiff has established a reasonable possibility that the spoliated ESI she identifies would have produced evidence favorable to her claims in this case. Indeed, some of the strongest evidence Plaintiff could hope to amass in support of her claims against Defendants is evidence of their internal communications contemporaneous with the events giving rise to this lawsuit. Unfortunately, some of those communications, for which there is a reasonable possibility of favorableness to Plaintiff, have been irretrievably lost due to actions and omissions of the Board.

A final consideration with respect to spoliation sanctions is whether the Board acted with an "intent to deprive" Plaintiff of the lost ESI. *See* Fed. R. Civ. P. 37(e)(1). Upon a showing of intent to deprive, the Court may (A) presume that the lost information was unfavorable to the party; (B) instruct the jury that it may or must presume the information was unfavorable to the party; or (C) . . . enter a default judgment." Fed. R. Civ. P. 37(e)(2). Conversely, if the Court does not find such intent, it may only "order measures no greater than necessary to cure the prejudice." Fed. R. Civ. P. 37(e)(1). Although not defined within the Federal Rules of Civil Procedure, courts have

inferred intent to deprive when "a party is on notice that the evidence was potentially relevant and fails to take measures to preserve relevant evidence, or otherwise seeks to 'keep incriminating facts out of evidence.'" *Franklin v. Stephenson,* No. 20-cv-0576 MIS-JFR, 2022 WL 6225303, at \*9 (D.N.M. Feb. 16, 2022), *proposed findings and recommended disposition adopted*, 2022 WL 6103342 (D.N.M. Oct. 7, 2022) (quotation omitted).

Here, the Court can infer from the evidence before it that the Board acted with an intent to deprive Plaintiff of the ESI. Both Kim and Roach testified that they had no recollection of receiving from Lea County a preservation letter or any instructions to preserve evidence related to this case. Walker testified that he continued to delete his text messages on a weekly basis *because he was never instructed not to*. And perhaps most egregiously, the Board permitted Jimenez to take with him upon his retirement his LCSO work phone, without first taking any measures to recover discoverable communications stored on that device.[7] That these serious preservation failures occurred despite the Board finding itself in the frequent position of defending civil suits in federal court—at least eight cases in 2023 and 2024—only bolsters Plaintiff's position that the Board's actions and inactions here were intentional.

For its part, the Board presented no evidence of any litigation hold, preservation letter, or any other form of instruction, oral or written, provided to Defendants or other LCSO employees to preserve evidence and/or suspend deletion measures once it had reason to believe that NMSP's investigation and Plaintiff's termination might lead to litigation.[8] Likewise, the record is devoid of

---

[7] The Court notes that according to Plaintiff's operative Complaint, Jimenez was one of the recipients of the intimate video in June 2023 (*see* Dkt. No. 41 at 5 ¶ 35), which heightens the relevance and importance of communications on his cell phones.

[8] Although counsel for County Defendants represented at the evidentiary hearing that Mynatt Springer discussed preservations obligations with LCSO administration and, consistent with its practice, sent a preservation letter to the Board shortly after the instant litigation commenced and Mynatt Springer was retained, the record is devoid of any *evidence* to that effect. Although the Court has no reason to disbelieve defense counsel's representations, the Court cannot consider them as tantamount to *evidence*.

any Lea County or LCSO written policy related to document retention, and the Board has presented no evidence of, or even made representations about, steps it has taken to remediate systemic preservation inadequacies going forward.

For all of these reasons, sanctions for intentional spoliation are warranted pursuant to Rule 37(e)(2).

## V.  CONCLUSION

In assessing the appropriate sanctions for the foregoing discovery violations and spoliation, the Court has considered the *Ehrenhaus* factors in connection with the evidence before it. As to the degree of prejudice, the Court finds that critical contemporaneous communications, potentially favorable to Plaintiff's claims, including those once stored on Jimenez and Walker's work phones, appear to be lost for all time. Others were belatedly disclosed, depriving Plaintiff of the opportunity to question deponents about their contents. Compounding these discovery violations, Mynatt Springer failed to timely apprise Plaintiff of text messages that Roach discovered ahead of his deposition, depriving Plaintiff and her counsel of the ability to confront Estrada with potential impeachment material at her deposition. That late disclosure also afforded Plaintiff's counsel less than an hour to review 41 pages of text messages ahead of Roach's deposition and to consider whether those messages contained material ripe for inquiry.

As to interference with the judicial process and the culpability of the Board, the Court finds that the Board recklessly, if not intentionally, disregarded its discovery obligations when searching for communications responsive to Plaintiff's discovery requests and, further, intentionally disregarded its obligations to preserve discoverable information both when it should have known litigation was imminent and after litigation commenced. Based on the record before it, the Court finds that Mynatt Springer, too, made missteps in signing discovery responses without making

reasonable inquiry into its clients' efforts to search for discoverable information and in failing to timely advise opposing counsel of forthcoming supplemental discovery responses – responses that defense counsel should have known Plaintiff would find relevant and useful for the depositions of Estrada and Roach. With respect to the efficacy of lesser sanctions, the Court is of the firm conviction that stiff sanctions, albeit short of default, are necessary to compensate Plaintiff for the prejudice she has suffered and to deter discovery conduct of the sort demonstrated in this case. Based on the foregoing discovery violations and spoliation, the undersigned recommends the following forms of relief.

First and *nunc pro tunc*, as a sanction under Rules 37(c) and (d), and 26(g), the Court **RECOMMENDS** that the depositions of Estrada and Walker be re-opened, if Plaintiff wishes, and that the court reporter and/or videographer fees associated with the reopened depositions be paid exclusively by the Board. *See* Dkt. No. 151.

As an additional sanction under Rules 37(c) and (d) and 26(g), the Court **RECOMMENDS** that the presiding judge order the Board and Mynatt Springer to bear – in equal shares – the responsibility to pay Plaintiff's reasonable attorneys' fees associated with her Motion for Sanctions (Dkt. No. 94) and for the costs associated with Jimenez's August 13, 2025 re-opened deposition.[9]

Finally, as spoliation sanctions under Rule 37(e) for the Board's failure to preserve communications and other documents created, sent, and/or received in anticipation of – indeed, even after the commencement of – litigation, the Court **RECOMMENDS** that the presiding judge (1) permit Plaintiff to introduce evidence of the Board's failure to preserve ESI at trial; and (2) instruct the jury as follows:

Evidence was introduced in this trial of the failure of Defendant Lea County Board

---

[9] If the presiding judge agrees with this sanction, this Court will issue a separate order instructing Plaintiff's counsel to submit a fee and cost demand and will permit County Defendants and their counsel an opportunity to object to the reasonableness thereof.

of County Commissioners and its Sheriff's Office to comply with their obligations to preserve all electronic mail, text message, and other digital communications (including those occurring on Slack and WhatsApp platforms) that were potentially relevant to the claims or defenses in this case. Evidence was also introduced that these communications were created, sent, received, and deleted or otherwise not preserved *after* the Board of County Commissioners and its Sheriff's Office were on notice of Plaintiff's intent to file this lawsuit and even after the lawsuit was filed. You are instructed that federal law requires parties to litigation to take reasonable steps to preserve all such communications as soon as they reasonably anticipate that litigation is likely. You may infer that the relevant communications the Board of County Commissioners failed to preserve after it was on notice of Plaintiff's intent to file this lawsuit would have been beneficial to Plaintiff's claims and detrimental to the Board's defenses.

**SO RECOMMENDED.**

---

**THE PARTIES ARE NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**

---

THE HONORABLE GREGORY J. FOURATT
UNITED STATES MAGISTRATE JUDGE